## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO 21-30071 |
| THE GATEWAY VENTURES, LLC, | § | |
| | § | |
| | § | |
| Debtor. | § | |

## MOTION FOR ORDER AUTHORIZING (I) SALE OF LOT 9 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) PAYMENT OF CERTAIN EXPENSES AT CLOSING, AND (III) RELATED RELIEF

---

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS.**

**IF NO TIMELY RESPONSE IS FILED WITHIN <u>TWENTY ONE (21) DAYS</u> FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD.**

**A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

---

**TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:**

The Gateway Ventures, LLC, debtor and debtor in possession ("TGV" or "Debtor") files this *Motion for Order Authorizing (I) Sale of Lot 9 Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Payment of Certain Expenses at Closing, and (III) Related Relief* (the "363 Motion"), and in support thereof would show the Court the following.

### INTRODUCTION

1. By this 363 Motion, TGV requests entry of an order for the proposed sale of Lot 9 of the TGV real property pursuant to 11 U.S. C. §363(f).[1]

---

[1] TGV is filing this 363 Motion under normal 21-day negative notice language. TGV reserves the right to seek expedited consideration of this 363 Motion.

**MOTION FOR ORDER AUTHORIZING (I) SALE OF LOT 9  FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) PAYMENT OF CERTAIN EXPENSES AT CLOSING, AND (III) RELATED RELIEF — Page 1**

1956091.DOCX[1]

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Motion pursuant to Sections 105, 363, and 1101 et seq. of the United States Bankruptcy Code, Title 11 of the U.S. Code, 11 U.S.C. §101 et seq. (the "Code" or "Bankruptcy Code"), and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Rules" or the "Bankruptcy Rules" or individually a "Rule" or a "Bankruptcy Rule"), and 28 U.S.C. §§157 and 1334.

3.      This matter constitutes a core proceeding under 28 U.S.C. §157(b).

4.      Venue is proper under 28 U.S.C. §§1408 and 1409.

5.      The Court possesses constitutional authority to decide this Motion under *Stern v. Marshall*, 564 U.S. 462 (2011) and its progeny.

## FACTUAL BACKGROUND

**The identify and background of the Debtor and Debtor in Possession.**

6.      TGV owns and is the developer of a tract of real property of approximately 19 acres in El Paso, El Paso County, Texas (the "Development").

**The Commencement of the Bankruptcy Cases.**

7.      On February 5, 2021 (the "Petition Date"), TGV commenced the above-caption case by filing a voluntary petition under Chapter 11 of the Code.

8.      TGV is in possession of its assets and is proceeding in this case as debtor-in-possession.

9.      No trustee or committee is appointed.

**Sale of Lot 9.**

10.     On or about April 9, 2021, TGV entered into a *Real Estate Purchase and Sale Agreement* (the "PSA") with Sun Capital LLC, a New Mexico limited liability company ("Sun

---

Capital" or the "Purchaser") for the sale of Lot 9 out of the Development to Sun Capital or its assignee.  A redacted copy of the PSA is attached as **Exhibit TGV003**.[2]

11.     The Development and Lot 9 are referenced and described and/or depicted in the attachments to the PSA.

12.     TGV has redacted the purchase price of the PSA from this motion and has separately filed a motion to permit an un-redacted version of the PSA to be filed under seal. TGV has submitted the PSA to the first lienholder, HD Lending LLC ("HD Lending") under the provisions of a confidentiality agreement.  As further explained in the Motion to Seal, it is important for TGV, the estate, and creditors for the purchase price of the Lot 9 transaction under the PSA to remain confidential in order to not reduce or influence unnecessarily the sale price of other lots within and/or portions of the Development.

13.     TGV has entered into the PSA for Lot 9 without the assistance of or listing by a broker.  The principal of TGV is an experienced real estate developer.  Lot 9 and the rest of the Development were marketed by TGV for many months prior to this 363 Motion in a manner consistent with local and/or industry standards.

14.     Consequently, it is the opinion of TGV that the use of a broker over the past several months would not have resulted in a price higher than the price set forth in the PSA with Sun Capital.

15.     The liens that exist with respect to Lot 9 and the Development consist of (1) a first lien deed of trust lien asserted by HD Lending and (2) a judgment lien filed of record by Rahim Noorani, Ashish Nayyar, Deepesh Shrestha, and Umesh Shrestha (collectively, the "Noorani Parties").

---

[2] TGV is consecutively numbering its exhibits throughout this case.

16.     Tax liens for 2020 and/or 2021 exist against the Development.

17.     One or more mechanic's liens appear of record against Lot 9 and/or the Development which TGV believes will be resolved and released prior to the closing of the sale with Sun Capital.

18.     TGV believes that a sale of Lot 9 is in the best interest of the estate and all creditors.

## RELIEF REQUESTED

19.     TGV respectfully requests entry of an order substantially in the form attached hereto as **Exhibit TGV004** (the "Sale Order"):[3]

      a.    authorizing and approving the Sale of Lot 9 as set forth in the PSA free and clear of liens, claims, encumbrances, and other interests except the Permitted Encumbrances;

      b.    waiving the 14-day stay Bankruptcy Rules 6004(h) and 6006(d) with respect to the implementation of the Sale Order and Closing; and

      c.    granting any related relief contained in the Sale Order or granted at any hearing including potentially the resolution of potential objections and the potential partial or complete settlement of claims in connection therewith.

20.     A proposed form of order is submitted with this 363 Motion and is incorporated by reference herein. ***TGV may further refine and/or revise the proposed form of order to address potential drafting issues and/or issues or objections raised by Sun Capital or any party in interest prior to the hearing on the 363 Motion, and if the proposed order is so revised then TGV will file a notice of any revisions with the Court prior to the hearing.***

## BASIS OF RELIEF

21.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.[4]

---

[3] The Sale Order may be amended before or during the Sale Hearing.

22.     The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.[5]

23.     Code § 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."[6]  A sale of the debtor's assets should be authorized pursuant to Code § 363 if a sound business purpose exists for the proposed transaction based upon a business judgment standard.[7]  Application of the business judgment standard depends on the particular case.[8]  "The business judgment standard in § 363 is flexible and encourages discretion."[9]

24.     Courts apply a great deal of deference to a debtor's decision under the business judgment rule.[10]  Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a

---

[4] *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (quoting *In re Schipper*); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656-7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

[5] *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

[6] 11 U.S.C. § 363(b)(1).

[7] *Asarco, Inc. v. Elliot Mgmt. (In re Asarco, LLC)*, 650 F.3d 593, 601 (5th Cir. 2011); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).

[8] *Id.*

[9] *Id.*

[10] *See In re Asarco LLC*, 441 B.R. 813, 828 (S.D. Tex. 2010).

**MOTION FOR ORDER AUTHORIZING (I) SALE OF LOT 9 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) PAYMENT OF CERTAIN EXPENSES AT CLOSING, AND (III) RELATED RELIEF — Page 5**

corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company."[11]

**A Sound Business Purpose Exists for the Sale.**

25.    TGV possesses a sound business justification for selling Lot 9.  Specifically, the sale of Lot 9 will begin the process of providing funds to retire the secured debt against the Development and provide funds to be used to begin to pay creditors under a Chapter 11 plan or other order of the Court.

26.    TGV will submit evidence at the Sale Hearing to support these conclusions. Therefore, TGV requests that the Court make a finding that the proposed sale of Lot 9 is a proper exercise of the business judgment of TGV and is rightly authorized.

**The Sale and Purchase Price Well Reflect a Fair Value Transaction.**

27.    The sale price for Lot 9 listed in the PSA reflects a fair and market-value price for the Property.  Sun Capital is a good-faith purchaser.

28.    TGV requests that the Court find that Sun Capital is entitled to the benefits and protections provided by Code § 363(m) in connection with the sale of Lot 9 .[12]

29.    Pursuant to Code § 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.[13]  Code § 363(m) thus protects the purchaser of assets sold pursuant to Code § 363 from the risk that it will lose its interest in the

---

[11] *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); *Integrated Res.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

[12] Code § 363(m) provides in pertinent part:  [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

[13] *O'Dwyer v. O'Dwyer (In re O'Dwyer),* 611 Fed. App'x 195, 200 (5th Cir. 2015).

purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made.[14]

30. TGV submits that Sun Capital is a "good faith purchasers" within the meaning of Code § 363(m), and the PSA is a good-faith agreement entered into on arms'-length terms and entitled to the protections of Code § 363(m).

31. Sun Capital is a true third party with no prior dealings with TGV or any insider or affiliate of TGV. Sun Capital has been represented by separate counsel throughout.

32. Accordingly, TGV believes that a finding of good faith within the meaning of Code § 363(m) will be appropriate for the Sun Capital.

**The Sale Should be Approved "Free and Clear" Under Section 363(f).**

33. Code § 363(f) permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.[15]

---

[14] *See, e.g., In re Abbotts Dairies of Pa., Inc.* ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

[15] *See* 11 U.S.C. § 363(f).

34.    Code § 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of Lot 9 free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities and/or permitted encumbrances under the PSA.[16]

35.    As set forth above, the interests of record against Lot 9 and the disposition of such interests by this 363 Motion primarily consist of HD Lending and the Noorani Parties.

36.    Any parties with a potential interest in Lot 9 shall receive service of this 363 Motion.

37.    TGV submits that any interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of Code § 363(f), and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, and otherwise each lien holder will retain its lien with respect to the remainder of the Development.

38.    TGV accordingly requests authority to convey Lot 9 to Sun Capital, free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Sale.

**Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate.**

39.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed

---

[16] *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."

40.    TGV requests that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

41.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.[17]    Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure."[18]

42.    To maximize the value received for Lot 9, TGV seeks to close the Sale as soon as possible after the Sale Hearing.  Closing of the sale as soon as possible after a hearing on this 363 Motion also is a requirement of Sun Capital.  Accordingly, TGV hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE

43.    Copies of this 363 Motion are being provide to all creditors and parties in interest which appear on the creditors list or matrix of this case.  (Accordingly, sufficient notice is provided under Bankruptcy Rule 6004(c)).

## RESERVATION OF RIGHTS

44.    Debtor reserve the right to amend, supplement, and/or withdraw this 363 Motion prior any interim hearing or final hearing.

---

[17] *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).

[18] 10 Collier on Bankruptcy 6004.10 (15th rev. ed. 2006).

## CONCLUSION AND PRAYER

WHEREFORE, The Gateway Ventures, LLC, Debtor and Debtor-in-Possession respectfully requests entry of an order providing for the sale of Lot 9 free and clear of liens, claims, encumbrances, and other interest under 11 U.S.C. §363(f) as set forth above and as set forth in the proposed order. The Debtor respectfully requests such other and further relief to which the Debtor is entitled at law or in equity.

Dated:  May 4, 2021

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:___/s/ Jeff Carruth_____
    JEFF CARRUTH (TX SBN:. 24001846)
    3030 Matlock Rd., Suite 201
    Arlington, Texas 76105
    Telephone: (713) 341-1158
    Fax: (866) 666-5322
    E-mail:  jcarruth@wkpz.com

ATTORNEYS FOR THE GATEWAY VENTURES, LLC,  DEBTOR AND DEBTOR IN POSSESSION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served on May 4, 2021 (1) by electronic notice to all ECF users who have appeared in this case to date, and/or as set forth below and (2) by regular mail to all parties appearing in the attached address list (i.e. mailing matrix) obtained from the Court's PACER facility. *A copy of the service lists was not served with the regular mail service set but is available by contacting the undersigned.*

**ANY PARTY REQUESTING A FULL SIZED COPY OF THIS PLEADING OR COPIES OF ANY EXHIBITS SHOULD CONTACT THE UNDERSIGNED.**

_____/s/ Jeff Carruth_____
JEFF CARRUTH

**21-30071-hcm Notice will be electronically mailed to:**

Jeff Carruth on behalf of Debtor The Gateway Ventures, LLC
jcarruth@wkpz.com, jcarruth@aol.com;ATTY_CARRUTH@trustesolutions.com

Harrel L. Davis, III on behalf of Creditor Suresh Kumar
hdavis@eplawyers.com, vrust@eplawyers.com;vpena@eplawyers.com

James Michael Feuille on behalf of Creditor Ashish Nayyar
jfeu@scotthulse.com, tmar@scotthulse.com

James Michael Feuille on behalf of Creditor Deepesh Shrestha
jfeu@scotthulse.com, tmar@scotthulse.com

James Michael Feuille on behalf of Creditor Rahim Noorani
jfeu@scotthulse.com, tmar@scotthulse.com

James Michael Feuille on behalf of Creditor Umesh Shrestha
jfeu@scotthulse.com, tmar@scotthulse.com

Ryan Little on behalf of Interested Party Union Gateway, LLC
little@mgmsg.com, tsilva@mgmsg.com

Aldo R Lopez on behalf of Plaintiff Westar Investors Group, LLC
alopez@raylaw.com, cchumsae@rmjfirm.com

Aldo R Lopez on behalf of Plaintiff Saleem Makani
alopez@raylaw.com, cchumsae@rmjfirm.com

Aldo R Lopez on behalf of Plaintiff Suhail Bawa
alopez@raylaw.com, cchumsae@rmjfirm.com

Clyde A. Pine, Jr. on behalf of Creditor HD Lending, LLC
pine@mgmsg.com, clyde.pine@gmail.com

Donald P. Stecker on behalf of Creditor City Of El Paso
don.stecker@lgbs.com

United States Trustee - EP12
USTPRegion07.SN.ECF@usdoj.gov

Eric Charles Wood on behalf of Creditor Westar Investors Group, LLC
eric@brownfoxlaw.com, melissa@brownfoxlaw.com

Eric Charles Wood on behalf of Creditor Saleem Makani
eric@brownfoxlaw.com, melissa@brownfoxlaw.com

Eric Charles Wood on behalf of Creditor Suhail Bawa
eric@brownfoxlaw.com, melissa@brownfoxlaw.com

Label Matrix for local noticing
0542-3
Case 21-30071-hcm
Western District of Texas
El Paso
Tue May  4 21:42:50 CDT 2021

The Gateway Ventures, LLC
c/o PDG Prestige, Inc.
780 N Resler Drive, Suite B
El Paso, TX 79912-7196

U.S. BANKRUPTCY COURT
511 E. San Antonio Ave., Rm. 444
EL PASO, TX 79901-2417

Ashish Nayyar
806 Rockport Lane
Allen, TX 75013

Ashish Nayyar
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Ashish Nayyar, Rahim Noorani,
Deepesh Shrestha, and Umesh Shrestha
c/o James M. Feuille
201 E. Main Drive, Suite 1100
El Paso, TX 79901-1340

Border Demolition
Attn: Bonnie Solis
1004 Diesel Drive
El Paso, TX 79907-3100

City of El Paso
c/o Don Stecker
112 E. Pecan St. Suite 2200
San Antonio, TX 78205-1588

Deepesh Shrestha
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Depcesh Shrestha
3708 N. White Chapel Blvd.
Southlake, TX 76092-2042

El Paso County Tax AC
301 Manny Martinez Dr., 1st Floor
El Paso, TX 79905-5503

HD Lending LLC
6080 Surety Dr. Ste 101
El Paso, TX 79905-2066

HD Lending LLC
c/o Stephen H. Nickey PC
1201 North Mesa Ste. B
El Paso, TX 79902-4000

HD Lending, LLC
c/o Clyde A. Pine, Jr.
Mounce Green Myers
P.O. Box 1977
El Paso, Texas 79999-1977

Internal Revenue Service
Special Procedures Staff - Insolvency
P. O. Box 7346
Philadelphia, PA 19101-7346

Michael Dixson
780 N. Resler Drive Suite B
El Paso, TX 79912-7196

PDG Prestige, Inc.
780 N. Resler Drive Suite B
El Paso, TX 79912-7196

Rahim Noorani
4312 Hopi Drive
Carrolton, TX 75010-1133

Rahim Noorani
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Rahim Noorani, et al.
c/o Marty D. Price
2514 Boll St.
Dalals, TX 75204-2512

Saleem Makani
c/o Eric W. Wood
Brown Fox PLLC
5550 Granite Parkway, Suite 175
Plano, Texas 75024
Email: eric@brownfoxlaw.com  75024-3834

Saleem Makani
c/o Eric Wood (Brown Fox)
8111 Preston Rd. Ste 300
Dallas, TX 75225-6329

Suhail Bawa
c/o Eric W. Wood
Brown Fox PLLC
5550 Granite Parkway, Suite 175
Plano, Texas 75024
Eaail: eric@brownfoxlaw.com  75024-3834

Suhail Bawa
c/o Eric Wood (Brown Fox)
8111 Preston Rd. Ste 300
Dallas, TX 75225-6329

Suresh Kumar
c/o Harrel Davis
PO Box 1322
El Paso, TX 79947-1322

Texas Attorney General
Environmental Protection Division
P.O. Box 12548
Austin, TX 78711-2548

(p)TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
ATTN BANKRUPTCY PROGRAM
P O BOX 13087
MC 132
AUSTIN TX 78711-3087

Umesh Shrestha
8505 Revenue Way
North Richland Hills, TX 76182-7431

Umesh Shrestha
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Union Gateway, LLC
c/o Ryan Little
P. O. Drawer 1977
El Paso, Texas 79999-1977

1956091.DOCX[3]

United States Trustee - EP12
U.S. Trustee's Office
615 E. Houston, Suite 533
P.O. Box 1539
San Antonio, TX 78295-1539

Westar Investor Group LLC
c/o Eric Wood (Brown Fox)
8111 Preston Rd. Ste 300
Dallas, TX 75225-6329

Westar Investors Group, LLC
c/o Eric W. Wood
Brown Fox PLLC
5550 Granite Parkway, Suite 175
Plano, Texas 75024
Email: eric@brownfoxlaw.com  75024-3834

Jeff Carruth
Weycer Kaplan Pulaski & Zuber, P.C.
24 Greenway Plaza, #2050
Houston, TX 77046-2445

          The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
          by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Texas Commission on Environmental Qualit
Reg. 6 Office Compliance Enforcement
401 E Franklin Ave, Suite 560
El Paso, TX 79901-1212

End of Label Matrix
Mailable recipients    33
Bypassed recipients     0
Total                  33

## REAL ESTATE PURCHASE AND SALE AGREEMENT

This Real Estate Purchase and Sale Contract (the **"Contract"**), is dated for reference purposes only as of April 7 2021, and is entered into by and between **The Gateway Ventures, LLC a Texas limited liability company**, and/or their successors or assigns (the **"Seller"**) and **Sun Capital Hotels a New Mexico Limited Liability Company** and/or their successors or assigns (the **"Buyer"**), collectively referred to herein as (the **"Parties"**). The **"Effective Date"** of this Contract is the last date upon which both Buyer and Seller have executed this Contract and delivery to the Parties a fully executed Contract, *(which delivery for purposes of establishing the Effective Date may be via email).*

1. <u>Purchase and Sale</u>.  Seller hereby agrees to sell and convey and Buyer agrees to purchase the real property,  and all improvements thereon known as <u>Lot 09 of The Gateway Development Approximately 2.3 Acre parcel for Hotel Use.(Exhibit A)</u>, together with all and singular the rights and appurtenances pertaining to the property, and all right, title and interest of Seller in and to parking, adjacent streets, easements, and rights of way (collectively the **"Property"**).

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, the parties agree as follows:

2. Purchase Price.  The Purchase Price for the Property and Franchise License shall be redacted

(a)  Buyer agrees to deliver to and deposit with Fidelity Title of Texas Care of John Cominos located at 13737 Noel Rd Suite 100 Dallas Texas 75240 (the "Title Company") the amount of redacted as an earnest money deposit, **(the "Initial Deposit")** within five (5) business days after the Effective Date.  The Initial Deposit shall be held in a federally insured interest bearing account accruing to Buyer and applied to the Purchase Price at Closing.  In the event Buyer fails to timely make the Deposit, Seller may unilaterally terminate this Contract in writing to Title Company and Buyer.  This Contract shall act as escrow instructions to Title Company, and Seller and Buyer shall, if required by Title Company, execute any reasonable and necessary documents as may be required by Title Company to consummate or cancel the transaction.

(b)  If Buyer has terminated this Contract prior to the end of the Inspection Period as provided in Section 7 hereof, then Buyer shall be returned its full Deposit by Title Company. In the event Buyer elects to proceed with the purchase of the property after the expiration of the Inspection Period, and all contingencies have been removed, then Buyer agrees to deliver to and deposit with the Title Company an additional amount in the sum of redacted as additional earnest money deposit (the **"Additional Deposit"**) (When reference is made in the Contract to the term "Deposit", it shall if applicable mean the Initial Deposit and Additional Deposit) on or before the expiration of the Inspection Period.  Once deposited with the Title Company, the Additional Deposit shall be part of the Deposit and shall be applied to the

1

Purchase Price at Closing and thereafter the entire Deposit shall be non-refundable except as otherwise expressly provided for elsewhere in this Contract.

(c)     The balance of the Purchase Price shall be paid in cash and delivered at Closing.     Upon payment of the Purchase Price, Seller shall execute and deliver to Buyer its recordable and transferable Grant, Bargain and Sale Deed, conveying to Buyer or its nominee, good, record and marketable title to the Property in fee simple, free and clear of all liens, encumbrances, covenants, restrictions, easements, rights of way, claims, rights and other matters except for Permitted Exceptions (as defined in Section 6 below).

3.     <u>Seller's Representations and Warranties</u>.     Seller makes the following representations and warranties to Buyer:

(a)     Seller is a limited liability company validly existing and in good standing under the laws of the State of Texas, and the person executing this Contract on behalf of Seller is fully authorized to do so under the company agreements governing Seller and the operation of Seller's business and the joinder of no person or entity will be necessary to convey the Property fully and completely to Buyer at Closing.

(b)     Seller is not a foreign person selling property as described in the Foreign Investment in Real Property Tax Act ("<u>FIRPTA</u>") and agrees to deliver an affidavit at Closing reflecting that Seller is not such a foreign person and provide Seller's tax identification number ("<u>Tax Affidavit</u>").

(c)     Seller has no actual knowledge of litigation pending or threatened against Seller or the Property, and Seller has received no notices with regard to the Property or Seller's sale of the Property, whether governmental or otherwise, including without limitation, condemnation proceedings, that would affect the Property or impair Seller's ability to perform its obligations under the Contract, and to complete the Closing thereunder.

(d)     To Seller's knowledge, there are no known material issues with regard to the Property which would affect, alter, deter and hinder a Buyer from buying this Property.

(e) INTENTIONALLY DELETED

(f)     The Property shall be conveyed to Buyer in **"AS-IS"** and **"WHERE-IS"** condition except as may be reflected in the Contract AND EXCEPT AS PROVIDED ABOVE SELLER EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES OR GUARANTIES, OF ANY KIND, ORAL OR WRITTEN, EXPRESS OR IMPLIED, CONCERNING THE VALUE AND PROFITABILITY OF THE PROPERTY.  Buyer acknowledges and agrees that it is relying upon its own due diligence and investigations and is not necessarily relying upon any representation, warranty or statement by Seller (except as expressly set forth in this Section 3) or its brokers or agents with regard to the condition of the Property; however, Seller and its brokers and agents in its dual agency capacity will disclose any material facts expressly, impliedly and constructively known to them that would affect Buyer's decision to buy and or proceed with the purchase of this Property.

EXHIBIT TGV003 - Page 2

(g)      Seller shall pay in full all costs for all labor and materials supplied to the Property in connection with its obligations under the Sellers Obligations, so that no mechanic's or materialman's liens may be filed against the Property arising out of work performed or labor and materials supplied by Seller or at the request of Seller. This provision and the obligations of Seller hereunder shall expressly survive Closing. Seller will indemnify, defend and hold harmless Buyer for any and all claims, demands, filings, attorney fees and costs related to any mechanic, labor and supply liens arising during and out of its ownership and development of the property as a HOTEL

(h)      Except as disclosed herein:  there are no attachments, executions, assignments for the benefit of creditors, or voluntary or involuntary proceedings in bankruptcy or under any other debtor relief laws contemplated or pending or threatened against Seller or the Property.

(i)      Seller currently is a debtor and debtor in possession in a Chapter 11 bankruptcy proceeding, In re TGV Ventures, LLC, pending in the United States Bankruptcy Court for the Western District of Texas, El Paso Division.  Seller's obligations under this Agreement and the conveyance of the Property are subject to final approval of same and of this Agreement by the bankruptcy court.

(j)      To Seller's knowledge, the Property is not contaminated by any hazardous substance or material and is in compliance with all applicable environmental laws.

(k)      At the Closing, Seller shall have good, record and marketable, indefeasible, fee simple title to the Property, free and clear of all defects, security interests, liens, encumbrances, easements, covenants, restrictions, reservations, conditions, encroachments, assessments for public improvements (general or special) or any other matters whatsoever,  except for Permitted Exceptions in a Title Commitment,  and there are no restrictive covenants or similar agreements, restrictions or instruments applicable to the Property  that would prohibit or limit Buyer's  intended  use of the Property as a HOTEL

(l)      INTENTIONALLY DELETED

All representations and warranties made by Seller in this Contract are true and correct on the date made and shall be true and correct as of Closing and shall survive for a period of three (3) months following the Closing.  At the Closing, Seller shall deliver to Buyer a certificate executed on behalf of each Seller reasonably acceptable to Buyer certifying that such representations and warranties are true and correct on and as of the Closing Date and that such representations and warranties shall survive the Closing for a period of three (3) months.

If prior to the Close of Escrow, new events have occurred which were beyond the control of Seller and which render any previously true representation or warranty to be untrue, Seller shall (to the extent it has actual knowledge of such matters) immediately thereafter

3

disclose those matters by written notice to Buyer.  Buyer shall have the right to either elect to proceed with the purchase or terminate the Contract.  If Buyer elects to terminate, all deposits shall be returned to Buyer.

4. <u>Seller's Documents</u>.  Within five (5) business days after the Effective Date, Seller shall deliver to Buyer: a copy of the current real estate taxes and assessments, any existing survey, environmental report, engineering reports, soil reports; property condition surveys, appraisals, Covenants, Conditions and Restrictions ("CC&Rs"), Reciprocal Easement Agreements ("REAs"), development agreements, if any, owner's participation agreements, land use restrictions, and amendments thereto, if any, copies of any easements or agreements on ingress or egress that affect the Property,  any information regarding Seller's financial condition, building plans, utility plans, grading plans, flood plain map, land use applications, zone changes and approvals, any building and development approvals obtained to date and any other all reports, documents and due diligence information pertaining to the Property which would materially affect the Buyer's decision to buy and or proceed with the purchase of the property, but only to the extent in Seller's possession (the **"<u>Seller's Documents</u>"**).  Seller will cooperate with Buyer in providing any other related information or documentation as requested and is reasonably necessary to complete Buyer's review of the Property. Furthermore, Seller shall provide to Buyer updated copies or versions of any of the foregoing that are updated following the initial delivery to Buyer and prior to the Closing. If Seller has and or produces documents after the expiration of the Inspection Period that materially alter and differ from what was produced during the Due Diligence and Seller fails to cure the same before the Closing Date, then Buyer shall have the right to cancel the Contract without any recourse and liability and shall be returned its full Deposit. The delivery of a written notice from Seller to Buyer accompanied by a specific identification of such documents shall be deemed conclusive evidence of Seller's delivery of such documents.  Buyer shall return all Seller's Documents to Seller if Buyer does not purchase the Property.

5. <u>Sellers Obligations</u>.  Seller shall satisfy Seller's obligations set forth below within <u>ninety (90) days</u> following Effective Date with the exception of item (e) below, water/sewer utilities to the Property.   The Buyer's Inspection Period shall be automatically extended day-for-day for each day of delay beyond one ninety (90) days following Effective date. This process shall continue until Buyer accepts delivery of Seller's Obligations.  If the Seller's delivery obligations are not satisfied within 360 days following the original delivery date, then Buyer shall have the right, in its sole and absolute discretion, to terminate the Agreement.  If terminated, Buyer shall have no liability and shall be returned its full Deposit

a. Platted parcel and Survey
b. Rough graded Property, pursuant to the agreed upon civil plans
c. Access drives and curb cuts, pursuant to the agreed upon civil plans
d.  Legal access to the Property on a city approved Site Plan
e. Legal access to the utilities within five (5) feet of the boundary of Property.  Buyer and Seller agree that <mark>redacted</mark>  shall be retained in escrow at closing to pay for Seller to deliver Water and Sanitary Sewer to the site by its contractor EMJ Corporation.  Should the Seller Fail to have this work completed within 120 days post closing, Buyer may as remedy,

use these proceeds to have the work completed.

6.     <u>Title Insurance</u>.  Seller shall obtain from the Title Company an ALTA Title Commitment together with copies of all exception documents described therein (collectively, the **"Title Commitment"**) and deliver a copy of the same to Buyer as soon as possible and in no event later than five (5) business days following the Effective Date of this Contract. Buyer shall deliver to Seller its written objections to any matters shown or indicated in the Title Commitment or in any survey within five (5) business days of Buyer's receipt of the Title Commitment. Items not objected to in a timely manner herein shall be deemed "Permitted Exceptions" (defined hereafter). Within three (3) days of Seller's receipt of Buyer's objections to any matters in the Title Commitment, Seller shall provide written notice to Buyer confirming that Seller has taken all actions as are necessary to (A) render the title to the Property marketable  and in accordance  with the foregoing  requirements and (B) otherwise cure Buyer's written objections to the Title Commitment,   except  any "Monetary  Liens"  (as hereinafter defined) which Seller shall pay at Closing and provide Buyer satisfactory evidence of payment and release.  In the event Seller is unable or unwilling or fails to cure or remove such objections to Buyer's reasonable satisfaction (Seller's failure to respond to Buyer's title objections within the required time period being deemed as Seller's failure to cure or Seller's refusal to remove such objections), Buyer may, at its option, elect to terminate this Contract and receive a full refund of the Deposit with Buyer being released of all liabilities and obligations under this Contract, or waive its objections in writing and proceed to Closing.  Effective as of the date and time of recording of the Deed, there shall be issued to Buyer by the Title Company, a standard ALTA Owner's Title Insurance Policy (the **"Title Policy"**) in the amount of the Purchase Price vested in (or as designated by) Buyer.  The Title Policy shall insure good and marketable fee simple title to the Property. The Title Policy shall contain as exceptions to title only those matters approved or waived by Buyer (the **"Permitted Exceptions"**) and having such affirmative endorsements as Buyer may request.  The costs and expenses of the standard Title Commitment and premium for ALTA Title Policy shall be paid by Seller.  Buyer shall pay for any additional title costs, including, but not limited to, the cost of any endorsements and/or new survey.

Notwithstanding the above, if the basis of Buyer's objection to Seller's title are any mortgages, security interests, liens, tax or assessment liens or obligations (other than those which are Permitted Exceptions or are created or incurred as a consequence  of the acts or omissions of Buyer) (which matters are collectively  hereinafter referred to as **"Monetary Liens"),** the provisions of Section 6 shall not apply and Seller shall obtain and deliver at the Closing all instruments as may be necessary to secure full discharge of all Monetary Liens and to release them of record, and shall cause the Title Company to issue the policy referred to in the Title Commitment without exception for any such Monetary Liens.  Seller shall also pay all of its costs and expenses incurred in connection with obtaining the discharge and release of such Monetary Liens and the required title insurance policies and endorsements and the recording of instruments concerning the same.  Buyer shall not be responsible for any fees, costs and expenses incurred by Seller herein.  If Seller

so desires, all or a part of the net proceeds payable to Seller at the Closing may be applied to payment of such Monetary Liens at the Closing. In the event Seller fails to properly address the Monetary Liens to Buyer's satisfaction herein, Buyer reserves all of its rights and remedies including, but not limited to, the right to terminate the Contract with the return of its Deposit.

Regardless of anything to the contrary contained in this Contract, if following the objection procedure set forth above the Title Company issues any amendment to the Title Commitment disclosing any additional title matters or changes in the legal description or additional requirements of Buyer, Buyer shall be entitled to approve or object to any such matter by delivering written notice of such approval or objection to Seller on or before the date that is three (3) business days after the Title Company has delivered to Buyer the amendment to the Title Commitment, said notice to specify in reasonable detail any matter to which Buyer objects, and the parties shall follow the procedures set forth above with respect to Buyer title objections in connection with any such amendment to the Title Commitment, and, if necessary, the Closing Date shall be extended to the extent necessary to accommodate such procedures.

7. <u>Due Diligence</u>. Buyer shall have **Sixty (60) days** from the delivery of Sellers Obligations to perform and complete all inspections, investigations and due diligence and to determine whether to purchase the Property (the **"Inspection Period"**). In the event Buyer does not terminate this Contract in writing prior to expiration of the Inspection Period, and except as may be provided herein, Buyer shall be deemed to have waived all inspections and contingencies and the Deposit shall be deemed non-refundable, subject to Seller's compliance with its obligations under this Contract. Buyer and Seller may mutually agree to extend Buyer's Inspection Period for 30 days per extension.

(a). <u>Buyer's Performance</u>. Buyer shall take affirmative steps in performing due diligence. (i) Buyer shall provide proof of franchise application and fees paid to the franchisor within thirty (30) days from delivery of Sellers Obligations, and (ii) Buyer shall provide Property site plan within Twenty one (21)days from delivery of Sellers Obligations.

8. <u>Additional Conditions Precedent</u>. Buyer's obligation to purchase the Property and pay the Purchase Price is expressly conditioned upon the following "<u>Additional Conditions</u>" being satisfied by Buyer in its sole and absolute discretion as of the Closing Date or otherwise waived by Buyer:

(a) Environmental assessment(s), including soil tests. Any Phase II environmental assessment deemed necessary or desirable by Buyer may be performed by Buyer. Seller shall provide available environmental reports.

(b) INTENTIONALLY DELETED

(c) INTENTIONALLLY DELETED

(d) Buyer shall have approved (i) all matters shown on any Survey during the

6

Inspection Period; (ii) the condition of title to the Property with its permitted exceptions within the time limits set forth above and (iii) an ALTA Owner's title insurance policy to be delivered to Buyer.

(f)     Title free and clear of all liens (except real property tax liens), mechanic liens, subject to the Permitted Exceptions, and that all labor and suppliers have been paid in full for the design and construction of the Property.

(g)     INTENTIONALLY DELETED.

(h)     INTENTIONALLY DELETED

(i)     INTENTIONALLY DELETED

If the Additional Conditions set forth herein are not satisfied, Buyer may terminate its obligations under this Contract and it shall be released of all further liability hereunder.  If this Contract terminates as a result of the non-satisfaction of the conditions herein, the Deposit shall be returned to Buyer.

9.     Closing. Subject to the terms and conditions herein, this Contract shall close at such time that is mutually agreeable by the parties, provided that closing shall occur on the later of: (i) **fifteen (15) days** after the expiration of the "**Inspection Period" "Closing Date"** or "**Closing**").  The Closing shall occur in escrow at the Title Company.  Seller shall pay any deed and transfer tax, if any, or other similar tax due on the recording of Seller's deed and any recording fees due on the recording of Seller's deed. Seller shall pay recordation charges incurred in recording any documents necessary to remove any title objections or  encumbrances.  Seller and Buyer shall equally share all reasonable and customary escrow fees and closing costs each party shall be responsible for and shall pay for its own legal fees.

At Closing:

(a)     Seller shall deliver to Buyer the following:

(i)     A Special Warranty Deed (the "**Deed**") in form acceptable to Buyer and Seller duly executed and acknowledged by Seller, conveying fee simple title to Buyer subject to matters of record, unpaid taxes and assessments not yet due and payable, and matters which would be disclosed by an accurate ALTA survey.  Seller shall not be required to attach the Permitted Exceptions to the Deed nor warrant that the exceptions disclosed in the Title Commitment are the only matters of record.

(ii)     Buyer and Seller executed Franchise License transfer or assignment to Buyer.

(iii)     INTENTIOINALLY DELETED

7

(iv)     INTENTIOINALLY DELETED

(v)      The FIRPTA Tax Affidavit.

(vi)     INTENTIONALLY DELETED

(vii)    Bill of Sale and Assignment conveying, without warranty or recourse, Seller's rights in any personal property, intangibles, permits, plans and specifications owned by Seller, free and clear of third party liens and interests.

(viii)   INTENTIONALLY DELETED

(ix)     A standard and customary owner/seller affidavit and indemnity (with gap indemnity) in the form reasonably required by the Title Company and which will cause the Title Company to remove the so-called "standard exceptions" from the final title policy.

(x)      such instruments or documents as are necessary, or reasonably required by the Title Company, to evidence the status and capacity of Seller and the authority of the person or persons who are executing the various documents on behalf of Seller in connection with the purchase and sale transaction contemplated hereby.

(b)      Buyer shall deliver to Seller the following:

(i)      The consideration required pursuant to Section 5 above.

10.     <u>Entry on Property</u>.  Subject to the rights of Tenant, Buyer, its agents, employees, and representatives, are hereby granted the right to immediately enter on all or any portion of the Property for the purpose of making any structural, mechanical, engineering, geological, ecological, environmental, soil, surveying, appraisal, or other inspections, tests, or work as Buyer, in its discretion, may deem necessary or appropriate, provided that any Phase II environmental test shall require Seller's prior written approval. Buyer agrees to indemnify and hold Seller and the Tenant harmless for all liabilities, damages and claims arising out of injury to persons or property as a result of Buyer's inspection and such indemnification shall survive closing.  Buyer shall not conduct or allow any physically intrusive testing, drilling, soil borings, etc. without Seller's prior written consent.  In the event Buyer requires any invasive testing, such testing shall not occur until a scope of work is provided to Seller and Seller gives approval to proceed in writing.  It shall be at seller's sole discretion whether such invasive testing will occur.

11.     <u>Prorations and Taxes</u>.  Rental income, real property taxes, installments of current year special assessments, and other operating income or expenses shall be prorated to the Closing, based upon actual days involved on the basis of a 365-day year. Seller shall be responsible for all taxes, installments of special assessments, and any other charges and shall receive all income for any period prior to the date of Closing. Provided,

EXHIBIT TGV003 - Page 8

any taxes or assessments to be paid by Tenant after the rent commencement date shall not be prorated. The parties agree to make a good faith and equitable allocation of all income and expenses and other charges addressed in the Contract and any other prorations at least three (3) days prior to Closing, and such allocation shall be reflected on the closing statement to be agreed upon and signed by the parties at Closing.

12.    Notices.  All notices, deliveries or other communications required or permitted to be given hereunder shall be in writing and shall be (a) hand delivered, (b) mailed by registered or certified mail, postage prepaid, (c) sent by overnight delivery service, or (d) sent via email to the email addresses set forth below, as long as such electronic transmission is confirmed as received by the intended recipient, and is followed the next business day by another permissible  means of notice hereunder or confirmed by e-mail to the address set forth below.  Notice shall be deemed given when deposited by registered or certified mail or when received via hand delivery or overnight delivery service, or upon confirmation of successful transmittal by facsimile.

| To Buyer: | Deepesh Kholwadwala<br>Sun Capital Hotels<br>8901 Adams St. NE STE A<br>Albuquerque, NM 87113<br>deepesh@suncapitalhotels.com<br>505-508-0137 Office Phone |
|---|---|
| To Seller: | The Gateway Ventures, LLC.<br>Care of PDG Prestige, Inc<br>780 N Resler Suite B<br>El Paso, Texas 79912<br>Phone: 915-243-0720<br>Fax 915-243-0719<br>Email: mdixson@pdgnm.com<br>Email property@pdgnm.com |
| With a Copy to: | WKPZ<br>Care or Jeff Carruth<br>24 Greenway Plz Ste 2050<br>Houston, TX 77046<br>(713) 961-9045<br>jcarruth@wkpz.com |

13.    Assignment.  Buyer may assign this Contract to a third party entity of which Buyer or its principals are principal owners without the prior written consent of Seller, but shall not be permitted to assign the Contract in any other circumstances without Seller's

9

EXHIBIT TGV003 - Page 9

prior written consent.  Buyer shall cause a copy of such assignment and assumption to be delivered to Seller prior to the Closing Date.  No assignment shall relieve the assigning party of liability under this Contract.

14.　　<u>INTENTIONALLY DELETED</u>

15.　　<u>Risk of Loss</u>.  All risk of loss with regard to the improvements on the Property shall be borne by Seller until final completion of Seller's work on the Property as described in the Contract and Closing. Seller shall obtain adequate insurance to reasonably protect Seller in this regard, and shall provide proof of such insurance to Buyer upon request. Seller agrees to give Buyer prompt notice of any fire or other casualty affecting the Property or of any actual or threatened taking or condemnation of all or any portion of the Property until such time. If prior to final completion and Closing there shall occur any such damage, or actual or threatened taking or condemnation, then in any such event Buyer may at its option terminate this Contract by notice to Seller within twenty (20) days after Buyer has received the notice referred to above or at the Closing, whichever is earlier, and the Deposit shall be returned to Buyer. If Buyer does not so elect to terminate this Contract, then the Closing shall take place as provided herein without abatement of the Purchase Price, and there shall be assigned to Buyer at the Closing all of Seller's interest in and to all insurance proceeds or condemnation award, or if such damage takes place following Closing, then Seller shall assign to Buyer following Closing all of Seller's interest in and to all insurance proceeds. This provision and the obligations of Seller hereunder shall expressly survive Closing.

16.　　<u>Default and Remedies</u>.  If Seller defaults hereunder, Buyer may: (a) terminate this Contract by written notice delivered to Seller at or prior to the Closing, whereupon the Deposit shall be immediately returned to Buyer and Seller shall reimburse Buyer for its reasonable out of pocket expenses incurred in connection with negotiating this Contract and conducting its investigations of the Property (provided that such expense reimbursement shall in no event exceed redacted), and the parties shall thereafter have no obligations under this Agreement or additional liability to one another; or (b) pursue an action for specific performance against Seller.  Notwithstanding the foregoing, if specific performance is not available to Buyer as the result of the wrongful sale or transfer of the Property by Seller to another person or entity, or if Seller's default is due to Seller's willful breach of this Contract and its obligations hereunder, Buyer shall have the right to seek actual damages from Seller. The foregoing remedies are Buyer's sole and exclusive remedies. If Buyer defaults hereunder, Seller, as Seller's sole and exclusive remedy for such default, shall be entitled to terminate this Contract by notice to Buyer and retain Buyer's Deposit, it being agreed between Buyer and Seller that such sum shall be liquidated damages for a default of Buyer hereunder because of the difficulty, inconvenience, and the uncertainty of ascertaining actual damages for such default.  If either Buyer or Seller obtains a judgment against the other party in connection with the enforcement of this Contract, reasonable attorney's fees incurred by the prevailing party, as fixed by the court, shall be included in such judgment and paid by the non-prevailing party.

EXHIBIT TGV003 - Page 10

17.    <u>Exchange</u>.    Each party hereby consents to the other party including this transaction as part of a tax deferred exchange under Section 1031 of the Internal Revenue Code and agrees to reasonably cooperate with the other party, at no cost to the cooperating party, including the execution of any standard notices and consent forms required or permitted by law.  The parties acknowledge and agree that assigning its rights to a third party intermediary for purposes of effecting the exchange shall not release such party of its obligations hereunder.

18.    <u>Miscellaneous</u>.    This Contract shall be construed and governed in accordance with the laws of the State of Texas Any dispute arising out of this Contract shall have its venue and jurisdiction in the state court of the county in which the Property is located. All the parties to this Contract have participated fully in the negotiation and preparation hereof; and accordingly, this Contract shall not be more strictly construed against any one of the parties hereto.  In the event any term or provision of this Contract is determined by an appropriate judicial authority to be illegal or otherwise invalid, such provision shall be construed as such authority determines, and the remainder of this Contract shall be construed to be in full force and effect.  In construing this Contract, the singular shall be held to include the plural, the plural shall be held to include the singular, the use of any gender shall be held to include every other and all genders, and captions and paragraph headings shall be disregarded. All exhibits attached hereto are incorporated in, and made a part of, this Contract.  This Contract constitutes the entire understanding and agreement between the parties, and there are no understandings, agreements, representations or warranties except as specifically set forth herein.  This Contract may not be changed, altered or modified except by an instrument in writing signed by the party against whom enforcement such change would be sought.  This Contract shall be binding upon the parties hereto and their respective successors and assigns.  Time is of the essence of this Contract.  All obligations hereunder which by their nature or by any provision of this Contract involve performance after the Closing Date, shall survive the Closing and delivery of the Deed.  This Contract may be executed in any number of counterparts, each of which such counterparts shall be an original and when taken together shall act as one complete whole instrument and document for all purposes herein.  Faxed, emailed or photocopied signatures on this Contract shall be deemed originals for all purposes.  If the date for performance of any obligation hereunder or the last day of any time period provided for herein shall fall on a Saturday, Sunday or legal holiday, then said date for performance or time period shall expire on the first day thereafter which is not a Saturday, Sunday or legal holiday.  Except as may otherwise be set forth herein, any performance provided for herein shall be timely made and completed if made and completed no later than 5:00 P.M. (PST) on the day for performance.

19.    <u>Buyer's Notice</u>. Buyer is not (i) acting, directly or indirectly for, or on behalf of, any person, group, entity or nation named by any Executive Order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person," or other banned or blocked person, entity, or nation pursuant to any Law that is enforced or administered by the Office of Foreign Assets Control, and is not engaging in

11

EXHIBIT TGV003 - Page 11

this Transaction, directly or indirectly, on behalf of, or instigating or facilitating this Transaction, directly or indirectly, on behalf of, any such person, group, entity or nation, nor (ii) engaged in any dealings or transactions, directly or indirectly, in contravention of any United States, international or other applicable money laundering regulations or conventions, including, without limitation, the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001, Trading with the Enemy Act (50 U.S.C. § 1 et seq., as amended), or any foreign asset control regulations of the United States Treasury Department (31 CFR, Subtitle B, Chapter V, as amended) or any enabling legislation or executive order relating thereto.

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS CONTRACT ON THE DATE SHOWN BELOW.  THIS CONTRACT MAY BE SIGNED IN MULTIPLE COUNTERPART ORIGINALS.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

EXHIBIT TGV003 - Page 12

**SELLER:**

**THE GATEWAY VENTURES, LLC.**
**a Texas limited liability company**
**care of PDG Prestige, Inc.**


By: *Michael Dixson*

Name: Michael Dixson

Title:  President

Date:  April 8th , 2021


**BUYER:**

**Sun Capital Hotels, a New Mexico LLC**

By

Name:  Deepesh Kholwadwala

Title:     President/CEO

Date:  04/08/2021 , 2021


13

EXHIBIT TGV003 - Page 13

# EXHIBIT A

# LEGAL DESCRIPTION



BROCK & BUSTILLOS INC.
CIVIL ENGINEERS    URBAN DESIGNERS    LAND SURVEYORS

ROMAN BUSTILLOS, P.E.
President
RANDY P. BROCK, P.E.
Executive Vice President
SERGIO J. ADAME, P.E.
Vice President - Engineering
AARON ALVARADO, R.P.L.S.
Vice President - Surveying
TBPE. Reg. No. F-737
TBPLS Reg. No. 101314-00

### METES AND BOUNDS DESCRIPTION
#### (Future "Lot 9")

*A 2.3072 acres parcel of land situate within the corporate limits of the City of El Paso, El Paso County, Texas as a portion of Tract 4H, Block 2, Ascarate Grant, El Paso County, Texas also being out of that 19.96 acre parent tract as described in Document No. 20190031428 and being more particularly described by metes and bounds as follows:*

**COMMENCING** at a 5/8-inch rebar found on the northerly right-of-way line of U.S. Interstate Highway No. 10 (300 feet wide) and the westerly boundary line of Young American Subdivision as filed in Volume 44, Page 35, El Paso County Plat Records, identical to the southeasterly corner of said Tract 4H, **WHENCE**, a chiseled "X" in concrete found for the east-southwesterly corner of said Tract 4H, identical to the southeasterly corner of Lot 1, Block 1, Howdy's Subdivision as filed in Volume 75, Page 34, El Paso County Plat Records, bears North 58°34'05" West, a distance of 740.25 feet; **THENCE,** leaving the northerly right-of-way line of said U.S. Interstate Highway No. 10 and following the westerly boundary line of said Young American Subdivision, North 32°50'26" East, a distance of 495.54 feet to a 1/2 inch rebar with survey cap No. "TX 6223" set for the southeasterly corner and the **POINT OF BEGINNING** of the parcel herein described;

**THENCE,** Leaving the westerly boundary line of said Young American Subdivision, North 58°34'05" West, a distance of 307.00 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the southwesterly corner of the parcel herein described;

**THENCE,** North 31°25'55" East, a distance of 364.56 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set on the southerly boundary line of Viscount Add On, LLC parcel as described in Doc. No. 20190091885, El Paso County Deed Records  for the northwesterly corner of the parcel herein described;

**THENCE,** following the southerly boundary line of said Viscount Add On, LLC parcel, South 53°41'38" East, a distance of 284.54 feet to a 1/2-inch rebar with survey cap No. "TX 6223" found on the westerly boundary line of said Young American Subdivision for the northeasterly corner of the parcel herein described;

**THENCE,** leaving the southerly boundary line of said Viscount Add On, LLC parcel and following the westerly boundary line of said Young American Subdivision, South 32°45'26" West, a distance of  280.01 feet to a 5/8 rebar found for an angle point of the parcel herein described;

417 Executive Center Blvd.  •  El Paso, Texas 79902  •  P - (915) 542-4900  •  F - (915) 542-2867  •  www.brockbustillos.com

EXHIBIT TGV003 - Page 14

**THENCE,** continuing along the westerly boundary line of said Young American Subdivision, South 59°44'42" East, a distance of 31.47 feet to a 5/8 rebar found for an angle point of the parcel herein described;

**THENCE,** continuing along the westerly boundary line of said Young American Subdivision, South 32°50'26" West, a distance of 61.12 feet to the **POINT OF BEGINNING.**

Said parcel containing 2.3072 acres (100,500.2 square feet), more or less, and being subject to all easements, restrictions or covenants of record.

_____

*Aaron Alvarado, TX R.P.L.S. No.6223*
*Date: December 10, 2020*
*07173-001A7-LOT 9.doc*

15

EXHIBIT TGV003 - Page 15



16

EXHIBIT TGV003 - Page 16

**EXHIBIT TGV004**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO 21-30071 |
| THE GATEWAY VENTURES, LLC, | § | |
| | § | |
| | § | |
| Debtor. | § | |

**ORDER GRANTING MOTION FOR ORDER AUTHORIZING (I) SALE OF LOT 9 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) PAYMENT OF CERTAIN EXPENSES AT CLOSING, AND (III) RELATED RELIEF (RE: DOCKET NO. 49)**

On this date came on for consideration the *Motion for Order Authorizing (I) Sale of Lot 9 Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Payment of Certain Expenses at Closing, and (III) Related Relief* (Docket No. 49) (the "**363 Motion**") filed herein on May 4, 2021, by The Gateway Ventures, LLC, debtor and debtor-in-possession ("**TGV**" or the "**Debtor**").  Having reviewed the 363 Motion at the hearing with regard to: (i) the Assets to be purchased by **Sun Capital LLC**, a New Mexico limited liability company ("**Sun Capital**" or the "**Purchaser**") and the Assets to be purchased by Sun Capital under the Sale Motion, the "**Assets**") as delineated within that certain Purchase and Sale Agreement between the Debtor, as sellers, and Sun Capital, as Buyer, dated as of May 4, 2021April 9, 2021 (the "**Sun Capital PSA**," which was filed under seal and which has been reviewed by the Court, the Sun Capital PSA collectively with any other documents incident to the Sun Capital PSA, the "**Sun Capital**

ORDER GRANTING MOTION FOR ORDER AUTHORIZING (I) SALE OF LOT 9  FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) PAYMENT OF CERTAIN EXPENSES AT CLOSING, AND (III) RELATED RELIEF — Page 1

1956091.DOCX[5]

**EXHIBIT TGV004**

**Transaction Documents**"); and after due deliberation and consideration of the objections filed against the 363 Motion which relate to Sun Capital's purchase of the Lot 9 as set forth in the Purchase and Sale Agreement attached to the 363 Motion and all rights and remedies provided therein (collectively, the "**Subject Assets**"), the Bankruptcy Court has determined that no further notice is necessary, and that cause exists to grant the sale of the Assets by TGV to Sun Capital (collectively, the "**Sun Capital Sale**").

## THE COURT HEREBY FINDS AND DETERMINES THAT:

### Jurisdiction, Final Order, and Statutory Predicates

A.      This Court has jurisdiction to hear and determine the 363 Motion pursuant to 28 U.S.C. §§ 157(b)(I) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (0).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The predicates for the relief requested in the 363 Motion are Sections 105(a) and 363 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "**Code**") and Rules 2002(a)(2), 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Rules**" or the "**Bankruptcy Rules**").

C.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the 363 Motion are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order and waives any stay and expressly directs entry of judgment as set forth herein.

### Notice of the Sale, Auction, and Cure Relating to Designated Leases, and Resolution of Objections

E.      Actual written notice of the 363 Motion and the Sale Hearing, and a reasonable opportunity to object or be heard, has been afforded to all known interested entities and parties in accordance with Code §§ 363 and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008 (the "**Notice Parties**").  The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the 363 Motion and the Sale Hearing.

ORDER GRANTING MOTION FOR ORDER AUTHORIZING (I) SALE OF LOT 9  FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) PAYMENT OF CERTAIN EXPENSES AT CLOSING, AND (III) RELATED RELIEF — Page 2

1956091.DOCX[5]

**EXHIBIT TGV004**

F.     The disclosures made by the Debtor concerning the 363 Motion, the Sun Capital Transaction Documents (described below), and the Sale Hearing were good, complete, and adequate.

G.     A reasonable opportunity to object and be heard with respect to the Sale Hearing and the 363 Motion and the relief requested therein, has been afforded to all interested persons and entities.

**Good Faith of Purchaser**

H.     The transaction and accompanying documents, including the Sun Capital Transaction Documents, were negotiated, proposed, and entered into by the Debtor and Sun Capital without collusion, in good faith, and from arms'-length bargaining positions.

I.     Neither the Debtor nor Sun Capital have engaged in any conduct that would cause or permit the Sun Capital Transaction Documents to be avoided under Code § 363(n).  Sun Capital has not acted in a collusive manner with any person, and the offer to purchase by Sun Capital was not controlled by any agreement among any set of bidders.

J.     Sun Capital is purchasing Lot 9 in good faith and is a good faith buyer within the meaning of Code § 363(m).  Sun Capital has proceeded in good faith in all respects in connection with the Sun Capital Sale.  Sun Capital is therefore entitled to all of the protections afforded under Code § 363(m).

**No Fraudulent Transfer or Merger**

K.     The consideration provided by Sun Capital: (i) is fair and reasonable, (ii) is the highest or best offer for the Subject Assets, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and Code § 548) and fair consideration under the Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase Lot 9 for greater overall value to the estate of the Debtor than Sun Capital.  Approval of the 363 Motion and the consummation of the transactions contemplated thereby are in the best interests of the Debtor, the estate(s), creditors, and other parties in interest.

L.     Sun Capital is not a mere continuation of the Debtor or their estates and there is no continuity of enterprise between Sun Capital and the Debtor.  Sun Capital is not holding itself out to the public as a continuation of the Debtor.  Sun Capital is not a successor to the Debtor or their estates and the sale of Lot 9 does not amount to a consolidation, merger, or de facto merger of Sun Capital and the Debtor.

**EXHIBIT TGV004**

**Validity of Transfer**

M.    The Debtor has, to the extent necessary or applicable, (i) full corporate power and authority to execute and deliver the Sun Capital Transaction Documents and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Sun Capital Transaction Documents, and (iii) taken all corporate or limited liability company action necessary to authorize and approve the Sun Capital Transaction Documents and the consummation of the transactions contemplated thereby. The Sun Capital Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Sun Capital Transaction Documents or this Sale Order, are required for the Debtor to consummate the sale of the Subject Assets, the Sun Capital Transaction Documents, or the transactions contemplated thereby.

N.    The Sun Capital Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors as such terms are provided for under the Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor Sun Capital is entering into the transactions contemplated by the Sun Capital Transaction Documents fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

O.    The Debtor is the sole and lawful owner of the Subject Assets. Subject to Code § 363(1), the Sun Capital Sale will be, as of the closing of the contemplated transaction between the Debtor and Sun Capital (the "**Sun Capital Closing**"), a legal, valid, and effective transfer of the Subject Assets, which transfer vests or will vest Sun Capital with all right, title, and interest of the Debtor to the Subject Assets free and clear of (i) all liens and encumbrances relating to, accruing, or arising any time prior to the Closing (collectively, the "**Subject Liens**") and (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in Code § 101(5)), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests and the terms and provisions thereof, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to the Subject Claims (as defined below) and Subject Liens: (a) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtor' or Sun Capital's interests in the Subject Assets, or any similar rights, or (b) in respect of taxes, restrictions, preferential purchase rights, rights of first refusal, consent rights or requirements, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (ii), the "**Subject**

**EXHIBIT TGV004**

**Claims**"), relating to, accruing or arising any time prior to the Sun Capital Closing, in each case (i.e., under both (i) and (ii) of the preceding), with the exception of Permitted Encumbrances (the "**Permitted Encumbrances**") that are expressly assumed by Sun Capital under the Sun Capital Transaction Documents.

## Section 363 is Satisfied

P.　The conditions of Code § 363(f) have been satisfied in full; therefore, the Debtor may sell Lot 9 free and clear of any interest in the property other than the Permitted Encumbrances as may be set forth in the Sun Capital Transaction Documents.

Q.　Sun Capital would not have entered into the Sun Capital Transaction Documents and would not consummate the transactions contemplated thereby if the sale of Lot 9 to Sun Capital by Sun Capital were not free and clear of all Liens and Claims, other than Permitted Encumbrances as may be set forth in the Sun Capital Transaction Documents, or if Sun Capital would, or in the future could, be liable for any of such Subject Liens and Subject Claims (other than Permitted Encumbrances and the Sun Capital Assumed Liabilities).

R.　The Debtor may sell the Subject Assets free and clear of all Subject Liens and Subject Claims against the Debtor and/or the estate(s) (except the Permitted Encumbrances as may be set forth in the Sun Capital Transaction Documents) because, in each case, one or more of the standards set forth in Code § 363(f)(l)-(5) has been satisfied, to the extent applicable to the Subject Assets. Those holders of Subject Liens or Subject Claims against the Debtor, the estate(s), or any of the Subject Assets which did not object or who withdrew their objections to the sale of the Subject Assets or the 363 Motion are deemed to have consented to the sale of the Subject Assets pursuant to Code § 363(f)(2) of the Bankruptcy Code. All other holders of Subject Liens or Subject Claims (except to the extent that such Subject Liens or Subject Claims or Permitted Encumbrances under the Sun Capital Transaction Documents) are adequately protected by having their Subject Liens or Subject Claims, if any, in each instance against the Debtor, the estate(s), or any of the Subject Assets, attach to the cash proceeds of the Sun Capital Sale ultimately attributable to Lot 9 in which such creditor alleges an Sun Capital Lien or Sun Capital Claim, in the same order of priority, and with the same validity, force, and effect, that such Subject Liens or Subject Claims had prior to the sale of the Subject Assets, subject to any claims and defenses the Debtor and their estates may possess with respect thereto.

S.　Furthermore, any Subject Liens perfected against Lot 9 shall remain in place with respect to the remainder of the Development.

## Compelling Circumstances for an Immediate Sale.

T.　Good and sufficient reasons for approval of the Sun Capital Transaction Documents and the Sun Capital Sale have been articulated. The relief requested

**EXHIBIT TGV004**

in the 363 Motion is in the best interests of the Debtor, the estate(s), creditors, and other parties in interest.  The Debtor has demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Sun Capital Transaction Documents and (ii) compelling circumstances for the Sun Capital Sale outside the ordinary course of business, pursuant to Code § 363(b) before, and outside of, a Chapter 11 plan, in that, among other things, the immediate consummation of the sale of the Subject Assets to Sun Capital is necessary and appropriate to maximize the value of the estate(s) and the sale of the Subject Assets will provide the means for the Debtor to maximize distributions to creditors.

U.     Given all of the circumstances of these Chapter 11 cases and the adequacy and fair value of the Sun Capital Consideration under the Sun Capital Transaction Documents, the Sun Capital Sale constitutes a reasonable and sound exercise of the Debtor' business judgment and should be approved.

V.     The sale of the Subject Assets does not constitute a sub rosa Chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The sale of the Subject Assets neither impermissibly restructures the rights of the Debtor' creditors nor impermissibly dictates the terms of a liquidating Chapter 11 plan for the Debtor.

W.     The consummation of the Sun Capital Sale is legal, valid, and properly authorized under all applicable provisions of the Code, including, without limitation, Code §§ 363(b), 363(t), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**General Provisions**

1.     The relief requested in the 363 Motion and the transactions contemplated thereby and by the Sun Capital Transaction Documents are approved as set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if set forth fully in this Sale Order, and the Sun Capital Sale contemplated thereby is approved.

2.     All objections to the 363 Motion or the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including any and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice, and those parties who did not object or withdrew their objections to the 363 Motion are deemed to have consented to the Sale pursuant to Code § 363(f)(2).

**EXHIBIT TGV004**

**Approval of the Sun Capital Transaction Documents**

3.      The Sun Capital Transaction Documents and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.  The Debtor is authorized to make non-material modifications to the Sun Capital Transaction Documents prior to the Sun Capital Closing.

4.      Pursuant to Code §§ 363(b) and (f), the Debtor is authorized, empowered, and directed to use the reasonable best efforts of the Debtor to take any and all actions necessary or appropriate to (a) consummate the sale of the Subject Assets pursuant to and in accordance with the terms and conditions of the Sun Capital Transaction Documents, (b) close the Sun Capital Sale as contemplated in the Sun Capital Transaction Documents and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the transactions contemplated by the Sun Capital Transaction Documents together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sun Capital Transaction Documents and the Sun Capital Sale.  Sun Capital shall not be required to seek or obtain relief from the automatic stay under Code § 362 to enforce any of its remedies under the Sun Capital Transaction Documents or any other document related to the Sun Capital Sale.  The automatic stay imposed by Code § 362 is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

5.      This Sale Order shall be binding in all respects upon the Debtor, the estate of the Debtor, all creditors of, and holders of equity interests in, any Debtor, any holders of Subject Liens, Subject Claims, or other interests (whether known or unknown) in, against or on all or any portion of the Subject Assets, Sun Capital and all successors and assigns of Sun Capital, the Subject Assets, and any trustees, if any, subsequently appointed in this Chapter 11 case or upon a conversion of this case to Chapter 7 under the Code.  This Sale Order and the Sun Capital Transaction Documents shall inure to the benefit of the Debtor, the estate(s) and creditors, Sun Capital, and the respective successors and assigns of each of the foregoing.

6.      From and after the Sun Capital Closing, Sun Capital shall indemnify, defend, and save the Debtor and their respective officers, directors, employees, agents, and representatives forever harmless from and against, any and all losses, damages, or other liabilities with respect to the Subject Assets, the Sun Capital Assumed Liabilities under the Sun Capital Transaction Documents, and/or the Sun Capital Leases (including payment of all 2021 annual ad valorem taxes accruing as of January 1, 2021).

**Transfer of the Subject Assets**

7.      Pursuant to Code §§ 105(a), 363(b), and 363(f), the Debtor is authorized and directed to use reasonable best efforts to effectuate the transfer of the Subject Assets to Sun Capital upon the Sun Capital Closing and such transfer shall

constitute a legal, valid, binding, and effective transfer of the Subject Assets and shall vest Sun Capital with title to the Subject Assets.

8.  Upon Closing of the Sale, the transfer of the Subject Assets shall be free and clear of all Subject Liens, Subject Claims, and other interests of any kind or nature whatsoever, including but not limited to, (a) successor or successor-in-interest liability in respect of such Subject Liens, Subject Claims, or other interests and (b) Subject Claims in respect of the Excluded Liabilities, with all such Subject Liens, Subject Claims, or other interests to attach to the cash proceeds ultimately attributable to the property against or in which such Subject Liens, Subject Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, that such Subject Liens, Subject Claims, or other interests now have against the Subject Assets, subject to any rights, claims, and defenses the Debtor or their estates, as applicable, may possess with respect thereto. Upon the Sun Capital Closing, Sun Capital shall take title to and possession of the Subject Assets subject only to the Permitted Encumbrances contained within the Sun Capital Transaction Documents; provided that the Sun Capital Closing shall not occur and no such transfers shall be made unless, prior to the Sun Capital Closing, Sun Capital provides the full purchase price contemplated by the Sun Capital Transaction Documents to the Debtor in good and immediately available funds.

9.  The Debtor is hereby authorized and directed to use reasonable best efforts to take any and all actions necessary to consummate the Sun Capital Transaction Documents, including any actions that otherwise would require further approval by shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals.

10. The transfer of the Subject Assets to Sun Capital does not require any consents other than as specifically provided for in the Sun Capital Transaction Documents, which consents shall be deemed given. Upon the receipt by the Debtor of the Cash Consideration required under the Sun Capital Transaction Documents, and the Closing of the Sale, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtor's interests in the Subject Assets. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sun Capital Transaction Documents.

11. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder of any state, county, or local authority, and shall act to (i) cancel or evidence satisfaction of any of the Subject Liens, Subject Claims, and other encumbrances of record except those assumed as or Permitted Encumbrances (as evidenced within the Sun Capital Transaction Documents) and (ii) evidence the Permitted Encumbrances (as evidenced within the Sun Capital Transaction Documents). For the avoidance of doubt, filing this Sale Order shall

not act to cancel any Permitted Encumbrances within the Sun Capital Transaction Documents.

12.    If any person or entity that has filed statements or other documents or agreements evidencing Subject Claims or Subject Liens on, or interests in, all or any portion of the Subject Assets (other than statements or documents with respect to Permitted Encumbrances contained within the Sun Capital Transaction Documents) shall not have delivered to the Debtor prior to the Sun Capital Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Subject Claims, Subject Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Subject Assets, the Debtor is hereby authorized and directed, and Sun Capital is hereby authorized, on behalf of the Debtor and the creditors of the Debtor, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Subject Assets; provided that the provisions of this Sale Order authorizing the transfer of the Subject Assets free and clear of all Subject Liens, Subject Claims, and Interests (except only Permitted Encumbrances under the Sun Capital Transaction Documents) shall be self-executing, and the Debtor, Sun Capital, and creditors shall not be required to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be effectuated, consummated, and/or implemented.

13.    This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sun Capital Transaction Documents.

14.    Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtor to sell and transfer the Subject Assets to Sun Capital in accordance with the terms of the Sun Capital Transaction Documents and this Sale Order.

15.    Nothing in this Sale Order or the Sun Capital Transaction Documents modifies or waives the applicability of Code §525(a).

16.     Nothing in this Sale Order or the Sun Capital Transaction Documents releases, nullifies, precludes, or enjoins the enforcement of any police power by, or any regulatory liability to, any governmental unit under any applicable environmental law or regulation.

**Limitation of Liabilities After Closing**

17.     Except for the obligations necessary to close the Sale under the Sun Capital Transaction Documents, and the Permitted Encumbrances and under the Sun Capital Transaction Documents, or as otherwise expressly provided for in this Sale Order or the Sun Capital Transaction Documents, Sun Capital shall not have any liability or other obligation of the Debtor and/or the estate arising under or related to any of the Subject Assets.

**Additional Provisions.**

18.     Except with respect to Permitted Encumbrances or as otherwise permitted by the Sun Capital Transaction Documents or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors holding Subject Liens, Subject Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Subject Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtor, the Subject Assets, and/or the operation of the business of Debtor with respect to the transfer of the Subject Assets to Sun Capital, hereby are forever barred, estopped and permanently enjoined from asserting against Sun Capital, any of the foregoing's affiliates, successors, or assigns, their property or the Subject Assets, Subject Liens, Subject Claims, and/or interests in and to the Subject Assets of such persons or entities, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Subject Assets, Sun Capital, its Affiliates, its successors, assets or properties, (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Subject Assets, Sun Capital, its Affiliates, its successors, assets or properties, (c) creating, perfecting, or enforcing any Subject Lien or other Subject Claim against the Subject Assets, Sun Capital, its Affiliates, its successors, assets, or properties, (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Sun Capital, its Affiliates or its successors, (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof, or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Subject Assets or conduct any of the businesses operated with the Subject Assets.  Upon the Sun Capital Closing, each

**EXHIBIT TGV004**

creditor is authorized and directed, and Sun Capital is hereby authorized, on behalf of each of the creditors of the Debtor, to execute such documents and take all other actions as may be necessary to release Subject Liens, Subject Claims, and other interests in or on the Subject Assets (except Permitted Encumbrances as provided in the Sun Capital Transaction Documents or as otherwise provided in this Sale Order), if any, as provided for herein, as such Subject Liens, Subject Claims, and other interests may have been recorded or may otherwise exist.

19. Sun Capital has given substantial consideration under the Sun Capital Transaction Documents for the benefit of the Debtor, the estate(s), and the creditors. The consideration given by Sun Capital shall constitute valid and valuable consideration for the releases of any potential Subject Claims and Subject Liens pursuant to this Sale Order, which releases shall be deemed to have been given in favor of Sun Capital by all holders of Subject Liens against or interests in, or Subject Claims against any of the Debtor or any of the Subject Assets, other than holders of Subject Liens or Subject Claims relating to the Permitted Encumbrances or Sun Capital Assumed Liabilities as delineated within the Sun Capital Transaction Documents. The consideration provided by Sun Capital for the Subject Assets under the Sun Capital Transaction Documents is fair and reasonable and, accordingly, the Sale may not be avoided under Code § 363(n).

20. For the avoidance of doubt, only the Subject Assets being transferred to Sun Capital pursuant to the Sun Capital Transaction Documents and any ancillary agreements contemplated thereby are being transferred free and clear of Liens, Claims, interests, and other encumbrances (except for any exceptions contained within the Sun Capital Transaction Documents or this Sale Order) pursuant to the terms of this Sale Order, and any and all other assets of the Debtor that Sun Capital is not acquiring shall remain subject to all valid pre-existing Liens, Claims, interests, and other encumbrances. Any releases, terminations, termination statements, assignments, consents, or other instruments relating to Subject Liens or other encumbrances in or on the Subject Assets shall properly be limited to the Subject Assets.

21. The consideration provided by Sun Capital to the Debtor pursuant to the Sun Capital Transaction Documents for the Subject Assets constitutes reasonably equivalent value and fair consideration under the Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and under the laws of the United States, any state, territory, possession, or the District of Columbia.

22. The transactions contemplated by the Sun Capital Transaction Documents are undertaken by Sun Capital without collusion and in good faith, as that term is defined in Code § 363(m), and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale contemplated under the Sun Capital Transaction Documents shall not affect the validity of the sale, unless such authorization and such sale are duly stayed pending such appeal.

**EXHIBIT TGV004**

Sun Capital is a good faith buyer within the meaning of Code § 363(m) and, as such, is entitled to the full protections of Code § 363(m).

23.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Chapter 11 case, (b) any subsequent Chapter 7 case into which any such Chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Sun Capital Transaction Documents or the terms of this Sale Order.

24.    For cause shown, pursuant to Bankruptcy Rules 6004(h) and 7062(g), this Sale Order shall not be stayed, shall be effective immediately upon entry, and the Debtor and Sun Capital are authorized to close the sale of the Subject Assets immediately upon entry of this Sale Order.

25.    No bulk Sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

26.    The failure to specifically include any particular provision of the Sun Capital Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sun Capital Transaction Documents be authorized and approved in its entirety; provided that this Sale Order shall govern if there is any inconsistency between the Sun Capital Transaction Documents (including all ancillary documents executed in connection therewith) and this Sale Order.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

27.    The Sun Capital Transaction Documents and any related agreements, documents or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the estate(s) of the Debtor or lower the amount of cash proceeds paid.

28.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Sun Capital Transaction Documents, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtor to Sun Capital, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale of the Subject Assets.

29.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.    Nothing in this Sale Order or the Sun Capital Transaction Documents (a) releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental

**EXHIBIT TGV004**

unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Sale Order or (b) authorizes the transfer or assignment to Sun Capital of any license, permit, registration, authorization, or approval of, or the discontinuation of any obligation thereunder, or with respect to a governmental unit without the compliance of Sun Capital with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

31. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these Chapter 11 cases, the terms of this Sale Order shall govern.

32. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Sale Order.

33. Sun Capital assumes no liabilities of the Debtor as a result of this Sale Order or the Sun Capital Transaction Documents.

**Receipt and Use of Sale Proceeds**

34. All sales proceeds or other payments made to the Debtor under this Sale Order and/or the Sun Capital Transaction Documents, but not including any payments made under any interim management or operations agreement, shall be placed into escrow pending further order of the Court.

**Provisions regarding ad valorem taxes.**

35. In the event that ad valorem taxes remain unpaid for tax year 2020, then the ad valorem tax lien for tax year(s) 2020 and prior pertaining to Lot 9 shall attach to the sales proceeds and that the closing agent shall pay all ad valorem tax debt owed incident to or attributable to Lot 9 immediately upon closing and prior to any disbursement of proceeds to any other person or entity.

36. The ad valorem taxes for year 2021 pertaining to Lot 9 shall be prorated in accordance with the PSA, and if not paid in full at closing, shall thereafter be assumed by and be the responsibility and liability of Sun Capital to pay when due, and the year 2021 ad valorem tax lien shall be retained against Lot 9 until said taxes are paid in full.

**Service of this Order**

37. Debtor on the same day as entry shall serve this Sale Order on the Debtor' Master Service List on file in this case.

### 

---

**ORDER GRANTING MOTION FOR ORDER AUTHORIZING (I) SALE OF LOT 9 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) PAYMENT OF CERTAIN EXPENSES AT CLOSING, AND (III) RELATED RELIEF — Page 13**

**EXHIBIT TGV004**

**Order submitted by:**

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Jeff Carruth*
JEFF CARRUTH (TX SBN:. 24001846)
3030 Matlock Rd., Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
E-mail: jcarruth@wkpz.com

**ATTORNEYS FOR THE GATEWAY VENTURES, LLC,
DEBTOR AND DEBTOR IN POSSESSION**