IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE GATEWAY VENTURES, LLC, | § | Case No. 21-30071-hcm |
| | § | Chapter 11 |
| Debtor. | § | |

**SURESH KUMAR'S OBJECTION TO MOTION OF DEBTOR (I) TO FILE SUN CAPITAL LLC PURCHASE AND SALE AGREEMENT UNDER SEAL AND (II) FOR RELATED RELIEF**

TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:

Comes now Suresh Kumar ("Kumar") an unsecured creditor in the above styled and numbered bankruptcy case, and files this, his Objection to Motion of Debtor (I) to File Sun Capital LLC Purchase Sale Agreement Under Seal and (II) for Related Relief (the "Motion to Seal"), and would respectfully show the Court as follows:

**BACKGROUND FACTS**

1.      Michael Dixson represented to Kumar, Bankim Bhatt ("Bhatt), Suhail Bawa ("Bawa"), and Saleem Makani ("Makani") that he would sell them an approximately 2.3-acre parcel of land upon which they could build a Marriott Hotel. The cost of the parcel continually increased until it reached $2.8 million.

2.      On or about December 12, 2018, Bawa, Makani, and Kumar formed Westar Investors Group, LLC ("Westar"), of which they are all still members, for the purpose of acquiring the above-referenced parcel of land to develop the Marriott Element Hotel. Bhatt requested that he not be added as a member in Westar at that time.

3.      Westar then entered into a written Interest Subscription Agreement and Real Property Contract with The Gateway Ventures, LLC ("Gateway"), PDG Prestige, Inc. ("PDG"), both of which are wholly owned and managed by Dixson, on December 17, 2018, as later

restated and amended on April 2, 2019 (the "Agreement").

4.     Kumar held a 35% interest in Westar and thus was responsible for 35% of the payments needed to acquire the Element Parcel.

5.     Based on his ownership interest, Kumar was required to invest $822,500 to acquire the Element Parcel.

6.     The Agreement provided that the closing for the sale of the Element Parcel would be within three months of the effective date, which was April 2, 2019 – making the closing date July 2, 2019.

7.     However, Gateway and PDG failed to close on the Element Parcel on July 2, 2019. Dixson, on behalf of Gateway and PDG, repeatedly misrepresented to Westar what amount of funds were to be deposited and when, and then claimed that Gateway and PDG could not close on time on the acquisition of the large tract because of Westar.

8.     In reality, at all times when Westar was asked to make a deposit towards the Purchase Price, it promptly did so. Some of the funds deposited towards the Purchase Price came from Bawa, some from Makani, and some from Kumar.

9.     Ultimately, Kumar invested the sum of $1,008,750 into the Westar land purchase. In addition, Kumar invested $111,000 into the Even Hotel project described below.

10.     It was also represented that Westar's investment in the Element Parcel would be used for Dixson, Gateway, and PDG to acquire a loan to purchase the entire 20-acre tract where the Element Parcel was located. According to Dixson, without Westar's investment, he could not close on the 20-acre tract.

11.     Regardless, before the end of 2019, Westar had fully paid the entire amount of the Purchase Price to Gateway and PDG.

12.     Because he had either misused or diverted the funds paid by Westar (including Kumar's funds) Dixson misrepresented to Kumar, Bawa, and Makani that funds that Kumar had paid for the Element Parcel were actually paid for a second hotel site.

13.     Curiously, despite this claimed dispute as to which project Kumar's funds should have been allocated to, Dixson had previously sent correspondence to Westar in or around December 2019 which specifically detailed the funds that Kumar had deposited towards the Purchase Price for the Element Parcel, which funds Dixson then claimed were disputed.

14.     In response to Dixson's January 30, 2020 correspondence, Kumar stated in writing on January 31, 2020 that the sum of $822,500 out of the aforementioned funds was in fact intended to be allocated to the Element Parcel.

15.     On February 6, 2020, Dixson, on behalf of Gateway and PDG wrote to Westar again and stated that, after taking into account Kumar's $822,500 allocation, there remained due and owing on the Element Parcel approximately $41,000.

16.     In response, that same day, Kumar stated in writing that an additional $41,000 out of the aforementioned funds was also intended to be allocated to the Element Parcel. Dixson acknowledged receipt of this on February 6, 2020.

17.     Therefore, as of February 6, 2020, it was admitted and acknowledged in writing by all necessary parties that the entire amount of the Purchase Price had been paid by Westar and allocated to the Element Parcel.

18.     However, despite having Kumar's admissions in writing, Gateway and PDG still refuse to close on the Element Parcel, claiming there is still a "dispute" as to the allocation of Kumar's funds.

19.     Dixson has also absconded with the almost $2,000,000 paid to him by the

purchasers of the second hotel site, resulting in a final judgment against him and PDG.

20.     As a result of the above, on March 10, 2020, Westar, Bawa, and Makani initiated a lawsuit styled *Westar Investors Group, LLC, Suhail Bawa and Saleem Makani v. The Gateway Ventures, LLC, PDG Prestige, Inc., Michael Dixson, Suresh Kumar and Bankim Bhatt.*; Cause No. 2020DCV0914, pending in the County Court at Law Number Six of El Paso County, Texas (the "Westar Lawsuit").

21.     In addition to the above transactions, Ashish Nayyar ("Nayyar") and Rahim Noorani ("Noorani"), two of Mr. Dixson's other investors, filed suit against PDG, Gateway and Dixson on January 3, 2020, styled *Ashish Nayyar and Rahim Noorani v. PDG Prestige, Inc., The Gateway Ventures, LLC and Michael Dixson, individually*; Cause No. 2020DCV0030 in the County Court at Law Number Three, El Paso County, Texas (the "Nayyar Lawsuit").   The Nayyar Lawsuit alleged, *inter alia,* breach of contract and specific performance of a contract for the purchase of real property in El Paso County by Plaintiffs from Defendants.   Nayyar and Noorani also sued Defendants for fraud and misrepresentation.   Attached hereto as Exhibits 1 and 2, respectively, are true and correct copies of Plaintiff's Third Amended Original Petition and an Order Granting Final Summary Judgment Against Defendants entered on September 30, 2020 in the Nayyar Lawsuit.

22.     On February 2, 2021, The Gateway Ventures, LLC filed this bankruptcy proceeding by filing for relief under Chapter 11 of the Bankruptcy Code.

23.     On February 15, 2021, PDG filed for relied under Chapter 11 of the Bankruptcy Code under Case No. 21-30107.

24.     On April 15, 2021, Kumar filed his Proof of Claim No. 2 in the amount of $1,087,750.00.

25.     On May 3, 2021, the Westar Lawsuit was removed to this Court and assigned Adversary Proceeding Number 21-03009.

26.     It is clear from the pleadings in the Westar and Nayyar Lawsuits that the Debtor and its principal, Mr. Dixson, has absconded with around $4,000,000 of investors' money, the use of which has never been accounted for.

## DEBTOR'S MOTION TO SEAL

27.     On May 4, 2021, the Debtor filed its Motion for Order Authorizing Sale of Lot 9 Free and Clear of All Liens, Claims, Encumbrances and Interests (Dkt #49).   Concurrently therewith, the Debtor filed its Motion to Seal (Dkt #50) seeking to keep the purchase price and/or other information contained in the purchase and sale agreement with Sun Capital LLC confidential.   As shown herein, the proposed purchase price for Lot 9 is not commercial information under §107 of the Bankruptcy Code and the Motion to Seal should be denies.

28.     The Supreme Court stated in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 591 (1978): "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."   Unanimity in the case law demonstrates that there is a common law right of access to judicial proceedings and to inspect judicial records in civil matters.  *In Orion Pictures Corp. v. Video Software Dealers Assoc.*, 21 F.3d 24 (Cir. 2 1994), the Court stated the general rule as: "...a strong presumption of public access to court records...This preference for public access is rooted in the public's first amendment right to know about the administration of justice.  It helps safeguard the integrity, quality, and respect in our judicial system."  21 F. 3d 24, 26 (citations omitted).  *See also, In re Continental Airlines*, 150 B.R. 334 (D. De. 1993), where the court noted "...the strong presumption in favor of public access to judicial records and papers...."  Accord, *In re*

*Foundation for New Era Philanthropy*, 1995 WL 478841 (E.D. Pa. 1995); *In re Barney's Inc.*, 201 B.R. 703 (Bankr. S.D.N.Y. 1996). This common law has been codified in Section 107(a) of the Bankruptcy Code.

29. In the bankruptcy context, limited exceptions to the general rule are contained in the Code and Rules. Bankruptcy Code §107(b) provides as follows:

> (b)  On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
>> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>
>> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

30. FRBP 9018 essentially incorporates the substance of Section 107(b) and adds to the type of matters subject to seal, the protection of "...governmental matters that are made confidential by statute or regulation."

31. As exceptions to the common law rule, the burden is on the moving party to show that a request to place documents under seal falls within the parameters of Bankruptcy Code Section 107(b) and FRBP 9018 by demonstrating that: "...that the interest in secrecy outweighs the presumption in favor of access." *See In re Continental Airlines*, 150 B.R. 334 (D. De. 1993). The inquiry then is whether the matter sought to be placed under seal fits within any of the categories included within either of Section 107(b) or FRBP 9018.

32. The cases cited by the Debtor in its Motion to Seal themselves reflect why the Motion should be denies.

33. In *In re Gen. Homes Corp.*, 181 B.R. 898, 903 (Bankr. S.D. Tex. 1995), the court refused to withdraw its prior opinion regarding a show cause hearing issues to the creditors

committee and its counsel.  In doing so, the court stated, at page 901, that "The complex issues which resulted in the Memorandum Opinion and Interlocutory judgment of October 3, 1994 reach to the very essence of the balance of fair play between debtors and creditors in Chapter 11."

34.    The court in *In re Orion Pictures Corp.*, 21 F.3d 24, 28 (2d Cir. 1994) stated that "In most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need", citing *City of Hartford v. Chase*, 942 F.2d 130, 135-136 (2d Cir. 1991).

35.    The *Orion* court went on to say that commercial information has been defined as information which would cause "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Intel Corp.*, 17 Bankr. 942, 944 (Bankr. 9th Cir. 1982).

36.    The *Orion* case deals with a licensing agreement with McDonald's which competitors wanted to see because they had purchased the same VHS tapes from Orion for far more than McDonald's was selling them for.

37.    Similarly, in *In re 50-Off Stores, Inc.,* 213 B.R. 646, 655–56 (Bankr. W.D. Tex. 1997), the parties seeking to unseal the records relating to the debtor's retention of special counsel were the same parties that the special counsel had sued on behalf of the debtor.

38.    Obviously, in both *Orion* and *50-Off*, the parties objecting to the sealing of the records were involved in disputes outside the normal bankruptcy administration process.

39.    In the instant case, the Debtor seeks to seal the terms of a contract which has already been agreed to by the parties to the contract.

40.    The Debtor has not articulated just how the sales price constitutes commercial

information. We are talking about the sales price for one specific, unique lot. Since the contract has been signed, there is not competitor.

41.     The Debtor has not put forth any evidence that the disclosure of the sale price provides any competitor with an advantage.

42.     Further, unlike the cases cited by the Debtor, the information that the Debtor seeks to keep secret go to the heart of the Chapter 11 process. It would allow creditors to attempt to ascertain the feasibility of the reorganization of this Debtor and the possibility of a dividend to unsecured creditors, among other things. It is improper to sell the assets of the Debtor without the creditors being provided an opportunity to evaluate the fairness of the sales price.

**WHEREFORE, PREMISES CONSIDERED,** Suresh Kumar requests the Court to deny the Motion to Seal, and that the Court grant him such other and further relief as is just.

**DATED** this 12 day of May, 2021.

Respectfully submitted,

**GORDON DAVIS JOHNSON & SHANE P.C.**
4695 N. Mesa Street
El Paso, Texas 79912
(915) 545-1133
(915) 545-4433 (Fax)

By:_____

Harrel L. Davis III
State Bar No. 05567560
hdavis@eplawyers.com
Attorneys for Suresh Kumar

## CERTIFICATE OF SERVICE

I certify that on the 12 day of May, 2021, a true and correct copy of the above and foregoing was served upon the attached list of parties via electronic means as listed on the court's ECF noticing system or by regular first-class mail:

Harrel L. Davis

Label Matrix for local noticing
0542-3
Case 21-30071-hcm
Western District of Texas
El Paso
Wed May 12 11:13:28 CDT 2021

The Gateway Ventures, LLC
c/o PDG Prestige, Inc.
780 N Resler Drive, Suite B
El Paso, TX 79912-7196

U.S. BANKRUPTCY COURT
511 E. San Antonio Ave., Rm. 444
EL PASO, TX 79901-2417

Ashish Nayyar
806 Rockport Lane
Allen, TX 75013

Ashish Nayyar
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Ashish Nayyar, Rahim Noorani,
Deepesh Shrestha, and Umesh Shrestha
c/o James M. Feuille
201 E. Main Drive, Suite 1100
El Paso, TX 79901-1340

Border Demolition
Attn: Bonnie Solis
1004 Diesel Drive
El Paso, TX 79907-3100

City of El Paso
c/o Don Stecker
112 E. Pecan St. Suite 2200
San Antonio, TX 78205-1588

Deepesh Shrestha
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Depcesh Shrestha
3708 N. White Chapel Blvd.
Southlake, TX 76092-2042

El Paso County Tax AC
301 Manny Martinez Dr., 1st Floor
El Paso, TX 79905-5503

HD Lending LLC
6080 Surety Dr. Ste 101
El Paso, TX 79905-2066

HD Lending LLC
c/o Stephen H. Nickey PC
1201 North Mesa Ste. B
El Paso, TX 79902-4000

HD Lending, LLC
c/o Clyde A. Pine, Jr.
Mounce Green Myers
P.O. Box 1977
El Paso, Texas 79999-1977

Internal Revenue Service
Special Procedures Staff - Insolvency
P. O. Box 7346
Philadelphia, PA 19101-7346

Michael Dixson
780 N. Resler Drive Suite B
El Paso, TX 79912-7196

PDG Prestige, Inc.
780 N. Resler Drive Suite B
El Paso, TX 79912-7196

Rahim Noorani
4312 Hopi Drive
Carrolton, TX 75010-1133

Rahim Noorani
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Rahim Noorani, et al.
c/o Marty D. Price
2514 Boll St.
Dalals, TX 75204-2512

Saleem Makani
c/o Eric W. Wood
Brown Fox PLLC
5550 Granite Parkway, Suite 175
Plano, Texas 75024
Email: eric@brownfoxlaw.com  75024-3834

Saleem Makani
c/o Eric Wood (Brown Fox)
8111 Preston Rd. Ste 300
Dallas, TX 75225-6329

Suhail Bawa
c/o Eric W. Wood
Brown Fox PLLC
5550 Granite Parkway, Suite 175
Plano, Texas 75024
Email: eric@brownfoxlaw.com  75024-3834

Suhail Bawa
c/o Eric Wood (Brown Fox)
8111 Preston Rd. Ste 300
Dallas, TX 75225-6329

Suresh Kumar
c/o Harrel Davis
PO Box 1322
El Paso, TX 79947-1322

Texas Attorney General
Environmental Protection Division
P.O. Box 12548
Austin, TX 78711-2548

(p)TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
ATTN BANKRUPTCY PROGRAM
P O BOX 13087
MC 132
AUSTIN TX 78711-3087

Umesh Shrestha
8505 Revenue Way
North Richland Hills, TX 76182-7431

Umesh Shrestha
c/o James M. Feuille
ScottHulse PC
P.O. Box 99123
El Paso, TX 79999-9123

Union Gateway, LLC
c/o Ryan Little
P. O. Drawer 1977
El Paso, Texas 79999-1977

United States Trustee - EP12  
U.S. Trustee's Office  
615 E. Houston, Suite 533  
P.O. Box 1539  
San Antonio, TX 78295-1539  

Westar Investor Group, LLC  
c/o Eric Wood (Brown Fox)  
8111 Preston Rd. Ste 300  
Dallas, TX 75225-6329  

Westar Investors Group, LLC  
c/o Eric W. Wood  
Brown Fox PLLC  
5550 Granite Parkway, Suite 175  
Plano, Texas 75024  
Email: eric@brownfoxlaw.com  75024-3834  

Jeff Carruth  
Weycer Kaplan Pulaski & Zuber, P.C.  
24 Greenway Plaza, #2050  
Houston, TX 77046-2445  


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified  
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


Texas Commission on Environmental Qualit  
Reg. 6 Office Compliance Enforcement  
401 E Franklin Ave, Suite 560  
El Paso, TX 79901-1212  

End of Label Matrix  
Mailable recipients     33  
Bypassed recipients      0  
Total                   33

El Paso County - County Court #3    2020DCV0030    Doc #553  Filed 05/12/21  Entered 05/12/21 12:05:54  Main Document  Pg 11 of 49

Norma Favela Barceleau
District Clerk
El Paso County
2020DCV0030

CAUSE NO. 2020DCV0030

| ASHISH NAYYAR AND RAHIM NOORANI | § | IN THE COUNTY COURT |
|---|---|---|
| Plaintiff, | § § § § | |
| PDG PRESTIGE, INC., A TEXAS CORPORATION, THE GATEWAY VENTURES, LLC., A TEXAS LIMITED LIABILITY COMPANY AND MICHAEL DIXSON, INDIVIDUALLY | § § § § § § § | AT LAW NO. 3 |
| Defendant. | § § | EL PASO COUNTY, TEXAS |

## PLAINTIFFS' THIRD AMENDED ORIGINAL PETITION

COMES NOW, Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha, all Plaintiffs in this cause and file this their Third Amended Original Petition complaining of Defendants PDG Prestige, Inc., a Texas corporation, The Gateway Ventures, LLC., a Texas Limited Liability Company and Michael Dixson, Individually, and in support thereof would show the Court as follows:

## I.
## PARTIES

1.    Plaintiffs Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha are citizens of the State of Texas.

2.    Defendant The Gateway Ventures, LLC., is a Texas Limited Liability Company that has generally appeared for all purposes here.

3.    PDG Prestige, Inc., is a Texas corporation that has generally appeared for all purposes here.

PLAINTIFFS' THIRD AMENDED ORIGINAL PETITION                    1 | P a g e

**EXHIBIT 1**

4.    Defendant Michael Dixson is an individual resident of El Paso County, Texas and has generally appeared and answered herein for all purposes.

## II.

## CAUSES OF ACTION

5.    This is a suit brought by Plaintiffs against Defendants for, *inter alia,* breach of contract and specific performance of a purchase/sales agreement for real property located in El Paso, County, Texas. Plaintiffs further seek declaratory relief with respect to the existence of a partnership in the ownership of the property. The suit is based upon Defendants' breach of the parties' agreement to sell, transfer and convey to Plaintiffs an interest in specific real property located in El Paso County, Texas. Plaintiffs also seek a conveyance of and title to a 2.3-acre tract and a conveyance of an 18% interest in the 20-acre tract, real property based upon the doctrine specific performance and promissory estoppel. In addition, the Plaintiffs request that the Court impress a constructive trust on the subject real property and for an order requiring the property to be conveyed and transferred to Plaintiffs by Defendant Dixson as trustee. The Plaintiffs further seek an order granting an equitable accounting of any sales from the Gateway development and for an order requesting the distribution to Plaintiffs of their 20% portion of any proceeds from any property sales. The Plaintiffs, in the alternative, have also brought a suit against Defendants for damages, for common law and statutory fraud for the misrepresentation of Defendants. The Defendants misrepresented to Plaintiffs that upon payment of the agreed upon funds, Defendants would convey to Plaintiffs a specific 2.3-acre tract in the Gateway development along with a 20% participatory (equity) interest in the remainder of the development. The Plaintiffs also seek the recovery of their reasonable and necessary attorney's fees incurred at trial and in the event of appeal.

6.    Plaintiffs also bring a cause of action for damages for the breach of the parties' Settlement Agreement and Release and for interest and attorney's fees.

7.    Alternatively, the Plaintiffs seek damages from Defendants for misrepresentation, common law and statutory fraud based upon Defendants' failure and refusal to convey and transfer

to Plaintiffs their promised interest in their agreed upon portion of the Gateway property after Plaintiffs paid or were credited with the purchase money consideration for the property.

## III.
## VENUE AND JURISDICTION

8.      Venue is mandatory in El Paso County, Texas, because this suit involves a suit for an interest and title to land including the specific performance of an agreement to sell, transfer and convey real property to Plaintiffs located in El Paso County, Texas. In this suit, Plaintiffs seek to recover title to and an interest in real property. Pursuant to §15.011, *Tex. Civ. Prac. Rem. Code.*, venue is mandatory in El Paso County, Texas.

9.      This Court has jurisdiction over this suit because it pertains to an interest in real property and the amount in controversy, exclusive of interest, costs and attorney's fees exceeds the minimum jurisdictional limits of this Court.

## IV.
## DISCOVERY LEVEL

10.      Discovery in this case is to be conducted pursuant to Discovery Control Plan Level 2, Rule 190.3, *Tex. R. Civ. Proc.*

## V.
## RULE 47 DAMAGE ALLEGATIONS

11.      Plaintiff sues for equitable relief and in the alternative for damages in an amount over $1,000,000.00.

## VI.
## BACKGROUND FACTS

12.      This is a suit brought by Plaintiffs Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha against Defendants PDG Prestige, Inc., a Texas corporation ("Prestige"), The Gateway Ventures, LLC., a Texas Limited Liability Company, ("Gateway") and

Michael Dixson, Individually, ("Dixson") in connection with the Plaintiffs' investment in a proposed 20-acre real estate development named Gateway Plaza located at 6767 Gateway Blvd., El Paso, Texas. All Plaintiffs' invested monies in the development.

13.     Defendants located a 20-acre property in El Paso County, Texas that he wanted to develop. Dixson needed investors to help him purchase the property and to capitalize the investment. Dixson asked the Plaintiffs to partner up with him and to financially help Defendants close the transaction. Noorani and Nayyar asked the Shresthas to help fund the Plaintiffs' investment in the development.

14.     Defendant Dixson entered into a contract to close the purchase money contract for the 20-acre site but was unable to close the transaction and was in danger of forfeiting the earnest money for the transaction. As a result, he came to Plaintiffs for help to close the transaction. Defendant Dixson made numerous promises and representation to Plaintiffs so as to obtain their financial assistance.

15.     Defendant Dixson formed Defendant The Gateway Ventures, LLC to take title to the property upon closing. On or about April 7, 2019, Plaintiffs and Defendants entered into a Letter Agreement setting forth the terms and conditions of their business relationship in the development of the Gateway project. A true and correct copy of the Letter Agreement is attached hereto as Exhibit A. Based on promises and representations by Defendant Michael Dixson, and the further representation that Plaintiffs would be partners and owners in the entire development, Plaintiffs Nayyar and Noorani paid and invested almost three (3) million dollars, in cash and credits with Prestige and Dixson in the proposed Gateway development. Under their agreement with Defendants Dixson and Prestige, Plaintiffs were to receive a 2.3-acre tract of land on which to build a 150-room hotel. In addition, the Plaintiffs were to receive an 18% interest in the overall Gateway development as well as 20% of all distributions from sales or profits occurring from the Gateway project.

16.     On or about April 30, 2019, Defendants closed the purchase of the Gateway property and received the Special Warranty Deed attached as Exhibit B. After making their required capital investment in the venture, Plaintiffs were told that they would receive a special

warranty deed to their 2.3-acre tract for their hotel lot as well as written documentation showing their undivided 18% property ownership interest in the remainder of the development as well as their right to receive 20% of any sales distributions. To date, Plaintiffs have never received any warranty deed of the 2.3-acre tract or other written evidence of their undivided ownership interest in the Gateway property. Further, Defendants still fail and refuse to deliver any such conveyancing instruments showing Plaintiffs ownership in any of the Gateway real property.

17.     After the filing of this suit on or about July 20, 2020, the parties entered in to a Settlement Agreement and Release where Defendants agreed to pay Plaintiffs $1.79 million by July 31, 2020 in exchange for a release and dismissal of his lawsuit. A true and correct copy of the parties' Settlement Agreement and Release is attached hereto as Exhibit C, and incorporated by reference herein for all purposes. Defendants breached the settlement agreement by never paying any monies toward the parties' agreed settlement consideration.

## VII.
## COUNT ONE
## SPECIFIC PERFORMANCE
## (BREACH OF CONTRACT AND EQUITABLE PROMISSORY ESTOPPEL)

18.     Reurging the facts above as if expressly set forth herein, Plaintiffs seek an order of the court for specific performance of the parties' Purchase agreement. Defendants have accepted Plaintiffs' substantial monies and used Plaintiffs' funds to actually purchase the Gateway property and now seek to cut Plaintiffs out of the entire development. Defendants have purchased and taken title to the Gateway property but have failed and refused to transfer and convey to Plaintiffs their rightful interests. Plaintiffs hereby seek the remedy of specific performance against Defendants to enforce the Defendants' obligations to transfer and convey the property to Plaintiffs and to seek such other relief as may be provided by law.

19.     At all times material to this lawsuit, Plaintiffs Ashish Nayyar and Rahim Noorani stand ready, willing and able to close the sale and transfer the property and receive their deed. Plaintiffs have no adequate remedy at law.

20.     Plaintiffs further seek the specific performance of the parties' agreements based upon the doctrine of equitable promissory estoppel resulting from the Defendants' expressed representations that they would close and transfer the specific property to Plaintiffs. The Plaintiffs justifiably relied on the Defendants' representations to them, paid the required purchase money consideration, and request an order of the Court decreeing specific performance of the parties' agreement and of the conveyance.

21.     Plaintiffs have paid in full or have received credit for the required consideration for their ownership interests. All conditions precedent to Plaintiffs' right to recover have been met or have occurred.

## VIII.
## COUNT TWO
## EQUITABLE CONSTRUCTIVE TRUST

22.     Reurging the facts above as if expressly set forth herein, Plaintiffs would show that Plaintiffs paid a substantial portion of the purchase money consideration for Defendants to purchase and acquire title to Gateway real property and, once title had been acquired by Defendants, then to convey and transfer the described 2.3 acre lot to Plaintiffs along with an undivided 18% interest in the remainder of the real property.

23.     Plaintiffs escrowed over two million in cash with Chicago Title Company and had credits from partnership profits totaling over a million dollars the required price for its interest. Plaintiffs never received a special warranty deed from Defendants for the 2.3-acre lot or other conveyance or document evidencing the Plaintiffs' ownership interest in the remainder of the 20-acre tract. Plaintiffs, as a result of the inequities resulting from the Defendants' actions and conduct, request the Court to impress a constructive trust on the real property and order Defendant Dixson as trustee to convey the Plaintiffs' property to Plaintiffs.

## IX.

## COUNT THREE

## DAMAGES FOR STATUTORY AND COMMON LAW FRAUD

24.     Reurging the facts above as if expressly set forth herein, and as a result of the fiduciary relationship and partnership between the parties, Plaintiffs request the court to order an accounting of the transaction to include Defendants Gateway and Defendant Dixson. Defendant Dixson's representations that Plaintiffs would have and own a 20% interest in prospective sales in the Gateway development supports a legal basis for Plaintiffs to seek an accounting of such sales so as to determine Plaintiffs entitlement to damages.

25.     Reurging the facts shown as if expressly set forth herein, and in the alternative, Plaintiffs seek damages for common law and statutory fraud from Defendants for the Defendants' misrepresentation and fraud resulting from the refusal of Defendants to transfer and convert the Plaintiffs' specific interests in the Gateway project to Plaintiffs after Plaintiffs made the required capital contribution. Defendants made representations that Defendants would transfer specific property rights in the Gateway project to Plaintiffs if Plaintiffs paid the agreed upon monies to Defendants. Plaintiffs damages far exceed the minimum jurisdictional limits of this court for which sums Plaintiffs sue for herein. Plaintiffs also seek their attorney's fees pursuant to Chapter 38, *Civ. Prac. Rem. Code.*

## X.

## COUNT FOUR

## DECLARATORY JUDGMENT

26.     Reurging the facts shown as if expressly set forth herein, Plaintiffs seek relief under the Texas Declaratory Judgments Act Chapter 37, *Tex. Civ. Prac. Rem. Code,* for a judicial declaration that Plaintiffs and Defendants entered into and formed a partnership with respect to the Gateway property.

27.     Plaintiffs seek a judicial declaration that Plaintiffs own an undivided 20% participation interest in the remaining 19.96-acre Gateway tract and fee simple interest in the 2.3-acre tract.

**PLAINTIFFS' THIRD AMENDED ORIGINAL PETITION**

28.     Plaintiffs further seek the recovery of their reasonable and necessary attorney's fees under the Texas Declaratory Judgments Act.

## XI.

## COUNT FIVE

## BREACH OF THE PARTIES' SETTLEMENT AGREEMENT AND RELEASE

29.     As described in ¶ 17 above, Plaintiffs would further show that on or about July 20, 2020, the parties entered into a Settlement Agreement and Release seeking to achieve a full and complete settlement of all claims and causes of action presently set forth or which could have been asserted in the above entitled and numbered case (the "lawsuit").

30.     The consideration for the Plaintiffs to settle the lawsuit was for Defendants to pay Plaintiffs $1.79 million on or before July 31, 2020. Defendants further agreed to wire the settlement payment to plaintiffs by that date.

31.     Defendants failed to make any of the $1.79 on payment and are in breach of the parties' Settlement Agreement and Release.

32.     All conditions precedent to the Plaintiffs' right to recover have been met or have occurred.

33.     Plaintiffs sue for damages in the amount of $1.79 million plus interest and attorney's fees.

## XII.

## ATTORNEY'S FEES

34.     Reurging the facts above as if expressly set forth herein, and as a result of Defendants' failure and refusal to close the parties' agreement and transfer and convey the described property to Plaintiffs or to perform the parties' settlement agreement, Plaintiffs seek the recovery of their reasonable and necessary attorney's fees pursuant to Chapter 38, *Tex. Rev. Civ. Prac. Code*, incurred in the trial court in an amount not less than $35,000.00. Further, in the event

**PLAINTIFFS' THIRD AMENDED ORIGINAL PETITION**                          8 | P a g e

of an appeal upon which Plaintiffs prevail, Plaintiffs seek the recovery of their reasonable and necessary appellate attorney's fees in an amount not less than $30,000.00, for each such appeal. In the event that a petition for review to the Texas Supreme Court is filed, Plaintiffs seek the recovery of an additional $7,500.00 in reasonable and necessary appellate attorney's fees and an additional $7,500.00 if a petition for review is granted and oral arguments scheduled in the Texas Supreme Court.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein and that upon final hearing hereof, Defendants, jointly and severally, be ordered and compelled to specifically perform their promises, agreements and obligations to transfer and convey the described Property and its indefeasible legal title to Plaintiffs and that the Defendants take all actions necessary to convey good and indefeasible title to the Property to Plaintiffs by special warranty deed. Plaintiffs further pray for an equitable accounting and for declaratory relief as pled for herein. In the alternative, Plaintiffs pray that the Court award Plaintiffs damages for the fraud and misrepresentations of Defendants. Plaintiffs further pray for damages be awarded to Plaintiffs from the Defendants, jointly and severally, for breach of the parties' Release and Settlement Agreement plus all court costs and for Plaintiffs' reasonable and necessary attorney's fees incurred at trial and in the event of appeal to a Texas Court of Appeals and in the event of a petition to the Texas Supreme Court, and that Plaintiffs have such other and further relief, legal or equitable to which they are justly entitled.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

MARTY D. PRICE
Texas State Bar No. 16302300
2514 Boll Street
Dallas, Texas 75204
Tel:     (214)871-1386
Fax:     (214)871-1389
martyprice@martyprice.com

ATTORNEY FOR PLAINTIFFS
ASHISH NAYYAR, RAHIM NOORANI,
DEEPESH SHRESTHA AND
UMESH SHRESTHA

## CERTIFICATE OF SERVICE

    This is to certify that a true and correct copy of the foregoing has been forwarded to the following parties of record by e-mail on this ____ day of August, 2020.

Attorney for Defendants
PDG Prestige, Inc., a Texas Corporation,
The Gateway Ventures, LLC., A Texas
Limited Liability Company and
Michael Dixson, Individually

Chantel Crews
Ainsa Hutson Hester & Crews, LLP
State Bar No. 24007050
5809 Acacia Circle
El Paso, Texas 79912
Tel:     (915)845-5300
Fax:     (915)845-1800
ccrews@acaciapark.com

MARTY D. PRICE

# EXHIBIT A

## LETTER AGREEMENT

## LETTER AGREEMENT

### THE PARTIES HEREBY AGREE TO THE FOLLOWING TERMS:

THE INVESTOR GROUP BEING COMPRISED OF VARIOUS MEMBERS WITH MANAGING MEMBERS ASHIKA NAYYAR, RAHIM NOORANI, AND OR ASSIGNEES ("PURCHASER/PARTNERSHIP") EFFECTIVE APRIL 7, 2019 ("EFFECTIVE DATE").

ON APRIL 8TH, 2019 THE PARTNERSHIP IS WIRING $1.4 MILLION INTO ESCROW ACCOUNT OF (CHICAGO TITLE OF DALLAS) TO PURCHASE 18% INTEREST IN BOOKS (20% IN DISTRIBUTIONS AND OWNERSHIP) IN GATEWAY VENTURES, LLC. GATEWAY VENTURES, LLC WILL BUY THE 20 ACRE SITE LOCATED AT 6767 GATEWAY BLVD, EL PASO, TEXAS 79925; FOR THE AMOUNT OF $11,414,866.47.

THE GATEWAY VENTURES, LLC WILL DELIVER CLEAN SITE LOCATED AT 6767 GATEWAY BLVD, EL PASO, TEXAS 79925 WITH UTILITIES TO THE PROPERTY AND DEVELOP THE REMAINING 16 ACRES AFTER SELLING 2 SITES FOR HOTEL PARCELS (APPROXIMATELY 4.5ACRE). MR. MICHAEL DIXSON WILL ARRANGE ALL FINANCING FOR DEVELOPMENT. THE PARTNERSHIP WILL NOT BE MAKING ANY ADDITIONAL CONTRIBUTION TOWARDS DEVELOPMENT AFTER THIS INITIAL CONTRIBUTION NOR WILL BE THE GUARANTOR IN ANY BANK LOANS OR PRIVATE LENDING.

THE PARTNERSHIP WILL RELEASE ABOVE INITIAL MONEY UPON EXECUTION OF THE CONTRACT DRAWN; DISCUSSED BY ATTORNEYS OF BOTH PARTIES AND SATISFYING BOTH PARTIES. THE COMPANY (GATEWAY VENTURES, LLC) WILL BE REQUIRED TO CLOSE ON THE PROPERTY WITHIN 10 DAYS OF SIGNED AGREEMENT OR REFUND BACK FUNDS TO THEIR RESPECTIVE ACCOUNTS. THE OPERATING AGREEMENT HAS TO BE SIGNED AMONG THE PARTIES BEFORE THE FUNDS ARE RELEASED FROM ESCROW.

PDG PRESTIGE, INC

MANAGER

MICHEAL DIXSON

RAHIM NOORANI

The GATEWAY VENTURES, LLC

MICHEAL DIXSON

ASHISH NAYAR

# EXHIBIT B

## SPECIAL WARRANTY DEED

Doc # 20190031428

*Execution Version*

#109
① 9pqp
# 242832

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

SPECIAL WARRANTY DEED

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF EL PASO | § | |
| | § | |

That **MAGELLAN PIPELINE TERMINALS, L.P.**, a Delaware limited partnership (hereinafter referred to as "Grantor") for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to it in hand paid and caused to be paid in the manner hereinafter stated by **THE GATEWAY VENTURES, LLC**, a Texas limited liability company ("Grantee"), the receipt of which is hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD and CONVEYED and by these presents does GRANT, BARGAIN, SELL and CONVEY unto the said Grantee, whose address is 300 E. Main, 10th Floor, El Paso, TX 79901, the property described on **Exhibit "A"** attached hereto (the "Land"), together with all improvements and fixtures thereon situated, and all rights and appurtenances pertaining to such Land, including but not limited to any strips and gores adjoining such Land and in and to adjacent streets, roads, alleys, easements, rights-of-way, drainage facilities, utility capacity, utilities, water rights, consents, licenses, permits, entitlements, bonds, reservations, privileges and rights of ingress and egress appurtenant to the Land, and all other rights and benefits attributable to the Land and any improvements located thereon, and all of Grantor's right, title and interest in and to all oil, gas and other minerals lying under, in or about or constituting part of the Land, regardless of whether the minerals are considered part of the surface estate or part of the mineral estate (collectively, the "Property").

AS A MATERIAL INDUCEMENT TO GRANTOR TO CONVEY THE PROPERTY TO GRANTEE, GRANTEE COVENANTS AND AGREES ON BEHALF OF ITSELF AND ITS SUCCESSORS AND ASSIGNS, THAT NO PORTION OF THE PROPERTY WILL BE USED FOR BULK STORAGE OR TERMINALLING OF CRUDE OIL OR REFINED PETROLEUM PRODUCTS FOR A PERIOD OF 20 YEARS FROM THE DATE OF THIS DEED. GRANTOR AND GRANTEE INTEND FOR THE FOREGOING TO BE A COVENANT RUNNING WITH THE LAND.

EXCEPT AS EXPRESSLY SET FORTH IN THE UNDERLYING PURCHASE AGREEMENT OR HEREIN, GRANTOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS ALL OF THE SAME. GRANTEE ACKNOWLEDGES GRANTOR'S FOREGOING DISCLAIMER AND REPRESENTS, WARRANTS AND AGREES THAT EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES SET FORTH IN THE

{00072167.1}

1

*Execution Version*

UNDERLYING PURCHASE AGREEMENT OR HEREIN, THE PROPERTY IS DELIVERED AND ACCEPTED ON AN *"AS IS/WHERE IS"* BASIS WITH ALL FAULTS, IF ANY. WITHOUT LIMITING THE FOREGOING, GRANTEE ACKNOWLEGES THAT THE PROPERTY IS A FORMER OIL AND OIL PRODUCTS TERMINAL FACILITY AND CONTAINS TANKS, PIPES, MANIFOLDS, AND OTHER STRUCTURES. GRANTEE AGREES THAT IT SHALL BE SOLELY RESPONSIBLE FOR ANY COSTS OR LIABILITIES ARISING FROM ANY REMOVAL OF SUCH TANKS, PIPES, MANIFOLDS, AND OTHER STRUCTURES.

**TO HAVE AND TO HOLD** the above described Property together with all and singular the rights and appurtenances thereto in anywise belonging, unto Grantee, its successors and assigns, forever, subject only to all matters set forth on **Exhibit "B"** attached hereto and made a part hereof (collectively, the "Permitted Exceptions"); and Grantor does hereby bind itself and its successors, to warrant and forever defend all and singular the Property, subject to Permitted Exceptions unto Grantee, its successors and assigns, against every person whomsoever lawfully claiming the same or any part thereof by, through or under Grantor, but not otherwise.

*[Signature Page to Follow]*

{00072167.1}                                     2

*Execution Version*

IN WITNESS WHEREOF, this Special Warranty Deed is executed to be effective the 30th day of April, 2019.

**GRANTOR:**
**MAGELLAN PIPELINE TERMINALS, L.P.,**
a Delaware limited partnership

By:  Magellan Pipeline GP, LLC, a Delaware limited liability company,
its general partner

By: _____

Name: _____

Title:  Aaron Milford
~~Chief Financial Officer~~
Magellan Midstream Partners

THE STATE OF OKLAHOMA          §
                               §
COUNTY OF TULSA                §

This instrument was acknowledged before me on the 30 day of April, 2019, by Aaron Milford, CEO of Magellan Pipeline GP, LLC, a Delaware limited liability company, the general partner of Magellan Pipeline Terminals, L.P., a Delaware limited partnership, on behalf of said limited liability company and limited partnership.

_____
Notary Public in and for the
State of Oklahoma

Elizabeth Blair
Printed Name of Notary Public
My Commission Expires: 02-13-2022

Notary Public
State of Oklahoma
ELIZABETH BLAIR
TULSA COUNTY
COMMISSION #06001735
Comm. Exp. 02-13-2022

{00072167.1}                    3

*Execution Version*

**Exhibit "A" to Special Warranty Deed**
**Legal Description**

*Execution Version*

A parcel of land lying in and being a portion of Tract 4A, Block 2, Ascarate Grant, El Paso County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at an X chiseled in a concrete curb. said point being the Intersection of the East Right-of-Way line of Airway Blvd. and the North Right-of-Way line of Interstate Highway 10, and also being the Point of Beginning of the parcel being described: Thence North 28°21'26" East a distance of 130.27 feet to a point; Thence following a curve to the left along the Easterly Right-of-Way line of Airway Blvd. an arc distance of 222.09 feet to a point, the central angle of said curve being 15°54'11", its radius being 800.15 feet, and the long chord bearing North 20°24'21" East a distance of 221.38 feet; Thence following a curve to the right an arc distance of 36.97 feet to a point, the central angle of said curve being 105°54'40", its radius being 20.00 feet, and the long chord bearing North 65°24'35" East a distance of 31.93 feet; Thence South 61°38'34" East a distance of 11.40 feet to a point; Thence North 28°21'26" East a distance of 626.18 feet to a concrete nail with a disc; Thence South 56°48'44" East a distance of 948.90 feet to a 5/8 inch diameter iron rebar; Thence 29°22'10" West a distance of 364.09 feet to a 5/8 inch diameter iron rebar; Thence South 62°38'50" East a distance of 31.47 feet to a 5/8 inch iron rebar; Thence South 29°55'26" West a distance of 558.00 feet to a 5/8 inch diameter iron rebar lying in the Northerly Right-of-Way line of Interstate Highway 10; Thence North 61°38'34" West along said Northerly Right-of-Way line of Interstate Highway 10 distance of 955.31 feet to the Point of Beginning of the parcel being described and containing 920,338.530 square feet or 21.128 acres of land more or less.

SAVE AND EXCEPT:

Being 0.0045 of an acre of land, (195.27 square feet) more or less, out of and a part of Tract 4H, Block 2, Ascarate Grant, City of El Paso, El Paso County, Texas, said 0.0045 of an acre of land being described by metes and bounds as follows, to-wit: COMMENCING at a point which is a city monument and located at the centerline of Airway Boulevard, said point is also the point of curvature along said Airway Boulevard centerline; Thence, South 28°21'08" West, a distance of 130.27 feet to the point of intersection of said centerline and the projected northerly Right-of-Way line of Interstate Highway 10 (1H-10); Thence, along said projected Right-of-Way line of 1H-10, South 61°38'52" East, a distance of 60.00 feet to the true point of beginning; Thence, along the Easterly Right-of-Way line of said Airway Boulevard, North 28°21'08" East a distance of 19.00 feet to a point on the proposed Right-of-Way line of 1H-10, said point is also a point of curvature; Thence, 32.75 feet along the arc of a curve to the left, whose central angle is 37°07'07", whose radius is 55.00 feet and whose chord bears South 25°34'38" East, a distance of 32.27 feet to a point of tangency; Thence, along said Northerly existing Right-of-Way line of said Interstate 10, North 61°38'52" West, a distance of 26.08 feet to the true point of beginning, containing an area of 0.0045 of an area (acre?) of land, more or less.

ALSO SAVE AND EXCEPT:

All that certain tract of parcel of land containing 706 square feet lying within the corporate limits of the

City of El Paso, El Paso County, Texas, same being a portion of Tract 4H, Block 2, of the Ascarate Grant and being that same parcel of land described in a Quitclaim Deed from Shell Oil Company to Robert H.

Hoy, Jr., et ux. of record in Volume 2761, Page 1838, of the Deed Records of El Paso County, Tex

also being more particularly described by metes and bounds as follows: BEGINNING at a 1/2 inch rebar

found marking the north center of said Tract 4H, same being the west corner of Tract 4H2A, of said Block 2, and being on the southeast line of Lot 1, Block 4, of the International Industrial Center, Unit 1, an

addition to the City of El Paso, according to the plat thereof recorded in Volume 18, Page 5, of the Plat

Records of El Paso County, Texas; Thence, South 59°39'10" East, with the northwest line of said Tract

4H, same being the southwest line of said Tract 4H2A, a distance of 38.76 feet to a chainlink fence, same

being on the south side of a concrete drain, and being North 56°39'10" West, 687.70

feet, from a found 1/2 inch rebar; Thence, South 77°44'37" West, with the said chainlink fence and along the south side of

said concrete drain, same being the south line of said Robert H. Hoy, Jr., Tract, a distance of 50.92 feet to the southeast line of said Lot 1, Block 4, same being the northwest line of said Tract 4H, and being North

28°21'26" East, 589.39 feet from a found ½ inch rebar; Thence, North 28°21'26" East, with the south east

line of said Lot 1, same being the northwest line of said tract 4H, a distance of 36.56 feet to the point of beginning and containing 706 square feet of land.

ALSO SAVE AND EXCEPT:

Lot 1, Block 1, Howdy's Subdivision (Central) Unit One, an addition to the City of El Paso, El Paso County, Texas, according to the recorded plat of record in the Plat Records of El Paso County, Texas.

and more particularly described as:

BEING A 19.96 ACRE TRACT OF LAND OUT OF A PORTION OF TRACT 4A, NOW KNOWN AS TRACT 4H, BLOCK 2, ASCARATE GRANT, EL PASO COUNTY, TEXAS BEING THE SAME TRACT DESCRIBED IN A DOCUMENT TO MAGELLAN PIPELINE TERMINALS, L.P. ACCORDING TO THE DOCUMENT RECORDED IN DOCUMENT NUMBER 20070077714, OFFICIAL PUBLIC RECORDS EL PASO COUNTY TEXAS;

BEGINNING AT A FOUND 5/8-INCH IRON ROD (N:10661485.99, E:415533.47) FOR THE SOUTHEAST CORNER OF SAID TRACT, FROM WHICH THE FOUND CITY MONUMENT NUMBER 1033 BEARS N 51°16'26" W, A DISTANCE OF 1031.01 FEET;

THENCE N 58°34'05" W, A DISTANCE OF 740.25 FEET TO A FOUND "X" CHISELED IN CONCRETE FOR THE MOST EASTERLY SOUTHWEST CORNER OF SAID TRACT;

{00072167.1}                                        6

*Execution Version*

THENCE N 31°29'49" E, A DISTANCE OF 215.04 FEET TO A SET "X" CHISELED IN ASPHALT FOR AN INTERIOR CORNER OF THIS TRACT COMMON TO THE NORTHEAST CORNER OF A LOT 1, BLOCK 1, HOWDY'S SUBDIVISION (CENTRAL) UNIT ONE, EL PASO COUNTY, AS RECORDED IN VOLUME 75, PAGE 34, PLAT RECORDS EL PASO COUNTY, TEXAS;

THENCE N 58°30'13" W, A DISTANCE OF 215.68 FEET ALONG THE SOUTH LINE OF SAID MAGELLAN TRACT COMMON TO THE NORTH LINE OF SAID LOT ONE TO A SET 1/2-INCH IRON ROD WITH CAP MARKED "GATEWAY MIDLAND" FOR THE MOST NORTHERLY SOUTHWEST CORNER OF SAID TRACT;

THENCE N 31°30'31" E, A DISTANCE OF 749.54 FEET ALONG THE WEST LINE OF SAID MAGELLAN TRACT COMMON TO THE EAST LINE OF THE INTERNATIONAL INDUSTRIAL CENTER, UNIT 1 SUBDIVISION AS RECORDED IN VOLUME 18, PAGE 5, PLAT RECORDS, EL PASO COUNTY, TEXAS TO A SET CHISELED "X" FOR THE MOST SOUTHERLY NORTHWEST CORNER OF SAID TRACT;

THENCE N 80°43'21" E, A DISTANCE OF 50.99 FEET ALONG THE NORTHWEST CORNER OF SAID MAGELLAN TRACT COMMON TO THE SOUTHEAST CORNER OF A TRACT TO HOY FAMILY LIMITED PARTNERSHIP, ACCORDING TO THE DOCUMENT RECORDED IN DOCUMENT NUMBER 20060054513, OFFICIAL PUBLIC RECORDS, EL PASO COUNTY, TEXAS TO A FOUND PK NAIL WITH SPINNER FOR THE MOST NORTHERLY NORTHWEST CORNER OF SAID TRACT;

THENCE S 53°41'38" E, A DISTANCE OF 909.99 FEET ALONG THE NORTH LINE OF SAID MAGELLAN TRACT, COMMON TO THE SOUTH LINE OF VISCOUNT SUBDIVISION AS RECORDED IN VOLUME 60, PAGE 33, PLAT RECORDS EL PASO COUNTY, TEXAS TO A FOUND CHISELED "X" FOR THE NORTHEAST CORNER OF SAID MAGELLAN TRACT;

THENCE S 32°45'26" W, A DISTANCE OF 365.01 FEET ALONG THE EAST LINE OF SAID MAGELLAN TRACT TO A FOUND 5/8-INCH IRON ROD FOR AN INTERIOR CORNER OF SAID MAGELLAN TRACT;

THENCE S 59°44'42" E, A DISTANCE OF 31.47 FEET ALONG THE NORTH LINE OF SAID MAGELLAN TRACT TO A SET 1/2-INCH IRON ROD WITH CAP MARKED "GATEWAY MIDLAND" FOR AN EXTERIOR CORNER OF SAID TRACT;

THENCE S 32°50'26" W, A DISTANCE OF 556.66 FEET TO THE POINT OF BEGINNING AND CONTAINING 19.96 ACRES OF LAND.

*Execution Version*

**Exhibit "B" to Special Warranty Deed**
**Permitted Exceptions**

1. Those restrictive covenants recorded in Volume 1395, Page 525; Volume 922, Page 157, as affected by Volume 1392, Page 459; and those recorded under Clerk's Document No. 20170095686, Official Records of El Paso County, Texas. Omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, or source of income, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law.

2. Taxes for the year 2019, now due and payable but not yet delinquent, and subsequent years not yet due and payable.

3. Easement granted to El Paso Electric Company, by Shell Odessa Refining Company, dated November 3, 1997, filed for record on February 18, 1998 in the Office of the County Clerk of El Paso County, Texas in Volume 3311, Page 425, Official Records El Paso County, Texas.

4. Terms, covenants, conditions and provisions as set forth in that certain Lease Agreement by and between Equiva Services, LLC, as Lessor, and Titan Towers, LIP, as Lessee, dated February 1, 2001, filed for record on April 5, 2001 in the Office of the County Clerk of County, Texas in Volume 3968, Page 1547, Official Records County, Texas.

5. Easement granted to El Paso Electric Company and Mt. States Telephone and Telegraph Company, by El Paso Natural Gas Company, dated June 23, 1958, filed for record on July 7, 1958 in the Office of the County Clerk of El Paso County, Texas in Volume 1407, Page 87, Official Records El Paso County, Texas; with Mountain States Telephone and Telegraph Company's interest transferred to Southwestern Bell Telephone Company, by Deed dated December 17, 1981, filed for record on January 11, 1982, in the Office of the County Clerk of El Paso County, Texas, in Volume 1231, Page 646, Official Records of El Paso County, Texas.

6. Easement granted to El Paso Electric Company and Mt. States Telephone and Telegraph Company, by El Paso Natural Gas Company, dated December 24, 1963, filed for record on April 7, 1964 in the Office of the County Clerk of El Paso County, Texas in Volume 1, Page 1059, Official Records El Paso County, Texas; with Mountain States Telephone and Telegraph Company's interest transferred to Southwestern Bell Telephone Company, by Deed dated December 17, 1981, filed for record on January 11, 1982, in the Office of the County Clerk of El Paso County, Texas, in Volume 1231, Page 646, Official Records of El Paso County, Texas.

7. Easement granted to El Paso Electric Company and Mt. States Telephone and Telegraph Company, by Shell Oil Company, dated September 9, 1974, filed for record on September 13, 1974 in the Office of the County Clerk of El Paso County, Texas in Volume 547, Page 984, Official Records El Paso County, Texas; with Mountain States Telephone and Telegraph Company's interest transferred to Southwestern Bell Telephone Company, by Deed dated December 17, 1981, filed

{00072167.1}                                    8

for record on January 11, 1982, in the Office of the County Clerk of El Paso County, Texas, In Volume 1231, Page 646, Official Records of El Paso County, Texas.

8. Terms, conditions, covenants, provisions and easements, including but not limited to reservation of all water under the land, together with all rights relative thereto, express or implied, in favor of grantor, as set forth in that certain Deed, dated April 14, 1958, filed for record on in the Office of the County Clerk of El Paso County, Texas in Volume 1395, Page 525, Official Records El Paso County, Texas by and between The City of El Paso and El Paso Natural Gas Company.

9. Terms, conditions, covenants and provisions as set forth in that certain Industrial Solid Waste Disposal Site Deed Recordation, dated December 2, 1985, executed by Shell Oil Company, filed for record on December 17, 1985 in the Office of the County Clerk of El Paso County, Texas in Volume 1625, Page 1311, Official Records El Paso County, Texas.

10. Terms, covenants, conditions and provisions as set forth in that certain Lease Agreement by and between The City of El Paso, as Lessor, and El Paso Products Pipeline Company, as Lessee, dated September 20, 1957, filed for record in the Office of the County Clerk of El Paso County, Texas in Volume 1398, Page 256, Official Records El Paso County, Texas.

11. Terms, conditions, covenants and provisions, including but not limited to reservation of all oil, gas and other minerals and a non-exclusive perpetual easement in favor of grantor, together with all rights relative thereto, express or implied, as set forth in that certain Special Warranty Deed, dated May 1, 1996, from Shell Oil Company, to Shell Odessa Refining Company filed for record on May 2, 1996 in the Office of the County Clerk of El Paso County, Texas in Volume 3046, Page 1190, Official Records El Paso County, Texas.

12. Terms, conditions, and provisions, as set forth in that certain Easement and Right of Way Agreement granted to Magellan Pipeline Company, L.P., by Magellan Pipeline Terminals, L.P., dated February 9, 2018, filed for record on February 13, 2018 in the Office of the County Clerk of El Paso County, Texas, under Clerk's Document No. 20180011945.

13. Any rights, interests, or claims which may exist or arise by reason of the following matters disclosed by survey,

| | |
|---|---|
| Job No.: | N/A |
| Dated: | April 30, 2018, last revised January 2, 2019 |
| Prepared by: | Jennifer Ward-Nusz, Registered Professional Land Surveyor Number 6396 |
| Matters shown: | Concrete encroaches and/or protrudes over Southeasterly and Northwesterly portions of property Retention wall encroaches and/or protrudes over Northwesterly property line Rights of third parties in and to electric boxes, water valves, underground electric, underground water lines, power poles, and sanitary sewer manhole |

# EXHIBIT C

# SETTLEMENT AGREEMENT AND RELEASE

IN THE COUNTY COURT AT LAW NUMBER THREE
EL PASO COUNTY, TEXAS

ASHISH NAYYAR and RAHIM NOORANI,          )
                                          )
        Plaintiffs                        )
                                          )
v.                                        )         No. 2020DCV0030
                                          )
PDG PRESTIGE, INC., A Texas Corporation,  )
THE GATEWAY VENTURES, LLC, A Texas        )
Limited Liability Company, and            )
MICHAEL DIXSON, Individually,             )
                                          )
        Defendants.                       )

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is entered into on the date last entered and is between Plaintiffs ASHISH NAYYAR, RAHIM NOORANI, DEEPESH SHRESTHA, and UMESH SHRESTHA and Defendants PDG PRESTIGE, INC., THE GATEWAY VENTURES, LLC, and MICHAEL DIXSON. The purpose of this Settlement Agreement and Release is to achieve a full and complete settlement of all claims and causes of action presently set forth or which could have been asserted in the above entitled and numbered case (the "Lawsuit").

The Parties to this Agreement hereby agree as follows:

1.      **The Lawsuit:**

Plaintiffs filed a lawsuit against Defendants styled *Ashish Nayyar and Rahim Noorani v. PDG Prestige, Inc., The Gateway Ventures, LLC, and Michael Dixson*, Cause No. 2020DCV0030, in the County Court at Law Number Three, El Paso County, Texas (the "Lawsuit") seeking for damages for claims of breach of contract and fraud, as well as other claims. Defendants filed a counterclaim against Plaintiffs claiming breach of contract and seeking rescission or, alternatively,

actual damages.

2.    **No Liability:**

The Lawsuit involves disputed issues of fact and law. The Parties, by entering into this Agreement, do not acknowledge liability or responsibility for the causes of action and damages asserted in the Lawsuit, but specifically deny liability and responsibility for such causes of actions and damages.

3.    **Consideration paid by the Parties:**

In consideration of the release set forth below, the Parties agree to the following:

(a)    Defendants will pay $1.79M to Plaintiffs on or by July 31, 2020. Defendants will wire the funds into escrow for release to Plaintiffs by the payment date.

(b)    Plaintiffs have no ownership interest in the Property, or in The Gateway Ventures, LLC or PDG Prestige, Inc., and will make no further claims of such ownership interest in the Property, or in The Gateway Ventures, LLC or PDG Prestige, Inc.

(c)    Plaintiffs have no business venture or partnership with any of the Defendants, and will make no further claims of such business venture or partnership with any of the Defendants.

(d)    Upon execution and delivery of this Settlement Agreement and Release and the payment of the consideration described in paragraph (a), above, the Parties will enter an Agreed Judgment disposing of all claims, known or unknown, in the Lawsuit, as described in paragraph 6, below.

(e)    All agreements between the parties, other than this Settlement Agreement and the Agreed Judgment to be entered in this case, have been terminated or rescinded.

2

4.    **Unconditional Release by Plaintiffs:**

Based on the consideration from Defendants, as articulated above in paragraph 3, Plaintiffs for themselves and their successors and assigns (collectively, the "Plaintiffs/Releasors"), hereby releases, acquits and forever discharges Defendants PDG PRESTIGE, INC., THE GATEWAY VENTURES, LLC, and MICHAEL DIXSON and their agents, representatives, employees, officers, shareholders, accountants, attorneys, insurers, successors and assigns (collectively, the "Defendants/Released Persons") from any and all claims, causes of action, suits, demands, liens, actions, damages, expenses, fines, awards, compensation, commissions, brokerage fees, damages, costs, fees, judgments, interest, defenses, attorney's fees, professional fees, expert fees, litigation costs, lost profits, lost income, business loss, reputation loss, incidental damage, consequential damage, obligations, duties, payments, responsibilities, agreements, arbitration awards, punitive or exemplary damages, statutory damages, harm, or losses of any kind, at common law or by constitution, statute, treaty, executive order, rule, charter, regulation, public policy, ordinance, or other law, whether international, federal, national, state, or local, domestic or foreign, whether known or unknown, asserted or unasserted, foreseen or unforeseen, foreseeable or unforeseeable, direct or derivative (collectively, the "Claims"), which any of the Plaintiffs/Releasors had, now have, or may hereafter accrue against any of the Defendants/Released Persons based upon any acts or omissions of any of the Defendants/Released Persons relating to any prior contracts, transactions, dealings or communications, any matter at issue in this dispute, and any claim which was or could have been asserted in this dispute, except for any obligations created under this Agreement.

5.    **Unconditional Release by Defendants:**

Based on the consideration from Plaintiffs, as articulated above in paragraph 3, Defendants

3

for themselves and their successors, and assigns (collectively, the "Defendants/Releasors"), hereby release, acquit and forever discharge Plaintiffs ASHISH NAYYAR, RAHIM NOORANI, DEEPESH SHRESTHA, and UMESH SHRESTHA and their agents, representatives, employees, officers, shareholders, accountants, attorneys, insurers, successors and assigns (collectively, the "Plaintiffs/ Released Persons") from any and all claims, causes of action, suits, demands, liens, actions, damages, expenses, fines, awards, compensation, commissions, brokerage fees, damages, costs, fees, judgments, interest, defenses, attorney's fees, professional fees, expert fees, litigation costs, lost profits, lost income, business loss, reputation loss, incidental damage, consequential damage, obligations, duties, payments, responsibilities, agreements, arbitration awards, punitive or exemplary damages, statutory damages, harm, or losses of any kind, at common law or by constitution, statute, treaty, executive order, rule, charter, regulation, public policy, ordinance, or other law, whether international, federal, national, state, or local, domestic or foreign, whether known or unknown, asserted or unasserted, foreseen or unforeseen, foreseeable or unforeseeable, direct or derivative (collectively, the "Claims"), which any of the Defendants/Releasors had, now have, or may hereafter accrue against any of the Plaintiffs/ Released Persons based upon any acts or omissions of any of the Plaintiffs/ Released Persons relating to any prior contracts, transactions, dealings or communications, any matter at issue in this dispute, and any claim which was or could have been asserted in this dispute, except for any obligations created under this Agreement.

6.    **Agreed Judgment Disposing of Lawsuit:**

After execution and delivery of this Settlement Agreement and Release and upon payment of the consideration as described in paragraph 3 (a), above, the parties will request the Court to enter the Agreed Judgment, which will dispose of all claims, known or unknown, in this matter, with the Parties to pay their own costs and attorneys' fees.   The Parties agree to sign and file

4

additional documents, if any, as deemed necessary by the Court to enter the Agreed Judgment.

7.   **Representations by the Parties:**

The Parties hereby represent and acknowledge that they are of sound mind, are not suffering from any form of mental disability, and fully understand this **Agreement**. The Parties further represent and acknowledge that they are fully cognizant of the consequences of signing this **Agreement**. The Parties further represent and acknowledge that they are signing this Agreement freely and voluntarily and for the purposes and consideration herein expressed.

8.   **No additional representations:**

The Parties acknowledge and understand that no representations of fact or opinion have been made by the persons or entities released by this Agreement and that the persons and entities released by this Agreement have made no representations or agreement of any kind or promised to do any act or thing not expressly set forth herein.

9.   **Confidentiality:**

The Parties agree that they will keep the terms of this **Agreement** confidential (the "Confidential Matters") to the extent allowed by law. Confidentiality means that none of the Parties, nor their attorneys, have the right to disclose, directly or indirectly, to any person (other or a person rendering tax or legal advice to any of the Parties) or entity any of the Confidential Matters unless ordered to do so by a court of competent jurisdiction or unless responding to question at deposition to which they have been subpoenaed. In this connection, if any person who is bound by this confidentiality agreement is subpoenaed to a deposition, or court proceeding, he or she shall give the other party written notice not less than 24 hours after having received the subpoena so that the other party will have a reasonable opportunity to seek a protective order protecting the Confidential Matters from disclosure. Confidential Matters do not include any

5

public documents which must be filed in order to effectuate any part of this Agreement.

10.    **Applicable law:**

The validity, construction, interpretation, and enforceability of this Agreement shall be determined and governed by the laws of the State of Texas.

11.    **Choice of Venue and Forum:**

The Parties agree that any action related to the construction or enforcement of this Agreement shall be brought in and proceed in either the state or federal courts of El Paso County, Texas, whichever may properly exercise jurisdiction over the claims.

12.    **Entire Agreement:**

This Agreement constitutes the entire agreement between the Parties with respect to the subject matter herein. No change, modification, alteration or amendment to this Agreement shall be effective unless it is reduced to writing and signed by the Parties hereto.

13.    **Authority of each party:**

Each party signing this Agreement represents and warrants that he, she or it has full power, authority and capacity to sign the Agreement.

14.    **Severability:**

Any provision of this Agreement which is prohibited by law shall be unenforceable between Parties only to the extent of such prohibition without invalidating the remainder of the provisions of the Agreement.

15.    **Counterparts:**

The Parties agree that the original of this document may not be signed by all Parties and that it will become effective when duplicate originals are signed by all Parties.

Signed this _14th_ day of July, 2020.

PLAINTIFF

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

Before me the undersigned authority personally appeared ASHISH NAYYAR, who being first duly sworn by me, stated that he signed the above Settlement Agreement and Release for the purposes and consideration expressed therein.

_____
ASHISH NAYYAR

SWORN TO AND SUBSCRIBED before me on this _14th_ day of July, 2020.

ASIFA SHAMIM
Notary Public, State of Texas
Comm. Expires 03-17-2024
Notary ID 130586568

_____
Notary Public Signature

APPROVED:

_____
MARTY D. PRICE
Attorney for Plaintiffs

7

Signed this ___ day of July, 2020.

## PLAINTIFF

STATE OF TEXAS                  §
                                §
COUNTY OF EL PASO               §

Before me the undersigned authority personally appeared RAHIM NOORANI, who being first duly sworn by me, stated that he signed the above Settlement Agreement and Release for the purposes and consideration expressed therein.

_____
RAHIM NOORANI

SWORN TO AND SUBSCRIBED before me on this 14 day of July, 2020.

_____
Notary Public Signature

ASIFA SHAMIM
Notary Public, State of Texas
Comm. Expires 03-17-2024
Notary ID 130586668

APPROVED:

_____
MARTY D. PRICE
Attorney for Plaintiffs

8

Signed this __9th__ day of ~~June~~ July, 2020.

## PLAINTIFF

STATE OF TEXAS          §
                        §
COUNTY OF EL PASO        §

    Before me the undersigned authority personally appeared DEEPESH SHRESTHA, who being first duly sworn by me, stated that he signed the above Settlement Agreement and Release for the purposes and consideration expressed therein.

_____
DEEPESH SHRESTHA

    SWORN TO AND SUBSCRIBED before me on this __9th__ day of ~~June~~ July, 2020.

_____
Notary Public Signature

APPROVED:

_____
MARTY D. PRICE
Attorney for Plaintiffs

Vega Yika So
My Commission Expires
08/16/2022
ID No. 129958615

9

Signed this ___9th___ ~~June~~ July day of ~~June~~, 2020.

**PLAINTIFF**

STATE OF TEXAS      §

                            §

COUNTY OF EL PASO     §

      Before me the undersigned authority personally appeared UMESH SHRESTHA, who being first duly sworn by me, stated that he signed the above Settlement Agreement and Release for the purposes and consideration expressed therein.

                                      _____
                                      UMESH SHRESTHA

      SWORN TO AND SUBSCRIBED before me on this _9_ day of ~~June~~ July, 2020.

                              _____
                              Notary Public Signature

APPROVED:

_____
MARTY D. PRICE
Attorney for Plaintiffs

Vega Yika So
My Commission Expires
09/16/2022
ID No. 129958615

10

Signed this 20 day of July, 2020.

**DEFENDANT**

STATE OF TEXAS                    §
                                 §
COUNTY OF EL PASO                 §

     Before me the undersigned authority personally appeared MICHAEL DIXSON, who being first duly sworn by me, stated that he signed the above Settlement Agreement and Release for the purposes and consideration expressed therein.

MICHAEL DIXSON

     SWORN TO AND SUBSCRIBED before me on this 20 day of July, 2020.

SIENNA RUBIO
Notary ID #132159215
My Commission Expires
September 4, 2023

Notary Public Signature

APPROVED:

CHANTEL CREWS
Attorney for Defendants

11

Signed this 20 day of July, 2020.

**DEFENDANT**

STATE OF TEXAS                §
                             §
COUNTY OF EL PASO            §

    Before me the undersigned authority personally appeared MICHAEL DIXSON, President of PDG PRESTIGE, INC., who being first duly sworn by me, stated that he signed the above Settlement Agreement and Release for the purposes and consideration expressed therein on behalf of PDG PRESTIGE, INC.

MICHAEL DIXSON
President, PDG PRESTIGE, INC.

    SWORN TO AND SUBSCRIBED before me on this 20 day of July, 2020.

SIENNA RUBIO
Notary ID #132159215
My Commission Expires
September 4, 2023

Notary Public Signature

APPROVED:

CHANTEL CREWS
Attorneys for Defendants

12

DEFENDANT

STATE OF TEXAS          §
                        §
COUNTY OF EL PASO        §

Before me the undersigned authority personally appeared MICHAEL DIXSON, President of PDG PRESTIGE, INC., which is the Manager of THE GATEWAY VENTURES, LLC, who being first duly sworn by me, stated that he signed the above Settlement Agreement and Release for the purposes and consideration expressed therein on behalf of THE GATEWAY VENTURES, LLC.

MICHAEL DIXSON
President, PDG PRESTIGE, INC., Manager of
THE GATEWAY VENTURES, LLC

SWORN TO AND SUBSCRIBED before me on this 20 day of July, 2020.

SIENNA RUBIO
Notary ID #132159215
My Commission Expires
September 4, 2023

Notary Public Signature

APPROVED:

CHANTEL CREWS
Attorneys for Defendants

13

El Páso County - County Court at Law 3

Filed 9/30/2020 2:32 PM
Norma Favela Barceleau
District Clerk
El Paso County
2020DCV0030

## CAUSE NO. 2020DCV0030

| | | |
|---|---|---|
| ASHISH NAYYAR AND RAHIM NOORANI | § § § | IN THE COUNTY COURT |
| **Plaintiffs,** | § § § | |
| | § | |
| PDG PRESTIGE, INC., A TEXAS CORPORATION, THE GATEWAY VENTURES, LLC., A TEXAS LIMITED LIABILITY COMPANY AND MICHAEL DIXSON, INDIVIDUALLY | § § § § § § § | AT LAW NO. 3 |
| **Defendants.** | § § | EL PASO COUNTY, TEXAS |

## ORDER GRANTING FINAL SUMMARY JUDGMENT AGAINST DEFENDANTS

BE IT REMEMBERED, that on the undersigned date came on for hearing Plaintiffs' Traditional Motion for Summary Judgment (the "Motion") against Defendants and submission in accordance with the local rules of this Court and notice regularly given. Upon consideration of the Motion, the pleadings of the parties, and the probative summary judgment evidence and argument of counsel the Court concluded and is of the opinion that Plaintiffs' Traditional Motion for Summary Judgment against Defendants PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually was good and should be sustained. The Court, having considered the above matters and the argument of counsel is of the opinion that judgment in favor of Plaintiffs Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha and against Defendants PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually, should be entered as follows. It is accordingly,

ORDERED, ADJUDGED AND DECREED that the Plaintiffs Ashish Nayyar. Rahim Noorani, Deepesh Shrestha and Umesh Shrestha do have and recover from Defendants PDG

**ORDER GRANTING FINAL SUMMARY JUDGMENT AGAINST DEFENDANTS** 1 | P a g e

## EXHIBIT 2

Copy from re:SearchTX

Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually, jointly and severally, the principal amount of One Million Seven Hundred Ninety Thousand ($1,790,000.00), plus prejudgment and post judgment interest at the lawful rate.

IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha shall recover from Defendants PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually, jointly and severally, reasonable and necessary attorney's fees in the trial court in the amount of Seven Thousand Five Hundred dollars and 00/100ths ($7,500.00).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs shall recover from PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually, jointly and severally, the additional sum of Nine Thousand Dollars and No/100ths ($9,000.00) as additional reasonable and necessary attorney's fees if this Judgment is unsuccessfully appealed by Defendants to court of appeals.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event that a Petition for Review is filed by PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company or Michael Dixson, individually, seeking review by the Texas Supreme Court, Plaintiffs Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha shall recover from the Defendants PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually, jointly and severally, additional reasonable and necessary attorney's fees in the amount of Four Thousand Five Hundred Dollars and No/100ths Dollars ($4,500.00).

**ORDER GRANTING FINAL SUMMARY JUDGMENT AGAINST DEFENDANTS**          2 | P a g e

Copy from re:SearchTX

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event that the Texas Supreme Court grants a Petition for Review and schedules oral argument, Plaintiffs Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha shall recover from Defendants PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually, jointly and severally, additional reasonable and necessary attorney's fees in the amount of Five Thousand Dollars and No/100ths Dollars ($6,000.00).

IT IS FURTHER ORDERED that Plaintiffs Ashish Nayyar, Rahim Noorani, Deepesh Shrestha and Umesh Shrestha are awarded prejudgment interest and post judgment interest on all sums awarded against Defendants PDG Prestige, Inc., A Texas Corporation, The Gateway Ventures, LLC., A Texas Limited Liability Company and Michael Dixson, individually, jointly and severally, and shall have all abstracts of judgment, writs of execution, and other process necessary to enforce this judgment.

IT IS FURTHER ORDERED that Plaintiffs shall recover their taxable court costs from Defendants.

All relief not expressly granted herein is denied. This is a final judgment disposing of all issues and all parties and is subject to appeal.

SIGNED this _30th_ day of _Sept._, 2020.


_Javier Alvarez_
JUDGE PRESIDING


**ORDER GRANTING FINAL SUMMARY JUDGMENT AGAINST DEFENDANTS**          3 | P a g e

Copy from re:SearchTX