IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| THE GATEWAY VENTURES LLC, | § | Case No. 21-30071 |
| | § | |
| Debtor. | § | |
| | § | |

## REPLY REGARDING MOTION TO SEAL (RE: DOCKET NOS. 50, 55, 65)

The Gateway Ventures LLC, the debtor and debtor in possession ("TGV") or the ("Debtor"), files this Reply regarding the objections (Docket Nos. 55, 65) to the *Motion to Seal* (Docket No. 50) and in support thereof would show the Court the following.

**Protecting the Lot 9 sales price is easily distinguishable from *Binh Hoa Le v. Exeter Finance Corporation* 990 F.3d. 410 (5th Cir. 2021).**

The Court and the U.S. Trustee raise the concern that protecting the Lot 9 purchase price could contradict the recent guidance of the Fifth Circuit in *Binh Hoa Le v. Exeter Finance Corporation*, 990 F.3d. 410 (5th Cir. 2021). That case is readily distinguishable from the instant situation on many points, including at least the following, and which differences the objections fail to address.

*First,* the Bankruptcy Code (the "Code") provides a built in, express, and long standing exception to the concerns expressed in *Binh Hoa Le,* namely Code §107(b), which statute was not at issue in the Fifth Circuit's decision.

*Second, Binh Hoa Le* actually is in harmony with Code §107(b) by the recognition that Courts can and should sometimes protect trade secrets. *Id.* at 418. The line by line determination of protection recommended by *Binh Hoa Le* is easily performed in this case due to the limited information sought to be protected (i.e., the Lot 9 purchase price and related deposit information).

***Third,*** *Binh Hoa Le* involved the wholesale elimination of substantial parts of the record. "Result: nearly three-quarters of the record—3,202 of 4,391 pages—is hidden from public view, for no discernable reason other than both parties wanted it that way". *Id.* at 417. By contrast, TGV seeks only to protect public disclosure of the Lot 9 purchase price and deposit information (by which the purchase price may be discerned).

Absent a motion from another party in interest, such protection need last only until the entirety of the Development[1] is sold and need not last into perpetuity. The duration or expiration date of such protection could be revisited by the Court at a subsequent point in time during this case.

***Fourth,*** *Binh Hoa Le* is procedurally and substantively distinguishable in that the District Court in that case sealed massive portions of the record upon a "confidential" designation by the parties. *Id*. at 419-420. The parties had not presented a separate motion to seal to the District Court. *See id.* By stark contrast, TGV has invoked the statutory procedure applied routinely by bankruptcy courts in Texas before and after *Bin Hoa Le* for protecting pricing information that is essential to the maximization of the value of the Development.

***Fifth,*** disclosing the pricing information to creditors under a protective order or confidentiality agreement, which is an entirely normal part of the Chapter 11 process, is a separate issue or mechanism from the protections mandated under Code §107(b).

**Code §107(b) protection is mandatory.**

Code §107 contains the presumption to access of judicial information and the mandatory exception. Code §107(b) also contains the sparingly used "shall" command. Code §107(b) mandates that a bankruptcy court grant the requested relief if the information is confidential commercial information. *In re Orion Pictures Corp.*, 21 F.3d 24, 28 (2nd Cir. 1994). "Congress, itself, has recognized that under compelling or extraordinary circumstances, an exception to the general policy

---

[1] As defined in the Motion to Seal (Docket No. 50) and/or the Motion to Sell (Docket No. 49).

of public access is necessary." *Id.* at 27. Where a party in interest moves to protect commercial information from disclosure, the court must grant protection. *In re Borders Grp., Inc.*, 462 B.R. 42, 46-47 (Bankr.S.D.N.Y. 2011).

**The Lot 9 purchase price constitutes confidential information under Code §107(b).**

The Lot 9 purchase price easily falls within the confidential information that Code §107(b) is designed to protect.

The confidential information to be protected need not rise to the level of a trade secret. *See Borders Group*, 462 B.R. 42, 47 (Bankr.S.D.N.Y. 2011). (citing *Orion*, *supra,* 21 F.3d at 28). Information need not rise to the level of a trade secret, and the information must be so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors. *See In re Motors Liquidation Company*, 561 B.R. 36, 43 (Bankr.S.D.N.Y. 2011).

Other courts have applied Code §107(b) to protect pricing information, as is sought by the Debtor here. *See In re Barney's, Inc.,* 201 B.R. 703, 709 (Bankr.S.D.N.Y.1996) (examples of commercial information that could be sealed include pricing formulae). Courts also will protect customer lists under Code §107(b). *In re Nunn,* 49 B.R. 963, 965 (Bankr.E.D.Va.1985).

The value of each potential lot within the Development for TGV is of the same importance as the situation of a debtor in another line of business seeking to protect customer lists. TGV does not seek protection for its owns sake but instead seeks protection from future purchasers and other sellers near the Development from knowing pricing information that TGV and buyers otherwise and normally could keep confidential.

**Open, immediate disclosure of the Lot 9 will harm TGV and its creditors.**

Disclosure of the final Lot 9 purchase price would influence the purchase price for the rest of the Development, and set an artificial price ceiling functionally causing TGV to bid against itself for the sale of the remainder of the Development.

The Court in *In re Farmland Indus., Inc*. 290 B.R. 364, 369 (Bankr.W.D.\Mo. 2003) recognized the importance of keeping essential sale details confidential during the pendency of the critical phases of a Chapter 11 case, and stated the following (emphasis added).

> The Court is convinced that disclosing to the public—and thereby to potential buyers of the Debtors' assets—the dates by which the Debtors' DIP Lenders are requiring that certain assets be marketed and sold, as a condition of obtaining continued DIP financing, would be potentially detrimental to the ongoing operations of the Debtors, would unfairly benefit the Debtors' competitors by providing them with critical, strategic marketing information, and would most likely have a serious and detrimental impact on the prices for which those assets could be sold. **If a potential buyer has knowledge of a deadline, in effect, by which the Debtors must sell a certain asset, that knowledge gives the potential buyer great leverage over the Debtors and places the Debtors at a distinct disadvantage in the sales bargaining and negotiating process. Clearly, this is "commercial information" that merits protection.**
>
> Similarly, the disclosure of information concerning the Debtors' liquidity—or lack of liquidity—would place the Debtors at a serious disadvantage in the marketing and sale of their assets. Once again, knowledge of liquidity problems in the hands of potential buyers of the Debtors' assets would give those potential buyers substantial leverage over the Debtors. A cash-strapped seller, particularly a cash-strapped seller in bankruptcy, is placed at great disadvantage in the negotiating process. It may well be a desperate seller, and knowledge of that fact would, in the Court's view, have the effect of driving down the amounts that potential buyers might offer for the Debtors' assets. However, if the potential buyers have no particularized knowledge concerning the Debtors' liquidity, no advantage is gained.
>
> **The paramount goal in the sale of assets in a bankruptcy proceeding is to obtain the best price possible for the ultimate benefit of the unsecured creditors of the bankruptcy estate. Disclosure of the information discussed hereinabove would not further that goal; rather, it would hinder and defeat that goal.** An Order prohibiting these disclosures is necessary to protect the bankruptcy estate, as authorized by Bankruptcy Rule 9018.

**Redaction of the purchase price from the Lot 9 PSA strikes the appropriate balance.**

TGV does not seek to seal the entire Lot 9 PSA, but only to redact the purchase price (and the related deposit amounts), which is the most essential piece of commercial information. Redaction is an appropriate, balanced remedy to protect the interests of the TGV as Debtor and the interests of the estate. When protection is required under § 107, the Court has discretion in deciding how to protect commercial information. *See Borders Group*, supra, 462 B.R. at 47. The parties and the Court may still consider in future proceedings whether the sale price for Lot 9 is appropriate without direct reference to the price and by discussing values relative to the price.

WHEREFORE, The Gateway Ventures LLC, the debtor and debtor in possession, respectfully requests that the Court grant the Motion to Seal as filed and/or as modified to satisfy the concerns of the Debtor and parties in interest. Movant respectfully requests such other and further relief to which movant is entitled at law or in equity.

Dated: May 26, 2021

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Jeff Carruth*
    JEFF CARRUTH (TX SBN:. 24001846)
    24 Greenway Plaza Suite 2050
    Houston TX 77046
    Telephone: (713) 341-1158
    Fax: (866) 666-5322
    E-mail: jcarruth@wkpz.com

ATTORNEYS FOR
THE GATEWAY VENTURES LLC

1971105

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon all parties receiving the Court's ECF e-mail notification for this case on March 29, 2021.

    */s/ Jeff Carruth*
    JEFF CARRUTH