**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 21-30071 |
| THE GATEWAY VENTURES LLC | § | (Chapter 11) |
| | § | |
| Debtor. | § | |

**PLAN OF REORGANIZATION OF THE GATEWAY VENTURES LLC DATED July 14, 2021**

**SUMMARY OF IMPORTANT DATES AND DEADLINES**

| | |
|---|---|
| **Deadline to file objections to this Disclosure Statement or to the Plan of Reorganization (the "Objection Deadline"):** | SEE ORDER SETTING DEADLINES |
| **Deadline to submit ballot regarding the Plan of Reorganization (the "Ballot Deadline"):** | SEE ORDER SETTING DEADLINES |
| **Combined Hearing to consider Disclosure Statement and Chapter 11 Plan of Reorganization (the "Confirmation Hearing"):** | SEE ORDER SETTING DEADLINES |
| **Location of Confirmation Hearing:** | United States Bankruptcy Court<br>511 E San Antonio Ave<br>El Paso, TX 79901<br>***Hearing will be conducted electronically under COVID-19 protocols. SEE ACCOMPANYING NOTICE OF HEARING.*** |

## 1. INTRODUCTION.

1.1.    This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of The Gateway Ventures LLC (the "Debtor" or "TGV") from cash flow from future operations and/or sales of property. This Plan dated July 14, 2021 replaces and supersedes any Plan(s) of prior date(s) filed by the Debtor.

1.2.    For convenience, this plan is based upon the official small business form, Form B25B.  However, this is not a "small business case" as defined under Code § 101.  ***Controlling definitions and rules of construction appear in Section 9 below.***

1.3.    The proposed distributions under the Plan and the material terms of the Plan, including the estimated distribution to unsecured creditors is set forth in TABLE 1—Key Plan Terms, Section 2 of the accompanying Plan ("**TABLE 1**").  Secured claims will be paid in full according to the claim(s) filed or pursuant to the agreement of the parties.  General unsecured creditors, other than the Westar Litigation Parties, will receive payment in full.

1.4.    All creditors and equity security holders should refer to Section 3 through Section 6 of this Plan for information regarding the precise treatment of their claim. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. *You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

2.    **SUMMARY OF THE PLAN,  TABLE 1 — KEY PLAN TERMS**.  The key terms of this Plan are set forth in TABLE 1 below.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **TABLE 1  KEY PLAN TERMS** | | | | | | | | | |
| **TREATMENT OF CLAIMS** | | | | | | | | | |
| Class | Creditor | Impared | Allowed Claim | Interest Rate Per Year | Payments ## | Payment Per Month | Total Payments | Note | |
| **Non-classified Claims** | | | | | | | | | |
| | WKPZ Fees (estimated) | n/a | 25,000.00 | n/a | 1 | n/a | 25,000.00 | | |
| | Comptroller | n/a | 2,100.00 | n/a | 1 | n/a | 2,100.00 | | |
| **Secured Claims** | | | | | | | | | |
| 1 | City of El Paso et al. | No | n/a | n/a | n/a | n/a | n/a | | |
| 2 | HomeTax Solutions LLC | No | 374,825.62 | 0.09990 | 120 | n/a | 580,835.81 | | |
| 3 | Legalist | Yes | 10,000,000.00 | 0.12000 | n/a | n/a | 11,000,000.00 | | |
| 4 | Noorani Parties | Yes | 1,790,000.00 | n/a | n/a | n/a | 1,900,000.00 | | |
| 5 | Border Demo.and Env. Inc. | Yes | 33,136.85 | n/a | n/a | n/a | 34,462.24 | | |
| **Priority Unsecured Claims** | | | | | | | | | |
| | None. | | n/a | n/a | n/a | n/a | n/a | | |
| **General Unsecured Claims** | | | | | | | | | |
| 6 | General Unsecured - Non-Insider | Yes | 21,837.00 | 0.00000 | n/a | n/a | 21,837.00 | | |
| 7 | General Unsecured - Insider | Yes | 2,756,830.00 | n/a | n/a | n/a | n/a | | |
| 8 | Westar Litigation Parties | Yes | to be determiend | n/a | n/a | n/a | 1,525,000.00 | | |
| | | | **TOTAL PLAN PAYMENTS + VALUE** | | | | 0.00 | 15,087,135.05 | | |
| | | | **Est. distribution to uinsecured creditors per dollar** | | | | | 0.00 | | |
| **Total exit expenses - administrative expenses + other items payable by Effective Date** | | | | | | | | | |
| | Attorneys' fees (est.) | n/a | 25,000.00 | 0.00000 | 1 | 25,000.00 | 25,000.00 | | |
| | | | **TOTAL EXIT EXPENSES** | | | | 52,100.00 | | | |
| | | | **TOTAL EXIT + FIRST MONTH** | | | | 52,100.00 | | | |
| **EQUITY IN REORGANIZED DEBTOR** | | | | | | | | | |
| | Holder | % Interest | Pre-Bk Interest | Consideration | | | | | |
| | PDG Pretige Inc. | 100% | 100% Class A | Unsecured claim - see above | | | | | |
| **MANAGEMNET AFTER REORGANIZATION** | | | | | | | | | |
| | Name | Position | | Comp. Per Month | Comp. Per Year | | | | |
| | PDG Prestige, Inc. / M. Dixson | Manager | | 16,666.67 | 200,000.00 | | | | |
| **EXECUTORY CONTRACTS AND/OR LEASES  TO BE ASSUMED** | | | | | | | | | |
| | Counter Party | Description of Contract | | Cure Amount | Payments Per Month | | | | |
| | Spectrum Gulf Coast LLC | Ground Lease | | 0.00 | 0.00 | | | | |
| | REP Commercial | Broker agreement (post-petition, see motion) | | 0.00 | 0.00 | | | | |
| | Any insurance policies | Any insurance policies | | 0.00 | 0.00 | | | | |
| **EXECUTORY CONTRACTS AND/OR LEASES  TO BE REJECTED** | | | | | | | | | |
| | Counter Party | Description of Contract | | | | | | | |
| | Any and all other contracts | | | | | | | | | |

**3.**  **CLASSIFICATION OF CLAIMS**

The classification of claims and interests and the impairment of claims and interests is set forth in TABLE 1.

**4.**  **TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

4.1.  **Unclassified Claims.**  Certain types of claims are automatically entitled to specific treatment under the Code.  Under Code §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, pursuant to Code §1129(a)(1), the Debtor has *not* placed such claims in any class.

4.2.  **Administrative Expenses.**  Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code §507(a)(2).  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

As of the filing of this Plan, the Debtor has received no notice of any administrative expense, other than attorneys' fees and expenses of Weycer Kaplan Pulaski & Zuber P.C. ("WKPZ") incurred for TGV.  As a condition of and prior to the Effective Date, TGV shall reserve sufficient funds to satisfy the anticipated final allowed administrative claim of WKPZ for fees and expenses.

4.3.  **Priority Tax Claims.**  Priority tax claims are unsecured income, employment, and other taxes described by Code §507(a)(8). Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

As of the filing of this Plan, the only priority tax claim is that of the Texas Comptroller (Claim No. 6) for franchise taxes, in the total claim amount of $2,120.70.

**5.**  **TREATMENT OF CLAIMS AND INTERESTS.**  The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

5.1.  **Class 1 — City of El Paso. et al.**

   5.1.1.  <u>Identity of Claims in Class</u>:  Class 1 consists of the allowed secured claim of the City El Paso et al. with respect to 2021 ad valorem taxes due and payable in 2022.

   5.1.2.  <u>Treatment</u>:  The City of El Paso will retain its statutory lien in, to, and/or against the Subject Property.  Nothing contained in the Plan alters the due date for the payment of the 2021 taxes in 2022.

   5.1.3.  **Voting**.  Class 1 is unimpaired and deemed to accept the Plan.

5.2.    **Class 2 — Secured claim of Home Tax Solutions (formerly City of El Paso et al).**

5.2.1.    Identity of Claims in Class:  Class 2 consists of the allowed secured claim of Home Tax Solutions, LLC ("Home Tax") for the refinance of the property tax claims asserted by the City of El Paso et al. for the 2020 property taxes due and payable in 2021 as referenced and described in Disclosure Statement §3.3.5.

5.2.2.    Treatment:  The Home Tax transaction is ratified and confirmed.  TGV shall pay (and continue to pay) the allowed secured claim of Home Tax according to the contractual terms.  The Home Tax loan and security documents shall continue in full force and effect, including the ability of TGV to sell certain lots and the release prices for such lots as set forth in such documents.  Home Tax shall retain the statutory and/or contractual liens.

5.2.3.    **Voting**.  Class 2 is unimpaired and deemed to accept the Plan.

5.3.    **Class 3 — Legalist allowed secured claim.**

5.3.1.    Identity of Claims in Class:  Class 3 consists of the allowed secured claim pursuant to the order entered by the Court on June 23, 2021 (Docket No. 98) (the "DIP Order") approving the Code § 364(d) debtor-in-possession financing and primary lien transaction between TGV and Legalist (and which financing was used to extinguish the then existing first lien indebtedness owed to HD Lending, LLC).  Capitalized terms in this Section 5.2 of the Plan shall have the same meaning as ascribed to such terms in the DIP Order unless otherwise defined herein.

5.3.2.    Treatment:  The DIP Credit Agreement and the DIP Order shall remain in effect and govern the relations between the parties following the Effective Date, including the provisions permitting the potential sales of Lot 9, 10, and/11, except as provided herein. Specifically, the DIP Credit Agreement and the DIP Order are modified as set forth below.

5.3.2.1.    TGV may obtain a final decree and closure of this case without triggering any event of default under the DIP Credit Agreement and the DIP Order.

5.3.2.2.    Legalist may reopen this case to enforce the terms of the DIP Credit Agreement and the DIP Order, as modified by this Plan, and may enforce the rights and remedies provided under the DIP Credit Agreement, the DIP Order, and this Plan, including but not limited to any potential judicial foreclosure against the DIP Collateral, in the Bankruptcy Court without the necessity of proceeding in state court to exercise such remedies.  The Bankruptcy Court shall retain jurisdiction over such matters.

5.3.3.    **Voting**.  Class 3 is impaired and is entitled to vote for or against the Plan.

5.4.    **Class 4 — Noorani Parties.**

5.4.1.    Identity of Claims in Class:  Class 4 and consists of the allowed secured claim of Ashish Nayyar, Rahim Noorani, Deepesh Shrestha, and Umesh Shrestha (collectively, the "Noorani Parties") arising from a judgment lien against the Subject Property in the face amount of $1,790,000.00.

5.4.2.  <u>Treatment:</u>  Within three (3) business days after the Effective Date, TGV will convey Lot 9 of the Subject Property to the Noorani Parties (or their designee to be specified in the Order confirming this Plan) free and clear and any and all liens, claims, encumbrances, and/or other interests (including any such interests held and/or asserted by Home Tax and/or Legalist), as is, where is, by a Special Warranty Deed providing only the warranties of title previously conveyed to TGV but not otherwise warranting title, and without any reservation of minerals, water, or any other interest in, to, or against Lot 9 of the Subject Property, and subject to any and all development and/or deed restrictions already in place including but not limited to such contained in the *Master Declaration of Covenants Conditions and Restrictions* recorded at Doc. No. 20200057615, El Paso County Official Public Records, and/or consistent with the development of the Subject Property, in full and complete satisfaction of the judgment lien claim.

5.4.3.  The proposed form of Special Warranty Deed will be filed on the docket as a supplement to the Plan and Disclosure Statement with ten (10) days of the Confirmation Hearing.  A copy of the Special Warranty Deed otherwise may be obtained by contacting the undersigned.

5.4.4.  Upon such conveyance, TGV, PDG Prestige, Inc., and Michael Dixson shall be Fully Released by each of the Noorani Parties, and each of the Noorani Parties shall execute and deliver to each of TGV, PDG Prestige, Inc., and Michael Dixson (1) a release of judgment lien (2) a stand alone general form of release providing for the Full Release of TGV, PDG Prestige, Inc., and Michael Dixson, the proposed forms of which will be filed on the docket as a supplement to the Plan supplement to the Plan and Disclosure Statement with ten (10) days of the Confirmation Hearing.

5.4.5.  <u>**Voting**</u>.  Class 4 is impaired and is entitled to vote for or against the Plan.

5.5.  **Class 5 — Allowed secured claim of Border Demolition and Environmental, Inc.**

5.5.1.  <u>Identity of Claims in Class:</u>  Class 5 consists of the statutory lien claim of Border Demolition and Environmental, Inc.  For purposes of the Plan, the claim will be allowed in the original principal amount of $33,136.85 plus a flat 4.00% of such amount for interest accrual and collection costs, for a total allowed claim in the amount of $34,462.24.

5.5.2.  <u>Treatment:</u>  Within thirty (30) days of the Effective Date, TGV will pay this claim in full in the amount set forth above, and upon receipt of such payment Border Demolition and Environmental, Inc. shall record releases of all liens against TGV and/or the Subject Property.

5.5.3.  <u>**Voting**</u>.  Class 5 is impaired and may vote for or against the Plan.

5.6.  **Class 6 — General Unsecured Claims, Non-Insiders.**  General unsecured claims are not secured by property of the estate and are not entitled to priority under Code §507(a).

5.6.1.  <u>Identity of Claims in Class:</u>  As set forth in **Exhibit TGV304** to the Disclosure Statement, the Class 6 general unsecured creditors consist of general unsecured claims in aggregate minimum amount of at least / approximately $21,837.00.

5.6.2.    Treatment:  The Class 6 creditors will receive the full payment of the allowed amount of each such claim within no later than the earlier of (i) the first anniversary of the Effective Date or (ii) thirty (30) days of the closing of any bulk sale of the Subject Property (minus Lot 9) in excess of $15,000,000.00, provided, however, that the treatment of Class 6 is subject to revision in the event that the class of general unsecured claims of non-insiders expands the beyond the amount estimated above prior to the Effective Date.

5.6.3.    **Voting.**  Class 6 is impaired and may vote for or against the Plan.

5.7.    **Class 7 — General Unsecured Claims, Insiders (PDG Prestige, Inc.).**

5.7.1.    Identity of Claims in Class:  The Class 7 general unsecured creditors, insiders, consists of the single claim of PDG Prestige, Inc. in the amount of $2,756,830.00.

5.7.2.    Treatment:  PDG Prestige, Inc. will receive 100% of the equity interest in the reorganized TGV in full and final satisfaction of this claim.

5.7.3.    In the event that the holder of any existing equity interest in TGV successfully objects to the cancellation of the prepetition equity interest as set forth in Class 7 below, then the allowed claim of PDG Prestige, Inc. shall be paid in full as and when sufficient funds become available following satisfaction of the allowed claims in Classes 1-5 above.

5.7.4.    **Voting.**  Class 7 is impaired and may vote for or against the Plan.

5.8.    **Class 8 — Westar Litigation Parties.**

5.8.1.    Identity of Claims in Class:  The group referred to in Class 8 as the "Westar Litigation Parties" consists of Westar Investors Group LLC, Saleem Makani, Suhail Bawa, Suresh Kumar, and Bankin Bhatt, and who are the opponents of TGV in the Westar Lawsuit (which is described in the §3.3.5 of the Disclosure Statement).  Each of the Westar Litigation Parties has filed a proof of claim, to which claims TGV has objected (and requested that such objections be consolidated with the Westar Lawsuit).  Generally speaking, one or more of the claims filed by the Westar Litigation Parties overlap with one another and/or reflect claims made between or against one or more of the other Westar Litigation Parties.  NOTHING CONTAINED IN THE DISCLOSURE STATEMENT OR PLAN SHOULD BE READ TO CONTRADICT THE PLEADINGS OF TGV, PDG PRESTIGE, INC., AND/OR MICHAEL DIXSON ON FILE IN THE WESTAR LAWSUIT.

5.8.2.    Treatment:  The Westar Litigation Parties will receive Option A or Option B as set forth below, as selected by TGV on or before the Confirmation Hearing.

**OPTION A:**

(1)    Westar Investors Group LLC (and each of the Westar Litigation Parties to the extent applicable) shall release any lis pendens filed against the Subject Property within three (3) days of the Effective Date.  A proposed form of release will be filed on the docket as Plan supplement within ten (10) days of the Confirmation Hearing.

(2)    Within three (3) business days after the Effective Date, TGV will convey  a portion of the Subject Property equal to 1.5 acres in area, as selected by TGV in its sole

discretion (the "Lot XX"), to Westar Investors Group LLC (or its designee to be specified in the Order confirming this Plan), free and clear and any and all liens, claims, encumbrances, and/or other interests (including any such interests held and/or asserted by Home Tax and/or Legalist), as is, where is, by a Special Warranty Deed providing only the warranties of title previously conveyed to TGV but not otherwise warranting title, and without any reservation of minerals, water, or any other interest in, to, or against Lot XX of the Subject Property, and subject to any and all development and/or deed restrictions already in place and/or consistent with the development of the Subject Property including but not limited to such contained in the *Master Declaration of Covenants Conditions and Restrictions* recorded at Doc. No. 20200057615, El Paso County Official Public Records, in full and complete satisfaction of all facts, claims, issues, rights, and remedies asserted by the Westar Litigation Parties against TGV, PDG Prestige, Inc., and/or Michael Dixson.

(3)      The proposed form of Special Warranty Deed will be filed on the docket as a supplement to the Plan and Disclosure Statement with ten (10) days of the Confirmation Hearing.   A copy of the Special Warranty Deed otherwise may be obtained by contacting the undersigned.

(4)      Upon such conveyance of Lot XX as describe above, (a) each of TGV, PDG Prestige, Inc., and Michael Dixson shall be Fully Released by each of the Westar Litigation Parties, and each of the Westar Litigation Parties shall execute and deliver to each of TGV, PDG Prestige, Inc., and Michael Dixson a stand alone general form of release, the proposed form(s) of which will be filed on the docket as a supplement to the Plan supplement to the Plan and Disclosure Statement with ten (10) days of the Confirmation Hearing, and (b) each of the Westar Litigation Parties shall dismiss TGV, PDG Prestige, Inc., Michael Dixson, and any other related parties with prejudice from the Westar Lawsuit.  As a result of such release, the Westar Lawsuit shall be remanded to the originating state court (and for administrative purposes TGV may be the movant with respect to such remand).

### OPTION B:

(1)      Westar Investors Group LLC (and each of the Westar Litigation Parties to the extent applicable) shall release any lis pendens filed against the Subject Property within three (3) days of the Effective Date.  A proposed form of release will be filed on the docket as Plan supplement within ten (10) days of the Confirmation Hearing.

(2)      Upon the Effective Date, the Westar Lawsuit shall be remanded to the originating state court.

(3)      After the Effective Date, TGV (with PDG Prestige, Inc. and Michael Dixson) shall then litigate (or later settle within the sole discretion of TGV) the Westar Lawsuit to a final conclusion.

(4)      TGV will place fifty percent (50.00%) of the net proceeds of any sale of the Subject Property, minus Lot 9, or any portion(s) thereof, and following any payments required to be made to Home Tax and/or Legalist following the Effective Date, up to a maximum aggregate amount of $1,525,000.00, into an escrow account (the "Westar Escrow") for the satisfaction in full of any liability of TGV, PDG Prestige, Inc., and

Michael Dixson adjudicated against such parties in the Westar Lawsuit.  TGV may accelerate the payments in TGV's sole discretion.

(5)     The Westar Escrow shall be the maximum recovery available to any and/or all of the Westar Litigation Parties against TGV, PDG Prestige, Inc., and/or Michael Dixson.

(6)     TGV promptly shall report the repot the results of any and all sales post-Effective Date to each of the Westar Litigation Parties.

(7)     Any of the Westar Litigation Parties may reopen this case to enforce the escrow requirements of TGV herein, and the Bankruptcy Court shall retain jurisdiction for such limited purposes.

(8)     Upon fulfillment of the Westar Escrow, each of TGV, PDG Prestige, Inc., and Michael Dixson shall be Fully Released by each of the Westar Litigation Parties, and each of the Westar Litigation Parties shall execute and deliver to each of TGV, PDG Prestige, Inc., and Michael Dixson a stand alone general form of release, the proposed form(s) of which will be filed on the docket as a supplement to the Plan supplement to the Plan and Disclosure Statement with ten (10) days of the Confirmation Hearing; provided, however, that each of TGV, PDG Prestige, Inc., and Michael Dixson shall remain parties to the Westar Lawsuit fur all purposes relating to the final adjudication of final potential liability of such parties to be satisfied of and from the Westar Escrow, only.

(9)     Any excess amounts remaining in the Westar Escrow following the conclusion of the Westar Lawsuit shall be released to TGV and/or its designee.

5.8.3.   **Voting.**  Class 8 is impaired and may vote for or against the Plan.

5.9.   **Class 9 — Class of Equity Interest Holders.**

As of the Petition Date, the following constitute the equity structure of TGV as set forth below.

| Class | Holder | % Ownership / LLC units |
|---|---|---|
| A | PDG Prestige Inc. | 100% |
| B | PDG Prestige Inc. | 93% |
| B | Wester Investors Group LLC | 7% |

As a result of the treatment of set forth in Class 6 above, the equity interests / LLC units described below shall be canceled, and 100% of the equity interests / LLC units shall be re-issued to PDG Prestige, Inc.

Class 9 is impaired and may vote for or against the Plan.

6.   **ALLOWANCE AND DISALLOWANCE OF CLAIMS**

6.1.   Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

6.2.   <u>Delay of Distribution on a Disputed Claim.</u>  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.3.   <u>Settlement of Disputed Claims.</u>  After the Effective Date, the Debtor will have the power and authority to settle and compromise a disputed claim without court approval and without compliance with Bankruptcy Rule 9019.

**7.      PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1.   **Assumed Executory Contracts and Unexpired Leases.**

7.1.1.   The Debtor _**ASSUMES**_ the executory contracts and/or unexpired leases referenced and described in TABLE 1 upon the date of the entry of the order confirming this Plan, including specifically the broker contract.

7.1.2.   The Debtor will be conclusively deemed to have _**REJECTED**_ all executory contracts and/or unexpired leases not expressly assumed above, or before the Effective Date or as otherwise specified in TABLE 1.

7.1.3.   **PROOF OF CLAIM FOLLOWING REJECTION:  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than <u>fourteen (14) days</u> after the date of the order confirming this Plan.**  Any such claim will be treated, if allowed general unsecured claim and the general unsecured creditor class will be adjusted accordingly.

**8.      MEANS OF IMPLEMENTING THE PLAN.**

8.1.   **Source of Payments.**  Payments and distributions under the Plan will be funded by the going forward business operations of the hotel property.

8.2.   **Post-confirmation Management.**  The post-confirmation management of the Debtor, and the compensation for each such person is set forth in the Disclosure Statement and in TABLE 1.

8.3.   **Risk Factors.**  The proposed Plan has the following risks:  The Debtor potentially will be unable to complete the sale of the Subject Property in accordance with the development plan.  The Debtor potentially will not generate sufficient cash flow to service the debts to be paid over time under the Plan.  The general economic uncertainty associated with the COVID-19 pandemic provides substantial additional risk.

**9.  GENERAL PROVISIONS**

9.1.   **Definitions and Rules of Construction.**  The definitions and rules of construction set forth in Code §§101 and 102 shall apply when terms defined or construed in the Code.  Other terms are defined throughout the Plan and/or the Disclosure Statement, and terms may be defined in the Disclosure Statement and then used in the Plan and vice versa.  Any reference to the Debtor that applies to any period of time after the Effective Date shall refer to the Debtor as the Reorganized Debtor.  In addition, the following terms used in the Plan and/or Disclosure Statement are defined below.

9.1.1.   "_**Full Release**_" or "_**Fully Release**_" or"_**Fully Released**_" or shall mean and refer to the releases and discharges from any and all claims, demands, debts, liabilities, accounts,

costs, expenses, liens, causes of action, verdicts and judgments of any kind whatsoever, at common law or in equity, statutory, or otherwise, that each releasing party possesses or might possess, known or unknown, against each released party from the beginning of time through and until the present.

9.2. **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.3. **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.4. **Primacy of the Plan and Confirmation Order.** To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.

9.5. **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.6. **Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.7. **Corporate Governance.** After the Effective Date of the order confirming the Plan, the management of the Debtor will consist of the following: PDG Prestige, Inc. (Michael Dixson, President), Director and Manager (compensation $200,000 per year, if funds available).

9.8. **Corporate Authority.** All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further approval, notice or meetings, that might otherwise be required under applicable state law or otherwise, other than the notice provided by serving this Plan on all known creditors of TGV, all interest holders, and all current directors or managers o of TGV.

9.9. **Sales of Property.** Any sales, transfers, and/or conveyances of some or all of the Subject Property shall be made pursuant to, at minimum, constitutes sales under Code §§ 363(f), 1122(a)(5), and/or 1125(b)(4), and each such sale, transfer, and/or conveyance shall be free and clear and any lien, claims, encumbrances, and/or any other interests, expect as specified above with respect to particular Lots and/or particular conveyances.

9.10. **Fixing of Claims.** To the extent that the modification and/or fixing of any claim occurs under the Plan, the Plan also constitutes an objection to any filed proof of claim and/or scheduled claim under Code §502 and/or Bankruptcy Rules 3007 and 9014, and any applicable Local Rules.

9.11. **Settlement of Claims and Disputes.** The Plan also constitutes a motion under Bankruptcy Rule 9019 to the extent necessary to confirm the Plan.

9.12. **Debtor name change.** The Debtor may change its name and/or adopt one or more business aliases after the Effective Date.

10. **EFFECT OF CONFIRMATION OF PLAN — DISCHARGE**

On the effective date of the Plan, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the effective date, to the extent specified in Code §1141(d)(1)(A) except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in Code §1141(d)(6)(B). After the effective date of the Plan your claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

11. **EFFECTIVE DATE OF PLAN.**

The effective date of this Plan (the "Effective Date") is the first business day following the entry of the Order confirming this Plan.

Alternatively, the Debtor may elect and specify in the Order confirming this plan then the Effective Date shall be the first business day following the date that is fourteen (14) days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated. *The Effective Date will occur without further notice by the Debtor*.

12. **FINAL DECREE**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

13. **OTHER PLAN PROVISIONS**

13.1. **Scope and Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to: *(i)* hear and determine pending applications for the assumption or rejection of contracts or leases and the allowance of Claims resulting therefrom; *(ii)* hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, and including any Estate Actions; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise as to the settlement or compromise of any Estate Actions post-Effective Date; *(iii)* ensure that distributions to holders of Allowed Claims are accomplished as provided herein; *(iv)* hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or Interest, and to enter Estimation Orders; *(v)* hear and determine all Fee Applications and Fee Claims; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under section Code §330 or otherwise as to the allowance or payment of professional fees post-Effective Date; *(vi)* enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated; *(vii)* hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan; *(viii)* enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder; *(ix)* consider any modification of the Plan pursuant to Code § 1127, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; *(x)* enter and implement orders or take such other

actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order; *(xi)* recover all assets of the Debtor and property of the estate, wherever located; *(xii)* hear and determine matters concerning state, local, and federal taxes in accordance with Code §§ 346, 505, and 1146; *(xiii)* hear and determine any other matter not inconsistent with the Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and enter a final decree closing the Bankruptcy Case; *__and (xiv) to reopen the case and enforce the Plan as set forth in Section 5 above.__*

13.2.  __Avoidance actions and litigation.__  Post-confirmation litigation and the prosecution of avoidance actions and/or other estate claims are referenced and described in the Disclosure Statement.  TGV reserves the right to prosecute and/or defend the Westar Lawsuit and any other estate claims referenced and described in the Disclosure Statement and/or Plan.

13.3.  *__Releases of TGV Personnel.__  The "Released Parties" or each a "Released Party" to which this Section of the Plan applies are Michael Dixson and PDG Prestige, Inc.  Pursuant to Code §1123(b), and except as otherwise specifically provided in the Plan, on and after the Effective Date, for good and valuable consideration, including their cooperation  and contributions to this Bankruptcy Case, each Released Party is deemed expressly, unconditionally, generally, and individually and collectively, acquitted, released, and discharged by the Debtor, the Reorganized Debtor, and the estates, each on behalf of itself and its predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, from any and all claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtor, any claims asserted or assertable on behalf of any holder of any claim against or interest in the Debtor and any claims asserted or assertable on behalf of any other entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, by statute or otherwise, that such releasing party (whether individually or collectively), ever had, now has or hereafter can, shall or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor' restructuring efforts, any avoidance actions, claims or causes of action identified or set forth in the Debtor's schedules, including Schedule A/B and F, causes of action based on veil piercing or alter-ego theories of liability, the purchase, sale, or rescission of the purchase or sale of, or any other transaction relating to any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is affected by or classified in the Plan.*

13.4.  *__Releases of Professionals.__  On the Effective Date and pursuant to Code § 1123(b)(3)(A), TGV, and to the maximum extent provided by law, its agents, release and forever discharge all claims, including acts taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into or any other act taken or entitled to be taken in connection with the Plan or this case against the following, whether known or unknown:*

13.4.1.  *__TGV's Professionals, including but not limited to, Weycer Kaplan Pulaski & Zuber P.C. ("WKPZ"), will be released from any and all claims and liabilities other than__*

*gross negligence and willful misconduct or except as otherwise provided under the Professional Code of Responsibility (provided, however, the fees and expenses of WKPZ will be subject to final allowance under Code §330).*

13.5.  **Exculpation.**  *Neither TGV nor any of its respective present members, officers, directors, employees, or professionals (including WKPZ) shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

13.6.  **U.S. Trustee Fees.**  The reorganized TGV shall timely pay all quarterly fees assessed after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this case or enters an order either converting this case to a case under Chapter 7 or dismisses the case.

**THE GATEWAY VENTURES, LLC, DEBTOR AND DEBTOR-IN-POSSESSION**

**By:  PDG Prestige, Inc.**
**Manager of The Gateway Ventures LLC**

/s/ Michael Dixson
**By:  Michael Dixson, President**

Jeff Carruth (SBT #24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(713) 341-1158, fax (866) 666-5322
jcarruth@wkpz.com
ATTORNEYS FOR THE GATEWAY VENTURES LLC
DEBTOR AND DEBTOR IN POSSESSION