# THE GATEWAY VENTURES, LLC

## AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

Dated as of December 18, 2018

THE LLC INTERESTS REPRESENTED BY THIS LIMITED LIABILITY COMPANY AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY OTHER APPLICABLE SECURITIES LAWS. SUCH INTERESTS MAY NOT BE SOLD, ASSIGNED, PLEDGED OR OTHERWISE DISPOSED OF AT ANY TIME WITHOUT EFFECTIVE REGISTRATION UNDER SUCH ACT AND LAWS, OR EXEMPTION THEREFROM, AND COMPLIANCE WITH THE OTHER RESTRICTIONS ON TRANSFERABILITY SET FORTH HEREIN.

## TABLE OF CONTENTS

Page

**ARTICLE I CERTAIN DEFINITIONS** ................................................................................................. 1

**ARTICLE II ORGANIZATIONAL MATTERS** .................................................................................. 9
2.1 Formation of LLC .................................................................................................................. 9
2.2 The Certificate, Etc ............................................................................................................... 9
2.3 Name ....................................................................................................................................... 9
2.4 Purpose ................................................................................................................................... 9
2.5 Powers of the LLC ............................................................................................................... 10
2.6 Foreign Qualification .......................................................................................................... 10
2.7 Principal Office; Registered Office ................................................................................... 10
2.8 Term ...................................................................................................................................... 10
2.9 No State-Law Partnership .................................................................................................. 10

**ARTICLE III UNITS** .......................................................................................................................... 10
3.1 Unitholders ........................................................................................................................... 10
3.2 Unitholder Meetings. ......................................................................................................... 12
3.3 Action of Unitholders by Written Consent or Telephone Conference ........................ 14
3.4 Issuance of Additional Units and Interests ..................................................................... 14
3.5 Preemptive Rights ............................................................................................................... 15
3.6 No Withdrawal ..................................................................................................................... 16
3.7 Loans from Unitholders ...................................................................................................... 16
3.8 Distributions In-Kind .......................................................................................................... 16
3.9 Transfer of Units ................................................................................................................. 16

**ARTICLE IV DISTRIBUTIONS AND REDEMPTIONS** ............................................................... 16
4.1 Distributions ........................................................................................................................ 16

**ARTICLE V BOARD OF MANAGERS; OFFICERS** ...................................................................... 17
5.1 Management by the Board of Managers ........................................................................... 17
5.2 Composition and Election of the Board of Managers ..................................................... 18
5.3 Board Meetings and Actions by Written Consent .......................................................... 19
5.4 Committees; Delegation of Authority and Duties ........................................................... 20
5.5 Officers ................................................................................................................................. 21
5.6 Limitation of Liability ......................................................................................................... 22

**ARTICLE VI GENERAL RIGHTS AND OBLIGATIONS OF UNITHOLDERS** ............................ 22
6.1 Limitation of Liability ......................................................................................................... 22
6.2 Lack of Authority ................................................................................................................ 23
6.4 No Right of Partition ........................................................................................................... 23
6.4 Unitholders Right to Act ..................................................................................................... 23
6.5 Transactions between the LLC and the Unitholders ....................................................... 23
6.6 Confidentiality ..................................................................................................................... 23

**ARTICLE VII EXCULPATION AND INDEMNIFICATION** .......................................................... 24
7.1 Exculpation .......................................................................................................................... 24
7.2 Right to Indemnification ..................................................................................................... 24
7.3 Advance Payment ............................................................................................................... 24
7.4 Indemnification of Employees and Agents ...................................................................... 24

7.5    Appearance as a Witness ............................................................................................... 25
7.6    Non-exclusivity of Rights .............................................................................................. 25
7.7    Insurance ........................................................................................................................ 25
7.8    Savings Clause ............................................................................................................... 25

**ARTICLE VIII BOOKS, RECORDS, ACCOUNTING AND REPORTS** ............................................ **25**
8.1    Records and Accounting ................................................................................................. 25
8.2    Fiscal Year ..................................................................................................................... 26
8.3    Transmission of Communications ................................................................................. 26
8.4    LLC Funds ...................................................................................................................... 26

**ARTICLE IX CERTAIN TAX AND ACCOUNTING MATTERS** ........................................................ **26**
9.1    Partnership for Tax Purposes ........................................................................................ 26
9.2    Capital Accounts ............................................................................................................ 26
9.3    Negative Capital Accounts ............................................................................................ 27
9.4    Allocations ..................................................................................................................... 27
9.5    Special Allocations ........................................................................................................ 28
9.6    Tax Allocations .............................................................................................................. 29
9.7    Amounts Withheld ......................................................................................................... 29
9.8    Tax Returns .................................................................................................................... 29
9.9    Tax Information .............................................................................................................. 30
9.10   Tax Representative. ........................................................................................................ 30
9.11   Code Section 83 of Safe Harbor Election; Code Section 83(b) Election ......................... 31
9.12   Code Section 754 Election ............................................................................................. 32

**ARTICLE X TRANSFER OF LLC INTERESTS** ................................................................................. **32**
10.1   Transfers by Unitholders .............................................................................................. 32
10.2   Approved Sale; Drag Along Obligations; Public Offering .............................................. 33
10.3   Effect of Assignment .................................................................................................... 34
10.4   Restriction on Transfer ................................................................................................. 35
10.5   Transfer Fees and Expenses .......................................................................................... 35
10.6   Void Transfers ............................................................................................................... 35
10.7   Death .............................................................................................................................. 35
10.8   Involuntary Transfers .................................................................................................... 36
10.9   Purchase of Units Following Breach or Termination. ..................................................... 37
10.10  Call Option .................................................................................................................... 38
10.11  Repurchase Transactions. .............................................................................................. 38
10.12  Right of First Refusal .................................................................................................... 39
10.13  Legend ........................................................................................................................... 40

**ARTICLE XI ADMISSION OF UNITHOLDERS** ................................................................................ **40**
11.1   Substituted Unitholders ................................................................................................ 40
11.2   Additional Unitholders ................................................................................................. 40
11.3   Optionholders ................................................................................................................ 40

**ARTICLE XII WITHDRAWAL AND RESIGNATION OF UNITHOLDERS** .................................... **41**
12.1   Withdrawal and Resignation of Unitholders ................................................................. 41
12.2   Withdrawal of a Unitholder .......................................................................................... 41

**ARTICLE XIII DISSOLUTION AND LIQUIDATION** ....................................................................... **41**
13.1   Dissolution ..................................................................................................................... 41

13.2     Liquidation and Termination ........................................................................................ 41
13.3     Cancellation of Certificate ........................................................................................... 42
13.4     Reasonable Time for Winding Up ................................................................................ 42
13.5     Return of Capital.......................................................................................................... 42
13.6     Reserves Against Distributions.................................................................................... 42

**ARTICLE XIV GENERAL PROVISIONS ........................................................................................ 43**
14.1     Power of Attorney........................................................................................................ 43
14.2     Amendment and Waiver .............................................................................................. 43
14.3     Title to LLC Assets...................................................................................................... 43
14.4     Remedies...................................................................................................................... 43
14.5     Waiver of Certain Rights ............................................................................................. 44
14.6     Notice to Unitholder of Provisions ............................................................................. 44
14.7     Successors and Assigns ............................................................................................... 44
14.8     Severability .................................................................................................................. 44
14.9     Counterparts................................................................................................................. 44
14.10    Descriptive Headings; Interpretation .......................................................................... 44
14.11    Applicable Law............................................................................................................ 45
14.12    Addresses and Notices ................................................................................................. 45
14.13    Creditors....................................................................................................................... 45
14.14    Waiver........................................................................................................................... 45
14.15    Further Action.............................................................................................................. 45
14.16    Offset ........................................................................................................................... 45
14.17    Entire Agreement......................................................................................................... 45
14.18    Opt-in to Article 8 of the Uniform Commercial Code................................................. 46
14.19    Survival........................................................................................................................ 46
14.20    Consent to Jurisdiction................................................................................................. 46
14.21    Mutual Waiver of Jury Trial ....................................................................................... 46
14.22    Expenses ...................................................................................................................... 46
14.23    Acknowledgements...................................................................................................... 46

# THE GATEWAY VENTURES, LLC

## AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

This AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (as amended, modified or supplemented from time to time in accordance with the terms hereof, this "Agreement"), dated as of December 18, 2018 (the "Effective Date"), is adopted by the Manager (as defined below), and entered into by and among the Unitholders (as defined below). This Agreement is being executed to evidence the admission of the Class B Unitholders and hereby amends and restates the original Company Agreement in its entirety as of the date hereof.

In consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

## ARTICLE I

## CERTAIN DEFINITIONS

Capitalized terms used but not otherwise defined herein shall have the following meanings:

"Additional Securities" has the meaning set forth Section 3.4(a).

"Additional Unitholder" means a Person admitted to the LLC as a Unitholder pursuant to Section 11.2.

"Adjusted Capital Account" means, with respect to any Person, the balance, if any, in such Person's Capital Account as of the end of the relevant fiscal year, after giving effect to the following adjustments:

(a)    Credit to such Capital Account any amounts which such Person is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the next to the last sentence of Sections 1.704-2(g)(1) and 1.704-2(i)(5) of the Treasury Regulations after taking into account any changes during such year in Minimum Gain and Member Minimum Gain; and

(b)    Debit to such Capital Account the items described in Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6) of the Treasury Regulations.

The foregoing definition of Adjusted Capital Account is intended to comply with the provisions of Section 1.704-1(b)(2)(ii)(d) of the Treasury Regulations and shall be interpreted consistently therewith.

"Adjusted Capital Account Deficit" means, with respect to any Adjusted Capital Account as of the end of any Taxable Year, the amount by which the balance in such Adjusted Capital Account is less than zero.

"Affiliate" of any particular Person means (a) any other Person controlling, controlled by, or under common control with such particular Person, where "control" means the possession, directly or indirectly, of the power to direct the management and policies of a Person whether through the ownership of voting securities, by contract, or otherwise, and (b) if such Person is a partnership, any partner thereof.

"Agreed Tax Treatment" has the meaning set forth in Section 9.13.

"Agreement" has the meaning set forth in the preamble hereof.

"Approved Sale" has the meaning set forth in Section 10.2(a).

"Assignee" means a Person to whom an LLC Interest (or portion thereof) has been transferred in accordance with the terms of this Agreement and the other agreements contemplated hereby, but who has not become a Unitholder pursuant to Article XI.

"Bankruptcy Event" has the meaning set forth in Section 10.8(a).

"Board" means the Board of Managers established pursuant to Section 5.2.

"Book Value" means, with respect to any LLC property, the LLC's adjusted basis for U.S. federal income tax purposes, adjusted from time to time to reflect the adjustments required or permitted by Treasury Regulation Section 1.704-1(b)(2)(iv)(f), except that (a) in the case of any property contributed to the LLC, the Book Value of such property shall initially equal the gross Fair Market Value of such property at the time of contribution, (b) the Book Value shall be adjusted in the same manner as would the asset's adjusted basis for federal income tax purposes, except that the depreciation deduction taken into account each Taxable Year for purposes of adjusting the Book Value of an asset shall be the amount of Depreciation with respect to such asset taken into account for purposes of computing Net Profits or Net Losses for the Taxable Year, (c) the Book Value of LLC assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Sections 734(b) or 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Section 1.704-(b)(2)(iv)(m) of the Treasury Regulations and this Agreement; provided that Book Values shall not be adjusted pursuant to clause (c) immediately foregoing to the extent that the Board, in its sole discretion, determines that an adjustment pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(f) is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to clause (c) immediately foregoing, and (d) the Book Value of any asset distributed to a Unitholder by the LLC shall be such asset's gross Fair Market Value at the time of such distribution.

"Breach" means with respect to any Unitholder, upon the Board's determination, such Unitholder having breached in any material respect this Agreement.

"Breach Purchase Option" has the meaning set forth in Section 10.9(a).

"Breach/Termination Purchase Notice" has the meaning set forth in Section 10.9(e).

"Call Purchase Consideration" has the meaning set forth in Section 10.10.

"Capital Account" means the capital account maintained for a Unitholder pursuant to Section 9.2.

"Capital Contributions" means any cash and the Fair Market Value of other property (determined as of the date of contribution and net of liabilities secured by such property that the LLC assumes or to which the LLC's ownership of the property is subject), in each case, which a Unitholder contributes (or is deemed to contribute) to the LLC with respect to any Unit pursuant to Section 3.1 or 3.4.

"Certificate" means the LLC's Certificate of Formation as filed with the Secretary of State of Texas.

"Class A Percentage Interest" at any time, with respect to any holder of Class A Units, shall mean the percentage (which, in certain cases in this Agreement is expressed as a proportion) set forth opposite the name of such Unitholder in the column headed "Class A Percentage Interest" in Schedule A attached hereto, which shall equal the percentage that such Unitholder's Class A Units represent of all issued and outstanding Class A Units. Without the consent of any other Person, the Board may amend Schedule A from time to time to accurately reflect the Unitholders' Class A Percentage Interests, following an approved event which changes such Class A Percentage Interests.

"Class A Unit" means a Unit designated as a "Class A Unit" and having the rights and obligations specified with respect to the Class A Units in this Agreement.

"Class B Percentage Interest" at any time, with respect to any holder of Class B Units, shall mean the percentage (which, in certain cases in this Agreement is expressed as a proportion) set forth opposite the name of such Unitholder in the column headed "Class B Percentage Interest" in Schedule A attached hereto, which shall equal the percentage that such Unitholder's Class B Units represent of all issued and outstanding Class B Units. Without the consent of any other Person, the Board may amend Schedule A from time to time to accurately reflect the Unitholders' Class B Percentage Interests, following an approved event which changes such Class B Percentage Interests.

"Class B Unit" means a Unit designated as a "Class B Unit" and having the rights and obligations specified with respect to the Class B Units in this Agreement. Class B Units shall be non-voting for all purposes except as specifically provided otherwise herein.

"Code" means the United States Internal Revenue Code of 1986, as amended. Such term shall be deemed to include any future amendments to the Code and any corresponding provisions of succeeding Code provisions.

"Confidential Information" has the meaning set forth in Section 6.6.

"Contribution" has the meaning set forth in Section 9.13.

"Deceased Unitholder" means any Unitholder who is a natural Person, if such Unitholder shall die or become Totally Disabled during the term of this Agreement; provided that, in the event that a Unitholder shall (a) be an entity, such entity shall become a "Deceased Unitholder" if the Person owning the voting power to elect a majority of the board of directors or similar body governing the affairs of such Unitholder shall die during the term of this Agreement or (b) Transfer its Units to an inter vivos trust, such trust shall become a "Deceased Unitholder" if the Unitholder Transferring its Units to such trust shall die during the term of this Agreement.

"Depreciation" means an amount equal to the depreciation, amortization or other cost recovery deduction allowable for U.S. federal income tax purposes with respect to an asset for the Fiscal Year or other period, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of the Fiscal Year or other period, Depreciation will be an amount which bears the same ratio to the beginning Book Value as the federal income tax depreciation, amortization or other cost recovery deduction for the Fiscal Year or other period bears to the beginning adjusted tax basis; provided that if the federal income tax depreciation, amortization or other cost recovery deduction for the Fiscal Year or other period is zero, Depreciation will be determined by reference to the beginning Book Value using any reasonable method selected by the Board.

"Designated Individual" has the meaning set forth in Section 9.10.

3

"Distribution" means each distribution made by the LLC to a Unitholder, whether in cash, property or securities of the LLC and whether by liquidating distribution, redemption, repurchase, or otherwise; provided that none of the following shall be deemed a Distribution: (a) any recapitalization or exchange or conversion of securities of the LLC, (b) any repurchases of Equity Securities held by an employee, officer, director, other service provider or a consultant of the LLC or its Subsidiaries pursuant to agreements approved by the Board, and (c) any subdivision (by Unit split or otherwise) or any combination (by reverse Unit split or otherwise) of any outstanding Units.

"Divorce" has the meaning set forth in Section 10.8(b).

"Divorce Notice" has the meaning set forth in Section 10.8(b).

"Divorce Purchase Option" has the meaning set forth in Section 10.8(b).

"Economic Risk of Loss" means the economic risk of loss within the meaning of Section 1.752-2 of the Treasury Regulations.

"Effective Date" has the meaning set forth in the preamble to this Agreement.

"Eligible Unitholder" has the meaning set forth in Section 3.5(a).

"Equity Securities" means (a) Units or other equity interests in the LLC or a corporate successor (including other classes or groups thereof having such relative rights, powers, and duties as may from time to time be established by the Board, including rights, powers, and/or duties senior to existing classes and groups of Units and other equity interests in the LLC), (b) obligations, evidences of indebtedness, or other securities or interests convertible or exchangeable into Units or other equity interests in the LLC or a corporate successor, and (c) warrants, options, or other rights to purchase or otherwise acquire Units or other equity interests in the LLC or a corporate successor.

"Estate of the Deceased Unitholder" means, as interpreted by applicable state law: (a) the duly appointed and qualified executor, executrix, administrator, administratrix, administrator with will annexed or administratrix with will annexed under the estate of a Deceased Unitholder and (b) any other Person who may, because of the community property law or other laws of any jurisdiction, acquire, without formal probate proceedings, any right, title or interest in or to Units previously held by a Deceased Unitholder by reason of the death of a Deceased Unitholder; provided that, in the event a Deceased Unitholder shall be (i) an entity, the "Estate of the Deceased Unitholder" shall mean such entity and (ii) a trust, the "Estate of the Deceased Unitholder" shall mean such trust.

"Estimated Tax Liability" has the meaning set forth in Section 4.1(b).

"Event of Withdrawal" means the death, retirement, resignation, expulsion, bankruptcy or dissolution of a Unitholder or the occurrence of any other event that terminates the continued membership of a Unitholder in the LLC.

"Excluded Securities" means (a) Equity Securities previously acquired by the LLC and subsequently reissued, (b) any Equity Securities issued as part of a split, dividend, combination, recapitalization, or similar transaction of the LLC or any of its Subsidiaries, or (c) Equity Securities issued in connection with, or in furtherance of the financing of, strategic transactions involving the LLC or any of its Subsidiaries and any other entities (including (i) joint ventures and similar arrangements, (ii) investments, or (iii) acquisitions by the LLC or any of its Subsidiaries (whether through a purchase of securities, a merger, consolidation, purchase of assets or otherwise)) (in each case, whether through a

purchase of securities, a merger, consolidation, purchase of assets or otherwise), or (d) Equity Securities issued upon conversion, exchange or exercise of any Equity Securities.

"Fair Market Value" means, with respect to any asset or equity interest, the fair market value of such asset or equity interest as determined by the Board in its sole discretion (or, if pursuant to Section 13.2, the liquidators) in its good faith judgment in such manner as its deems reasonable and using all factors, information and data deemed to be pertinent.

"FBFK" means Ferguson Braswell Fraser Kubasta PC, a Texas professional corporation.

"Fiscal Quarter" means each calendar quarter ending March 31, June 30, September 30, and December 31.

"Fiscal Year" means the LLC's annual accounting period established pursuant to Section 8.2.

"Fundamental Change" means any transaction or series of transactions, other than a Public Offering, pursuant to which (a) (i) a majority of the members of the Board, or the holders of a majority of the voting power of the Board, will change or such new owners would have the power to change in connection with a change in ownership of a majority of the Class A Percentage Interests or (ii) any Person or group of related Persons in the aggregate acquires the voting power (other than voting rights arising only in the event of a default or breach) to elect a majority of the Managers or a majority of the directors of its corporate successor (whether by merger, consolidation, reorganization, combination, sale or Transfer of Equity Securities, securityholders or voting agreement, proxy, power of attorney or otherwise), or to elect the Managers or directors, as the case may be, that hold a majority of the voting power of the Board or such board of directors, or (b) any Person or group of related Persons in the aggregate acquires all or substantially all of the assets of the LLC (or its corporate successor) and its Subsidiaries determined on a consolidated basis (measured either by book value in accordance with U.S. generally accepted accounting principles consistently applied or by fair market value as determined in the reasonable good faith judgment of the Board).

"Governmental Entity" means the United States of America or any other nation, any state or other political subdivision thereof, or any entity exercising executive, legislative, judicial, regulatory or administrative functions of government or any agency or department or subdivision of any governmental authority, including the United States federal government or any state or local government.

"Initiating Unitholder" has the meaning set forth in Section 10.12(a).

"Insolvency Notice" has the meaning set forth in Section 10.8(a).

"Insolvency Purchase Option" has the meaning set forth in Section 10.8(a).]

"Involuntary Option Closing" has the meaning set forth in Section 10.8(e).

"Involuntary Purchase Notice" has the meaning set forth in Section 10.8(d).

"Involuntary Transfer" has the meaning set forth in Section 10.8(b).

"Involuntary Transfer Price" has the meaning set forth in Section 10.8(c).

"Lien" means any mortgage, pledge, security interest, encumbrance, lien, or charge of any kind (including any conditional sale or other title retention agreement or lease in the nature thereof), any sale of receivables with recourse against the LLC, any Subsidiary or any Affiliate thereof, any filing or agreement to file a financing statement as debtor under the Uniform Commercial Code or any similar statute other than to reflect ownership by a third party of property leased to the LLC, any Subsidiary or any Affiliate under a lease which is not in the nature of a conditional sale or title retention agreement, or any subordination arrangement in favor of another Person (other than any subordination arising in the ordinary course of business).

"LLC" means Treadstone[1], a Texas limited liability company, and any successor thereto.

"LLC Interest" means the interest of a Unitholder in Profits, Losses, and Distributions.

"Losses" has the meaning set forth in Section 9.2(b).

"Manager" means a current manager on the Board, who, for purposes of the Texas Act, will be deemed a "manager" (as defined in the Texas Act) but will be subject to the rights, obligations, limitations and duties set forth in this Agreement.

"Member Minimum Gain" has the meaning given to the term "partner nonrecourse debt minimum gain" in Section 1.704-2(i) of the Treasury Regulations.

"Member Nonrecourse Debt" has the meaning ascribed to the term "partner nonrecourse debt" in Section 1.704-2(b)(4) of the Treasury Regulations.

"Member Nonrecourse Deductions" means the LLC deductions, losses and Code Section 705(a)(2)(B) expenditures that are treated as deductions, losses and expenditures attributable to Member Nonrecourse Debt under Section 1.704-2(i)(2) of the Treasury Regulations.

"Minimum Gain" means, with respect to any Taxable Year of the LLC, the partnership minimum gain determined in accordance with the principles of Treasury Regulation Section 1.704-2(d).

"Net Loss" means, with respect to a Taxable Year, the excess, if any, of Losses for such Taxable Year over Profits for such Taxable Year (excluding Losses and Profits specially allocated pursuant to Section 9.5).

"Net Profit" means, with respect to a Taxable Year, the excess, if any, of Profits for such Taxable Year over Losses for such Taxable Year (excluding Losses and Profits specially allocated pursuant to Section 9.5).

"Nonrecourse Deductions" in any fiscal period means the amount of LLC deductions that are characterized as "nonrecourse deductions" under Section 1.704-2(b) of the Treasury Regulations.

"Non-Transferring Unitholder" has the meaning set forth in Section 10.12(a).

"Notice" has the meaning set forth in Section 9.11(a).

"Offer Period" has the meaning set forth in Section 10.1210.12(d).

---

[1] NTD: To be confirmed.

"Offered Units" has the meaning set forth in Section 10.12(a).

"Officers" means each person designated as an officer of the LLC to whom authority and duties have been delegated pursuant to Section 5.5 and any resolution of the Board appointing such person as an officer or relating to such appointment.

"PDG" means PDG Prestige, Inc., a Texas corporation.

"Permitted Transferee" means, with respect to any Unitholder who is a natural person, any trust or other estate planning vehicle that is and at all times remains solely for the benefit of such Unitholder.

"Person" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, any other business entity, or a Governmental Entity.

"Preemptive Election Notice" has the meaning set forth in Section 3.5(b).

"Preemptive Rights Notice" has the meaning set forth in Section 3.5(a).

"Preemptive Rights Offering Period" has the meaning set forth in Section 3.5(b).

"Proceeding" has the meaning set forth in Section 7.2.

"Profits" has the meaning set forth in Section 9.2(b).

"Public Offering" means any sale of equity securities of the LLC (or a successor thereto) pursuant to an effective registration statement under the Securities Act filed with the Securities and Exchange Commission; provided that none of the following shall be considered a Public Offering: (a) any issuance of equity securities as consideration for a merger or acquisition, or (b) any issuance of equity securities or rights to acquire equity securities to employees of the LLC or its Subsidiaries as part of an incentive or compensation plan.

"Regulatory Allocations" has the meaning set forth in Section 9.5(f).

"Related Person" means, with respect to each Manager, such Manager's agents and representatives and the Person that designated such Manager (and all Affiliates of such designating Person).

"Required Interest" means, at any particular time, the holder of a majority of the then outstanding Class A Units.

"Reserves" means the funds set aside or amounts allocated to reserves which shall be maintained in amounts deemed sufficient by the Board for working capital and to pay taxes, insurance, debt service or other costs or expenses incident to the ownership or operation of the LLC's business.

"Sale Notice" has the meaning set forth in Section 10.12(a)

"Securities Act" means the Securities Act of 1933, as amended, and applicable rules and regulations thereunder, and any successor to such statute, rules, or regulations. Any reference herein to a specific section, rule, or regulation of the Securities Act shall be deemed to include any corresponding provisions of future law.

"Subsidiary" means, with respect to any Person, any corporation, limited liability company, partnership, association, or business entity of which (a) if a corporation, a majority of the total voting power of shares of stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers, or trustees thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more of the other Subsidiaries of that Person or a combination thereof, or (b) if a limited liability company, partnership, association, or other business entity (other than a corporation), a majority of partnership or other similar ownership interest thereof is at the time owned or controlled, directly or indirectly, by that Person or one or more Subsidiaries of that Person or a combination thereof. For purposes hereof, a Person or Persons shall be deemed to have a majority ownership interest in a limited liability company, partnership, association, or other business entity (other than a corporation) if such Person or Persons shall be allocated a majority of limited liability company, partnership, association, or other business entity gains or losses or shall be or control any managing director or general partner or a majority of the governing body of such limited liability company, partnership, association, or other business entity. For purposes hereof, references to a "Subsidiary" of any Person shall be given effect only at such times that such Person has one or more Subsidiaries, and, unless otherwise indicated, the term "Subsidiary" refers to a Subsidiary of the LLC.

"Substituted Unitholder" means a Person that is admitted as a Unitholder to the LLC pursuant to Section 11.1.

"Tax Distribution" has the meaning set forth in Section 4.1(b).

"Tax Distribution Conditions" has the meaning set forth Section 4.1(b).

"Tax Representative" has the meaning set forth in Section 9.10(a).

"Taxable Year" means the LLC's Fiscal Year unless the Board determines otherwise in compliance with applicable laws.

"Termination Purchase Option" has the meaning set forth in Section 10.9(b).

"Texas Act" means the Texas Limited Liability Company law as defined in Tex. Bus. Org. Code §1.008(e), as it may be amended from time to time, and any successor to the Texas Act.

"Totally Disabled" means the inability of a Unitholder substantially to perform the services required of a Unitholder in his, her or its capacity as an employee, officer, manager, consultant or other service provider of the LLC or any of its Subsidiaries, for a period of twelve (12) consecutive months by reason of physical or mental illness or incapacity and whether arising out of sickness, accident or otherwise.

"Transfer" means any sale, transfer, assignment, pledge, mortgage, exchange, hypothecation, grant of a security interest or other direct or indirect disposition or encumbrance of an interest (including by operation of law) or the acts thereof, but explicitly excluding conversions or exchanges of one class of Unit to or for another class of Unit. The terms "Transferee," "Transferred," and other forms of the word "Transfer" shall have correlative meanings.

"Transfer Notice" has the meaning set forth in Section 10.12(a).

"Transferring Unitholder" has the meaning set forth in Section 10.12(a).

"Treasury Regulations" means the income tax regulations promulgated under the Code and effective as of the date hereof. Such term shall be deemed to include any future amendments to such regulations and any corresponding provisions of succeeding regulations.

"Unit" means an LLC Interest (or portion thereof) of a Unitholder or an Assignee in the LLC representing a fractional part of the LLC Interests of all Unitholders and Assignees and shall include Class A Units and Class B Units; provided that any class or group of Units issued shall have relative rights, powers, and duties set forth in this Agreement and the LLC Interest represented by such class or group of Units shall be determined in accordance with such relative rights, powers, and duties set forth in this Agreement.

"Unit Equivalents" means, without duplication with any Units or other Unit Equivalents, rights, warrants, options, convertible securities, exchangeable securities, indebtedness or other rights, in each case exercisable for or convertible or exchangeable into, directly or indirectly, Units or securities exercisable for or convertible or exchangeable into Units, whether at the time of issuance or upon the passage of time or the occurrence of some future event.

"Unitholder" means any owner of one or more Units as reflected on the LLC's books and records, and any person admitted to the LLC as an Additional Unitholder or Substituted Unitholder, but in each case only for so long as such person is shown on the LLC's books and records as the owner of one or more Units.

"Unreturned Capital Contributions" mean, with respect to a Member, as of any date, an amount equal to the aggregate Capital Contributions made by such Member, less the total cash distributions made to such Member in return of such Capital Contributions pursuant to Section 13.2(b) as applicable.

## ARTICLE II

### ORGANIZATIONAL MATTERS

**2.1**      **Formation of LLC**. The LLC has been organized as a Texas limited liability company by the filing of the Certificate with the Secretary of State of the State of Texas under and pursuant to the Texas Act and shall be continued in accordance with this Agreement.

**2.2**      **The Certificate, Etc**. The Certificate was filed with the Secretary of State of the State of Texas on November 27, 2018. The Unitholders hereby agree to execute, file and record all such other certificates and documents, including amendments to the Certificate, and to do such other acts as may be appropriate to comply with all requirements for the formation, continuation and operation of a limited liability company, the ownership of property, and the conduct of business under the laws of the State of Texas and any other jurisdiction in which the LLC may own property or conduct business.

**2.3**      **Name**. The name of the LLC shall be "The Gateway Ventures, LLC." The Board, in its sole discretion, may change the name of the LLC at any time and from time to time. Notification of any such change shall be given to all Unitholders. The LLC's business may be conducted under its name and/or any other name or names deemed advisable by the Board.

**2.4**      **Purpose**. The purpose and business of the LLC shall be to engage in any lawful act or activity which may be conducted by a limited liability company formed pursuant to the Texas Act and engaging in all activities necessary or incidental to the foregoing. Notwithstanding anything herein to the

contrary, nothing set forth herein shall be construed as authorizing the LLC to possess any purpose or power, or to do any act or thing, forbidden by law to a limited liability company organized under the laws of the State of Texas.

**2.5** **Powers of the LLC**. Subject to the provisions of this Agreement and the agreements contemplated hereby, the LLC shall have the power and authority to take any and all actions necessary, appropriate, proper, advisable, convenient or incidental to or for the furtherance of the purpose set forth in Section 2.4.

**2.6** **Foreign Qualification**. Prior to the LLC's conducting business in any jurisdiction other than Texas, the LLC shall, at the direction of the Board, comply with all requirements necessary to qualify the LLC as a foreign limited liability company in that jurisdiction. At the request of the Board or any Officer, each Unitholder shall execute, acknowledge, swear to and deliver all certificates and other instruments conforming with this Agreement that are necessary or appropriate to qualify, continue or terminate the LLC as a foreign limited liability company in all such jurisdictions in which the LLC may conduct business.

**2.7** **Principal Office; Registered Office**. The principal office of the LLC shall be located at such place as the Board may from time to time designate, and all business and activities of the LLC shall be deemed to have occurred at its principal office. The LLC may maintain offices at such other place or places as the Board deems advisable. Notification of any change in the location of the LLC's principal office shall be given to all Unitholders. The registered office of the LLC required by the Texas Act to be maintained in the State of Texas shall be the office of the initial registered agent named in the Certificate or such other office (which need not be a place of business of the LLC) as the Board may designate from time to time in the manner provided by law. The registered agent of the LLC in the State of Texas shall be the initial registered agent named in the Certificate or such other Person or Persons as the Board may designate from time to time in the manner provided by law.

**2.8** **Term**. The term of the LLC commenced upon the filing of the Certificate in accordance with the Texas Act and shall continue in existence until termination and dissolution thereof in accordance with the provisions of Article XIII.

**2.9** **No State-Law Partnership**. The Unitholders intend that the LLC not be a partnership (including a limited partnership) or joint venture, and that no Unitholder be a partner or joint venturer of any other Unitholder by virtue of this Agreement (except for tax purposes as set forth in Article IX), and neither this Agreement nor any other document entered into by the LLC or any Unitholder relating to the subject matter hereof shall be construed to suggest otherwise.

## ARTICLE III

### UNITS

**3.1** **Unitholders**.

(a) Capital Contributions. As of the Effective Date, the LLC is authorized to issue two (2) classes of Units: Class A Units and Class B Units. Each Person named on Schedule A attached hereto (or such Person's predecessor in interest) has made Capital Contributions to the LLC as kept on file in the books and records of the LLC, and each Unitholder's initial Capital Account shall be established so as to reflect such Capital Contributions. Any reference in this Agreement to Schedule A shall be deemed to be a reference to Schedule A as amended and in effect from time to time. The LLC and each Unitholder shall file all tax returns, including any schedules thereto, in a manner consistent with the initial Capital Accounts

10

set forth in the books and records of the LLC (as may be adjusted in accordance with this Agreement from time to time). Each Person listed on Schedule A upon (i) such Person's execution of this Agreement or a counterpart thereto and (ii) receipt (or deemed receipt) by the LLC of such Person's Capital Contribution, if any, as set forth on Schedule A, is hereby or was, as applicable, admitted to the LLC as a Unitholder of the LLC with respect to the Units specified opposite his, her or its name on Schedule A. Each Unitholder's interest in the LLC, including such Unitholder's interest in Profits, Losses and Distributions of the LLC and the right to vote on certain matters as provided in this Agreement, shall be represented by the Units owned by such Unitholder. The ownership of Units shall entitle each Unitholder to allocations of Net Profits and Net Losses and other items and Distributions of cash and other property as set forth in Article IV, Article IX and Article XIII hereof. The Board may in its discretion issue certificates to the Unitholders representing the Units held by each Unitholder. The names, addresses, number and class of Units, Class A Percentage Interests and Class B Percentage Interests of the Unitholders are set forth on Schedule A. The Board shall amend Schedule A on the issuance or Transfer of any Class A Units or Class B Units to any new or existing Unitholder in accordance with this Agreement and to reflect any other matter affecting the Unitholders' Class A Percentage Interests or Class B Percentage Interests, which amendment will not require the consent of any Unitholder.

(b) Representations and Warranties of Unitholders. Each Unitholder hereby represents and warrants to the LLC and acknowledges that: (i) such Unitholder has knowledge and experience in financial and business matters and is capable of evaluating the merits and risks of an investment in the LLC and making an informed investment decision with respect thereto; (ii) such Unitholder has reviewed and evaluated all information necessary to assess the merits and risks of his, her or its investment in the LLC and has had answered to such Unitholder's satisfaction any and all questions regarding such information; (iii) such Unitholder is able to bear the economic and financial risk of an investment in the LLC for an indefinite period of time; (iv) such Unitholder is acquiring interests in the LLC for investment only and not with a view to, or for resale in connection with, any distribution to the public or public offering thereof; (v) the interests in the LLC have not been registered under the securities laws of any jurisdiction and cannot be disposed of unless they are subsequently registered and/or qualified under applicable securities laws and the provisions of this Agreement have been complied with; (vi) to the extent applicable, the execution, delivery and performance of this Agreement have been duly authorized by such Unitholder and do not require such Unitholder to obtain any consent or approval that has not been obtained and do not contravene or result in a default under any provision of any law or regulation applicable to such Unitholder or other governing documents or any agreement or instrument to which such Unitholder is a party or by which such Unitholder is bound; (vii) the determination of such Unitholder to purchase interests in the LLC has been made by such Unitholder independent of any other Unitholder and independent of any statements or opinions as to the advisability of such purchase, which may have been made or given by any other Unitholder or by any agent or employee of any other Unitholder; (viii) the interests in the LLC were not offered to such Unitholder by means of general solicitation or general advertising; (ix) such Unitholder is aware of the income tax consequences of the allocations made by this Agreement and hereby agrees to be bound by the provisions of this Agreement in reporting its share of LLC income and losses for income tax purposes; (x) such Unitholder has been advised to consult with its own attorney regarding all legal and tax matters concerning an investment in its Units and has done so to the extent it considers necessary or appropriate; (xi) none of the LLC, the Board, the Tax Representative, the Designated Individual, the Members, nor the partners, shareholders, members, managers, agents, officers, directors, employees, affiliates, or consultants of any of them will be responsible or liable for the tax consequences to the Unitholder of an investment in the LLC; and (xii) such Unitholder will look solely to, and rely upon, its own advisers with respect to the tax consequences of this investment.

(c) No Liability of Unitholders.

(i)   No Liability.   Except as otherwise required by applicable law and as expressly set forth in this Agreement, no Unitholder shall have any personal liability whatsoever in such Unitholder's capacity as a Unitholder, whether to the LLC, to any of the other Unitholders, to the creditors of the LLC or to any other third party, for the debts, liabilities, commitments or any other obligations of the LLC or for any losses of the LLC.  Each Unitholder shall be liable only to make such Unitholder's Capital Contribution to the LLC and the other payments provided expressly herein.

(ii)   Distribution.   In accordance with the Texas Act and the laws of the State of Texas, a Unitholder of a limited liability company may, under certain circumstances, be required to return amounts previously distributed to such Unitholder.  It is the intent of the Unitholders that no distribution to any Unitholder pursuant to Article IV hereof shall be deemed a return of money or other property paid or distributed in violation of the Texas Act.  The payment of any such money or distribution of any such property to a Unitholder shall be deemed to be a compromise within the meaning of the Texas Act, and the Unitholder receiving any such money or property shall not be required to return to any Person any such money or property.  However, if any court of competent jurisdiction holds that, notwithstanding the provisions of this Agreement, any Unitholder is obligated to make any such payment, such obligation shall be the obligation of such Unitholder and not of any other Unitholder.

**3.2    Unitholder Meetings.**

(a)   Voting of Unitholders.  A quorum shall be present at a meeting of Unitholders if the Unitholders holding the Required Interest are represented at the meeting in person or by proxy.  With respect to any matter, other than a matter for which the affirmative vote of the holders of a specified portion of all Units entitled to vote is required by the Texas Act or by this Agreement, the affirmative vote of the Unitholders holding the Required Interest at a meeting of Unitholders at which a quorum is present shall be the act of the Unitholders.

(b)   Place.  All meetings of the Unitholders shall be held at the principal place of business of the LLC or at such other place within or without the State of Texas as shall be specified or fixed in the notices or waivers of notice thereof; provided that any or all Unitholders may participate in any such meeting by means of conference telephone or similar communications equipment pursuant to Section 3.3(d).

(c)   Adjournment.   Notwithstanding the other provisions of the Certificate or this Agreement, the chairman of the meeting or the Unitholders holding the Required Interest shall have the power to adjourn such meeting from time to time, without any notice other than announcement at the meeting of the time and place of the holding of the adjourned meeting.  If such meeting is adjourned by the Unitholders, such time and place shall be determined by a vote of the Unitholders holding the Required Interest.  Upon the resumption of such adjourned meeting, any business may be transacted that might have been transacted at the meeting as originally called.

(d)   Meetings.  Meetings of the Unitholders for any proper purpose or purposes may be called at any time by the Board or the Unitholders holding the Required Interest.  If not otherwise stated in or fixed in accordance with the remaining provisions hereof, the record date for determining Unitholders entitled to call a meeting is the date any Unitholder first signs the notice of that meeting.

(e)   Notice.  A written or printed notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered to each Unitholder entitled to vote at such meeting by or at the direction of the Board or the Unitholders calling the meeting, not less than two (2) nor more than thirty (30) days before the date of the meeting, either personally, by overnight courier service or by facsimile (or by electronic mail if receipt is confirmed by the Unitholder).  If mailed by

12

overnight courier service, any such notice shall be deemed to be delivered one (1) day after the date on which such notice was deposited with such service, addressed to the Unitholder at its address provided for in the LLC's books and records, or to such other address or to the attention of such other person as the recipient party has specified by prior written notice to the sending party.

(f)   Record Date.   Unless otherwise determined by the Board, the date on which notice of a meeting of Unitholders is mailed shall be the record date for the determination of the Unitholders entitled to notice of or to vote at such meeting (including any adjournment thereof).

(g)   Required Interest.   Except as otherwise expressly provided for in this Agreement, all matters to be voted on by the Unitholders pursuant to this Agreement shall require the vote of Unitholders holding the Required Interest, which vote shall only be valid and binding if a notice of the meeting at which such vote is taken is given in accordance with Section 3.2(e).

(h)   Proxies.   A Unitholder may vote either in person or by proxy executed in writing by the Unitholder. A photographic, pdf, photostatic, electronic, facsimile or similar reproduction of a writing executed by the Unitholder shall be treated as an execution in writing for purposes of this Section 3.2(h). Proxies for use at any meeting of Unitholders or in connection with the taking of any action by written consent pursuant to Section 3.3 shall be filed with the Secretary of the LLC, before or at the time of the meeting or execution of the written consent as the case may be. All proxies shall be received and taken charge of and all ballots shall be received and canvassed by the Secretary of the LLC, who shall decide all questions concerning the qualification of voters, the validity of the proxies and the acceptance or rejection of votes, unless an inspector or inspectors shall have been appointed by the chairman of the meeting, in which event such inspector or inspectors shall decide all such questions. No proxy shall be valid after eleven (11) months from the date of its execution unless otherwise provided in the proxy. A proxy shall be revocable unless the proxy form conspicuously states that the proxy is irrevocable and the proxy is coupled with an interest. Should a proxy designate two or more Persons to act as proxies, unless that instrument shall provide to the contrary, a majority of such Persons present at any meeting at which their powers thereunder are to be exercised shall have and may exercise all the powers of voting or giving consents thereby conferred, or if only one be present, then such powers may be exercised by that one; or, if an even number attend and a majority do not agree on any particular issue, the LLC shall not be required to recognize such proxy with respect to such issue if such proxy does not specify how the Units that are the subject of such proxy are to be voted with respect to such issue.

(i)   Conduct of Unitholder Meetings.   All meetings of the Unitholders shall be presided over by the chairman of the meeting, who shall be the Chairman or Vice Chairman (or a representative thereof), if any, or such other Person as may be designated by the Managers present at such meeting. The chairman of any meeting of Unitholders shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seem to him in order. Telephonic participation will be made available at all meetings of the Unitholders.

(j)   Voting Rights.   The holders of Class A Units shall be entitled to notice of all Unitholder meetings in accordance with this Agreement, and except as otherwise required by law, the holders of the Class A Units shall be entitled to vote on all matters submitted to the Unitholders for a vote with each Class A Unit entitled to one vote. Except as otherwise required by applicable law, the holders of Class B Units shall not be entitled to a vote in respect of any such Units on any matters submitted to the Unitholders for a vote.

13

**3.3**     **Action of Unitholders by Written Consent or Telephone Conference.**

(a)     <u>Written Consent in Lieu of Meeting</u>.  Any action required or permitted to be taken at any meeting of Unitholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the Unitholder or Unitholders holding not less than the minimum number of Units that would be necessary to take such action at a meeting at which all Unitholders entitled to vote on the action were present and voted.  Every written consent shall bear the date of signature of each Unitholder who signs the consent.  No written consent shall be effective to take the action that is the subject of the consent unless, within sixty (60) days after the date of the earliest dated consent delivered to the LLC in the manner required by this <u>Section 3.3(a)</u>, a consent or consents signed by the Unitholder or Unitholders holding not less than the minimum number of Units that would be necessary to take the action that is the subject of the consent are delivered to the LLC by delivery to its registered office, its principal place of business or the chief executive officer, in each case, in accordance with <u>Section 14.12</u>.  Any such delivery to the LLC's principal place of business shall be addressed to the chief executive officer.  A pdf, photostatic, electronic, facsimile or similar reproduction of a writing signed by a Unitholder, shall be regarded as signed by the Unitholder for purposes of this <u>Section 3.3(a)</u>.  Prompt notice of the taking of any action by Unitholders without a meeting by less than unanimous written consent shall be given to those Unitholders who did not consent in writing to the action.

(b)     <u>Record Date for Written Consent in Lieu of Meeting</u>.  The record date for determining Unitholders entitled to consent to action in writing without a meeting shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the LLC by delivery to its registered office, its principal place of business, or the chief executive officer, in each case, in accordance with <u>Section 14.12</u>.  Any such delivery to the LLC's principal place of business shall be addressed to the chief executive officer.

(c)     <u>Filings</u>.  If any action by Unitholders is taken by written consent, any certificate or documents filed with the Secretary of State of Texas as a result of the taking of the action shall state, in lieu of any statement required by the Texas Act concerning any vote of Unitholders, that written consent has been given in accordance with the provisions of the Texas Act and that any written notice required by the Texas Act has been given.

(d)     <u>Telephone Conference</u>.  Unitholders may participate in and hold a meeting by means of conference telephone or similar communications equipment by means of which all Persons participating in the meeting can hear each other, and participation in such meeting shall constitute attendance and presence in person at such meeting, except where a Person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

**3.4**     **Issuance of Additional Units and Interests**.

(a)     Subject to compliance with <u>Section 3.5</u>, the Board shall have the right to cause the LLC to issue or sell to any Person (including Unitholders and Affiliates) any of the following (which for purposes of this Agreement shall be "<u>Additional Securities</u>"): (i) additional Units or other interests in the LLC (including other classes or series thereof having different rights), (ii) obligations, evidences of indebtedness, or other securities or interests convertible or exchangeable into Units or other interests in the LLC, and (iii) warrants, options, or other rights to purchase or otherwise acquire Units or other interests in the LLC, and in any such event all Unitholders shall be diluted in an equal manner with respect to such issuance, subject to differences in rights and preferences of different classes, groups and series of Equity Securities.  Subject to the provisions of this Agreement, the Board shall determine the terms and conditions governing the issuance of such Additional Securities, including the number and designation of such

Additional Securities, the preference (with respect to Distributions, liquidations, or otherwise) over any other Units and any required or deemed contributions in connection therewith, and the Board shall have the power to amend this Agreement (and, as provided in Section 3.4(b), Schedule A) to reflect such additional issuances and to make any such other amendments as it deems necessary or desirable to reflect such additional issuances (including amending this Agreement to authorize a new class, group or series of Equity Securities and to add the terms of such new class, group or series including economic and governance rights which may be different from, senior to or more favorable than the other existing Equity Securities), in each case without the approval or consent of any other Person. Any Person who acquires Units may be admitted to the LLC as a Unitholder pursuant to the terms of Section 11.2 hereof.

(b) If any Person acquires Additional Securities or is admitted to the LLC as an Additional Unitholder pursuant to Section 11.2, Schedule A shall be amended to reflect such additional issuance and/or Unitholder, as the case may be.

**3.5 Preemptive Rights**.

(a) Except for issuances of Excluded Securities, prior to the issuance or sale after the date hereof of any Equity Securities, the LLC shall offer to issue or sell to each holder of Class A Units (subject to the last sentence of this Section 3.5(a), each, an "Eligible Unitholder") such holder's Class A Percentage Interest of such Equity Securities by delivering a written notice (a "Preemptive Rights Notice") to each such holder describing in reasonable detail the Equity Securities being offered, the purchase price thereof, the payment terms, and such holder's Class A Percentage Interest. Notwithstanding anything to the contrary contained herein, the LLC shall not have any obligation to issue Equity Securities or to offer to issue any Equity Securities under this Section 3.5 to any Person who is not an "accredited investor" as such term is defined in Regulation D under the Securities Act, and any such Person shall not be an "Eligible Unitholder" for purposes of this Section 3.5. The Class B Unitholders shall not be entitled to any preemptive rights.

(b) Each Eligible Unitholder may elect to purchase his, her or its Class A Percentage Interest of the Equity Securities being issued or sold by the LLC, by delivering, within ten (10) days after receipt of a Preemptive Rights Notice from the LLC (the "Preemptive Rights Offering Period"), a written notice (a "Preemptive Election Notice") to the LLC describing such holder's election hereunder together with an unconditional commitment to participate at the price and terms specified. Each Eligible Unitholder who fails for any reason to deliver a Preemptive Election Notice to the LLC within the Preemptive Rights Offering Period shall be deemed to have waived any and all of his, her or its rights under this Section 3.5 in respect of the issuance of Equity Securities described in the applicable Preemptive Rights Notice.

(c) Each Eligible Unitholder shall be entitled to purchase the Equity Securities being issued or sold by the LLC at the same price and on other economic terms no less favorable in the aggregate than the terms on which such Equity Securities are proposed to be issued or sold by the LLC at such time. Unless otherwise determined by the Board, the purchase price for all Equity Securities offered to each Eligible Unitholder shall be payable in cash by wire transfer of immediately available funds to an account designated by the LLC.

(d) The LLC shall be entitled, during the one hundred eighty (180) days following the expiration of the Preemptive Rights Offering Period, to sell the Equity Securities described in the Preemptive Rights Notice which the Eligible Unitholders have not elected to purchase, in one or more transactions and to one or more Persons, as determined by the Board, at a price not less than that set forth in the applicable Preemptive Rights Notice and on other economic terms and conditions not materially more favorable (individually, with respect to any material economic term or condition, or in the aggregate) to the purchaser(s) thereof, in the aggregate, than those set forth in the Preemptive Rights Notice. Any Equity

Securities offered or sold by the LLC after such one hundred eighty (180)-day period must be reoffered to the Eligible Unitholders if required pursuant to the terms of Section 3.5.

**3.6** **No Withdrawal**. No Person shall be entitled to withdraw any part of such Person's Capital Contributions or Capital Account or to receive any Distribution from the LLC, except as expressly provided herein or in the other agreements referred to herein.

**3.7** **Loans from Unitholders**. Loans by Unitholders to the LLC shall not be considered Capital Contributions. If any Unitholder shall loan funds to the LLC, the making of such loans shall not result in any increase in the amount of the Capital Account of such Unitholder. The amount of any such loans shall be a debt of the LLC to such Unitholder and shall be payable or collectible in accordance with the terms and conditions upon which such loans are made.

**3.8** **Distributions In-Kind**. To the extent that the LLC distributes property in-kind to the Unitholders, the LLC shall be treated as making a Distribution equal to the Fair Market Value of such property for purposes of Section 4.1 and Section 13.2.

**3.9** **Transfer of Units**. In the event of a Transfer of a Unit in accordance with Article X, the Transferee shall succeed to the economic attributes of the Transferor (e.g., Capital Account balance) to the extent attributable to the Transferred Unit.

## ARTICLE IV

## DISTRIBUTIONS AND REDEMPTIONS

**4.1** **Distributions**.

(a) Distributions Generally. Except as otherwise set forth in this Section 4.1, the Board may, in its sole discretion, make Distributions at any time or from time to time. Subject to the terms of this Agreement (including Section 13.2), all Distributions, other than Tax Distributions (which are addressed separately in Section 4.1(b)), shall be made to the Unitholders holding Class A Units pro rata in accordance with their respective Class A Percentage Interests.

(b) Tax Distributions. Notwithstanding any other provision herein to the contrary, so long as the LLC is treated as a partnership for U.S. federal income tax purposes, the LLC may (in the Board's discretion) distribute to each Class A Unitholder within fifteen (15) days after the end of each Fiscal Quarter after the Effective Date, to the extent that funds are legally available therefor and such Distribution would not impair the liquidity of the LLC in respect of working capital, capital expenditures, debt service, Reserves and would not be prohibited under any credit facility to which the LLC or any Subsidiary is a party (all of the foregoing conditions, the "Tax Distribution Conditions"), an aggregate amount of cash (a "Tax Distribution") in respect of such Fiscal Quarter which in the good faith estimation of the Board equals the product of (i) (A) the aggregate amount of all taxable income allocated to the Class A Unitholder in respect of such Fiscal Quarter (provided, that in no event shall such calculation include any taxable income for any period prior to the Effective Date or any tax liability relating thereto or any items arising under Section 743 of the Code or allocated pursuant to Section 704(c) of the Code), over (B) the cumulative losses that have been allocated to the Class A Unitholders for each taxable year of the LLC to the extent such losses have not previously reduced taxable income and gain pursuant to this provision, multiplied by (ii) the highest maximum combined marginal U.S. federal, state, and local income tax rates in any jurisdiction in the United States, to be applied in respect of such taxable income (taking into account the character of the income (e.g., long-term or short-term capital gain, ordinary or tax-exempt, or "qualified business income," "qualified REIT dividend" income or "qualified publicly traded partnership income"

under Code Section 199A)) for such Fiscal Quarter (making an appropriate adjustment for any rate changes that take place during such period) (such amount, the "Estimated Tax Liability"). The Board shall be entitled to adjust subsequent Tax Distributions up or down to reflect any variation between its prior estimation of quarterly Tax Distributions and the Tax Distributions that would have been computed under this Section 4.1(b) based on subsequent information, and the Board shall also be entitled to modify the timing of such Tax Distributions so that Class A Unitholders can use such Tax Distributions to make estimated Tax payments they are required to make. In the event that due to the Tax Distribution Conditions the funds available for any Tax Distribution to be made hereunder are insufficient to pay the full amount of the Tax Distribution that would otherwise be required under this Section 4.1(b), the LLC may (in the Board's discretion) distribute to the Class A Unitholders the amount of funds that are available after application of the Tax Distribution Conditions on a pro rata basis (according to the amounts that would have been distributed to each Class A Unitholder pursuant to this Section 4.1(b) if available funds (after application of the Tax Distribution Conditions) existed in a sufficient amount to make such Distribution in full). At any time thereafter when additional funds of the LLC are available for Distribution after application of the Tax Distribution Conditions, the LLC may (in the Board's discretion) distribute such funds to the Class A Unitholders on a pro rata basis (according to the amounts that would have been distributed to each Class A Unitholder pursuant to this Section 4.1(b) if available funds (after application of the Tax Distribution Conditions) would have existed in a sufficient amount to make such Tax Distribution in full). Each Tax Distribution pursuant to this Section 4.1(b) shall be treated as an advance to such Class A Unitholder of amounts to which they are otherwise entitled under Section 13.2, and shall reduce the amount of any other Distributions (other than Tax Distributions) to which such Class A Unitholder thereafter becomes entitled under Section 13.2. Notwithstanding anything in this Agreement to the contrary, (i) no Tax Distribution shall be made in connection with a Fundamental Change and (ii) Tax Distributions shall not be treated as advances against Distributions to which a Class A Unitholder is entitled pursuant to Section 4.1(a) or Section 13.2.

(c) Persons Receiving Distributions. Each Distribution shall be made to the Persons shown on the LLC's books and records as Unitholders as of the date of such Distribution; provided that any transferor and transferee of Units may mutually agree as to which of them should receive payment of any Distribution under Section 4.1 or Section 13.2. In the event that restrictions on Transfer or change in beneficial ownership of Units set forth herein have been breached, the LLC may withhold distributions in respect of the affected Units until such breach has been cured.

(d) Fundamental Change Distributions. For the avoidance of doubt, distributions in respect of a Fundamental Change shall be made by taking into account the order of priority set forth in Section 13.2.

## ARTICLE V

## BOARD OF MANAGERS; OFFICERS

5.1     Management by the Board of Managers.

(a) No Management by Unitholders. The Unitholders shall not manage or control the business and affairs of the LLC, except for situations in which the approval of all or certain Unitholders is expressly required by this Agreement or by non-waivable provisions of applicable law.

(b) Authority of the Board of Managers.

(i) Except for situations in which the approval of all or certain Unitholders or any other Person is otherwise expressly required by this Agreement or by non-waivable provisions of

applicable law, subject to the provisions of Section 5.1(b)(ii), (A) the powers of the LLC shall be exercised by or under the authority of, and the business and affairs of the LLC shall be managed under the direction of, the Board and (B) the Board may make all decisions and take all actions for the LLC not otherwise provided for in this Agreement.

(ii)     The Board may act by (A) resolutions adopted at a meeting or by written consent pursuant to Section 5.3, (B) delegating power and authority to one or more committees pursuant to Section 5.4 or (C) delegating power and authority to any Officer pursuant to Section 5.5(a).

(iii)     Each Unitholder acknowledges and agrees that no Manager shall, solely as a result of being a Manager, be bound to devote all of such Manager's business time to the affairs of the LLC, and that such Manager and such Manager's Affiliates do and will continue to engage for their own account and for the accounts of others in other business ventures.

(c)     Officers.  The management of the business and affairs of the LLC by the Officers and the exercising of their powers shall be conducted under the supervision of and subject to the approval of the Board.

**5.2     Composition and Election of the Board of Managers**.

(a)     Number and Designation.  The number of Managers on the Board initially shall be one (1).  PDG shall be the initial Manager. The Managers shall be appointed by the act of a Required Interest at an annual or special meeting of Class A Unitholders called for that purpose or by an action without a meeting as provided in this Agreement.

(b)     Term.  Members of the Board shall serve from their designation in accordance with the terms hereof until their resignation (in accordance with the terms hereof), removal or death.  Members of the Board need not be Unitholders and need not be residents of the State of Texas.  After the date hereof, a Person shall become a member of the Board effective upon receipt by the LLC at its principal place of business of a written notice addressed to the Board (or at such later time or upon the happening of some other event specified in such notice) of such Person's designation from the Person or Persons entitled to designate such manager pursuant to Section 5.2(a).  A member of the Board may resign as such by delivering his, her or its written resignation to the LLC at the LLC's principal office addressed to the Board. Such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.

(c)     Removal.  Any Manager may be removed, with or without cause, by a Required Interest at a meeting of the Class A Unitholders called expressly for that purpose and at which a quorum is present, or pursuant to a written consent adopted pursuant to this Agreement.

(d)     Vacancies.  In the event that any Manager ceases to serve as a member of the Board such Manager shall be automatically removed from each committee of the Board and such vacant position shall remain vacant until filled by the act of a Required Interest.  Any Manager position to be filled by reason of an increase in the number of Managers may be filled by election at an annual or special meeting of Class A Unitholders called for that purpose.  Any vacancy occurring in the Managers other than by reason of an increase in the number of Managers may be filled (a) by election at an annual meeting or special meeting of the Class A Unitholders called for that purpose or (b) by the affirmative vote of a majority of the remaining Managers though less than a quorum of the Managers.  A Manager elected to fill a vacancy occurring other than by reason of an increase in the number of Managers shall be elected for the unexpired term of his predecessor in office.

(e) <u>Reimbursement</u>. The LLC shall pay all reimbursable out-of-pocket costs and expenses incurred by each member of the Board incurred in the course of their service hereunder, including in connection with attending regular and special meetings of the Board, any board of managers or board of directors of any of the LLC's Subsidiaries and/or any of their respective committees.

(f) <u>Compensation of Managers</u>. Managers shall receive no compensation for serving in such capacity.

(g) <u>Reliance by Third Parties</u>. Any Person dealing with the LLC, other than a Unitholder, may rely on the authority of the Board (or any Officer authorized by the Board) in taking any action in the name of the LLC without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement. Every agreement, instrument or document executed by the Board (or any Officer authorized by the Board) in the name of the LLC with respect to any business or property of the LLC shall be conclusive evidence in favor of any Person relying thereon or claiming thereunder that (i) at the time of the execution or delivery thereof, this Agreement was in full force and effect, (ii) such agreement, instrument or document was duly executed according to this Agreement and is binding upon the LLC and (iii) the Board or such Officer was duly authorized and empowered to execute and deliver such agreement, instrument or document for and on behalf of the LLC.

(h) <u>Subsidiary Board of Managers or Board of Directors</u>. The LLC shall at all times, unless otherwise determined by the Board, in its sole discretion, cause the board of managers or board of directors of each of the LLC's Subsidiaries to be comprised of the same persons who are then Managers of the Board pursuant to <u>Section 5.2(a)</u>.

**5.3    Board Meetings and Actions by Written Consent**.

(a) <u>Quorum; Voting</u>. A majority of the total number of Managers then serving on the Board must be present at a meeting (including for purposes of actions taken pursuant to <u>Section 5.3(g)</u>) in order to constitute a quorum for the transaction of business of the Board, and except as otherwise provided in this Agreement, the act of the Managers holding a majority of the total votes present at a meeting of the Board at which a quorum is present shall be the act of the Board. If a quorum shall not be present during a meeting of the Board, the Managers present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. A Manager who is present at a meeting of the Board at which action on any matter is taken shall be presumed to have assented to the action unless his, her or its dissent shall be entered in the minutes of the meeting or unless he, she or it shall file such written dissent to such action with the person acting as secretary of the meeting before the adjournment thereof or shall deliver such dissent to the LLC immediately after the adjournment of the meeting. Such right to dissent shall not apply to a Manager who voted in favor of such action. At each meeting of the Board, and in each other circumstances in which the Managers are authorized or directed to take any action under this Agreement, each Manager present at such meeting (or taking such action) shall be entitled to one (1) vote on all matters voted on by the Managers.

(b) <u>Place; Attendance</u>. Meetings of the Board may be held at such place or places as shall be determined from time to time by resolution of the Board. At all meetings of the Board, business shall be transacted in such order as shall from time to time be determined by resolution of the Board. Attendance of a Manager at a meeting shall constitute a waiver of notice of such meeting, except where a Manager attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

(c) Meeting in Connection with Unitholder Meeting. In connection with any meeting of Unitholders, the Board may, if a quorum is present, hold a meeting for the transaction of business immediately after and at the same place as such meeting of the Unitholders. Notice of such meeting at such time and place shall not be required.

(d) Regular Meetings. Regular meetings of the Board shall be held at such times and places as shall be designated from time to time by resolution of the Board. Further notice of such meetings shall not be required.

(e) Special Meetings. Special meetings of the Board may be called by any Manager on at least twenty-four (24) hours' notice to each other Manager. Such notice need not state the purpose or purposes of, nor the business to be transacted at, such meeting, except as may otherwise be required by law or provided for in this Agreement, and shall be delivered either personally, by telephone, by electronic mail or by any other similarly timely means of communication

(f) Chairman and Vice Chairman. The Board may designate one of the Managers to serve as Chairman and a different Manager to serve as Vice Chairman. The Chairman shall preside at all meetings of the Board. If the Chairman is absent at any meeting of the Board, the Vice Chairman shall preside over such Board meeting. If the Chairman and Vice Chairman are absent, the Managers present may designate a member to serve as interim chairman for that meeting. Neither the Chairman nor Vice Chairman, except in their capacity as an Officer, if applicable, shall have the authority or power to act for or on behalf of the LLC, to do any act that would be binding on the LLC or to make any expenditure or incur any obligation on behalf of the LLC or authorize any of the foregoing.

(g) Action by Written Consent or Telephone Conference. Any action permitted or required by the Texas Act, the Certificate or this Agreement to be taken at a meeting of the Board or any committee designated by the Board may be taken without a meeting, without prior notice and without a vote, if a consent in writing (including by electronic mail), setting forth the action to be taken, is signed by all of the Managers that would be required to approve such action at a meeting of the Board or such committee at which all Managers or, as applicable, committee members, were present and voted. Subject to the requirements of the Texas Act, the Certificate or this Agreement for notice of meetings, unless otherwise restricted by the Certificate, the Managers or members of any committee designated by the Board may participate in and hold a meeting of the Board or any committee, as the case may be, by means of a conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in such meeting shall constitute attendance and presence in person at such meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened. Telephonic participation will be made available at all meetings of the Board.

## 5.4 Committees; Delegation of Authority and Duties.

(a) Committees; Generally. The Board may, from time to time, designate one or more committee. Any such committee, to the extent provided in the enabling resolution or in the Certificate or this Agreement, shall have and may exercise all of the authority of the Board. At every meeting of any such committee, the presence of a majority of all the members thereof shall constitute a quorum, and the affirmative vote of the members of such committee holding a majority of the total votes present at a meeting of such committee at which a quorum is present shall be the act of such committee. At any meeting of a committee of the Board, and in each other circumstances in which the Managers are authorized or directed to take any action under this Agreement with respect to a committee of the Board, each Manager who is a member of such committee and present at such meeting (or taking such action) shall be entitled to one (1)

vote on all matters voted on by the members of such Committee. The Board may dissolve any committee at any time, unless otherwise provided in the Certificate or this Agreement.

(b) Delegation Generally. The Board may, from time to time, delegate to one or more Persons (including any Manager or Officer) such authority and duties as the Board may deem advisable in addition to those powers and duties set forth in Section 5.1(b). The Board also may assign titles (including chairman, chief executive officer, president, vice president, secretary, assistant secretary, treasurer and assistant treasurer) to any Manager, Unitholder or other individual and may delegate to such Manager, Unitholder or other individual certain authority and duties. Any number of titles may be held by the same Manager, Unitholder or other individual. Any delegation pursuant to this Section 5.4(b) may be revoked at any time by the Board.

(c) Third-party Reliance. Any Person dealing with the LLC, other than a Unitholder, may rely on the authority of any Officer in taking any action in the name of the LLC without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

5.5    **Officers**.

(a) Designation and Appointment. The Board may (but need not), from time to time, designate and appoint one or more Persons as an Officer of the LLC. No Officer need be a resident of the State of Texas, a Unitholder or a Manager. Any Officers so designated shall have such authority and perform such duties as the Board may, from time to time, delegate to them. The Board may assign titles to particular Officers. Unless the Board otherwise decides, if the title is one commonly used for officers of a business corporation, the assignment of such title shall constitute the delegation to such Officer of the authority and duties that are normally associated with that office, subject to (i) any specific delegation of authority and duties made to such Officer by the Board pursuant to the third sentence of this Section 5.5(a) or (ii) any delegation of authority and duties made to one or more Officers pursuant to the terms of Section 5.4(b) and Section 5.5(c). Each Officer shall hold office until such Officer's successor shall be duly designated and shall qualify or until such Officer's death or until such Officer shall resign or shall have been removed in the manner hereinafter provided. Any number of offices may be held by the same individual. The salaries or other compensation, if any, of the Officers and agents of the LLC shall be fixed from time to time by the Board.

(b) Resignation; Removal; Vacancies. Any Officer (subject to any contract rights available to the LLC, if applicable) may resign as such at any time. Such resignation shall be made in writing and shall take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Board. The acceptance of a resignation shall not be necessary to make it effective, unless expressly so provided in the resignation. Any Officer may be removed as such, either with or without cause, at any time by the Board in its discretion; provided that such removal shall be without prejudice to the contract rights, if any, of the individual so removed. Designation of an Officer shall not of itself create contract rights. Any vacancy occurring in any office of the LLC may be filled by the Board and shall remain vacant until filled by the Board.

(c) Duties of Officers Generally. The Officers, in the performance of their duties as such, shall owe the same fiduciary duties to the LLC as are owed by the officers of a corporation to such corporation and its stockholders under the laws of the State of Texas.

**5.6    Limitation of Liability**.

(a)    Except as otherwise provided herein or in any agreement entered into by such Person and the LLC, and to the maximum extent permitted by the Texas Act, no present or former Manager or Tax Representative or any of such Manager's or Tax Representative's Related Persons shall be liable to the LLC or to any Unitholder for any act or omission performed or omitted by such Person in good faith in its capacity as a Manager or Tax Representative of the LLC or otherwise. Each Manager and Tax Representative shall be entitled to rely upon the advice of legal counsel, independent public accountants and other experts, including financial advisors, and any act of or failure to act by such Manager or Tax Representative in good faith reliance on such advice shall in no event subject such Manager or Tax Representative or any of his, her or its Related Persons to liability to the LLC or any Unitholder. For purposes of this Section 5.6, the term "Tax Representative" shall be deemed to also reference the Designated Individual.

(b)    Whenever in this Agreement or any other agreement contemplated herein, the Board is permitted or required to take any action or to make a decision in its "sole discretion" or "discretion," with "complete discretion" or under a grant of similar authority or latitude, each Manager shall be entitled to consider such interests and factors as such Manager desires (including such Manager's interests as a Unitholder or a partner or employee of a Unitholder); provided that such Manager shall act in good faith.

(c)    Whenever in this Agreement the Board is permitted or required to take any action or to make a decision in its "good faith" or under another express standard, the Board shall act under such express standard and, to the extent permitted by applicable law, shall not be subject to any other or different standards imposed by this Agreement or any other agreement contemplated herein, and, notwithstanding anything contained herein to the contrary, so long as the Board acts in good faith, the resolution, action or terms so made, taken or provided by the Board shall not constitute a breach of this Agreement or any other agreement contemplated herein or impose liability upon any Manager or any of his, her or its Related Persons.

(d)    To the maximum extent permitted by applicable law, but without limitation on the obligations of the Officers pursuant to Section 5.5(c) (or of the rights of the LLC or the Unitholders in respect thereof), each Unitholder hereby waives any claim or cause of action by such Person against each Manager and Tax Representative and each of such Manager's or Tax Representative's Related Persons for any breach of any fiduciary duty to the LLC, its Unitholders or any Subsidiary of the LLC by such Person, including as may result from a conflict of interest between the LLC or such Subsidiary and such Person. With respect to any such waived conflict of interest, no Manager or Tax Representative shall be obligated to recommend or take any action as a Manager or Tax Representative that prefers the interests of the LLC or any Subsidiary or the Unitholders over the interests of such Manager or Tax Representative or such Manager's or Tax Representative's Related Persons.

## ARTICLE VI

## GENERAL RIGHTS AND OBLIGATIONS OF UNITHOLDERS

**6.1    Limitation of Liability**.    Except as otherwise provided by applicable law or this Agreement, the debts, obligations, and liabilities of the LLC, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the LLC, and no Unitholder shall be obligated personally for any such debt, obligation, or liability of the LLC solely by reason of being a Unitholder of the LLC; provided that a Unitholder shall be required to return to the LLC any Distribution made to it in clear and manifest accounting or similar error. The immediately preceding sentence shall constitute a compromise to which all Unitholders have consented within the meaning of the Texas Act. Notwithstanding

anything contained herein to the contrary, the failure of the LLC to observe any formalities or requirements relating to the exercise of its powers or management of its business and affairs under this Agreement or the Texas Act shall not be grounds for imposing personal liability on the Unitholders for liabilities of the LLC.

      **6.2**    **Lack of Authority**. No Unitholder in his, her, or its capacity as such (other than the members of the Board acting as the Board or an authorized Officer of the LLC) has the authority or power to act for or on behalf of the LLC in any manner, to do any act that would be (or could be construed as) binding on the LLC or to make any expenditures on behalf of the LLC, and the Unitholders hereby consent to the exercise by the Board of the powers conferred on it by law and this Agreement.

      **6.4**    **No Right of Partition**. No Unitholder shall have the right to seek or obtain partition by court decree or operation of law of any LLC property, or the right to own or use particular or individual assets of the LLC.

      **6.4**    **Unitholders Right to Act**. For situations requiring the approval of any Unitholders or class thereof (rather than the approval of the Board on behalf of the Unitholders), the Unitholders shall act through meetings and written consents as described in Section 3.2 and Section 3.3.

      **6.5**    **Transactions between the LLC and the Unitholders**. Notwithstanding that it may constitute a conflict of interest, the Unitholders or their Affiliates may engage in any transaction (including the purchase, sale, lease or exchange of any property or rendering of any service or the establishment of any salary, other compensation or other terms of employment) with the LLC and/or its Subsidiaries so long as such transaction is approved by the Board and otherwise complies with the terms of this Agreement.

      **6.6**    **Confidentiality.** Each Unitholder recognizes and acknowledges that it has and may in the future receive certain confidential and proprietary information and trade secrets of the LLC and its Subsidiaries, including confidential information of the LLC and its Subsidiaries regarding identifiable, specific and discrete business opportunities being pursued by the LLC or its Subsidiaries (the "Confidential Information"). Except as otherwise agreed to by the Board, each Unitholder agrees that it shall not, and shall cause each of its directors, officers, unitholders, partners, employees, agents and members not to, during or after the term of this Agreement, whether directly or indirectly through an Affiliate or otherwise, take commercial or proprietary advantage of or profit from any Confidential Information or disclose Confidential Information to any Person for any reason or purpose whatsoever, except (a) to authorized directors, officers, representatives, agents and employees of the LLC or its Subsidiaries and as otherwise may be proper in the course of performing such Unitholder's obligations, or enforcing such Unitholder's rights, under this Agreement and the agreements expressly contemplated hereby, (b) as part of such Unitholder's normal reporting, rating or review procedure (including normal credit rating or pricing process), (c) with the prior written consent of the Board (except in the case of any prospective purchaser or merger partner who engages in business activities competitive with the LLC or any of its Subsidiaries, not to be unreasonably delayed, withheld or conditioned), to any bona fide prospective purchaser of the equity or assets of such Unitholder or its Affiliates or the Units held by such Unitholder, or prospective merger partner of such Unitholder or its Affiliates, provided, that such prospective purchaser or merger partner agrees to be bound by the provisions of this Section 6.6 or (d) as is required to be disclosed by order of a court of competent jurisdiction, administrative body or other Governmental Entity, or by subpoena, summons or legal process, or by law, rule or regulation, provided, that to the extent permitted by law, the Unitholder required to make such disclosure shall provide to the Board prompt notice of such disclosure. For purposes of this Section 6.6, "Confidential Information" shall not include any information of which (i) such Person learns from a source other than the LLC or its Subsidiaries who is not known by such Person to be bound by a confidentiality obligation or (ii) is disclosed in a prospectus or other documents for dissemination to the public. Nothing in this Section 6.6 shall in any way limit or otherwise modify any confidentiality, non-competition or non-solicitation obligations of any Unitholder pursuant to any other agreement with the LLC or any of its Subsidiaries.

**ARTICLE VII**

**EXCULPATION AND INDEMNIFICATION**

      **7.1**    **Exculpation**. No Officer, Manager or Tax Representative shall be liable to any other Officer, Manager or Tax Representative, the LLC, or to any Unitholder for any loss suffered by the LLC or any Unitholder (in its capacity as a Unitholder) unless such loss is caused by such Person's gross negligence, willful misconduct, violation of law or material breach of this Agreement. The Officers, Managers and Tax Representative shall not be liable for errors in judgment or for any acts or omissions that do not constitute gross negligence, willful misconduct, violation of law or material breach of this Agreement. Any Officer, Manager or Tax Representative may consult with counsel and accountants in respect of LLC affairs, and provided such Person acts in good faith reliance upon the advice or opinion of such counsel or accountants, such Person shall not be liable for any loss suffered by the LLC or any Unitholder (in its capacity as a Unitholder) in reliance thereon. Notwithstanding the foregoing, the exculpation of liability provided in this Section 7.1 shall, with respect to the Officers, be subject to the provisions of Section 5.5(c). For purposes of this Section 7.1, references to the term "Tax Representative" shall be deemed to also reference the Designated Individual.

      **7.2**    **Right to Indemnification**. The LLC agrees that, subject to the limitations and conditions in this Article VII, each Person who was or is made a party or is threatened to be made a party to or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or arbitrative (hereinafter a "Proceeding"), or any appeal in such a Proceeding or any inquiry or investigation that could lead to such a Proceeding, by reason of the fact that he or she, or a Person of whom he or she is the legal representative, is or was a Unitholder, Manager, Officer, Designated Individual or Tax Representative, or while a Unitholder, Manager, Officer, Designated Individual or Tax Representative is or was serving at the request of the LLC or any of its Subsidiaries as a manager, director, officer, partner, venturer, proprietor, tax matters partner, partnership representative, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise, shall be indemnified by the LLC to the fullest extent permitted by the Texas Act or other applicable law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the LLC to provide broader indemnification rights than said law permitted the LLC or the applicable Subsidiary to provide prior to such amendment) against judgments, penalties (including taxes and punitive damages), fines, settlements and reasonable expenses (including attorneys' fees) actually incurred by such Person in connection with such Proceeding, and indemnification under this Article VII (or otherwise) shall continue as to a Person who has ceased to serve in the capacity which initially entitled such Person to such indemnity. The rights granted pursuant to this Article VII shall be deemed contract rights, and no amendment, modification or repeal of this Article VII shall have the effect of limiting or denying any such rights with respect to actions taken or Proceedings arising prior to any amendment, modification or repeal. It is expressly acknowledged that the indemnification provided in this Article VII could involve indemnification for negligence or under theories of strict liability.

      **7.3**    **Advance Payment**. Reasonable expenses incurred by a Person of the type entitled to be indemnified under Section 7.2 who was, is or is threatened to be made a named defendant or respondent in a Proceeding (other than a Proceeding brought by the LLC against such Person) shall, unless otherwise determined by the Board in the specific circumstance, be paid by the LLC in advance of the final disposition of the Proceeding upon receipt of an undertaking by or on behalf of such Person to repay such amount if it shall ultimately be determined that he or she is not entitled to be indemnified by the LLC.

      **7.4**    **Indemnification of Employees and Agents**. The LLC, by adoption of a resolution of the Board, may indemnify and advance expenses to an employee or agent of the LLC to the same extent and

subject to the same conditions under which it may indemnify and advance expenses to Persons who are not or were not Managers or Officers but who are or were serving at the request of the LLC as a manager, director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise against any liability asserted against such Person and incurred by such Person in such a capacity or arising out of such Person's status as such a Person to the same extent that it may indemnify and advance expenses to Managers and Officers under this Article VII.

> **7.5**   **Appearance as a Witness.**   Notwithstanding any other provision of this Article VII, the LLC shall pay or reimburse reasonable out-of-pocket expenses incurred by a Manager, Officer, Designated Individual or Tax Representative (in such capacity) in connection with such Manager's, Officer's, Designated Individual's or Tax Representative's appearance as a witness or other participation in a Proceeding at a time when such Manager, Officer, Designated Individual or Tax Representative is not a named defendant or respondent in the Proceeding.

> **7.6**   **Non-exclusivity of Rights.**   The right to indemnification and advancement and payment of expenses conferred in this Article VII shall not be exclusive of any other right which a Manager, Officer or other Person indemnified pursuant to Section 7.2 may have or hereafter acquire under any law (common or statutory), provision of the Certificate or this Agreement, agreement, vote of Unitholders or disinterested Managers or otherwise.

> **7.7**   **Insurance.**   The LLC may purchase and maintain insurance, or cause any of its Subsidiaries to purchase and maintain insurance, at its or their expense, to protect itself and any Person who is or was serving as a Manager, Officer, Designated Individual, Tax Representative or agent of the LLC or is or was serving at the request of the LLC as a manager, director, officer, partner, tax matters partners, partnership representative, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise against any expense, liability, tax or loss, whether or not the LLC would have the power to indemnify such Person against such expense, liability, tax or loss under this Article VII.

> **7.8**   **Savings Clause.**   If this Article VII or any portion hereof is invalidated on any ground by any court of competent jurisdiction, then the LLC shall nevertheless indemnify and hold harmless each Manager, Officer, Designated Individual, Tax Representative or any other Person indemnified pursuant to this Article VII as to costs, taxes, charges and expenses (including attorneys' fees), judgments, fines and amounts paid in settlement with respect to any action, suit or proceeding, whether civil, criminal, administrative or investigative to the full extent permitted by any applicable portion of this Article VII that shall not have been invalidated and to the fullest extent permitted by applicable law.

### ARTICLE VIII

### BOOKS, RECORDS, ACCOUNTING AND REPORTS

> **8.1**   **Records and Accounting.**   The LLC shall cause to be kept appropriate books and records with respect to the LLC's business, including all books and records necessary to provide any information, lists, and copies of documents required to be provided pursuant to Section 8.3 or pursuant to applicable laws. All matters concerning (a) the determination of the relative amount of allocations and distributions among the Unitholders pursuant to each of Article III, Article IV and Article IX and (b) accounting procedures and determinations, and other determinations not specifically and expressly provided for by the terms of this Agreement, shall be determined by the Board, whose determination shall be final and conclusive as to all of the Unitholders absent manifest clerical error.

**8.2**     **Fiscal Year**.  The fiscal year of the LLC shall be the 12-month period ending on December 31st of each calendar year (or such other annual accounting period as may be established by the Board).

**8.3**     **Transmission of Communications**.  Each Person that owns or controls Units on behalf of, or for the benefit of, another Person or Persons shall be responsible for conveying any report, notice, or other communication received from the Board to such other Person or Persons.

**8.4**     **LLC Funds**.  No Manager or Officer may commingle the LLC's funds with the funds of any Unitholder, Manager or Officer.

## ARTICLE IX

## CERTAIN TAX AND ACCOUNTING MATTERS

**9.1**     **Partnership for Tax Purposes**.  For so long as the LLC has more than one Unitholder, the Unitholders intend that the LLC shall be treated as a partnership for U.S. federal and, to the extent applicable, state and local income tax purposes, and that each Unitholder and the LLC shall file all tax returns and shall otherwise take all tax and financial reporting positions in a manner consistent with such treatment. In the event that the Board determines, with the consent of the holders of the Required Interest, that the LLC should elect to be treated as an association taxable as a corporation for U.S. federal income tax purposes (including, if applicable, on a retroactive basis) pursuant to Treasury Regulation 301.7701-3 (or any successor regulation or provision) or, to the extent applicable, state or local income tax purposes, each Unitholder and former Unitholder shall cooperate with the LLC to make such election (including, if applicable, on a retroactive basis), including by executing any forms or documents required in connection therewith. In the event that the LLC is treated as an association taxable as a corporation for U.S. federal income tax purposes or, to the extent applicable, state or local income tax purposes, Section 4.1(b) and any other provisions of this Agreement inconsistent with such treatment shall be disregarded.  In the event that the LLC is disregarded as a separate entity from its sole Unitholder for U.S. federal income tax purposes, such Unitholder shall treat all items of income, gain, loss, deduction and credit of the LLC as its own, and Sections 9.2 through 9.7 and any other provisions of this Agreement inconsistent with such treatment shall be disregarded.

**9.2**     **Capital Accounts**.

(a)     The LLC shall establish and maintain a separate Capital Account for each Unitholder according to the rules of Treasury Regulation Section 1.704-1(b)(2)(iv).  Each Unitholder's Capital Account shall be adjusted:

(i)     by adding any Capital Contributions made by such Unitholder;

(ii)     by deducting any amounts paid to such Unitholder in connection with the redemption or other repurchase by the LLC of Units;

(iii)     by adding any Profits allocated in favor of such Unitholder and any other items of income and gain specially allocated to such Unitholder under Section 9.5;

(iv)     by subtracting any Losses allocated in favor of such Unitholder and any other items of deduction and loss specially allocated to the Unitholder under Section 9.5; and

(v)      by deducting in the amount of cash and the Book Value (net of liabilities secured by the property or to which the property is subject) of other assets distributed to such Unitholder in respect of its Units.

(b)  For purposes of this Agreement, "Profits" and "Losses" means, for each fiscal period, the net income and net loss, respectively, of the LLC determined strictly in accordance with federal income tax principles (including rules governing depreciation and amortization), subject to the following adjustments:

(i)      Any income of the LLC that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses shall be added to such taxable income or loss.

(ii)      The computation of all items of income, gain, loss, and deduction shall include those items described in Code Section 705(a)(l)(B) or Code Section 705(a)(2)(B) and Treasury Regulation Section 1.704-1(b)(2)(iv)(i), without regard to the fact that such items are not includable in gross income or are not deductible for federal income tax purposes.

(iii)      If the Book Value of any LLC property is adjusted pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(e) or (f), the amount of such adjustment shall be taken into account as gain or loss from the disposition of such property.

(iv)      Items of income, gain, loss, or deduction attributable to the disposition of LLC property having a Book Value that differs from its adjusted basis for tax purposes shall be computed by reference to the Book Value of such property.

(v)      In lieu of the depreciation, amortization and other cost recovery deductions taken into account in computing the taxable income or loss, there will be taken into account Depreciation.

(vi)      To the extent an adjustment to the adjusted tax basis of any LLC asset pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis).

(vii)      Any gain, income, deductions or losses specially allocated pursuant to Section 9.5 shall not be taken into account in determining Profits or Losses.

**9.3      Negative Capital Accounts**.  No Unitholder shall be required to pay to any other Unitholder or the LLC any deficit or negative balance which may exist from time to time in such Unitholder's Capital Account (including upon and after dissolution of the LLC).

**9.4      Allocations**.

(a)  Except as otherwise stated in Section 9.5, all items of income, gain, and credit of the LLC shall be allocated among the Class A Unitholders in accordance with their respective Class A Percentage Interests;

(b)  Except as otherwise stated in Section 9.5, all items of expense, loss, and deduction of the LLC shall be allocated as follows:

(i)     One third (1/3) to the Class B Unitholders and Two-thirds (2/3) to the Class A Unitholders in accordance with their respective Percentage Interests, until the total allocation of expense to the Class B Unitholders has reached a maximum of $100,000 per year; then

(ii)     One hundred percent (100%) to the Class A Unitholders in accordance with their respective Class A Percentage Interests.

**9.5     Special Allocations**.

(a)  In the event that there is a net decrease in the Minimum Gain during any Taxable Year, the minimum gain chargeback described in Sections 1.704-2(f) and (g) of the Treasury Regulations shall apply.  This Section 9.5(a) is intended to be a minimum gain chargeback provision that complies with the requirements of Treasury Regulation Section 1.704-2(f), and shall be interpreted in a manner consistent therewith.

(b)  If during any taxable year there is a net decrease in Member Minimum Gain, the partner minimum gain chargeback described in Section 1.704-2(i)(4) of the Treasury Regulations shall apply.  This Section 9.5(b) is intended to be a minimum gain chargeback provision that complies with the requirements of Treasury Regulation Section 1.704-2(i)(4) and shall be interpreted in a manner consistent therewith.

(c)  If any Unitholder unexpectedly receives an adjustment, allocation, or distribution described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6) has an Adjusted Capital Account Deficit as of the end of any Taxable Year, computed after the application of Section 9.5(a) and Section 9.5(b) but before the application of any other provision of this Article IX, then Profits for such Taxable Year shall be allocated to such Unitholder in proportion to, and to the extent of, such Adjusted Capital Account Deficit.  This Section 9.5(c) is intended to be a qualified income offset provision as described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d) and shall be interpreted in a manner consistent therewith.

(d)  Except as otherwise provided under Treasury Regulations Section 1.704-2(b), the Nonrecourse Deductions shall be allocated to the Unitholders in proportion to their interests in the LLC.

(e)  Member Nonrecourse Deductions shall be allocated among the Unitholders who bear the Economic Risk of Loss for the Member Nonrecourse Debt to which such Member Nonrecourse Deductions are attributable in the ratio in which they share the Economic Risk of Loss for such Member Nonrecourse Debt.  This provision is to be interpreted in a manner consistent with the requirements of Section 1.704-2(b)(4)(i)(1) of the Treasury Regulations.

(f)  The allocations set forth in Section 9.5(a) through Section 9.5(e) (the "Regulatory Allocations") are intended to comply with certain requirements of Sections 1.704-1(b) and 1.704-2 of the Treasury Regulations.  The Regulatory Allocations may not be consistent with the manner in which the Unitholders intend to allocate Profit and Loss of the LLC or make Distributions.  Accordingly, notwithstanding the other provisions of this Article IX, but subject to the Regulatory Allocations, income, gain, deduction, and loss shall, to the maximum extent possible, be reallocated among the Unitholders so as to eliminate the effect of the Regulatory Allocations and thereby cause the respective Adjusted Capital Accounts of the Unitholders to be in the amounts (or as close thereto as possible) they would have been if Profit and Loss (and such other items of income, gain, deduction, and loss) had been allocated without reference to the Regulatory Allocations.

**9.6** **Tax Allocations**.

(a) Except as otherwise provided in this Section 9.6, the income, gains, losses, deductions, and credits of the LLC will be allocated, for federal, state, and local income tax purposes, among the Unitholders in the same manner as the corresponding "book" items are allocated under Section 9.4 (as a component of Net Profits or Net Losses) or Section 9.5.

(b) Each Unitholder's allocable share of the taxable income or loss of the LLC, depreciation, depletion, amortization and gain or loss with respect to any contributed property, or with respect to revalued property where the LLC's property is revalued pursuant to Section 1.704-1(b)(2)(iv)(f) of the Treasury Regulations, shall be determined in the manner (and as to revaluations, in the same manner as) provided in Section 704(c) of the Code. The allocation shall take into account, to the full extent required or permitted by the Code, the difference between the adjusted basis of the property to the Unitholder contributing it and the Fair Market Value of the property determined by the Board at the time of its contribution or revaluation, as the case may be. The LLC shall apply Section 704(c)(1)(A) by using any permissible method selected by the Tax Representative.

(c) Allocations of tax credits, tax credit recapture, and any items related thereto shall be allocated to the Unitholders according to their interests in such items as determined by the Board taking into account the principles of Treasury Regulation Section 1.704-1(b)(4)(ii).

(d) In the event the LLC has in effect an election under Section 754 of the Code, allocations of income, gain, loss deduction or credit to affected Unitholders for federal, state and local tax purposes will take into account the effect of such election pursuant to applicable provisions of the Code.

(e) Allocations pursuant to this Section 9.6 are solely for purposes of federal, state, and local taxes and shall not affect, or in any way be taken into account in computing, any Unitholder's Capital Account or share of Profits, Losses, Distributions, or other LLC items pursuant to any provision of this Agreement.

**9.7** **Amounts Withheld**. Each Unitholder shall timely provide to the LLC all information, forms and certifications reasonably necessary or appropriate to enable the LLC to comply with any withholding obligation of the LLC and represents and warrants that the information, forms and certifications furnished by it shall be true, correct and complete in all material respects. Any amounts withheld from a Distribution by the LLC to a Unitholder pursuant to any U.S. federal, state, local or foreign tax law shall be treated as if the same had been distributed to that Unitholder pursuant to Section 4.1(a) or Section 13.2. If the LLC is required by law to make any tax payment that is specifically attributable to a Unitholder or a Unitholder's status as such (including any federal, state, local or foreign withholding, personal property, personal property replacement, unincorporated business or other taxes), then such Unitholder shall indemnify the LLC in full for the entire amount paid (including interest, penalties and related expenses). The LLC may pursue and enforce all rights and remedies it may have against each Unitholder under this Section 9.7, including instituting a lawsuit to collect such indemnification and contribution with interest calculated at a rate equal to ten percent (10%) per annum, compounded as of the last day of each year (but not in excess of the highest rate per annum permitted by law) and shall be entitled to deduct and offset any amounts owed to the LLC by a Unitholder hereunder from amounts otherwise payable or distributed to such Unitholder. The obligations hereunder shall survive the winding up or dissolution of the LLC.

**9.8** **Tax Returns**. The Tax Representative shall, at the expense of the LLC, prepare and file all necessary tax returns for the LLC. Each Unitholder shall furnish to the LLC all pertinent information

in its possession relating to LLC operations that is necessary to enable the LLC's tax returns to be prepared and filed.

**9.9     Tax Information**. The LLC shall use reasonable efforts to deliver or cause to be delivered, within ninety (90) days after the end of each Taxable Year, or as soon as reasonably practicable thereafter, to each Person who was a Unitholder at any time during such Taxable Year all information regarding the LLC necessary for the preparation of such Person's United States federal and state income tax returns.

**9.10     Tax Representative.**

(a)     PDG (or an Affiliate so designated by PDG) is hereby designated as the initial "partnership representative" of the LLC within the meaning of Section 6223(a) of the Code. If any state or local tax law provides for a tax matters partner/partnership representative or person having similar rights, powers, authority or obligations, the person designated as the "tax matters partner" pursuant to Section 6231(a)(7) of the Code shall also serve in such capacity (in any such federal, state or local capacity, the "Tax Representative"). In such capacity, the Tax Representative shall have all of the rights, authority and power, and shall be subject to all of the obligations, of a tax matters partner/partnership representative to the extent provided in the Code and the Treasury Regulations, and the Unitholders hereby agree to be bound by any actions taken by the Tax Representative in such capacity. The Tax Representative shall represent the LLC in all tax matters to the extent allowed by law. Without limiting the foregoing, the Tax Representative is authorized and required to represent the LLC (at the LLC's expense) in connection with all examinations of the LLC's affairs by tax authorities, including administrative and judicial proceedings, and to expend LLC funds for professional services and costs associated therewith. Any decisions made by the Tax Representative, including, without limitation, whether or not to settle or contest any tax matter, and the choice of forum for any such contest, and whether or not to extend the period of limitations for the assessment or collection of any tax, shall be made in the Tax Representative's sole discretion. Without limiting the generality of the foregoing, the Tax Representative (i) shall have the sole and absolute authority to make any elections on behalf of the LLC permitted to be made pursuant to the Code or the Treasury Regulations promulgated thereunder, (ii) without limiting the foregoing, may, in its sole discretion, make on election on behalf of the LLC under Sections 6221(b) or 6226 of the Code as in effect for the first Fiscal Year beginning on or after January 1, 2018 and thereafter, and (iii) may take all actions the Tax Representative deems necessary or appropriate in connection with the foregoing. The Tax Representative will have the authority and responsibility to arrange for the preparation, and timely filing, of the LLC's tax returns. All references to Code Sections in this Section 9.10 (including, for the avoidance of doubt, Section 9.10(b) through Section 9.10(c)) refer to those Code Sections as amended by the Bipartisan Budget Act of 2015 (P.L. 114-74). The Tax Representative shall be indemnified and reimbursed for all expenses, including legal and accounting fees, claims, liabilities, losses and damages incurred in connection with its serving in that capacity.

(b)     Each Unitholder agrees to provide promptly and to update as necessary at any times requested by the Tax Representative, all information, documents, self-certifications, tax identification numbers, tax forms, and verifications thereof, that the Tax Representative deems necessary in connection with (i) any information required for the LLC to determine the application of Sections 6221-6235 of the Code to the LLC, (ii) an election by the LLC under Section 6221(b) or 6226 of the Code and (iii) an audit or a final adjustment of the LLC by a taxing authority. Each Unitholder covenants and agrees to take any action reasonably requested by the LLC in connection with an election by the LLC under Section 6221(b) or 6226 of the Code, or an audit or a final adjustment of the LLC by a taxing authority (including, without limitation, promptly filing amended tax returns and promptly paying any related taxes, including penalties and interest).

(c)  The Unitholders acknowledge and agree that the LLC intends to elect the application of Section 6226 of the Code for each of its Fiscal Years. This acknowledgement applies to each Unitholder whether or not the Unitholder owns an interest in the LLC in both the reviewed year and the year of the tax adjustment. In the event that the LLC elects the application of Section 6226 of the Code, the Unitholders agree and covenant to take into account and report to the United States Internal Revenue Service (or any other applicable taxing authority) any adjustment to their tax items for the reviewed year of which they are notified by the LLC in a written statement, in the manner provided in Section 6226(b) of the Code, whether or not the Unitholder owns any interest in the LLC at such time. Any Unitholder that fails to report its share of such adjustments on its tax return, agrees to indemnify and hold harmless the LLC, the Managers, the Tax Representative, the Designated Individual and each of their Affiliates from and against any and all liabilities related to taxes (including penalties and interest) imposed on the LLC as a result of the Unitholder's inaction. In addition, each Unitholder agrees and covenants to indemnify and hold the LLC, the Managers, the Tax Representative, the Designated Individual and each of their Affiliates harmless from and against any and all liabilities related to taxes (including penalties and interest) imposed on the LLC (i) pursuant to Section 6221 of the Code, which liabilities relate to adjustments that would have been made to the tax items allocated to such Unitholder had such adjustments been made for a tax year beginning prior to January 1, 2018 (and assuming that the LLC had not made an election to have Section 6221 of the Code apply for such earlier tax years) and (ii) resulting from or attributable to such Unitholder's failure to comply with Section 9.10(b) or this Section 9.10(c). Each Unitholder acknowledges and agrees that no Unitholder shall have any claim against the LLC, the Managers, the Tax Representative, the Designated Individual or any of their Affiliates for any tax, penalties or interest resulting from the LLC's election under Section 6226 of the Code.

(d)  The provisions contained in this Section 9.10 shall survive the termination of the LLC, the termination of this Agreement and, with respect to any Unitholder, the Transfer of any portion of such Unitholder's interest in the LLC.

### 9.11    Code Section 83 of Safe Harbor Election; Code Section 83(b) Election.

(a)  By executing this Agreement, each Unitholder authorizes and directs the LLC to elect to have the "Safe Harbor" described in the proposed Revenue Procedure set forth in U.S. Internal Revenue Service Notice 2005-43 (the "Notice") apply to any interest in the LLC Transferred to a service provider by the LLC on or after the effective date of such Revenue Procedure (or any substantially similar Revenue Procedure or other guidance issued by the U.S. Internal Revenue Service) in connection with services provided to the LLC. For purposes of making such Safe Harbor election, the Tax Representative is hereby designated as the "partner who has responsibility for federal income tax reporting" by the LLC and, accordingly, execution of such Safe Harbor election by the Tax Representative constitutes execution of a "Safe Harbor Election" in accordance with Section 3.03(1) of the Notice. The LLC and each Unitholder hereby agree to comply with all requirements of the Safe Harbor described in the Notice (and any substantially similar Revenue Procedure or other guidance issued by the U.S. Internal Revenue Service), including, without limitation, the requirement that each Unitholder shall prepare and file all federal income tax returns reporting the income tax effects of each interest in the LLC issued by the LLC covered by the Safe Harbor in a manner consistent with the requirements of the Notice (or any substantially similar Revenue Procedure or other guidance issued by the U.S. Internal Revenue Service).

(b)  Any Unitholder or former Unitholder that fails to comply with the requirements set forth in Section 9.11(a) shall indemnify and hold harmless the LLC and each adversely affected Unitholder and former Unitholder from and against any and all losses, liabilities, taxes, damages, judgments, fines, costs, penalties, amounts paid in settlement and reasonable out-of-pocket costs and expenses incurred in connection therewith (including, without limitation, costs and expenses of suits and proceedings, and reasonable fees and disbursements of counsel), in each case resulting from such Unitholder's or former

Unitholder's failure to comply with such requirements. The LLC and any Unitholder may pursue any and all rights and remedies it may have to enforce the obligations of the LLC and the Unitholders (as applicable) under Section 9.11(a), including seeking specific performance and/or immediate injunctive or other equitable relief from any court of competent jurisdiction (without the necessity of showing actual money damages, or posting any bond or other security) in order to enforce or prevent any violation of the provisions of Section 9.11(a). Without limiting the foregoing, the LLC may offset Distributions to which a Person is otherwise entitled under this Agreement against such Person's obligation to indemnify the LLC and any other Person under this Section 9.11(b) (and any amount so offset with respect to such other Person's obligation to indemnify a Person other than the LLC shall be paid over to such other Person by the LLC). A Unitholder's obligations to comply with the requirements of this Section 9.11 and to indemnify the LLC and any Unitholder or former Unitholder shall survive such Unitholder's ceasing to be a Unitholder of the LLC and/or the termination, dissolution, liquidation and winding up of the LLC, and, for purposes of this Section 9.11, the LLC shall be treated as continuing in existence.

(c) Each Unitholder authorizes the Tax Representative to amend Section 9.11(a) and Section 9.11(b) to the extent necessary to achieve substantially the same tax treatment with respect to any interest in the LLC transferred to a service provider by the LLC in connection with services provided to the LLC as set forth in Section 4 of the Notice (e.g., to reflect changes from the rules set forth in the Notice in subsequent U.S. Internal Revenue Service guidance), provided, that such amendment is not materially adverse to such Unitholder (as compared with the after tax consequences that would result if the provisions of the Notice applied to all interests in the LLC transferred to a service provider by the LLC in connection with services provided to the LLC).

**9.12    Code Section 754 Election.** Notwithstanding anything in this Agreement to the contrary, the LLC, in the Board's sole discretion, may make an effective election under Code Section 754 for its taxable year that includes the Effective Date, and if made, each Unitholder shall take all actions requested by the Tax Representative in connection with such election.

## ARTICLE X

## TRANSFER OF LLC INTERESTS

**10.1    Transfers by Unitholders.**

(a) Other than to a Permitted Transferee, no Unitholder shall Transfer, or offer or agree to Transfer, all or any part of any interest in such Person's Units without the prior written consent of the Board, which consent may be withheld in the Board's sole discretion. With the Board's prior written consent (or with respect to a Transfer to a Permitted Transferee), a Unitholder may Transfer all or any part of such Person's Units, subject to compliance with this Agreement (including Section 10.1(b)) and any other agreement binding upon the Unit to be Transferred and/or the holder thereof (including any Equity Agreement).

(b) Each transferee of Units or other interest in the LLC shall, as a condition precedent to such Transfer, execute a counterpart to this Agreement, in form and substance reasonably acceptable to the LLC, pursuant to which such transferee shall agree to be bound by the provisions of this Agreement.

(c) No Unitholder shall avoid the provisions of this Agreement by (i) making one or more Transfers to one or more Permitted Transferees and then disposing of all or any portion of such Unitholder's interest in any such Permitted Transferee or (ii) issuing or permitting any Transfer of any Equity Securities of such Unitholder other than to the current direct and indirect holders of such Equity Securities. Each Unitholder that is not a natural Person shall cause the holders of legal and beneficial interests in such

32

Unitholder to not avoid the provisions of this Agreement by disposing of all or any portion of such Person's interest in such Unitholder.

      **10.2**    **Approved Sale; Drag Along Obligations; Public Offering**.

      (a)  If the Board approves a Fundamental Change (an "Approved Sale"), each other Unitholder shall vote for, consent to and raise no objections against such Approved Sale regardless of the consideration being paid in such Approved Sale, so long as such Approved Sale complies with this Section 10.2. If the Approved Sale is structured as a (i) merger or consolidation, each Unitholder shall waive any dissenters' rights, appraisal rights or similar rights in connection with such merger or consolidation or (ii) sale of Units or other Equity Securities, each holder of Units or other Equity Securities shall agree to sell all of his, her or its Units and other Equity Securities and rights to acquire Units and other Equity Securities on the terms and conditions approved by the Board. The LLC and each Unitholder shall take all necessary or desirable actions in connection with the consummation of the Approved Sale as requested by the Board, including delivery of any certificates issued representing such Unitholder's Unit, if any, and executing all agreements, documents and instruments in connection therewith in the form presented by the Board.

      (b)  The obligations of the Unitholders with respect to the Approved Sale are subject to the satisfaction of the following conditions: (i) the consideration payable upon consummation of such Approved Sale to all Unitholders shall be allocated among the Unitholders as if distributed by the LLC pursuant to Section 13.2 (with any non-cash consideration valued in good faith by the Board) and (ii) the consideration payable to any Unitholder shall be reduced by the aggregate principal amount plus all accrued and unpaid interest on any indebtedness of any such Unitholder to the LLC. If any Unitholders are given an option as to the form and amount of consideration to be received, each other Unitholder shall be given the same option (in proportion to the respective amounts of each class of security that such Unitholder owns or has the right to acquire, but with identical economic rights or preferences subject to any ownership interest or voting interest thresholds for such rights or preferences); provided that the fact that any Unitholder may receive either (A) additional consideration for entering into restrictive covenants or employment agreements or similar arrangements in favor of a purchaser or any of its Affiliates or (B) the right to make a debt or equity investment in a purchaser or any of its Affiliates (whether directly or through contribution of a security) shall not constitute a failure to satisfy any of the conditions set forth in this Section 10.2(b).

      (c)  Notwithstanding anything to the contrary, in connection with an Approved Sale, (i) no Unitholder will be required to make affirmative representations or warranties except as to such Unitholder's due organization, if applicable, due power and authority, non-contravention, absence of litigation and ownership of Equity Securities, free and clear of all Liens, and such other representations and warranties as are of the same nature as the representations and warranties of the Unitholders in Section 3.1(b), and (ii) the Unitholders may be severally obligated to join on a pro rata basis (based on the amount by which each holder's share of the aggregate proceeds paid with respect to its Equity Securities would have been reduced had the aggregate proceeds available for distribution to such Unitholders been reduced by the amount of such indemnity) in any indemnification obligation agreed to by the Board in connection with such Approved Sale, except that each Unitholder may be fully liable for obligations that relate specifically to such Unitholder, such as indemnification with respect to representations and warranties given by such Unitholder regarding such Unitholder's title to and ownership of Equity Securities; provided that no holder shall be obligated in connection with such Approved Sale to agree to indemnify or hold harmless the Transferees with respect to an amount in excess of the consideration to which such holder is entitled in such Approved Sale, or to make indemnity payments in excess of the proceeds paid to such holder in connection with such Approved Sale; provided, further, that any escrow of proceeds of any such transaction shall be withheld on a pro rata basis among all Unitholders (based on the amount by which each such holder's share of the aggregate proceeds otherwise payable with respect to its Equity Securities would have been reduced had

the aggregate proceeds available for distribution to such Unitholders been reduced by the amount placed in escrow). Each Unitholder shall enter into any indemnification or contribution agreement requested by the Board to ensure compliance with this Section 10.2(c), and the provisions of this Section 10.2(c) shall be deemed complied with if the requirement for several liability is addressed through such agreement, even if the purchase and sale agreement, merger agreement or other definitive documentation related to the Approved Sale provides for joint and several liability.

(d)    If the LLC or the Board enter into any negotiation or transaction for which Rule 506 (or any similar rule then in effect) promulgated by the Securities Exchange Commission may be available with respect to such negotiation or transaction (including a merger, consolidation or other reorganization), the Unitholders shall, at the request of the Board, appoint a "purchaser representative" (as such term is defined in Rule 501 promulgated under the Securities Act) designated by the LLC and reasonably acceptable to the Board. If any Unitholder so appoints a purchaser representative, the LLC shall pay the fees of such purchaser representative. However, if any Unitholder declines to appoint the purchaser representative designated by the LLC, such holder shall appoint another purchaser representative (reasonably acceptable to the Board), and such holder shall be responsible for the fees of the purchaser representative so appointed.

(e)    Except as otherwise provided in Section 10.2(d), each Unitholder Transferring Equity Securities pursuant to this Section 10.2 shall pay a portion of the expenses incurred by the Unitholders in connection with such Transfer, including by reducing the portion of the consideration to which such Unitholder would be entitled in such Approved Sale, based on the amount by which each Unitholder's share of the aggregate proceeds paid with respect to its Equity Securities would have been reduced had the aggregate proceeds available for distribution to such Unitholders been reduced by the amount of such expenses. Expenses incurred by any Unitholder on its own behalf will not be considered costs of the Approved Sale; it being understood that the fees and disbursements of legal counsel and financial advisors chosen by the Board will be deemed for the benefit of all Unitholders participating in such Approved Sale.

(f)    In addition, if the Board approves a Public Offering, each Unitholder shall, and shall cause its representatives to, vote for, consent to (to the extent it has any voting or consenting rights) and raise no objections against any such transaction), and the LLC and each Unitholder shall take all necessary or desirable actions in connection with the consummation of any such transaction as requested by the Board.

(g)    In no manner shall this Section 10.2 be construed to grant to any Unitholder any dissenters' rights or appraisal rights or give any Unitholder any right to vote in any transaction structured as a merger or consolidation (it being understood that the Unitholders have expressly waived all dissenters' rights, appraisal rights or similar rights (if any)).

**10.3    Effect of Assignment.**

(a)    Any Unitholder who shall assign any Units or other interest in the LLC shall cease to be a Unitholder of the LLC with respect to such Units or other interest and shall no longer have any rights or privileges of a Unitholder with respect to such Units or other interest.

(b)    Any Person who acquires in any manner whatsoever any Units or other interest in the LLC, irrespective of whether such Person has accepted and adopted in writing the terms and provisions of this Agreement, shall be deemed by the acceptance of the benefits of the acquisition thereof to have agreed to be subject to and bound by all of the terms and conditions of this Agreement that any predecessor in such Units or other interest in the LLC of such Person was subject to or by which such predecessor was bound.

**10.4    Restriction on Transfer**. In order to permit the LLC to qualify for the benefit of a "safe harbor" under Code Section 7704, notwithstanding anything to the contrary in this Agreement, no Transfer of any Unit or economic interest shall be permitted or recognized by the LLC or the Board (within the meaning of Treasury Regulation Section 1.7704-1(d)) if and to the extent that such Transfer would cause the LLC to have more than 100 partners (within the meaning of Treasury Regulation Section 1.7704-1(h), including the look-through rule in Treasury Regulation Section 1.7704-1 (h)(3)).

**10.5    Transfer Fees and Expenses**. The transferor and transferee of any Units or other interest in the LLC shall be jointly and severally obligated to reimburse the LLC for all reasonable expenses (including attorneys' fees and expenses) of any Transfer or proposed Transfer, whether or not consummated.

**10.6    Void Transfers**. Any Transfer by any Unitholder of any Units or other interest in the LLC in contravention of this Agreement (including the failure of the transferee to execute a counterpart in accordance with Section 10.1(b)) or which would cause the LLC to not be treated as a partnership for U.S. federal income tax purposes shall be void *ab initio* and ineffectual and shall not bind or be recognized by the LLC or any other party. No purported assignee shall have any right to any profits, losses or distributions of the LLC.

**10.7    Death**.

(a)    Upon a Unitholder becoming a Deceased Unitholder, the Estate of the Deceased Unitholder shall promptly give written notice of such death to the LLC, which notice shall include the number of each class of Units owned by the Deceased Unitholder. In the event that the Estate of the Deceased Unitholder fails or refuses to give such notice, such failure or refusal shall not limit the rights of the LLC pursuant to Section 10.7(b), but the time periods provided in said Section 10.7(b) shall not be deemed to commence until such notice is given.

(b)    The LLC shall have the option to purchase the Deceased Unitholder's Units for Fair Market Value and upon the terms and conditions set forth herein, for a period of thirty (30) days after Fair Market Value of the Deceased Unitholder's Units has been determined pursuant to this Agreement, by delivering written notice to the Estate of the Deceased Unitholder within such thirty (30)-day period. Failure of the LLC to deliver such notice within the thirty (30)-day period shall be deemed an election by the LLC not to purchase the Deceased Unitholder's Units.

(c)    If the LLC delivers such notice in accordance with Section 10.7(b), the Estate of the Deceased Unitholder shall sell the Units to the LLC and the LLC shall purchase the Units for their Fair Market Value upon the terms and conditions set forth herein. Such purchase shall be consummated within fifteen (15) days following the receipt of the court approval required for such sale of Units of the Deceased Unitholder, if any. At the closing of any such purchase, the LLC shall tender payment for such Units to the Estate of the Deceased Unitholder in accordance with Section 10.11(a).

(d)    In the event the option to purchase set forth in Section 10.7(b) is not exercised as to all of the Deceased Unitholder's Units, the Estate of the Deceased Unitholder may hold such Units for which such option is not exercised subject to the provisions of this Agreement, including but not limited to the restrictions on Transfer set forth in Article X; provided that, in such case, the Estate of the Deceased Unitholder shall execute a counterpart to this Agreement, in form and substance reasonably acceptable to the LLC.

(e)    The Estate of the Deceased Unitholder shall apply for and obtain any necessary court approval or confirmation of any sale of its Units pursuant to this Section 10.7. The Estate of the Deceased

Unitholder agrees to indemnify and hold the LLC harmless from all costs and expenses required for securing any court orders, decrees, approvals, inheritance tax clearances and estate tax clearances required to enable the Estate of the Deceased Unitholder to Transfer to the LLC full title to the Units being purchased pursuant to this Section 10.7, free and clear of all Liens.

(f)     The Unitholders shall each provide by last valid will, codicil or other valid and enforceable instrument that their respective Estates of Deceased Unitholders are bound by the terms and conditions of this Agreement. Notwithstanding the foregoing, the failure or refusal of any Unitholder to comply with the provisions of this Section 10.7(f) shall not in any manner limit the applicability, effect or enforceability of this Agreement.

(g)     The provisions of this Section 10.7 shall be subject to the terms and conditions of Section 10.11.

### 10.8     Involuntary Transfers.

(a)     If any Unitholder (or the spouse of a Unitholder) shall become bankrupt or insolvent and as a result of any bankruptcy or insolvency proceeding a court ordered sale or other Transfer of all or any part of the Units held by such Unitholder is required or agreed to, or if the Board shall otherwise have information that would reasonably lead such the Board to believe that such Unitholder may be required to Transfer all or any portion of such Units by operation of law or otherwise, including a Transfer in satisfaction of a claim or judgment against, or any debt of the transferring Unitholder (each a "Bankruptcy Event"), then and only in such an event, such Unitholder and the proposed transferee of such Unitholder shall automatically be deemed to have made an offer to sell such Units to the LLC pursuant to the terms and conditions set forth in Section 10.8(e) (the "Insolvency Purchase Option") and shall provide written notice to the LLC thereof (the "Insolvency Notice") within five (5) business days setting forth the circumstances of such bankruptcy or insolvency, the Units proposed to be Transferred and the name and address of the proposed transferee. In the event that such Unitholder fails or refuses to give such notice, such failure or refusal shall not limit the rights of the LLC pursuant to this Section 10.8, but the time periods provided in Section 10.8(d) and Section 10.8(e) shall not be deemed to commence until such notice is given.

(b)     Upon either the filing of a (i) petition for dissolution of marriage or any similar action for divorce by or against any Unitholder who is a natural person or (ii) legal "palimony" or similar claim against any Unitholder who is a natural person (each of the events described in the foregoing clauses (i) and (ii), a "Divorce" and, either a Divorce or a Bankruptcy Event, an "Involuntary Transfer"), under no circumstances shall the spouse of such Unitholder or other claimant have or obtain any interest in the Units of such Unitholder. If a Transfer of title to any Unit in such circumstances described in the preceding sentence is ordered or decreed by any court of competent jurisdiction or agreed to, then and only in such event, such Unitholder and the proposed transferee of such Units shall automatically be deemed to have made an offer to sell such Units to the LLC pursuant to the terms and conditions set forth in Section 10.8(e) (the "Divorce Purchase Option") and shall provide written notice to the LLC thereof (the "Divorce Notice") within five (5) business days setting forth the circumstances thereof, a copy of any court order or decree or agreement, if applicable, the Units proposed to be Transferred and the name and address of the proposed transferee. In the event that such Unitholder fails or refuses to give such notice, such failure or refusal shall not limit the rights of the LLC pursuant to this Section 10.8, but the time periods provided in Section 10.8(d) and Section 10.8(e) shall not be deemed to commence until such notice is given.

(c)     The purchase price for the Units of a Unitholder under Section 10.8(a) or Section 10.8(b) upon exercise of either the Insolvency Purchase Option or the Divorce Purchase Option, as the case may be, shall be the Fair Market Value of the Units thereof as of the last day of the month in which the Involuntary Transfer occurred (the "Involuntary Transfer Price").

(d)     The LLC may elect to purchase all or any part of the Units of a transferring Unitholder subject to either the Insolvency Purchase Option or the Divorce Purchase Option, as the case may be, by delivery of written notice (the "Involuntary Purchase Notice") to the transferring Unitholder within thirty (30) days after the determination of the Fair Market Value of such Units. The Involuntary Purchase Notice shall set forth the portion of the Units to be acquired from the transferring Unitholder.

(e)     The closing of any purchase transaction pursuant to this Section 10.8 shall take place on the date designated in the Involuntary Purchase Notice hereunder, which date shall not be more than ninety (90) days and not less than thirty (30) days after delivery of the Involuntary Purchase Notice (the "Involuntary Option Closing"). At the Involuntary Option Closing, the LLC shall pay the transferring Unitholder the purchase price for the Units to be purchased as set forth in Section 10.11(a).

(f)     The provisions of this Section 10.8 shall be subject to the terms and conditions of Section 10.11.

### 10.9     Purchase of Units Following Breach or Termination.

(a)     In the event of a Breach by any Unitholder, such Unitholder shall automatically be deemed to have made an offer to sell all Units held by such Unitholder to the LLC pursuant to the terms and conditions set forth in this Section 10.9 (the "Breach Purchase Option"). The Board shall provide any such Unitholder with notice of any such determination prior to exercising the Breach Purchase Option, setting forth a description of the circumstances of such Breach.

(b)     In the event that the employment of any Unitholder with the LLC, Purchaser or any of their respective Affiliates is terminated such Unitholder or such entity for any reason, then (subject to Section 10.7, which shall control in the event such Unitholder's employment is terminated upon becoming a Deceased Unitholder) such Unitholder shall automatically be deemed to have made an offer to sell all Units held by such Unitholder to the LLC pursuant to the terms and conditions set forth in this Section 10.9 (the "Termination Purchase Option").

(c)     The purchase price for the Units of a Unitholder under Section 10.9(a) upon exercise of the Breach Purchase Option shall be the lower of the (i) original cost of such Units and (ii) Fair Market Value of such Units as of the last day of the month in which the Board determination of Breach occurred.

(d)     The purchase price for the Units of a Unitholder under Section 10.9(b) upon exercise of the Termination Purchase Option shall be (i) in the case of the termination of such Unitholder's employment without Cause, the Fair Market Value of such Units as of the last day of the month in which such termination occurred, and (ii) in the case of a resignation of such Unitholder or the termination of such Unitholder's employment with Cause, the lower of the (x) original cost of such Units and (y) Fair Market Value of such Units as of the last day of the month in which the Board determination of Breach occurred.

(e)     The LLC may elect to purchase all or any part of the Units of a Unitholder subject to either the Breach Purchase Option or the Termination Purchase Option, as the case may be, by delivery of written notice (the "Breach/Termination Purchase Notice") to the Breaching or terminated Unitholder, as the case may be, within thirty (30) days after the determination of the Fair Market Value of such Units. The Breach/Termination Purchase Notice shall set forth the portion of the Units to be acquired from the Breaching or terminated Unitholder, as the case may be.

(f)     The closing of any purchase transaction pursuant to this Section 10.9 shall take place on the date designated in the Breach/Termination Purchase Notice hereunder, which date shall not be more than ninety (90) days and not less than thirty (30) days after delivery of the Breach/Termination Purchase

Notice, and such at such closing, the LLC shall pay the Breaching or terminated Unitholder, as the case may be, the purchase price for the Units to be purchased as set forth in Section 10.11(a).

(g)     The provisions of this Section 10.9 shall be subject to the terms and conditions of Section 10.11.

### 10.10   Call Option.

(a)     At any time, the LLC shall have the right, but not the obligation, to cause any or all Class B Unitholders to sell any or all of their Units for a per Unit amount equal to the balance of such Member's Capital Account divided by the total number of Class B Units held by such Unitholder ("Call Purchase Consideration"). If the LLC desires to purchase the Units pursuant to Section 10.10(a), Company shall deliver written notice to such Class B Unitholders of the LLC's intent to exercise its rights under this Section 10.10(a); and the closing of the purchase of the Units pursuant to this Section 10.10(a) shall take place no later than ninety (90) business days following delivery of the notice of intent to exercise and shall be consummated upon delivery of the Call Purchase Consideration calculated as of the date of closing.

### 10.11   Repurchase Transactions.

(a)     The LLC will pay for any Units repurchased this Article X by first offsetting amounts outstanding under any bona fide debts owed by the Unitholder to the LLC or any of its Affiliates, and will pay the remainder of the purchase price for such Units by a check or wire transfer of funds. The sellers in any repurchase hereunder shall execute and deliver any and all documents that counsel for the LLC deems reasonably necessary to Transfer to the LLC title to the Units, and without limitation of the foregoing the LLC will be entitled to receive customary representations and warranties from the sellers in any repurchase regarding such sale, including relating to title, authorization and noncontravention, and to require that all sellers' signatures be guaranteed.

(b)     Alternatively, in the sole discretion of the Board, the LLC may elect to pay all or a portion of the Call Purchase Consideration to a Class B Unitholder by transferring to such Unitholder a portion of the real property owned by the LLC. The real property so conveyed shall be valued at $14.00 per square foot. The conveyance shall be by special warranty deed and without any other representations or warranties. In the event that the Class B Unitholders are engaged in a transaction to purchase real property from the LLC, the Call Purchase Consideration may be paid in the form of a credit toward the purchase price in such transaction. All of the closing costs (title insurance, attorney or other third-party fees, escrow fees, etc.) shall be charged to the purchaser at closing.

(c)     Notwithstanding anything to the contrary contained in this Agreement, all repurchases of Units by the LLC hereunder shall be subject to applicable restrictions contained in the Texas Act or such other governing law, and in the debt and equity financing agreements of the LLC, Purchaser and their respective Affiliates.  If any such restrictions prohibit (i) the repurchase of Units hereunder which the LLC is otherwise entitled to make or (ii) dividends or other transfers of funds from one or more Affiliates of the LLC to the LLC to enable such repurchases, then LLC may make such repurchases as soon as it is permitted to make repurchases or receive funds from Affiliates under such restrictions.

(d)     If the LLC shall make available, at the time and place and in the amount and form provided in this Agreement, the consideration for any Units to be repurchased in accordance with the provisions of this Agreement, then from and after such time, the Person from whom such Units are to be repurchased shall no longer have any rights as a holder of such Units (other than the right to receive payment of such consideration in accordance with this Agreement), such Units shall be deemed purchased in accordance with the applicable provisions hereof, and the LLC shall be deemed the owner and holder of

38

such Units, whether or not the certificates therefore, if any, have been delivered as required by this Agreement.

### 10.12 Right of First Refusal.

(a)     Notice of Proposed Sale. Other than in connection with a Transfer (i) to a Permitted Transferee, (ii) pursuant to Section 10.2, Section 10.7, Section 10.8, Section 10.9, or Section 10.10, or (iii) in accordance with the terms and conditions of any repurchase right in favor of the LLC set forth in any Equity Agreement, and subject to the restrictions of Section 10.1, if any Unitholder proposes to Transfer any Units to any Person (a "Transferring Unitholder"), then at least thirty (30) days before any Transfer by the Transferring Unitholder, the Transferring Unitholder shall deliver a written notice (a "Transfer Notice") to the other holders of Class A Units (collectively, the "Non-Transferring Unitholders") and to the LLC specifying in reasonable detail the identity of the prospective transferee(s) including all Persons that directly or indirectly hold interests in such transferee), the proposed number of each class of Units to be Transferred (the "Offered Units"), the proposed terms and conditions of the Transfer, including the purchase price or other consideration, and any other information reasonably requested by any Non-Transferring Unitholder, together with a complete and accurate copy of the proposed transferee's written offer to purchase the Units proposed to be Transferred.

(b)     LLC Right. The LLC shall have thirty (30) days from the date of receipt of the Transfer Notice to elect to purchase all or a portion of the Offered Units. Settlement for purchase of the Offered Units shall be made in accordance with the terms and conditions of the proposed sale set forth in the Transfer Notice.

(c)     Non-Transferring Unitholder Right. If, at the end of the thirty (30) day period referred to above, the LLC has not elected to purchase all of Offered Units, each of the Non-Transferring Unitholders shall have sixty (60) days to elect to purchase a portion of each class of the remaining Offered Units equal to the product of (i) the number of each class of Offered Units not purchased by the LLC and (ii) a fraction, the numerator of which is such Non-Transferring Unitholder's Class A Percentage Interest and the denominator of which is the aggregate Class A Percentage Interest of all of the Non-Transferring Unitholders, for the price and upon the terms specified in the Transfer Notice, by delivering written notice to the Transferring Unitholder, the LLC and the other Non-Transferring Unitholders as soon as practical, but in any event before the close of business on the date that is sixty (60) days after delivery of the Transfer Notice. Settlement for purchase of the Offered Units shall be made in accordance with the terms and conditions of the proposed sale set forth in the Transfer Notice.

(d)     Sale Procedures. If (and only if) the LLC and the Non-Transferring Unitholders have elected to purchase all of the Offered Units before the close of business on the date that is ninety (90) days after delivery of the Transfer Notice (the "Offer Period"), the Transfer of such Units to the parties who have elected to exercise their rights under this Section 10.12(d) shall be consummated as soon as practical after the delivery of the election notices, but in any event before the close of business on the date that is one hundred twenty (120) days after delivery of the Transfer Notice.

(e)     Non-Election. If the LLC and the Non-Transferring Unitholders have not elected to purchase all of the Units proposed to be Transferred in the Transfer Notice before the expiration of the Offer Period, then the LLC and the Non-Transferring Unitholders shall be deemed to have waived their rights under this Section 10.12(e) with respect to the Offered Units and, subject to subject to the restrictions of Section 10.1, the Transferring Unitholder may Transfer such Offered Units, at the price and upon the terms specified in the Transfer Notice, at any time during the ninety (90) day period immediately after the expiration date of the Offer Period to the transferee(s) proposed in the Transfer Notice. Any Units not

Transferred within such ninety (90) day period shall be subject to the provisions of this Section 10.12 with respect to any subsequent Transfer.

**10.13 Legend.** In the event that any Units are certificated, such certificated Units will bear the following legend:

"THE UNITS REPRESENTED BY THIS CERTIFICATE WERE ORIGINALLY ISSUED ON [_____], HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR APPLICABLE STATE SECURITIES LAWS ("STATE ACTS") AND MAY NOT BE SOLD, ASSIGNED, PLEDGED, TRANSFERRED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT OR STATE ACTS OR AN EXEMPTION FROM REGISTRATION THEREUNDER. THE TRANSFER OF THE UNITS REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO THE CONDITIONS SPECIFIED IN AN [AMENDED AND RESTATED] LIMITED LIABILITY COMPANY AGREEMENT, DATED AS OF [_____], 2018 AS AMENDED AND MODIFIED FROM TIME TO TIME, GOVERNING THE ISSUER (THE "COMPANY"), AND BY AND AMONG CERTAIN INVESTORS (THE "LLC AGREEMENT"). THE UNITS REPRESENTED BY THIS CERTIFICATE MAY ALSO BE SUBJECT TO ADDITIONAL TRANSFER RESTRICTIONS, REPURCHASE OPTIONS, OFFSET RIGHTS AND FORFEITURE PROVISIONS SET FORTH IN THE LLC AGREEMENT AND/OR A SEPARATE AGREEMENT WITH THE INITIAL HOLDER. A COPY OF SUCH CONDITIONS, REPURCHASE OPTIONS AND FORFEITURE PROVISIONS SHALL BE FURNISHED BY THE COMPANY TO THE HOLDER HEREOF UPON WRITTEN REQUEST AND WITHOUT CHARGE."

## ARTICLE XI

### ADMISSION OF UNITHOLDERS

**11.1 Substituted Unitholders.** In connection with the Transfer of a Unit of a Unitholder permitted under the terms of this Agreement, the transferee shall become a Substituted Unitholder on the effective date of such Transfer, which effective date shall not be earlier than the date of compliance with or waiver of the conditions to such Transfer (unless one of the conditions to such Transfer is that Board or Unitholder consent is required for the admission of such transferee, in which case such consent must first be obtained), including executing counterparts of, and become a party to, this Agreement and the other Equity Agreements to which the transferor Unitholder was a party, and such admission shall be shown on the books and records of the LLC.

**11.2 Additional Unitholders.** A Person may be admitted to the LLC as an additional Unitholder only as contemplated under, and in compliance with, the terms of this Agreement, including furnishing to the Board (a) a letter of acceptance, in form satisfactory to the Board, of all the terms and conditions of this Agreement, including the power of attorney granted in Section 14.1, and (b) such other documents or instruments as may be necessary or appropriate to effect such Person's admission as a Unitholder (including counterparts or joinders to all applicable Equity Agreements). Such admission shall become effective on the date on which the Board determines, in its sole discretion, that such conditions have been satisfied and when any such admission is shown on the books and records of the LLC.

**11.3 Optionholders.** Except to the extent otherwise set forth herein, no Person that holds securities (including options, warrants, or rights) exercisable, exchangeable, or convertible into Units shall have any rights with respect to such Units until such Person is actually issued Units upon such exercise,

.

exchange, or conversion and, if such Person is not then a Unitholder, is admitted as a Unitholder pursuant to Section 11.2.

## ARTICLE XII

## WITHDRAWAL AND RESIGNATION OF UNITHOLDERS

**12.1** **Withdrawal and Resignation of Unitholders**. No Unitholder shall have the power or right to withdraw or otherwise resign or be expelled from the LLC prior to the dissolution and winding up of the LLC pursuant to Article XIII, except as otherwise expressly permitted by this Agreement or any of the other agreements contemplated hereby. Notwithstanding that payment on account of a withdrawal may be made after the effective time of such withdrawal, any completely withdrawing Unitholder will not be considered a Unitholder for any purpose after the effective time of such complete withdrawal, and, in the case of a partial withdrawal, such Unitholder's Capital Account (and corresponding voting and other rights) shall be reduced for all other purposes hereunder upon the effective time of such partial withdrawal.

**12.2** **Withdrawal of a Unitholder**. No Unitholder shall have the power or right to withdraw or otherwise resign from the LLC, except simultaneous with the Transfer of all of a Unitholder's Units in a Transfer permitted by this Agreement and if such Transfer is to a Person that is not a Unitholder, the admission of such person or entity as a Unitholder pursuant to Section 11.2.

## ARTICLE XIII

## DISSOLUTION AND LIQUIDATION

**13.1** **Dissolution**. The LLC shall not be dissolved by the admission of Additional Unitholders or Substituted Unitholders, or by the death, retirement, expulsion, bankruptcy or dissolution of a Unitholder. The LLC shall dissolve, and its affairs shall be wound up, upon the first to occur of the following:

      (a)   at any time by the approval of the Board; or

      (b)   the entry of a decree of judicial or administrative dissolution of the LLC under the Texas Act.

Except as otherwise set forth in this Article XIII, the LLC is intended to have perpetual existence. An Event of Withdrawal shall not cause a dissolution of the LLC, and the LLC shall continue in existence subject to the terms and conditions of this Agreement.

**13.2** **Liquidation and Termination**. Upon dissolution of the LLC, the Board shall act as liquidator or may appoint one or more representatives or Unitholders as liquidator. The liquidators shall proceed diligently to wind up the affairs of the LLC, sell all or any portion of the LLC assets for cash or cash equivalents as they deem appropriate, and make final distributions as provided herein and in the Texas Act. The costs of liquidation shall be borne as an LLC expense. Until final distribution, the liquidators shall continue to operate the LLC properties with all of the power and authority of the Board. The liquidators shall pay, satisfy, or discharge from the LLC funds all of the debts, liabilities, and obligations of the LLC (including all expenses incurred in liquidation) or otherwise make adequate provision for payment and discharge thereof (including the establishment of a cash fund for contingent liabilities in such amount and for such term as the liquidators may reasonably determine) and shall promptly distribute the remaining assets to the holders of Units as follows:

41

        (a)    first, to the Class B Members until such time as the Class B Members have been distributed an amount equal to their respective Unreturned Capital;

        (b)    second, to the Class A Members in accordance with their respective Class A Percentage Interests.

Any non-cash assets will first be written up or down to their Fair Market Value, thus creating Profit or Loss and items thereof (if any), which shall be allocated in accordance with Section 9.4 and Section 9.5. In making such distributions, the liquidators shall allocate each type of asset (i.e., cash, cash equivalents, securities, etc.) among the Unitholders ratably based upon the aggregate amounts to be distributed with respect to the Units held by each such holder. Any such distributions in kind shall be subject to such conditions relating to the disposition and management of such assets as the liquidators deem reasonable and equitable and the terms and conditions of any agreement governing such assets (or the operation thereof or the holders thereof) at such time. The distribution of cash and/or property to a Unitholder in accordance with the provisions of this Section 13.2 constitutes a complete return to the Unitholder of its Capital Contributions and a complete distribution to the Unitholder of its interest in the LLC and all the LLC's property and constitutes a compromise to which all Unitholders have consented within the meaning of the Texas Act. To the extent that a Unitholder returns funds to the LLC, it has no claim against any other Unitholder for those funds. To the extent that units or other equity securities of any Subsidiary are distributed to any Unitholders and unless otherwise agreed to by the Board, such Unitholders hereby agree to enter into a securityholders agreement with such Subsidiary and each other Unitholder which contains restrictions on the Transfer of such equity securities and other provisions (including, without limitation, with respect to the governance and control of such Subsidiary) in form and substance similar to the provisions and restrictions set forth herein.

        **13.3**    **Cancellation of Certificate**. Upon completion of the distribution of LLC assets as provided herein, the LLC shall be terminated (and the LLC shall not be terminated prior to such time), and the Board (or such other Person or Persons as the Texas Act may require or permit) shall file a certificate of cancellation with the Secretary of State of Texas, cancel any other filings made pursuant to this Agreement that are to be or should be canceled, and take such other actions as may be necessary to terminate the LLC. The LLC shall be deemed to continue in existence for all purposes of this Agreement until it is terminated pursuant to this Section 13.3.

        **13.4**    **Reasonable Time for Winding Up**. A reasonable time shall be allowed for the orderly winding up of the business and affairs of the LLC and the liquidation of its assets pursuant to Section 13.2 in order to minimize any losses otherwise attendant upon such winding up.

        **13.5**    **Return of Capital**. The liquidators shall not be personally liable for the return of Capital Contributions or any portion thereof to the Unitholders (it being understood that any such return shall be made solely from LLC assets).

        **13.6**    **Reserves Against Distributions**. The Board shall have the right to withhold from Distributions payable to any Unitholder under this Agreement amounts sufficient to pay and discharge any reasonably anticipated contingent liabilities of the LLC. Any amounts remaining after payment and discharge of any such contingent liabilities of the LLC will be paid to the Unitholders from whom the Distributions were withheld.

## ARTICLE XIV

## GENERAL PROVISIONS

**14.1    Power of Attorney**.

(a)    Each Unitholder hereby constitutes and appoints each Manager and the liquidators, with full power of substitution, as such Unitholder's true and lawful agent and attorney-in-fact, with full power and authority in such Unitholder's name, place and stead, to execute, swear to, acknowledge, deliver, file, and record in the appropriate public offices: (i) this Agreement, all certificates, and other instruments and all amendments (in the manner set forth herein) thereof in accordance with the terms hereof which the Board deems appropriate or necessary to form, qualify, or continue the qualification of, the LLC as a limited liability company in the State of Texas and in all other jurisdictions in which the LLC may conduct business or own property, (ii) all instruments which the Board deems appropriate or necessary to effectuate the provisions of Section 10.2 or to reflect any amendment, change, modification, or restatement of this Agreement or Schedule A in accordance with the terms of this Agreement, (iii) all conveyances and other instruments or documents which the Board deems appropriate or necessary to reflect the dissolution and liquidation of the LLC pursuant to the terms of this Agreement, including a certificate of cancellation and (iv) all instruments relating to the admission, withdrawal, or substitution of any Unitholder pursuant to each of Article XI and Article XII.

(b)    The foregoing power of attorney is irrevocable and coupled with an interest, and shall survive the death, disability, incapacity, dissolution, bankruptcy, insolvency, or termination of any Unitholder and the Transfer of all or any portion of his or its LLC Interest and shall extend to such Unitholder's heirs, successors, assigns, and personal representatives.

**14.2    Amendment and Waiver**.    Except as otherwise provided herein, no modification or amendment of any provision of this Agreement shall be effective against the LLC or the Unitholders unless such modification or amendment is approved in writing by the Board; provided that if any such amendment, modification or waiver would adversely and disproportionately affect in any material respect the rights or privileges of any Unitholder as set forth in this Agreement (without regard to any effect resulting from the individual circumstances of any such Unitholder) as compared with the effect of such amendment, modification or waiver on the rights or privileges of any other Unitholder or group of Unitholders as set forth in this Agreement, such amendment, modification or waiver shall also require the written consent of the Unitholder(s) so adversely and disproportionately affected.    No party shall be deemed to have waived any provision of this Agreement unless such waiver is expressly set forth in writing.    The failure of any party to enforce any of the provisions of this Agreement shall in no way be construed as a waiver of such provisions and shall not affect the right of such party thereafter to enforce each and every provision of this Agreement in accordance with its terms.

**14.3    Title to LLC Assets**.    LLC assets shall be deemed to be owned by the LLC as an entity, and no Unitholder, individually or collectively, shall have any ownership interest in such LLC assets or any portion thereof.    Legal title to any or all LLC assets may be held in the name of the LLC or one or more nominees, as the Board may determine.    The Board hereby declares and warrants that any LLC assets for which legal title is held in its name or the name of any nominee shall be held in trust by the Board or such nominee for the use and benefit of the LLC in accordance with the provisions of this Agreement.    All LLC assets shall be recorded as the property of the LLC on its books and records, irrespective of the name in which legal title to such LLC assets is held.

**14.4    Remedies**.    Each Unitholder and the LLC shall have all rights and remedies set forth in this Agreement and all rights and remedies which such Person has been granted at any time under any other

43

agreement or contract and all of the rights which such Person has under any law. Any Person having any rights under any provision of this Agreement or any other agreements contemplated hereby shall be entitled to enforce such rights specifically (without posting a bond or other security), to recover damages by reason of any breach of any provision of this Agreement and to exercise all other rights granted by law.

   **14.5** **Waiver of Certain Rights**. Each Unitholder irrevocably waives any right it may have to maintain any action for dissolution on the LLC or for partition of the property of the LLC.

   **14.6** **Notice to Unitholder of Provisions**. By being a party to this Agreement, each Unitholder acknowledges that it has actual notice of all of the provisions hereof (including the restrictions on the Transfer set forth herein), and all of the provisions of the Certificate.

   **14.7** **Successors and Assigns**. All covenants and agreements contained in this Agreement shall bind and inure to the benefit of the parties hereto (and the Persons specifically identified in Article VII) and their respective heirs, executors, administrators, successors, legal representatives, and permitted assigns, whether so expressed or not.

   **14.8** **Severability**. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal, or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality, or unenforceability will not affect any other provision or the effectiveness or validity of any provision in any other jurisdiction, and this Agreement will be reformed, construed, and enforced in such jurisdiction as if such invalid, illegal, or unenforceable provision had never been contained herein.

   **14.9** **Counterparts**. This Agreement, the agreements referred to herein, and each other agreement or instrument (including any joinder or deed of adherence) entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, may be executed in any number of counterparts, any one of which need not contain the signatures of more than one party, but all of such counterparts together shall constitute one agreement, and to the extent such agreement or instrument is signed and delivered by means of a facsimile machine or other electronic transmission, it will be treated in all manner and respects as an original agreement or instrument and will be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of any party hereto or to any such agreement or instrument, each party hereto or thereto will re-execute original forms thereof and deliver them to the requesting party. No party hereto or to any such agreement or instrument will raise the use of a facsimile machine or other electronic transmission to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or other electronic transmission as a defense to the formation or enforceability of a contract and each such party forever waives any such defense.

   **14.10** **Descriptive Headings; Interpretation**. The descriptive headings of this Agreement are inserted for convenience only and do not constitute a substantive part of this Agreement. Whenever required by the context, any pronoun used in this Agreement shall include the corresponding masculine, feminine, or neuter forms, and the singular form of nouns, pronouns, and verbs shall include the plural and vice versa. Unless the context of this Agreement otherwise requires, the terms "hereof," "herein," hereby" and derivative or similar words refer to this entire Agreement, and the terms Article and Section refer to the specified Article or Section of this Agreement. Reference to any agreement, document, or instrument means such agreement, document, or instrument as amended or otherwise modified from time to time in accordance with the terms thereof, and if applicable hereof. Without limiting the generality of the immediately preceding sentence, no amendment or other modification to any agreement, document, or instrument that requires the consent of any Person pursuant to the terms of this Agreement or any other

agreement will be given effect hereunder unless such Person has consented in writing to such amendment or modification. Wherever required by the context, references to a Fiscal Year shall refer to a portion thereof. The use of the words "or," "either," and "any" shall not be exclusive. The parties hereto have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement. Wherever a conflict exists between this Agreement and any other agreement, this Agreement shall control but solely to the extent of such conflict.

  **14.11 Applicable Law**. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. Any dispute relating hereto shall be heard in the state or federal courts of the State of Texas, and the parties agree to jurisdiction and venue therein.

  **14.12 Addresses and Notices**. All notices, demands, or other communications to be given or delivered under or by reason of the provisions of this Agreement shall be in writing and shall be deemed to have been given or made (a) when delivered personally to the recipient, (b) one business day after being sent to the recipient by reputable overnight courier service (charges prepaid) or (c) when sent by electronic mail to the recipient if sent before 5:00 p.m. local time of the recipient on a business day, and otherwise on the next business day. Such notices, demands, and other communications shall be sent to the address for such recipient set forth in the LLC's books and records, or to such other address or to the attention of such other person as the recipient party has specified by prior written notice to the sending party. Any notice to the Board or the LLC shall be deemed given if received by the Board at the principal office of the LLC designated pursuant to Section 2.7.

  **14.13 Creditors**. None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the LLC or any of its Affiliates, and no creditor who makes a loan to the LLC or any of its Affiliates may have or acquire (except pursuant to the terms of a separate agreement executed by the LLC in favor of such creditor) at any time as a result of making the loan any direct or indirect interest in LLC Profits, Losses, Distributions, capital, or property other than as a secured creditor.

  **14.14 Waiver**. No failure by any party to insist upon the strict performance of any covenant, duty, agreement, or condition of this Agreement or to exercise any right or remedy consequent upon a breach thereof shall constitute a waiver of any such breach or any other covenant, duty, agreement, or condition.

  **14.15 Further Action**. The parties shall execute and deliver all documents, provide all information, and take or refrain from taking such actions as may be necessary or appropriate to achieve the purposes of this Agreement.

  **14.16 Offset**. Whenever the LLC is to pay any sum to any Unitholder or any Affiliate or related person thereof, any amounts that such Unitholder or such Affiliate or related person owes to the LLC may be deducted from that sum before payment.

  **14.17 Entire Agreement**. This Agreement, those documents expressly referred to herein, the other documents of even date herewith, and the other Equity Agreements embody the complete agreement and understanding among the parties and supersede and preempt any prior understandings, agreements, or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

**14.18    Opt-in to Article 8 of the Uniform Commercial Code**.  The Unitholders hereby agree that the Units shall be securities governed by Article 8 of the Uniform Commercial Code of the State of Texas (and the Uniform Commercial Code of any other applicable jurisdiction).

**14.19    Survival**.  Section 6.1 (Limitation of Liability), Section 6.6 (Confidentiality), Section 7.1 (Exculpation), Section 7.2 (Right to Indemnification), Section 7.3 (Advance Payment), Section 7.4 (Indemnification of Employees and Agents), Section 9.7 (Amounts Withheld), Section 9.10 (Tax Representative) and Article XIV (General Provisions) shall survive and continue in full force in accordance with its terms notwithstanding (a) any Transfer of Equity Securities (or forfeiture of Equity Securities), (b) any termination of this Agreement or (c) the dissolution of the LLC.

**14.20    Consent to Jurisdiction**.  Each Unitholder irrevocably submits to the nonexclusive jurisdiction of the federal and state courts of the State of Texas having jurisdiction over El Paso County for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby. Each Unitholder further agrees that service of any process, summons, notice or document by United States certified or registered mail to such Unitholder's respective address set forth in the LLC's books and records or such other address or to the attention of such other Person as the recipient party has specified by prior written notice to the sending party shall be effective service of process in any action, suit or proceeding in Texas with respect to any matters to which it has submitted to jurisdiction as set forth above in the immediately preceding sentence. Each Unitholder irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in the federal and state courts of the State of Texas having jurisdiction over El Paso County and hereby irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum.

**14.21    Mutual Waiver of Jury Trial**.  BECAUSE DISPUTES ARISING IN CONNECTION WITH COMPLEX TRANSACTIONS ARE MOST QUICKLY AND ECONOMICALLY RESOLVED BY AN EXPERIENCED AND EXPERT PERSON AND THE PARTIES WISH APPLICABLE STATE AND FEDERAL LAWS TO APPLY, THE PARTIES DESIRE THAT THEIR DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS.  THEREFORE, TO ACHIEVE THE BEST COMBINATION OF THE BENEFITS OF THE JUDICIAL SYSTEM AND OF ARBITRATION, EACH PARTY TO THIS AGREEMENT (INCLUDING THE LLC) HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE BETWEEN OR AMONG ANY OF THE PARTIES    HERETO, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY AND/OR THE RELATIONSHIPS ESTABLISHED AMONG THE PARTIES HEREUNDER, TO THE EXTENT PERMISSIBLE BY LAW.

**14.22    Expenses**.  The LLC shall pay and hold PDG harmless against liability for the payment of the reasonable out-of-pocket expenses of such Persons (including the reasonable fees and expenses of legal counsel or other advisors) arising in connection with (a) start-up and organizational costs in connection with the formation of the LLC and the commencement of its businesses and operations or (b) any amendments or waivers (whether or not the same become effective) under or in respect of this Agreement or the other agreements contemplated hereby or thereby (including in connection with any proposed merger, sale or recapitalization of the LLC).

**14.23    Acknowledgements**.  Upon execution and delivery of a counterpart to this Agreement or a joinder to this Agreement, each Unitholder and Additional Unitholder shall be deemed to acknowledge to the LLC and PDG as follows: (a) the determination of such Unitholder or Additional Unitholder to

acquire Units pursuant to this Agreement or any other agreement has been made by such Person independent of any other Unitholder and independent of any statements or opinions as to the advisability of such purchase or as to the properties, business, prospects or condition (financial or otherwise) of the LLC and its Subsidiaries which may have been made or given by any other Unitholder or by any agent or employee of any other Unitholder, (b) neither the LLC or any other Unitholder has acted as an agent of such Unitholder or Additional Unitholder in connection with making its investment hereunder and that no other Unitholder shall be acting as an agent of such Unitholder in connection with monitoring its investment hereunder, (c) PDG has retained FBFK in connection with the transactions contemplated hereby, (d) FBFK is not representing and will not represent any other Unitholder or Additional Unitholder in connection with the transactions contemplated hereby or any dispute which may arise between any of PDG, on the one hand, and any other Unitholder or Additional Unitholder, on the other hand, (e) such Unitholder or Additional Unitholder will, if it wishes counsel on the transactions contemplated hereby, retain its own independent counsel, (f) the LLC agrees that all files relating to the PDG, their Subsidiaries and Affiliates will be kept confidential and unavailable to the LLC, and LLC agrees that FBFK will not be obligated to disclose to the LLC any confidential information of any of PDG that FBFK learns in the process of representing PDG, and (g) FBFK may represent PDG in connection with any and all matters contemplated hereby (including any dispute between PDG, on the one hand, and any other Unitholder or Additional Unitholder, on the other hand) and such Unitholder or Additional Unitholder waives any conflict of interest in connection with such representation by FBFK.

*(Remainder of Page Intentionally Left Blank; Signature Page Follows)*

## SCHEDULE A

(as of December 18, 2018; current Schedule A on file with the LLC)

| | Class A Units | Class B Units | Class A Percentage Interest | Class B Percentage Interest |
|---|---|---|---|---|
| PDG Prestige, Inc.<br>300 N Main 10th Floor<br>El Paso, TX 79901 | 10,000 | 0 | 100% | 0.0% |
| Westar Investors Group, LLC | 0 | 100 | 0.0% | 100% |
| | | | | |
| | | | | |
| **Total:** | **10,000** | **100** | **100%** | **100%** |

IN WITNESS WHEREOF, undersigned have executed or caused to be executed on their behalf this Liability Company Agreement as of the date first written above.

**Manager:**

PDG PRESTIGE, INC.
a Texas corporation

By: _____
Printed Name: _____
Title: _Manager_ _____

IN WITNESS WHEREOF, undersigned have executed or caused to be executed on their behalf this Limited Liability Company Agreement as of the date first written above.

**Class A Unitholders:**

PDG PRESTIGE, INC.
a Texas corporation

By: _____
Printed Name: _Michael Dakos_
Title: _President_

IN WITNESS WHERFOF, undersigned have executed or caused to be executed on their behalf this Limited Liability Company Agreement as of the date first written above.

Class B Unitholders:

WESTAR INVESTORS GROUP, LLC

By: _____
Saleem Makani, Member

By: _____
Suresh Kumar, Member

By: _____
Suhail Bawa, Member