UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 21-30071-HCM |
| | ) | CHAPTER  11 |
| | ) | |
| THE GATEWAY VENTURES, LLC, | ) | El Paso, Texas |
| | ) | |
| | ) | Thursday, January 13, 2022 |
| Debtor. | ) | |
| | ) | 11:12 a.m. to 12:14 p.m. |


HEARING RE:

EMERGENCY MOTION TO ENFORCE THE CHAPTER 11 PLAN,
AND AWARD OTHER MISCELLANEOUS RELIEF [DKT.NO.262]

EMERGENCY MOTION TO ENFORCE THE CHAPTER 11 PLAN [DKT.NO.265]


BEFORE THE HONORABLE H. CHRISTOPHER MOTT,
UNITED STATES BANKRUPTCY JUDGE



<u>APPEARANCES</u>:            See page 2


Court Recorder [ECRO]:   Bobby Yarbrough


Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988





Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES FOR:**


Debtor:                    JEFF CARRUTH, ESQ.
                              Weycer Kaplan Pulaski & Zuber
                              24 Greenway Plaza
                              Suite 2050
                              Houston, TX 77046


Creditor:                  JAMES M. FEUILLE, ESQ.
                              ScottHulse
                              201 E. Main
                              Suite 1100
                              P.O. Box 99123
                              El Paso, TX 79901


                              MICHAEL R. NEVAREZ, ESQ.
                              P.O. Box 12247
                              El Paso, TX 79913


                              HARREL L. DAVIS, III, ESQ.
                              Gordon Davis Johnson & Shane
                              P.O. Box 1322
                              El Paso, TX 79947

<u>**El Paso, Texas; Thursday, January 13, 2022; 11:12 a.m.**</u>

**(Call to Order)**

**THE COURT:** We're on to the sixth case on the docket, which is the Gateway Ventures, LLC. It's Chapter 11 case 21-30071. We have two motions set today. We have an emergency motion to enforce first amended plan filed by the I'll call them the Noorani parties.

And then, second, we have an emergency motion to enforce first amended plan filed by the I'll call them the Westar parties.

So why don't we start by getting appearances for the record. So, Mr. Carruth, did you want to appear?

**MR. CARRUTH:** Thank you, Your Honor. Jeff Carruth on behalf of the reorganized debtor.

**THE COURT:** Very good. Let's see, Mr. Feuille, did you want to appear?

**MR. FEUILLE:** Good morning, Your Honor. James Feuille on behalf of the Noorani parties.

**THE COURT:** Very good. Mr. Nevarez, did you want to appear?

**MR. NEVAREZ:** Yes, Your Honor. Michael Nevarez for Westar Investors Group, LLC, Mr. Suhail Bawa, and Saleem Makowi (sic).

**THE COURT:** Thank you. Let's see, Mr. Davis, did you want to appear?

4

1    **MR. DAVIS:** Yes, thank you, Your Honor. Harrel Davis

2  on behalf of Sam Kumar.

3    **THE COURT:** Let's see, who else do we have? Anybody

4  else want to appear in the Gateway Ventures case?

5    **MR. LOPEZ:** Your Honor, this is Aldo Lopez. I'm just

6  observing today.

7    **THE COURT:** Very good. Thank you. Anyone else want

8  to appear in the Gateway Ventures case?

9    (No audible response)

10    All right. So, yes, I've read the motions and

11  responses and replies. And I want to hear from Mr. Carruth

12  first on (indisc.) and then I'll hear from others.

13    **MR. CARRUTH:** Thank you, Your Honor. We have been

14  going back and forth with -- first, let me address the Noorani

15  situation and lot nine. We have been in the last seven to ten

16  days drilling down on some final details, particularly with

17  respect to parking.

18    There was an original document or agreement that

19  there would be a withdrawal from the CCNRs on the property,

20  requires some (indisc.) some other problems or some other

21  issues with parking and whatnot. But nonetheless we continue

22  to work through those.

23    I believe Mr. Feuille and I have communicated this

24  morning and today. And I believe with respect to the Noorani

25  and lot nine piece of this, we would ask the Court to reset

5

1    that hearing -- or Mr. Feuille has consented to continuing that

2    piece of this matter to a hearing date that would be available.

3          And, Mr. Feuille, correct me if I'm wrong, we said

4    seven to ten days out.

5          **MR. FEUILLE:** That's correct.

6          **MR. CARRUTH:** And, Your Honor, in fact we have

7    another conference call scheduled with some (indisc.) lawyers

8    at ScottHulse, and then Mr. Feuille and I this afternoon to try

9    to finalize this.

10          And then with respect to the (indisc.) --

11          **THE COURT:** Hold on (indisc.) --

12          **MR. CARRUTH:** I'm sorry.

13          **THE COURT:** -- just a second. I'm making sure --

14    okay. So it was lot nine to Noorani and lot seven to Westar,

15    right?

16          **MR. CARRUTH:** Yes, sir.

17          **THE COURT:** Okay. All right. So go ahead and tell

18    me where you are on Westar. Go ahead.

19          **MR. CARRUTH:** Thank you. We simultaneously as we

20    sort of worked through the closing details and pieces with lot

21    nine, we have been proceeding with respect to lot seven as

22    well. I conferred with Mr. Dixon this morning and we believe

23    that we can complete that conveyance within the -- a similar

24    seven to ten-day timeframe to fulfill that.

25          That's less complicated because there's not a

1  withdrawal from the CCNRs.  So that is more just a

2  straightforward release and conveyance situation.

3         THE COURT:  And why would that take another seven to

4  ten days?

5         MR. CARRUTH:  Because we are -- I guess the other

6  piece of this is we're also still trying to get final payoffs

7  and releases from Home Tax and so we have gotten -- we have

8  received that from lot nine.  And we are awaiting that on lot

9  seven as well at this point.  But it could happen --

10        THE COURT:  (Indisc.)

11        MR. CARRUTH:  I'm sorry.

12        THE COURT:  Final payments and releases from who?

13        MR. CARRUTH:  Home Tax Solutions.

14        THE COURT:  Oh, Home Tax, okay.

15        MR. CARRUTH:  Yes.  So -- and this may be more

16 detailed than folks want, but at some point we moved away from

17 the individual who we were dealing with and who was essentially

18 a sales person, and so now we're in their servicing department

19 and working through -- we found the right humans to deal with

20 within Home Tax shortly before the holidays.  So we're trying

21 to work through that as well.

22        But very shortly, within the same timeframe, we

23 believe that the lot seven conveyance can be completed as well.

24        THE COURT:  Well, so was my memory wrong, but I

25 thought Home Tax had agreed to partial release prices on lot

7

1  seven and lot nine.

2       **MR. CARRUTH:**  Your Honor, they had, and that was part

3  of the difficulty of the sales side saying, yes, we will, and

4  then effectuating the precise payoff amounts or -- and

5  processing the releases on the servicing side.  But, yes, the

6  legal mechanism is in place.

7       The functional mechanism to reach a closing has been

8  the hang-up.  But it -- we -- be that as it may, we believe we

9  are very close to the finish line on lot seven as well, on that

10  closing.

11      **THE COURT:**  And then what about the payment of a

12  hundred thousand dollars to Westar?

13      **MR. CARRUTH:**  Your Honor, that piece is not -- that

14  may take some additional time.  We did not -- we're not able to

15  achieve a closing on another lot or obtain additional financing

16  as anticipated.

17      In November and December, the -- as we've discussed,

18  the -- you know, one of the issues on a subsequent closing was

19  the continued presence of the lis pendens.  In November, I

20  remember, in fact, on the morning of November 9th having a call

21  with a title examiner or a underwriter with our prospective

22  lender who said, what -- why is this lis pendens still there,

23  what is about that.

24      As I've gone through this process, it seems the lis

25  pendens is -- was -- is or was more of a problem or red flag in

1 closing subsequent transactions or dealing with counterparties

2 because that's more of an unknown.  The Noorani abstract of

3 judgment, that's a known, quantifiable interest or encumbrance

4 against the property.  The lis pendens raises flags because it

5 has the appearance of being open-ended.

6          And so -- and, frankly, we think that, you know,

7 there's frankly been some damages that, you know, would

8 possibly be outside of the plan with respect to the interest

9 carry and additional charges that we've had to incur to get the

10 lis pendens released.

11          But be that as it may, Gateway does not have that

12 money today.  Gateway is working on other transactions to

13 complete that payment.

14          The -- and I was trying to get back to the plan

15 before I began to speak.  I don't recall off the top of my head

16 the enforcement mechanism because of the changes.  But, you

17 know, that is an obligation that Gateway obligated itself to in

18 the plan and that is going to require more time to make the

19 payments because we have been unable to complete other

20 transactions.

21          **THE COURT:**  So when was this release of lis pendens

22 actually recorded?  Was that on November 9th?

23          **MR. CARRUTH:**  Your Honor, I -- so I went back and

24 looked this morning.  That release was on -- so the timeline

25 was October the 15th was when the confirmation order was

1  entered which directed the release of the lis pendens.

2          The effective date of the plan was October the 18th.

3  The lis pendens release was transmitted on November the 2nd.

4  The record date was November the 4th.  We had our status

5  conference on the 9th, and that seems to be the first day that

6  it was visible in the county records.  But it does have a

7  November 4 record date.

8          But I know that kind of the whole, as we explained in

9  our response, the whole timeline that we envision to exit

10  bankruptcy has been shifted and disrupted.  We're close to

11  completing the main two transactions that would free up the

12  property, which would be the conveyance of lot seven and lot

13  nine, so that Mr. Dixon can complete and move on with the

14  development.

15          I think we've shifted -- Mr. Dixon has shifted focus

16  on a couple of things.

17          We may be able to revive a couple of things that were

18  not close or not received by one party or the other.  But I --

19  at this point, we are pressing forward, trying to complete the

20  other transactions that the Court heard about at the

21  confirmation hearing in order to pay Legalist and to fund the

22  $100,000 payment.  And, frankly, and to pay taxes that are due

23  on January 31st.

24          **THE COURT:**  Well, we're -- I mean, we're like two

25  months past November 4, November 9, and almost three months

1 past the effective date.  You know, so there's already been a

2 pretty lengthy I'll say not an extension granted but an

3 extension borne by these creditors.

4    And then I remember specifically asking Mr. Dixon

5 when I'll just say the final agreement was reached with the

6 Westar parties about having the ability to pay that hundred

7 thousand within 45 days of the effective date, as well as other

8 plan obligations.  And the answer I got was, yes, we can do

9 that.

10    And I'll just (indisc.) I'm not really buying the,

11 well, there was a delay and the release of the lis pendens.  I

12 mean, I might buy that if it was a few days or something or a

13 week or something.  But we're at two months plus.

14    And now what I hear you saying is, well, we can

15 probably get (indisc.) within seven to ten days but nobody

16 knows when we can pay them the hundred thousand.

17   **(Pause)**

18   **MR. CARRUTH:**  Your Honor, I see Mr. Dixon has hopped

19 on.  Perhaps I should -- I guess we can ask him to address the

20 Court or we could swear him in and I could do some testimony.

21 But I guess perhaps for efficiency maybe he could just address

22 the Court as to the timing of this -- of the hundred thousand

23 dollar payment.

24   **THE COURT:**  That's fine with me.  Mr. Dixon, did you

25 want to say something?

1          **MR. DIXON:** Yeah.  I'd like to address the Court if I

2    just may have a couple of minutes, please.  I think I could

3    provide some clarity to the overall situation and, you know,

4    hopefully (indisc.).

5          So I think what Mr. Carruth is saying about the lis

6    pendens being filed is part of it.

7          The other portion, the other part of it, is the

8    filing of the motion to enforce the plan prematurely without

9    having the time period past.  Also (indisc.) refinance for the

10    entire project (indisc.) on because everybody's scared to death

11    of (indisc.) going to do because it's been so (indisc.) through

12    this entire process.

13          So that being the case, my (indisc.) is what will

14    business lenders who had a refinance in place for this

15    development, then a construction line of credit (indisc.)

16    construction of lot five, which was to consummate the deal with

17    Spectrum, who was also part -- went through this bankruptcy

18    process with us.

19          Then this -- then the filing of this motion to

20    enforce and everything (indisc.) basically stopped and halted

21    everything.  So we've basically been just kind of treading

22    water for about 30 days.

23          As far as our ability to perform and provide the

24    transfer of the properties (indisc.) lot seven and lot nine

25    respectively.  Lot nine needed (indisc.) Chicago Title Company

1    signed by me with a release from Legalist and Home Tax

2    Solutions since the 13th of December.

3           We've been trying to negotiate with Mr. Feuille and

4    his clients (indisc.) but basically a month out complete

5    renegotiation of a (indisc.) agreement which we had in August.

6    And I believe we're very close to having that done and

7    completed (indisc.) this afternoon it is my goal to have that

8    done.

9           And I'm prepared to close on the lot nine transaction

10   tomorrow morning.  That's my goal is to have this closed

11   tomorrow.

12          Along with that I (indisc.) allocate funds to pay the

13   Home Tax bill to have that release taken care of.

14          And I'm going to also next week pay -- or in two

15   weeks go ahead and pay the entire tax bill for the (indisc.)

16   property, which is $325,000.

17          In lot seven, we have (indisc.) lot seven is that we

18   also received a release from Legalist yesterday for release of

19   the property which would also then have a -- with this whole

20   thing (indisc.) trying to figure out what's going on with these

21   motions for enforcement and where they're at and try to make

22   sure they (indisc.) their staff (indisc.).

23          We received (indisc.) yesterday.  I have the -- I

24   have meets and bounds and a "D" preferred, which I am signing

25   today and sending to John (Indisc.) Chicago Title in

1    preparation to record and transfer the lot to Westar Investors

2    for lot seven.

3              As part of that, there is a hundred thousand dollar

4    payment that's also due.  I'm asking them to give me a couple

5    of weeks' extension (indisc.) on that hundred thousand dollar

6    payment and so I can make the tax payment to El Paso -- the

7    City of El Paso first and then issue a payment to them right

8    directly behind that.

9              I'm asking for this extension simply because The

10   Gateway Ventures has had a stall on its income and a stall on

11   its plan and has had (indisc.) stall in the refinance of the

12   entire project kind of caused by the continual behavior of

13   Westar Investors.

14             And I believe it's -- you know, I believe that I did

15   tell you, sir, in this court that I will make sure that I'm

16   good for this money.  I'm good for the money.

17             But to date I haven't received a note payable from

18   Mr. Nevarez.  I haven't received a confession of judgment.  I

19   haven't received any documentation (indisc.) with regard to

20   this transaction as well.  And I've been waiting.

21             I've been ready, willing, and able to close (indisc.)

22   property to transfer the assets to these -- to both of these

23   parties and (indisc.) for quite some time.  I am ready to close

24   these transactions.  I'm asking for a simple -- simply I'm

25   asking just for a small extension on the hundred thousand

14

1   dollar payment because it is being paid by me.

2         I have another obligation as you're aware, I have

3   another case in front of you right now which is (indisc.) which

4   is going to take additional collateral by myself to make sure

5   that that happens as well.  So I have to (indisc.) so that Mike

6   Dixon doesn't go into Chapter 7 or Chapter 11 or whatever it is

7   personally.

8         And that's what I'm working on.  I'm working within

9   (indisc.) boundaries of (indisc.).  So I'm asking the Court

10  grant me a two-week extension, please.

11        I'm also asking (indisc.) order that Westar and the

12  Noorani parties follow through with the plan, close on the

13  transactions of lot seven and lot nine, and get this -- and get

14  these behind me so I can move forward with my development, sir.

15  Thank you.

16        **THE COURT:**  So you say that you need two weeks on the

17  hundred thousand dollars.  So that's --

18        **MR. DIXON:**  I just (indisc.) sir.

19        **THE COURT:**  Okay.  You're saying by January 31.

20        **MR. DIXON:**  Yes, sir.

21        **THE COURT:**  And what about conveyance of lot seven to

22  Westar?

23        **MR. DIXON:**  I'm ready to close today, sir.  I'm

24  waiting on the (indisc.) release from our lender, Legalist,

25  (indisc.) from my understanding is being overnighted to title

15

1  company today.  And I am prepared to close.

2       I am going to sign a deed today and send it to Don

3  (indisc.) for recording.  So we can hold it in escrow when we

4  get our documentation (indisc.) once we get the release from

5  Legalist.

6       I (indisc.) recording the deed right now today if

7  that's what they want me to do.  I will walk down (indisc.)

8  record the deed for lot seven right now and just pay (indisc.)

9  once I get (indisc.) maybe less than a day or so I can deliver

10  that to Mr. Nevarez.

11       But I will close on lot seven and I will close on lot

12  nine today if I can.

13       **THE COURT:**  And what about the Home Tax release?

14       **MR. DIXON:**  (Indisc.) Home Tax release for lot nine

15  and ten.  I have requested (indisc.) for the lot seven release

16  and have not received it.  I know what (indisc.) going to be.

17  It's going to be about $36,000, which (indisc.) wire to

18  Mr. Comos (phonetic) at Chicago Title today as well, along with

19  $36,000 for lot nine, and have that (indisc.) for that today.

20  I'm prepared to do that.

21       I can tell you that the stall on (indisc.) these

22  transactions closed is not from our side.  I can promise you it

23  is in our best interest to get these guys -- get these

24  transactions closed and get these things behind us.

25       **(Pause from 11:35 a.m. to 11:36 a.m.)**

1        **THE COURT:**  So -- and so I'm going to direct this

2   question to you, Mr. Carruth.  So why shouldn't I grant both of

3   these motions and put these timeframes in the orders to enforce

4   the plan as opposed to resetting them?

5        **MR. CARRUTH:**  Well, I -- well, I think we have an

6   agreement with Mr. Noorani to -- the Noorani group to delay the

7   hearing on that.  And so that -- in case we can't get the

8   technicalities worked out with respect to the parking (indisc.)

9   boundary situation that were not on a deadline.  I believe as

10  Mr. Dixon indicated, we can convey lot seven imminently.

11        I'm not sure -- I don't remember exactly, I think

12  there was a (indisc.) timing in Mr. Nevarez's motion.

13        You know, I think I will ask for, like I said, seven

14  to ten days just to be safe.  But I'm -- I don't want to

15  contradict my client.  I'm just (indisc.) flexibility.

16        **THE COURT:**  Well, let me say this.  I mean, I don't

17  know everything that's going on.  I mean, you know, what I know

18  is what the documents say, okay, (indisc.) filed, the

19  agreements (indisc.) plan says.

20        And I don't view either one of these motions to

21  enforce the plan as being like premature or something.  I mean,

22  (indisc.) way past the date for performance, you know.

23        And I'm sorry to hear, you know, someone filed a

24  motion to enforce the plan, that that kind of messed something

25  up in some other area.  But, you know, in my mind, Westar and

1  Noorani were patient waiting until whatever, December whatever

2  it was, to file a motion to enforce the plan.

3         I mean, obviously I was patient because I didn't set

4  it the other day (indisc.) whatever, three weeks later.  And I

5  know we've had holidays in the middle and I know we've got a

6  COVID surge.  And I'm not -- you know, I'm not (indisc.) those

7  things.

8         But you promise something, you put it in writing, and

9  you get it -- a planned confirmed, you know, based on it and,

10  you know, parties are entitled to expect performance.

11         Mr. Nevarez, what do you propose?

12         **MR. NEVAREZ:**  Yes, Your Honor.  I think you -- I'd

13  like to break it up into two discussions.

14         First, to lot seven, that should be pretty simple.

15  The reorganized Debtor raises issues regarding Home Tax and

16  Legalist and title insurance companies and releases and

17  payoffs.  That has nothing to do with conveyance of the lot

18  seven.  It's a simple preparation of a two-page deed with an

19  exhibit (indisc.) presented (indisc.) confirmation proceeding.

20         All we want is the warranty deed with the proper

21  meets and bounds.  That shouldn't take more than three days.

22         Whatever issues the Debtor has regarding Home Tax,

23  Legalist, the title company, or anybody else has nothing to do

24  and should not affect the conveyance.  We want the conveyance

25  within three days (indisc.) --

18

1          **THE COURT:** I'm sorry, you don't want him to pay off

2     the liens on the lot first?

3          **MR. NEVAREZ:** It doesn't matter. If they don't pay

4     off the liens, we can always file an action to clear title and

5     enforce the payment of the liens by the Debtor. But what we

6     want -- what we do want is the deed so that we can begin to

7     make preparations for construction for lending.

8          So we're totally agreeable to getting a warranty

9     deed. And if there are liens on the property affecting the lot

10    seven, then those can be released after. It doesn't matter.

11    It does not affect our -- what we can do.

12         What is affecting what we can do is (indisc.) getting

13    title to the lot seven.

14         **MR. SPEAKER:** Okay.

15         **MR. NEVAREZ:** (Indisc.)

16         **THE COURT:** Let's just -- let's talk about that for a

17    minute. I mean, the deal is -- if I'm wrong then, Mr. Carruth,

18    you or Mr. Dixon correct me, but the conveyance of these lots,

19    the lot to Westar, as well as the lot to Noorani for that

20    matter, I mean, that's to be free and clear of liens and the

21    Debtor's supposed to pay the liens, right? Have I got that

22    wrong?

23         **MR. CARRUTH:** No, Your Honor. That statement is

24    correct.

25         **MR. DIXON:** That's correct.

19

1          **THE COURT:** Okay.

2          **MR. CARRUTH:** But if we need -- you know, if we need

3   to give the deed to lot seven now and then, you know, continue

4   to aggressively pursue the remaining pieces for a closing, a

5   full and final closing, or and -- or, in other words, the

6   release of the liens as specified in the plan, I mean, I think

7   that's a logical sequence.

8          And we can fulfill the conveyance of lot seven, as

9   Mr. Dixon and Mr. Nevarez both said. We -- you know, that --

10  we can do that pretty quick.

11         **THE COURT:** And is the -- is not the form of warranty

12  deed, is that not -- has that not already been negotiated? Was

13  that not -- was that a plan document? For some reason I have

14  that in my head. Maybe I have another case in mind. I don't

15  remember.

16         **MR. CARRUTH:** I seem to recall we had a proposed form

17  of deed. I don't know -- that was an exhibit as a proposed

18  form of deed. But so -- but, yes, I mean, the deed is ready or

19  (indisc.) --

20         **MR. SPEAKER:** Your Honor, the --

21         **THE COURT:** And the legal description is done, right?

22  Because you have meets and bounds particularly on lot seven,

23  right? That was kind of a few months ago, right?

24         **MR. CARRUTH:** Yes, Your Honor. I -- there may be

25  some technical corrections to the final meets and bounds but,

20

1   yes, there is a legal description for lot seven.

2           **THE COURT:** All right.  I'm sorry, Mr. Nevarez, what

3   did you want to say?

4           **MR. NEVAREZ:** Yes.  The plan (indisc.) the plan with

5   the order allowing TGV to enforce the subscription agreement

6   makes reference to -- as to who is to prepare the deed.  It --

7   the plan does state and the order as well enforcing the

8   assumption (indisc.) that it is TGV's responsibility to convey

9   immediately, I should point out (indisc.) ago.  That was

10  October 5th, 2021.

11          So if -- I mean, I'm willing to prepare the warranty

12  deed.  I do those all the time.  It takes me (indisc.) an hour

13  at the most.

14          **MR. SPEAKER:** (Indisc.)

15          **THE COURT:** Well, most warranty deeds have in it that

16  it's free and clear of liens, right?  Am I (indisc.) --

17          **MR. SPEAKER:** (Indisc.)

18          **MR. CARRUTH:** (Indisc.) yeah, I mean that's -- yes,

19  Your Honor, that would be another issue.

20          But -- and I -- but I guess in order to meet

21  Mr. Nevarez's request, we could craft a form of deed that would

22  convey the property in -- convey the property imminently, and

23  then as necessary record a subsequent deed once the (indisc.)

24  in the next few days, several days, as the remaining liens are

25  cleared.  But we're -- you know, we'll do what we need to do to

1  fulfill the conveyance request that has been made, the

2  immediate conveyance request.

3       **(Pause)**

4          **THE COURT:**  Well, I want to -- I don't want to get

5  into a bunch of arguments about form of the deed.  And I don't

6  want to get in a bunch of arguments about, well, we have a deed

7  but now you haven't cleared the liens off it, you haven't paid

8  off the liens.

9          **MR. CARRUTH:**  Understood, Your Honor.

10         **THE COURT:**  (Indisc.) how I generally understand it,

11 okay, generally understand it, the liens would be Home Tax,

12 whatever the release price was, Legalist, whatever the release

13 price was, and property taxes (indisc.).

14         **MR. CARRUTH:**  Correct.  And I'm looking -- I'm simply

15 looking for the deed that we have been working with.

16      **(Pause)**

17         **MR. SPEAKER:**  Jeff, I've got the copy of the deed

18 here that we typed up and prepared on Monday for Westar.

19      **(Pause)**

20         **MR. CARRUTH:**  You want to -- can you email that to me

21 real fast, please?

22         **MR. SPEAKER:**  (Indisc.)

23         **MR. CARRUTH:**  Okay.  I've got --

24         **MR. SPEAKER:**  There, I've got the one that's marked

25 (indisc.).

1      **(Pause)**

2          **THE COURT:** Okay. So this is Judge Mott. So let me

3      ask this question. I'm directing this to Mr. Carruth or

4      Mr. Dixon. So if I require you to provide the deed to Westar

5      let's say within three days -- we'll just pick a date instead

6      of have it run off entry of an order but -- well, I would only

7      be comfortable doing this if the order also said and then

8      you'll clean off all the liens on the property by whatever date

9      because I don't want to have some -- I'll say give

10     Mr. Nevarez's client a deed to some property has some liens and

11     then we go, you know, who knows how long to get the lien

12     scraped.

13         **MR. CARRUTH:** Yes, Your Honor. And looking back at

14     the form of deed that I believe we've been working from, it

15     guarantees title. But the deed instrument itself does not

16     require free and clear conveyance. It does not specify that.

17         **THE COURT:** Right. But that's the deal.

18         **MR. CARRUTH:** Oh, yes, absolutely, absolutely.

19         **THE COURT:** So how -- what's the -- by when can the

20     any liens be paid off on lot seven?

21         **MR. CARRUTH:** The -- I guess I would ask Mr. Dixon

22     just to confirm timing of funds.

23         **MR. DIXON:** I -- the funds are available. I think

24     it's more timing of receiving the -- for that matter, lot

25     nine's ready to go.

23

1          Lot seven, it's just (indisc.) the actual form

2    (indisc.) release from Home Tax Solutions, which last time when

3    we did this, the request took about (indisc.) it actually did

4    take (indisc.) exactly nine days to get this request in.  So

5    we're on day six today so -- and I've been pinging them every

6    day.  That's kind of where I'm at.

7          (Indisc.) I have the funds to close.  It's not the

8    fact that we don't have the money to close (indisc.) to the

9    properties and then (indisc.) title policy (indisc.) for the

10   tax (indisc.) just trying to get (indisc.) from these guys.

11         **THE COURT:**  All right.  So this is Judge Mott.  So

12   what's that date?

13         **MR. DIXON:**  Just if we could have until the end of

14   the month, that's (indisc.) until the end of the month, I'm

15   fine with that.

16         **THE COURT:**  All right.  So, Mr. Nevarez, I'm going to

17   come back to you.  On the hundred thousand dollars, if I order

18   that that be paid by January 31st, what does that sound like?

19         **MR. NEVAREZ:**  Well, it doesn't sound great.  I should

20   say that I'm not sure why there isn't money available.  There

21   is (indisc.) transferred, and I think in my reply between the

22   Debtor, TGV, and its affiliates, its partners, and its

23   attorneys.

24         I would say that perhaps more the Court should order

25   the Debtor, TGV, cease all intercompany transfers and payments

24

1   to counsel to come up with that hundred thousand to ensure that

2   that hundred thousand is paid the end of the month.

3          There is all kinds of money being spent by TGV

4   Prestige that really seem to be more of a personal funding of

5   Mr. Dixon's personal matters.  So there's a lot of money being

6   spent by TGV but it's not coming to us.

7          I'd like to see -- if we're going to wait until the

8   (indisc.) January, I'd like to see some measure being imposed

9   upon the Debtor ordering them to refrain from making all these

10  intercompany transfers and payments to attorneys to ensure that

11  we finally get the -- this paid out.

12          It's -- I should note that we're being labeled as

13  litigious and adversarial.  The Debtor breached his

14  subscription agreement before any litigation.  They breached it

15  under (indisc.) agreement in the State Court.  They breached it

16  under the order here to enforce.  They breached it under the

17  plan.  I -- you know, I -- if we're litigious and adversarial,

18  there are good reasons for that.

19          And so I would suggest that it -- there needs to be

20  something more than just dates set forth because they're going

21  to breach those again.  There's going to be more excuses and

22  we're going to be (indisc.) again.

23          So if we have to live with the 31st, that's fine for

24  the payment of the hundred thousand.  I would request that some

25  sort of measure be imposed on the Debtor.

1            And as for the deed, I'd love to get that within

2    three days.

3            And, you know, we're not planning to sell the lot

4    seven so if it's encumbered until the 31st, that's fine, we

5    have no problem with that.

6            There's a -- you know, if we run into problems with

7    financing, we'll address that later if the releases haven't

8    been released and filed.  So that's pretty much where I stand,

9    Your Honor.

10           **THE COURT:**  Mr. Carruth, what do you think about

11   that?

12           **MR. CARRUTH:**  Well, I think as an initial concept,

13   the hundred thousand dollars, I did go back and look in the

14   plan.  There -- we did carry forth the previously discussed

15   enforcement mechanism from our versions of the plan to the --

16   through the final document.

17           And I apologize, I have since switched screens.  But

18   there was a (indisc.) document and some other documents that

19   were supposed to arrive to enforce the hundred thousand

20   dollars, and we have not received those from Westar.

21           But and then just in response to the, you know, some

22   attorneys possibly (indisc.) being paid, namely me, that is a

23   priority claim.  The hundred thousand dollars is an unsecured

24   claim.

25           But be that as it may, in order to move this process

26

1 along, I can agree that, you know, I will accept no money from

2 Gateway for my fees through the 31st until -- through the 31st.

3 And so if anybody gets (indisc.) before the 31st, it will not

4 be me on my final fee application.

5   So I think we can set the deadline for the 31st to

6 pay the hundred thousand dollars. I'll -- I won't accept any

7 money from Gateway in the meantime. I don't know, I'm not

8 aware of any other intercompany transfers necessarily. But I

9 think we can put that guardrail up as to anything that I might

10 be paid by Gateway before the 31st.

11   **THE COURT:** All right. Does anybody else want to be

12 heard on these motions? And then I'll tell you what we're

13 going to do.

14   **MR. FEUILLE:** Your Honor, this is James Feuille.

15 Just very briefly. I think Mr. Carruth mentioned since the

16 Noorani parties filed their motion to enforce, we've made

17 significant progress in getting this close to closing.

18   There is a complication just because the parties had

19 previously agreed to remove the Noorani parties from the

20 restrictive covenants of the element. And so we're -- but and

21 the same time agreed to certain parking access agreements.

22   All we're really working on now is getting that deal

23 finalized, that agreement. We're going to have a conference

24 call this afternoon. I think we can hammer it out. That is

25 why I suggested to Mr. Carruth we pass the hearing for a week.

27

1   But if the Court doesn't want to see us again, I can understand

2   that, and wants to enter an order. I think we can get it done

3   within a week.

4           And my clients would be happy to get it done and move

5   on and start their hotel development.

6       **(Pause)**

7           **THE COURT:** Well, Mr. Feuille, I appreciate your

8   attitude very much. I mean, if you want to reset your motion,

9   really the slot that I could give you is January 19, which is

10  not a week.

11          **MR. FEUILLE:** Your Honor, that would be fine with me.

12  Frankly, it would also be fine if you granted the order and

13  gave -- you know, gave the reorganized Debtor a set timeframe

14  to close. I think we're going to do it so I'm fine either way

15  Your Honor. I leave it to you.

16          I'm sorry, let me say this, Your Honor. If it was

17  set on the 19th, three days after that would be January 22nd.

18  And so perhaps -- and, Mr. Carruth could object to this or not

19  because we discussed passing the hearing.

20          But if you just want to order that it be closed and

21  transferred by January 21, I think that would be acceptable. I

22  can't speak for Mr. Carruth but I think that's enough time to

23  get it done rather than having a hearing on the 19th. Am I

24  making any sense, Your Honor?

25          **THE COURT:** No, I understand exactly what you're

1  saying.  Mr. Carruth, go ahead.

2          **MR. CARRUTH:**  I'm sorry.  Gateway would be agreeable

3  with that also as to Noorani.

4          **THE COURT:**  All right.  So let's just deal with

5  Noorani.  Then we're going to come back to Westar because I

6  don't know that I can stand too much more fun here.

7          But so let's look at Mr. Feuille's proposed order.

8  Well, it says within three days of the signing of this order.

9  So what if we excise that and put -- what was the day, January

10 21, 2022?

11         **MR. FEUILLE:**  Yes, Your Honor.

12      **(Pause)**

13         **THE COURT:**  All right.  So why don't you make that

14 change, Mr. Feuille.  On the first line of the order, put that

15 on today's date, which is January 13, 2022, we had a hearing on

16 it as opposed to just came for consideration.

17         **MR. FEUILLE:**  Yes, Your Honor.

18         **THE COURT:**  All right.  So if you'll revise that and

19 upload, we'll get it signed.  And then --

20         **MR. FEUILLE:**  Yes, Your Honor.

21         **THE COURT:**  -- Mr. Nevarez, so let's get your form of

22 order out.  Let me know when you have your fingers on it.

23      **(Pause)**

24         **MR. NEVAREZ:**  Sorry, Your Honor, I was mute.  I have

25 it before me.

29

1          **THE COURT:** All right. So let's just start with the

2  first line. So let's say put on January 13, 2022 the Court

3  conducted a hearing on -- and then how you have it defined is

4  fine.

5          Then on the ordering provisions, the first ordering

6  provision put -- where it says lump sum payment of a hundred

7  thousand dollars, instead of within three days of signing, put

8  by January 31, 2022.

9          **MR. NEVAREZ:** Okay.

10          **THE COURT:** And then at the end of that paragraph put

11  reorganized Debtor shall make no payment on attorney's fees

12  until after January 31, 2022.

13          **MR. NEVAREZ:** Okay.

14          **THE COURT:** And if I'm going too fast just let me

15  know.

16          **MR. NEVAREZ:** No, I'm fine, Your Honor.

17          **THE COURT:** All right. So then on the second

18  ordering paragraph which deals with the deed, says and provide

19  that lot seven warranty deed duly notarized, instead of within

20  three days, let's just put a date in there.

21          I'm kind of inclined to make it January 18th just

22  because (indisc.) Friday and technically Mondays are a federal

23  holiday, not that it -- I just don't know (indisc.) --

24          **MR. NEVAREZ:** That's fine.

25          **THE COURT:** -- let's make it January 18, 2022.

30

1          **MR. NEVAREZ:** Okay. And then at the end of that

2    paragraph, think you need to add the following: and shall

3    cause all liens on lot seven to be paid by January 31, 2022.

4          **MR. NEVAREZ:** All right.

5          **MR. CARRUTH:** Your Honor, if I might --

6          **THE COURT:** (Indisc.) yes. Go ahead, Mr. Carruth.

7          **MR. CARRUTH:** Could we say paid and/or otherwise

8    released?

9          **THE COURT:** Yes. So, Mr. Nevarez, after "paid," put

10   paid or otherwise released.

11         **MR. NEVAREZ:** (Indisc.)

12         **THE COURT:** All right. Any other questions or

13   comments about that order, Mr. Carruth? Let's just start with

14   you.

15         **MR. CARRUTH:** No, Your Honor.

16         **THE COURT:** Mr. Nevarez, you have any questions about

17   those revisions?

18         **MR. NEVAREZ:** No, sir.

19         **THE COURT:** So let me just ask -- let me ask this

20   question. Maybe we should be specific about it in the order

21   but let's just talk about it so we don't have a dispute about

22   it.

23         So reorganized Debtor's going to (indisc.) this deed

24   to lot seven. Do you want that delivered to you, Mr. Nevarez,

25   or do you want it to be sent to the County Clerk by priority

1   mail or do you want -- how do you -- do you want them to

2   provide you the deed and then you get it recorded?

3          **MR. NEVAREZ:**  No.  I'm fine with Mr. Carruth sending

4   it to the County Clerk via priority mail, so long as I'm copied

5   and kept abreast.

6          **THE COURT:**  Okay.

7          **MR. NEVAREZ:**  (Indisc.)

8          **THE COURT:**  As we -- I guess we've all -- you all

9   have experienced (indisc.) arriving at the County Clerk and

10  putting a stamp on it apparently takes a little bit of time

11  these days.  And then even more so getting it where you

12  actually can see that it was recorded (indisc.) kind of saw

13  that exercise through the release of lis pendens and it just

14  took -- take some days there.  And --

15         **MR. CARRUTH:**  Your Honor, if I may?

16         **THE COURT:**  Yes.

17         **MR. CARRUTH:**  Thank you.  I believe, and I've had

18  this discussion with Mr. Dixon, I would invite him to correct

19  me if I'm wrong, I believe we are -- our procedure would be we

20  would just walk it through since Mr. Dixon is downtown.

21         **THE COURT:**  Is that doable, Mr. Dixon?  You take it

22  down there in hand, by hand, can you -- will they actually

23  record it that day?

24         **MR. DIXON:**  Yes, Your Honor.  I can take it down

25  there and have it recorded within 30 seconds.  It (indisc.)

32

1   have my -- I can actually make it down there and just walk up

2   to the counter and have it recorded (indisc.) recorded copy to

3   the parties.  I can (indisc.) deed at that point to

4   Mr. Nevarez's office.

5         **THE COURT:**  All right.  Do we need to try to write

6   that in the order?

7         **MR. DIXON:**  That'll be fine.

8         **MR. SPEAKER:**  (Indisc.)

9         **THE COURT:**  Mr. Nevarez, do you want that in the

10  order or just want to leave it like it is, which is by January

11  18, 2022?

12        **MR. NEVAREZ:**  That's fine, Your Honor.  I --

13        **THE COURT:**  All right.

14        **MR. NEVAREZ:**  -- (indisc.) as is.

15        **THE COURT:**  Thank you.  All right.  So if you'd

16  revise that order and upload it, Mr. Nevarez, we'll get it

17  (indisc.).

18        **MR. NEVAREZ:**  Very well.

19        **THE COURT:**  All right.  What else needs to be done

20  today in this case?

21        **MR. NEVAREZ:**  I have (indisc.) --

22        **MR. SPEAKER:**  (Indisc.)

23        **THE COURT:**  (Indisc.) looks like we're done.  I'll

24  look for the order from Mr. Feuille and one from Mr. Nevarez.

25  Thank you, gentlemen.  Good luck.  Court is adjourned.

**(This proceeding was adjourned at 12:14 p.m.)**

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **May 14, 2022**

Signed                                          Dated

*TONI HUDSON, TRANSCRIBER*