UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION


| | | |
|---|---|---|
| IN RE: | ) | CASE NO: 21-30071-HCM |
| | ) | CHAPTER  11 |
| | ) | |
| THE GATEWAY VENTURES, LLC, | ) | El Paso, Texas |
| | ) | |
| | ) | Thursday, March 10, 2022 |
| Debtor. | ) | |
| | ) | 10:42 a.m. to 11:28 a.m. |


HEARING RE:

SECOND EMERGENCY MOTION SECOND MOTION TO ENFORCE THE CHAPTER 11
PLAN, AND AWARD OTHER MISCELLANEOUS RELIEF
(DOC #231, 245, 246 AND 278)
[DKT.NO.282]

BEFORE THE HONORABLE H. CHRISTOPHER MOTT,
UNITED STATES BANKRUPTCY JUDGE



<u>APPEARANCES</u>:            See page 2


Court Recorder [ECRO]:   Bobby Yarbrough


Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**

Debtor:                    JEFF CARRUTH, ESQ.
                           Weycer Kaplan Pulaski & Zuber
                           24 Greenway Plaza
                           Suite 2050
                           Houston, TX 77046


Creditors:                 MICHAEL R. NEVAREZ, ESQ.
                           P.O. Box 12247
                           El Paso, TX 79913


                           HARREL L. DAVIS, III, ESQ.
                           Gordon Davis Johnson & Shane
                           P.O. Box 1322
                           El Paso, TX 79947


Also present:              MICHAEL DICKSON
                           SALEEM MAKANI
                           SUHAIL BAWA

3

1          **El Paso, Texas; Thursday, March 10, 2022; 10:42 a.m.**

2                          **(Call to Order)**

3          **THE COURT:**  All right.  So this Judge Mott and so

4   we're going on to the third case which is the Gateway Ventures,

5   LLC.  It's Chapter 11 Case 21-30071.  This is a hearing on a

6   second emergency motion to enforce plan filed by Westar

7   Investors Group, Mr. Bawa and Mr. Makani.

8          So why don't we start by getting appearances of

9   counsel?  Mr. Carruth, do you want to appear?

10         **MR. CARRUTH:**  Yes, Your Honor, good morning.  Thank

11   you.  Jeff Carruth on behalf of Gateway Ventures, LLC,

12   reorganized Debtor.

13         **THE COURT:**  Very good.

14         Mr. Nevarez, do you want to appear?

15         **MR. NEVAREZ:**  Yes, Your Honor, I do.  Good morning,

16   Your Honor.  Michael Nevarez for Westar Investors Group, LLC,

17   Suhail Bawa and Saleem Makani.

18         **THE COURT:**  Thank you.

19         Let's see.  Who else -- let's start with counsel.

20   Who -- whatever counsel wants to appear in the Gateway case?

21         **MR. DAVIS:**  Harrel Davis, Your Honor, on behalf of

22   Sam Kumar.

23         **THE COURT:**  Very good, thank you, Mr. Davis.

24         Anybody else want to appear in the Gateway case?

25   Very good.

4

1          **MR. CARRUTH:**  Your Honor, I should mention that --

2   I'm sorry.  I should mention that Mr. Dickson is on the line

3   also.

4          **THE COURT:**  Yes.  I see Mr. Dickson on WebEx and I

5   see Mr. Makani, I believe, on WebEx as well.

6          All right.  Any other counsel want to appear?  Very

7   good.

8          All right.  So, Mr. Carruth, let me ask you a few

9   questions here so I make sure I've got this situation -- at

10  least the basics right.  So has the reorganized Debtor

11  delivered the deed to Lot 7 to the Westar Group?

12         **MR. CARRUTH:**  Yes, Your Honor.  We have delivered it.

13  It has been recorded and to my knowledge, that is an issue in

14  today's motion.

15         **THE COURT:**  All right.  I just wanted to get some

16  fundamentals here.  And so when was that done?

17         **MR. CARRUTH:**  Your Honor, that was recorded the day

18  of -- plus or minus one day of the last hearing.  Mr. Nevarez

19  disputed the form of the deed.  So a week or two after that, we

20  recorded a subsequent deed that matched the exhibit that was a

21  part of the plan.  And so that -- I don't know the exact date.

22  I can get that as we progress but that corrected and

23  superseding deed was recorded I would say three or four weeks

24  ago.  I don't know the exact date.

25         **THE COURT:**  Okay, all right.

1          So, Mr. Nevarez, you're not complaining about the

2   deed today, right?

3          **MR. NEVAREZ:**  Not today, Your Honor.

4          **THE COURT:**  Okay.

5          **MR. NEVAREZ:**  And just for the record, that special

6   warranty deed was recorded January 13 of 2022 and then we

7   admitted and restated the special warranty deed was recorded

8   January 31st of 2022.  There are significant issues that I'm

9   still currently trying to wing my way through regarding the two

10  weeks but those aren't before the Court right now.  I'm going

11  to try to see if I can resolve those issues with Mr. Carruth.

12         **THE COURT:**  All right, very good.  I'm just -- and,

13  again, I'm just trying to get the overall lay of the land.

14         So, again -- then, Mr. Carruth, what about this --

15  the other lot -- what is it, Lot 9 to the Noorani Group -- is

16  that closed and that transaction occurred?

17         **MR. CARRUTH:**  Yes, Your Honor.  I was going to spend

18  some time kind of explaining to the Court that process.  So

19  that has taken a while, frankly.  Our progress has been slow

20  but steady and so Lot 9 -- well, let me give just a little bit

21  of a precursor to that.

22         So the 2021 taxes were resolved within the last two

23  to three weeks and then that funding and that release of tax

24  lien with satisfaction of the 2021 taxes occurred last week and

25  so we talked about -- I believe Mr. Becker (phonetic) filed a

6

1    withdrawal of that proof of claim.  Now, there was some filing

2    that he made, I believe, on Monday of this week.

3            And so in conjunction with that, the (indisc.)

4    closing occurred -- documents went to El Paso last Saturday,

5    arrived Monday and were recorded on Tuesday morning.  And so we

6    have -- as of Tuesday morning, I think we have a release of

7    lien.  All of that was recorded -- if I can draw the Court's

8    attention to the screen, all that was recorded on Tuesday at

9    about 11:17 a.m. in El Paso.

10           And that's the (indisc.) release and we also have --

11   if I can get back to it, we also have importantly the full

12   release of the Noorani abstract of judgment.  And that abstract

13   of judgment was against J.J. Ventures, PDG Prestige, Inc. and

14   Michael Dickson.

15           And with that release, that judgment against the

16   entire property and against Mr. Dickson, we now have --

17           And I somehow lost everyone.  Excuse me one second.

18           All right.  And with that release, we now have

19   everyone released.  Mr. Dickson, this property and this note of

20   the entire 20-acre tract as well as the judgment lien against

21   Prestige -- PDG Prestige as well.  And so that permits other

22   transactions and other sales and other financing to now occur

23   because there's not a judgment lien not in existence.

24           And so I'll -- I could go on but -- as to what comes

25   next but -- if the Court would like but that would be the

7

1  response to the question as to Mr. Noorani has posed.

2          THE COURT:  I would like the "what comes next" but

3  let me just make sure that I've got it.  I mean, I generally

4  understood the releases and sort of thing.  But the deed to the

5  Noorani Group has also been delivered and recorded, yes?

6          MR. CARRUTH:  Yes, Your Honor --

7          THE COURT:  Okay, all right.

8          MR. CARRUTH:  -- but as far as the closing, that

9  occurred March 7th and 8th.

10         THE COURT:  All right, very good.

11         Okay.  So why hasn't the reorganized Debtor paid the

12  hundred thousand to Westar?

13         MR. CARRUTH:  Because the reorganized Debtor has not

14  possessed the funds to date.

15         THE COURT:  And so what do you see the next step on

16  getting Westar paid?

17         MR. CARRUTH:  So I think there are two or three

18  scenarios, Your Honor.  One is I believe Mr. Dickson has some

19  supplemental financing that is expected to fund this week and

20  -- which has become available with the release of the judgment

21  lien.  So that would be option number one.

22         Option number two, there are -- Lot 5 and Lot 8 are

23  under contract.  So that's more or less the north -- the center

24  lot on the north half and none of the lots on the bottom half

25  of the property.  Those two lots are presently under contract

8

1    and a closing is expected on either of those lots in the next

2    30 to 45 days.

3           And then the third option is actually what was

4    written into the plan and what the basis of the borrowing is

5    under the plan which would be the note and guaranty and the

6    other remedies that are provided and were negotiated for as

7    part of the plan.

8           And short of the slow and steady progress that the

9    Debtor has made, I was hoping I would hear that.  The remedies

10   for us are written into the plan and those are the remedies in

11   addition to whether a motion practice and process on this side

12   are unnecessary and contrary to the plan but we have the

13   remedies of the providers.

14          But with that being said, I -- and Mr. Dickson could

15   elaborate if necessary but I do believe that we are -- we're

16   convinced that by March 7th and the 8th, we are very close to

17   having the hundred thousand dollars issue resolved.

18          **THE COURT:**  Yeah, and so part of this is what does

19   "very close" mean?

20          **MR. CARRUTH:**  Yes, Your Honor.  I understand and I --

21   Mr. Dickson has indicated to me that the -- he has secured some

22   supplemental financing and that is supposed to fund within a

23   matter of two or three days, possibly even today.  We're

24   waiting on a return call.  That has freed up and has been in

25   the works now is in process because the judgment lien of

1  Noorani is now released.

2          **THE COURT:**  So what remedy --

3          **MR. CARRUTH:**  So --

4          **THE COURT:**  Go ahead, sir.

5          **MR. CARRUTH:**  I'm sorry.

6          **THE COURT:**  Go ahead.

7          **MR. CARRUTH:**  But short of that, we do have property

8  sales that are forthcoming and will take 30 to 45 days to close

9  possibly -- hopefully sooner but that's what's in the works

10 now.

11         **THE COURT:**  So what remedy are you saying that the

12 plan provides?

13         **MR. CARRUTH:**  The plan provided that Gateway and

14 Mr. Dickson would execute a note and a guaranty and then if

15 there was a default with respect to those items, that there

16 would be a confession of judgment written into one of those

17 documents.  And I've gone back and looked a couple of times.

18         The last time I received even a draft of those

19 documents was probably a day -- well, not probably but was a

20 day or two prior to the -- that Thursday status conference that

21 we had in El Paso.  I believe it was October the 13th.  So

22 since confirmation and since the plan occurred, I've not

23 received the note, guaranty and confession of judgment document

24 that were contemplated by the plan.

25         So -- but that is the remedy that was included in the

10

1    plan and that would be the additional language that was written

2    in as a result of the October 13 -- I believe it was the

3    October 13th status conference.  And I will get section

4    reference for you momentarily.

5         **(Pause)**

6         And I'm almost there, Your Honor.  So that would be

7    Section 5.8.2(6) -- no, I'm sorry -- (4) of the plan which is

8    the actual -- and, here, I'll just -- let me share the screen.

9         So on -- in -- and actually in the Confirmation Order

10   which is Docket 246 which you put as Docket 245 as an exhibit

11   and our hundred-thousand-dollar paragraph includes a confession

12   of judgment.  I guess we did vote out the note and deed of --

13   or the note and -- there was just -- there was going to be a

14   confession of judgment to Westar which they could enforce if

15   not -- if the cash wasn't paid within 35 days.

16        **THE COURT:**  And so are you saying you have or you

17   have not gotten the Confession of Judgment document?

18        **MR. CARRUTH:**  I have not received, Your Honor.

19        **THE COURT:**  All right.  Mr. Nevarez?

20        **MR. NEVAREZ:**  Yes, Your Honor.  I'm not sure that the

21   remedies that are listed by Mr. Carruth are acceptable.  Number

22   one, we have -- the Debtor has already violated three orders of

23   this Court, the final order assuming the plan -- then there was

24   the plan itself, the contribution of it and then there was also

25   the first motion to enforce the plan that has been violated.  I

1    don't know that the paperwork is going to do any good as far as

2    my motion suggests additional remedies.

3         The first two remedies that Mr. Carruth suggests

4    involve additional time, additional delay and will probably

5    result in a fourth violation of Court orders.  I think we

6    realize that their promises regarding the hundred thousand are

7    routinely broken.

8         Number three, the remedy that is authored by

9    Mr. Carruth is really confined to additional motion practice

10   because it's just additional paperwork.  We have an order.  We

11   don't need a stipulation, a confession of judgment.  We don't

12   need an additional note.  We don't need a guaranty.  We have

13   three orders that have been violated already.

14        What we would like to see done is what I request in

15   my motion and that's to stop all payments from the Debtor --

16   the reorganized Debtor to the attorneys of record including

17   Mr. Carruth, stop all intercompany transfers to PDG Prestige,

18   all -- stop all intercompany transfers to Prestige Star.  I

19   don't know why those intercompany transfers are even being

20   made.

21        Why is money going out of the reorganized Debtor's

22   estate to the affiliates of the reorganized Debtor?  That just

23   makes no sense.  The money should be kept within the

24   reorganized Debtor's estate so that the execution of the plan

25   including payment of the hundred thousand can be accomplished.

12

1        So I think all they're suggesting in Mr. Carruth's

2   proposal is just additional delay and they don't seem to

3   trigger what we need is going to pay them for the hundred

4   thousand dollars.

5        As I pointed out in my motion, a lot of the money

6   that's going to affiliates is winding up in Mr. Dickson's

7   pockets and are being spent on items which on their face appear

8   not to be related to any business purpose in accomplishing the

9   plan.  We're talking about bar tabs, restaurant tabs, all kinds

10  of things that are frivolous, nonbusiness expense.

11       And I should mention that since we are a partner of

12  the Gateway Ventures, there are potential tax implications that

13  we are concerned about because of the -- what seems to be

14  diversion to affiliates for purposes that do not seem to be

15  business-related.  And so we're -- that's not a concern that we

16  have.

17       So we would encourage the Court to decide if the

18  (indisc.) is ceasing all payments to the attorneys of record,

19  the affiliate PDG Prestige, the affiliate Prestige Star and we

20  would also request that those monthly reports that are missing

21  be filed by the Debtor.  I'm not sure why they're not being

22  filed but according to my -- according to the proposed order,

23  that includes the August monthly report, October, November,

24  December, January and now we can add the February monthly

25  operating report that has not been submitted.

13

1          I don't know why that -- the Debtor -- the

2    reorganized Debtor isn't -- thinks that that is not important.

3    So -- but it -- the reports that have been submitted show that

4    there's a lot in intercompany transfers that could have been --

5    instead of being paid to the affiliates, could have been paid

6    to the Westar Group for payment in regards with the three

7    outstanding orders that have been violated.  I have nothing

8    further, Your Honor.

9          **THE COURT:**  So, Mr. Carruth, what's your position on

10    these -- what Mr. Nevarez is calling "intercompany transfers"?

11          **MR. CARRUTH:**  Your Honor, I'm not sure of the -- of

12    each line item.  I know that we have G&A line item in our two

13    cash collateral budgets but my understanding is that the

14    payments on -- for site improvements primarily were

15    substantial.

16          For example, the ramp that was discussed during the

17    confirmation hearing, that ramp is a -- it has been built,

18    utilities have been installed on the location since the hearing

19    and then in terms of the party payments, I can -- I have not

20    been paid near what Mr. Nevarez thinks I've been paid.  I did

21    go back and look.  One operating report that says I'd been

22    paid, 179.  I've certainly not been paid 179 by the Debtor.

23          But if the request is to cease those payments, that's

24    a -- any transfers -- I guess I've got two or three responses

25    to that.  One would be the reorganized Debtor is entitled to

14

1    continue to conduct its business.

2            Second, the -- any payments to (indisc.) are the

3    higher priority then.  Westar, 100,000, so that's not an

4    adequate remedy.  And then I would just have to confer a moment

5    with Mr. Dickson if the other remedy is to not -- is to cease

6    other payments to other related entities.  I don't want that to

7    stop site work on the location which helps the -- all the

8    projects.  It would fund the $100,000 and maintain the value of

9    Lot 7 also.

10           But if that's part of the relief that's being

11   contemplated today, I would just need to huddle up with

12   Mr. Dickson momentarily to discuss that.

13           **THE COURT:**  Mr. Carruth, do you know the status of

14   the reorganized Debtor filing post-confirmation reports?

15           **MR. CARRUTH:**  I believe that we do -- we did file the

16   September MOR.  So we would need to -- I didn't see the October

17   MOR on the docket and I don't see the first post -- the first

18   quarterly report for Q4 post-effective date.  I don't see that

19   on the docket.

20           **THE COURT:**  So, Mr. Nevarez --

21           **MR. CARRUTH:**  So I -- I'm sorry.

22           **THE COURT:**  Go ahead.

23           **MR. CARRUTH:**  Oh.  I do know that we've lost --

24   recently lost the personnel -- Mr. Clint (phonetic) who has

25   been handling that which has had some impact on what we're

15

1   doing.

2          **THE COURT:**  Mr. Nevarez, these transfers that you're

3   talking about --

4          **MR. SPEAKER:**  Did they did this?

5          **THE COURT:**  Mr. Nevarez, the transfers that you're

6   talking about --

7          **MR. NEVAREZ:**  Yes, sir.

8          **MR. SPEAKER:**  Any transfers the right --

9          **THE COURT:**  I'm sorry.  Who's speaking?

10         **MR. CARRUTH:**  That sounds like Mr. Dickson.

11         **THE COURT:**  Okay.  Mr. Dickson, that's fine if you

12  want to say something.  I just need to know who's speaking.

13         **MR. NEVAREZ:**  I guess not, Your Honor.  Did Your

14  Honor have a question for me?

15         **THE COURT:**  Yes.  So these transfers you're talking

16  about, I'm just going to call them "intercompany transfers"

17  just to kind of generically describe them.  So when are you

18  saying that occurred?

19         **MR. NEVAREZ:**  Oh, it's occurred -- well, it's hard to

20  say when but I have as exhibits -- if Your Honor might allow me

21  to share the screen --

22         **THE COURT:**  That's fine.

23      **(Pause)**

24         **MR. NEVAREZ:**  Okay.  On the screen the monthly

25  reports, these are PDG working reports.  If I may refer Your

16

1    Honor to the right-hand item, the monthly report, Docket Number

2    282-6.  That's a PDG monthly report in case -- it was filed in

3    21-371 in this court.

4            There's just all kinds of -- I'll just take, for

5    example, the first highlighted Item 1103, November champagne

6    tab, $1,634.  There's Coconuts Bar & Grill on 11/4, Village Inn

7    Pancakes, the Kinective Fitness Club, Corralito Steak House

8    multiple times.  Mr. Dickson has good taste -- but the Flix

9    Brewhouse -- it just goes on and on.  They are just all -- you

10   can look at reports that are filed by PDG reflect that a lot of

11   payments are being made to what appear to be lately non-

12   business-related expenses.

13           Again, where -- as a co-venture partner with PDG,

14   there are tax implications resulting from such expenditures and

15   they go on and on.  All those monthly reports that are filed by

16   PDG were made exhibits.  And I should mention that PDG also was

17   delinquent in filing their monthly operating reports in that

18   case.  So that's what I've got to put a stop to at least until

19   the hundred thousand dollars gets paid.

20           **THE COURT:**  Yeah.  I mean, I understand -- and I'll

21   hear from you in just a minute, Mr. Dickson.  Thank you because

22   I would like to hear from you.

23           In -- I mean -- but I understand your concern,

24   Mr. Nevarez.  I do.  The one thing you've been saying that I'm

25   not following is this -- how to put it -- that Mr. -- I guess

17

1    it would be Westar technically -- is still an equity holder

2    because that's not what the plan says.  The plan basically says

3    when that Lot 7 is conveyed that the unit that Westar owned go

4    back to the Debtor.  And so Lot 7 has been conveyed.

5           I'm not trying to downplay your other concerns but, I

6    mean, I don't think -- it doesn't look like to me your clients

7    are still equity holders of this reorganized entity but let's

8    just set that aside for a minute.

9           But, Mr. Dickson, go ahead.

10          **MR. DICKSON:**  Good morning, Your Honor.  Good

11   morning, gentlemen.  I guess the first thing that's kind of

12   jumping off the page at me is Mr. Nevarez was constantly

13   quoting expenses from PDG Prestige when this is the Gateway

14   Ventures case and has nothing to do with PDG Prestige.  And

15   then the money -- the quarterly reports for the Gateway

16   Ventures -- I'm looking here at reports completed and done

17   through the end of January for Gateway Ventures that have not

18   been filed.  And that's completely -- I'm unaware of that.

19   This is the first I've heard of it.

20          That initially, sir, in the last hearing, you made

21   the same allegations that we were spending money to pay

22   attorneys and other things like that.  And this Court ordered

23   that we not do any more -- pay any more -- Debtor pay any more

24   money until this hundred thousand dollars is taken care of

25   which, as you can tell, the property has been sitting since

18

1    that hearing with no progress.  No payments have been made on

2    behalf of the company by any entity, Michael Dickson

3    personally, any entity whatsoever by Court order as we agreed

4    to do.

5           We did get the -- that at the title company cleaned

6    up finally so we could start conveying properties.  I have two

7    properties in escrow as I speak right now.  I have a line of

8    credit that finally now is going to get put through in moment,

9    probably this afternoon.  I'm expecting a phone call by 11:30

10   Mountain Standard Time on the timing of that but this simply

11   that we're -- we -- I mean, it isn't -- trust me.  We don't

12   want to -- we want to be done with Westar Ventures as much as

13   they want to be done with us in its entirety.

14          So we would like to pay the hundred thousand dollars

15   as fast as possible.  I just -- we gave permission to the --

16   that if it has not happened, it needs to do so.  And -- but

17   we're making lots of progress.  We're trying -- I'm trying very

18   hard to get this cleaned up as fast as possible.  And I do

19   apologize that it hasn't happened in the timely manner that we

20   had agreed to originally.  There are things that we just didn't

21   account for coming up.  That's

22   -- that is my responsibility and I'll own it.

23          But I assure you, Mr. Nevarez, Mr. Makani, Mr. Davis,

24   Mr. Kumar and Mr. Mott that I will have this taken care of as

25   fast as possible, that I will have this taken care of.  That

19

1   was looking at the whole thing.  Thank you.

2          **THE COURT:**  So, Mr. Dickson, let me make sure I

3   followed the first part of what you said.  So when Mr. Nevarez

4   kind of, I'll say, popped up on the screen some payments that

5   look like, yeah, whatever, Flix Brewhouse and -- you're saying

6   that wasn't out of Gateway Ventures' account?

7          **MR. DICKSON:**  No, sir.  That's out of PDG Prestige

8   account.  So he showed me the MOR.  I don't know if he's doing

9   that annually or if he's to misrepresent something to the

10  Court.  I can't make that distinction.

11         **THE COURT:**  Well, I'm not interested in getting in --

12  calling people misrepresenting things.  I'm just trying to

13  figure out what bank account we're talking about.

14         **MR. DICKSON:**  It's PDG Prestige.  It's the other

15  entity.  Gateway Ventures doesn't have a debit card, doesn't

16  have a credit card, doesn't have anything to put those charges

17  on.  When they tie in 5229, it is PDG Prestige, Incorporated.

18         **MR. NEVAREZ:**  Your Honor, if I might respond?

19         **THE COURT:**  Yes, go ahead, Mr. Nevarez.

20         **MR. NEVAREZ:**  Yes, Your Honor.  The PDG Prestige

21  monthly operating reports were put on there because the money

22  was coming from -- was going to PDG Prestige in large part

23  coming from the reorganized Debtor here Gateway Ventures.

24         **MR. DICKSON:**  No, it's not.

25         **MR. NEVAREZ:**  So -- well, as I note on Page --

1    Paragraph 49, Page 7, it's my second motion and the fourth

2    Document 282.  In just those -- in four of the -- well, the

3    operating reports -- it shows that $89,000 went to PDG Prestige

4    from the Gateway Ventures account when that money could have

5    gone to pay the hundred thousand that's owed and that's -- and

6    we're still missing the monthly operating reports for the

7    Debtor -- reorganized Debtor here that I mentioned, the August,

8    the October, the September, November, December, January,

9    February -- they still have not been filed.

10           I don't know why Mr. Dickson is not aware of that and

11   I'm not sure why they haven't been filed but they haven't been

12   filed.  So there might be some additional substantial amounts

13   going from the reorganized Debtor to its affiliates.  Why money

14   is going today to Prestige Star during the period ending

15   September 30?  They received $313,554.  Why is that going to

16   the affiliate when it could have been used to pay the hundred

17   thousand?

18           And let me just respond regarding the equity interest

19   of the Debtor.  As we discussed earlier in this hearing, we did

20   receive a special warranty deed.  We did receive an amended,

21   corrected special warranty deed.  I'm looking at it.  I'm

22   looking at a title report that we just recently received this

23   past week from Sierra Title analyzing the restrictions on Lot 7

24   and there's abundant descriptions.

25           So I'm not sure why we were given a special warranty

1    deed and a corrected warranty deed that could end up costing my

2    client clear title but that's problematic.  I'm trying to

3    continue my review of the Sierra Title -- preliminary title

4    report that I received just a couple days ago.  And I want to

5    talk to my clients but it appears that the special warranty

6    deed had restrictions that -- as well as an imposition of taxes

7    for this year and last year which should not have been which

8    restricts the conveyance of clear title and we were dumped with

9    a lot of taxes, it appears.

10         I want to look to see whether it was filed by the

11   City in the withdrawal of a claim, the amount of the impacts or

12   the conveyance but not only was a special warranty deed that we

13   received from the reorganized Debtor both in taxes but the

14   amended special warranty deed that was received thereafter

15   imposed some additional restrictions.

16         So I'm not sure the mere conveyance of a deed to my

17   client relieves the Debtor -- reorganized Debtor of its

18   obligation to provide clear title because what we seem to be

19   getting is just a deed that has all kinds of restrictions and

20   encumbrances that were dumped on my client.  I'm still

21   analyzing it and as I said, I'm going to talk to the tax people

22   and I want to run this by Mr. Carruth off the record but that's

23   our concern.

24         **THE COURT:**  All right.  Does anybody have anything

25   else?

1        **MR. DIXON:** May I chime in on this?

2        **THE COURT:** Pardon?

3        **MR. DIXON:** I need to chime in on this. I believe we

4   got this amended and restated warranty deed directly from

5   Mr. Nevarez. I will -- I'll certainly address the deed with

6   Mr. Nevarez if he'll provide comments and we'll see what -- how

7   that lines up with the orders. The deed is not an issue before

8   the Court today.

9        **MR. DIXON:** I would like to not be characterized as

10  trying to do something underhanded here. I was forwarded a

11  deed. It's an amended restated warranty deed which I took

12  immediately and recorded with the County Clerk's office.

13       **MR. NEVAREZ:** I did not provide the deed, Your Honor.

14  Had I provided the deed, they would have no restrictions. I've

15  got two deeds with a lot of restrictions. As Mr. Carruth has

16  indicated, that issue is not before the Court. I just wanted

17  to address the fact that --

18       **THE COURT:** Okay.

19       **MR. NEVAREZ:** our equity interest.

20       **THE COURT:** All right.

21       **MR. DIXON:** (indisc.) special warranty deed. It had

22  taxes from the year 2022 (indisc.) at closing. The only

23  restrictions I see on this second amended recorded deed was

24  reference to the (indisc.) declaration of See Comments,

25  Objections and Restrictions recorded as Document Number

1    2020057615, Official County Records of El Paso County, Texas.

2         There's no deed restriction that I see on this.  As

3    far as the ad valorem and real estate taxes, grantee is hereby

4    assumes the liability for the ad valorem taxes, all assessments

5    for the current year 2022 and all subsequent years probated at

6    the time of closing.

7         **THE COURT:**  Yeah.  Okay.  Well, I'm not --

8         **MR. DIXON:**  I don't see any other -- I'm sorry.  I

9    don't see any restrictions in this deed.

10        **THE COURT:**  All right.  This Judge Mott.  I've heard

11   enough.  So, yeah, I'm not happy about the situation and it

12   sounds like nobody is happy about the situation.  So we're all

13   unhappy.

14        What I'm going to do -- I'm going to deny the second

15   motion that you filed, Mr. Nevarez.  And the way that I see it

16   -- and I'm going to do it without prejudice to -- I mean, you

17   have two remedies the way that I see it.  And one remedy is the

18   remedy that's in the plan, 5.8.2(4), which is a confession of

19   judgment against Mr. Dickson and Gateway Ventures.  And if you

20   want to prepare that and send it to Mr. Carruth and Mr. Dickson

21   and if they don't sign that and you want to file a motion to

22   enforce that part of the plan, then I'll take it up.  So that's

23   one remedy you've got.

24        The other remedy you have is the remedy the

25   Bankruptcy Code gives you.  And so, yeah, Section 1112(b)(2),

24

1   you may have cause to convert the case to Chapter 7 for

2   violation of Court orders, for material default under the plan,

3   for not filing post-confirmation operating reports.  And I'm

4   not saying there is but I'm just saying there's a remedy in the

5   Bankruptcy Code.

6          On a motion to convert the case to Chapter 7, I'd

7   think about that carefully before I filed it just because if

8   you file something like that, whatever buyers there might be on

9   the lots and whatever financing might be -- that would be

10  coming to pay your client, that may go away.  And so I think

11  you've got the right to do it.  I don't know if it's the smart

12  thing to do.  And if the case ended up in Chapter 7, then your

13  client has got a lot in a development that's in debt that's not

14  operating.  So I don't know that that makes sense to your

15  client but it's a remedy.

16         And, I mean, I hope we don't have to get to either of

17  those two things but that sort of appears to me -- I mean, I

18  have entered an order requiring the reorganized Debtor to pay

19  the hundred thousand by -- I think it was January 31 and they

20  haven't complied with it.  Okay.

21         I can't throw somebody in jail for not paying money

22  but you've got -- yeah, there's a remedy in the plan and

23  there's a remedy in the Bankruptcy Code.  And if you don't get

24  your money pretty darn soon and that's what you want to do,

25  then that's what you should do is exercise one or both of those

25

1    remedies.

2              So that's going to be my ruling and I'll do an order

3    on this motion.  All right.  Thank you, gentlemen.  We'll be in

4    recess until noon Mountain Time.

5              **MR. NEVAREZ:**  Thank you, Your Honor.

6         **(This proceeding adjourned at 11:28 a.m.)**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

        I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____               __May 14, 2022__

          Signed                              Dated

                     *TONI HUDSON, TRANSCRIBER*