**The relief described hereinbelow is SO ORDERED.**

**Signed February 22, 2023.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **THE GATEWAY VENTURES, LLC.** | § | **Case No. 21-30071** |
| | § | |
| **Debtor.** | § | |

**AGREED ORDER ON WESTAR INVESTORS GROUP, LLC'S**
**MOTION TO CONVERT CHAPTER 11 CASE TO CHAPTER 7 PURSUANT TO**
**11 U.S.C. § 1112(b) (Doc. #412)**

**CAME ON FOR HEARING,** on February 14, 2023, Westar Investors Group, LLC's

("Westar") Motion to Convert Chapter 11 Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b) (Doc.

#412) (the "Motion"). The only responses to the Motion were the Limited Response of Legalist

DIP GP, LLC to Westar Investors Group, LLC's Motion to Convert Chapter 11 Case to Chapter 7

Pursuant to § 1112(b) (Doc. #425) (the "Legalist Response") filed herein by Legalist DIP GP, LLC

("Legalist") and the Response and Objection of The Gateway Ventures, LLC to Westar Investors

Group, LLC's Motion to Convert Chapter 11 Case to Chapter 7 Pursuant to 11 U.S.C. §1112(b)

(Doc. #426) (the "Debtor's Response") filed herein by The Gateway Ventures, LLC (the

"Debtor").  Counsel for Legalist, Westar, and the Debtor appeared at the hearing and announced

their agreement regarding the Motion on the record, which agreement is reflected hereinbelow.

The Court enters this Order based on the Debtor's representations that the Special Warranty

Deeds attached hereto (**Exhibit A** for the property described therein ("Lot 5"); **Exhibit B** for the

property described therein ("Lot 8"); and **Exhibit C** for the property described therein ("0.06 Acre

Lot") (The Special Warranty Deeds are, collectively, the "Deeds";  Lot 5, Lot 8 and the 0.06 Acre

Lot are, collectively, the "Lots") and delivered to Legalist on February 14, 2023, return to the

Debtor all of Debtor's real properties conveyed by the Debtor since October 15, 2021 (the

"Confirmation Date") other than those conveyances permitted in the First Amended Plan Of

Reorganization AS MODIFIED of The Gateway Ventures, LLC Dated October 14, 2021 (Doc. #

245).  With the agreement of Westar, Legalist, and the Debtor, the Court finds that the Motion is

denied, that the agreement of the parties is fair and reasonable and should be implemented, but on

the conditions set forth herein.  It is therefore:

**ORDERED, ADJUDGED AND DECREED** that the Motion is hereby **DENIED** only as

described hereinbelow; and it is further

**ORDERED, ADJUDGED AND DECREED** that pursuant to 11 U.S.C. § 105(a), the

Debtor, and its partners, affiliates, agents, officers, directors, owners, employees, attorneys,

representatives, and all other persons acting or purporting to act under their control or on its behalf

and specifically including its principal Michael Dixson ("Dixson"), and any persons acting in

concert or participation with them, are hereby **RESTRAINED** and **ENJOINED** from (i) selling,

leasing, exchanging, assigning, transferring, encumbering, conveying, or otherwise disposing of

all or any part of the Debtor's real property (including the Lots) (collectively, the "Real Property")

or any interest therein  or (ii) permitting legal or equitable title in the Real Property of the Debtor,

or any interest therein, to vest in any other party or entity, in any manner whatsoever, by operation of law or otherwise, or (iii)  any conveyance of an interest in the Debtor (collectively, a "Transfer"); and it is

 **ORDERED, ADJUDGED AND DECREED** that the violation of the prohibitions against a Transfer by any person or entity including, without limitation, Dixson, shall be enforceable by contempt; and it is

 **ORDERED, ADJUDGED AND DECREED** that, within ten days of entry of this Order, the Debtor and Azul at Entrada, LLC shall dismiss the proceeding entitled *The Gateway Ventures, LLC, et. al. v. Legalist DIP Funding I, LP, et al,* No. 2023 DCV 0342, 243rd District Court, El Paso County, Texas with prejudice to refiling and shall affirmatively seek to dissolve any injunctive relief granted therein; and it is further

 **ORDERED, ADJUDGED AND DECREED** that within two days of entry of this Order, the Debtor shall duly execute and deliver to counsel to Legalist, the Deed of Trust, Security Agreement, and Assignment of Rents (attached hereto as **Exhibit D)**; and it is further

 **ORDERED, ADJUDGED AND DECREED** that, within two days of entry of this Order, the Debtor shall execute and deliver to counsel to Legalist, the Deed In Lieu of Foreclosure (attached hereto as **Exhibit E**.)  Legalist shall refrain from recording the Deed In Lieu of Foreclosure until May 1, 2023, or such earlier time that the Debtor defaults hereunder, but may record it at any time thereafter; and it is further

 **ORDERED, ADJUDGED AND DECREED** that Legalist shall file a motion(s) (the "Sale Motion") seeking to, *inter alia,* employ a broker to conduct an auction (the "Auction") of the Real Property, approve sales procedures relating to the Auction, approve the sale of the Real Property, set a final hearing approving the sale to the highest bidder, approve the grant by the Debtor to

Legalist of a limited power of attorney for Legalist to sign and execute documents on behalf of the Debtor relating to the marketing and sale of the Real Property, and to grant other relief deemed necessary by Legalist; and it is further

**ORDERED, ADJUDGED AND DECREED** that Legalist is authorized to move on an expedited basis for a hearing on the Sale Motion; and it is further

**ORDERED, ADJUDGED AND DECREED** that, upon the sale of the Real Property or upon the filing of the Deed In Lieu Of Foreclosure, Legalist may file a motion seeking conversion of the case from Chapter 11 to Chapter 7.

###

Submitted by:
Russell W. Mills (TX SBN: 00784609)
**BELL NUNNALLY & MARTIN LLP**
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
214-740-1400 Telephone
214-740-1499 Facsimile
E-mail: rmills@bellnunnally.com
ATTORNEYS FOR
LEGALIST DIP GP, LLC

<u>**[continued on following page]**</u>

**AGREED:**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**

By: */s/ Jeff Carruth\**
Jeff Carruth (TX SBN: 24001846)
3030 Matlock Rd., Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

**ATTORNEYS FOR
THE GATEWAY VENTURES LLC,
DEBTOR AND DEBTOR IN POSSESSION**


**BELL NUNNALLY & MARTIN LLP**

By: */s/ Russell W. Mills*
Russell W. Mills (TX SBN: 00784609)
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1431
Fax: (214) 740-5731
E-mail: rmills@bellnunnally.com

**ATTORNEYS FOR
LEGALIST DIP GP, LLC**


**GORDON DAVIS JOHNSON & SHANE P.C.**

By: */s/ Harrell L. Davis\**
Harrell L. Davis (TX SBN: 05567560)
4695 North Mesa Street
El Paso, Texas 79912
Telephone: (915) 545-1133
Fax: (915) 545-4433
E-mail: hdavis@eplawyers.com

**ATTORNEYS FOR
WESTAR INVESTORS GROUP, LLC**


*\*Signed with permission.*

<u>**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**</u>

### SPECIAL WARRANTY DEED

STATE OF TEXAS              §
                           §
COUNTY OF EL PASO           §

  **GATEWAY LOT 5, LLC**, a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto **THE GATEWAY VENTURES, LLC**, a Texas limited liability company ("**Grantee**"), whose address is 300 E. Main Street, Suite 1000, El Paso, Texas 79901, that certain real property located in El Paso County, Texas, more particularly described in **Exhibit A** attached hereto and made a part hereof, together with all right, title and interest of Grantor, if any, in and to (i) those certain buildings, structures and fixtures presently situated on such real property; (ii) all streets, roads, alleys, easements, rights of way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to such real property as of the date hereof; (iii) any strips or gores of real property between such real property and abutting or adjacent properties not owned by Grantor as of the date hereof; (iv) all coal, minerals (including, but not limited to oil and gas), royalties, gas rights, water, water rights, timber and crops pertaining to such real property; (v) all appurtenances and all reversions and remainders in or to such real property; and (vi) all permits, easements and claims against third parties pertaining to said tract of land (collectively, the "**Property**").

  TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances belonging in any way to the Property, to Grantee, and Grantee's heirs, executors, administrators, successors and assigns forever; and Grantor does hereby bind itself and its heirs, executors, administrators, successors and assigns to WARRANT AND FOREVER DEFEND all and singular the Property unto Grantee, and Grantee's heirs, executors, administrators, successors and assigns, against every person lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

  The conveyance of this Special Warranty Deed is made subject to those encumbrances and exceptions of public record or that would be disclosed by survey of even date herewith, but

1

**EXHIBIT**

**A**

only to the extent the same are valid, subsisting, and affect the Property (the "**Permitted Exceptions**").

Grantee hereby expressly assumes liability for all ad valorem taxes and all other assessments which are currently outstanding and assessed or levied in subsequent years

[Signature page follows.]

EXECUTED on February 13th, 2023.

**GRANTOR:**

**GATEWAY LOT 5, LLC,**
a Texas limited liability company

By:    PDG Prestige, Inc.,
a Texas corporation,
its manager

Michael Dixson, President

STATE OF TEXAS    §
                          §
COUNTY OF TRAVIS    §

This instrument was acknowledged before me on the 13th day of February, 2023, by Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, the manager of Gateway Lot 5, LLC, a Texas limited liability company, on behalf of said corporation and said limited liability company.

JASMINE MERCEDES ESNAYDER
Notary ID #133440212
My Commission Expires
November 9, 2025

Notary Public, State of Texas
Printed Name: Jasmine Mercedes Esnayder
My Commission Expires: November 9, 2025

3

## ACKNOWLEDGEMENT

Grantee hereby acknowledges and accepts from Grantor ownership to and interest in the Property, and Grantee further acknowledges that Grantee's ownership and interest in the Property is, immediately and without further action by any party, subject to all obligations, liens, and remedies described in that certain Deed of Trust, Security Agreement, and Assignment of Rents, dated October 31, 2022, executed by Grantee for the benefit of Legalist DIP Fund I, LP, a Delaware limited partnership, and Legalist DIP SPV II, LP, a Delaware limited partnership, and recorded on November 16, 2022, under Document No. 20220104382 of the Official Public Records of El Paso County, Texas, as modified by that certain Modification of Deed of Trust, Security Agreement, and Assignment of Rents, recorded on February 3, 2023, under Document No. 20230008387 in the Official Public Records of El Paso County, Texas.

**GRANTEE:**

**THE GATEWAY VENTURES, LLC,**
a Texas limited liability company

By:    PDG Prestige, Inc.,
       a Texas corporation,
       its manager

Michael Dixson, President

STATE OF TEXAS     §
                      §
COUNTY OF TRAVIS  §

This instrument was acknowledged before me on the 13th day of February, 2023, by Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, the manager of The Gateway Ventures, LLC, a Texas limited liability company, on behalf of said corporation and said limited liability company.

JASMINE MERCEDES ESNAYDER
Notary ID #133440212
My Commission Expires
November 9, 2025

Notary Public, State of Texas
Printed Name: Jasmine Mercedes Esnayder
My Commission Expires: November 9, 2025

4

## EXHIBIT A

### Property Description

A 0.9594 acre parcel of land situated within the corporate limits of the City of El Paso, El Paso County, Texas, as a portion of Tract 4H, Block 2, Ascarate Grant, El Paso County, Texas, also being out of the 19.96 acre parent tract as described in Document No. 20190031428 and being more particularly described by metes and bounds as follows:

COMMENCING at a chiseled "X" in concrete found on the Northerly right-of-way line of said U.S. Interstate Highway No. 10 (300 feet wide) and for the Southeasterly corner of Lot 1, Block 1, Howdy's Subdivision as filed in Volume 75, Page 34, El Paso County Plat Records;

THENCE following the Northerly right-of-way line of said U.S. Interstate Highway No. 10, South 58 deg 34 min 05 sec East a distance of 565.71 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the Southwesterly corner and the POINT OF BEGINNING of the parcel herein described;

THENCE leaving the Northerly right-of-way line of said U.S. Interstate Highway No. 10, North 31 deg 25 min 55 sec East, a distance of 235.54 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the Northwesterly corner of the parcel herein described;

THENCE South 58 deg 34 min 05 sec East, a distance of 180.33 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set on the Westerly boundary line of Young American Subdivision as filed in Volume 44, Page 35, El Paso County Plat Records for the Northeasterly corner of the parcel herein described;

THENCE following the Westerly boundary line of said Young American Subdivision, South 32 deg 50 min 26 sec West, a distance of 235.61 feet to a 5/8-inch rebar found on the Northerly right-of-way line of U.S. Interstate Highway No. 10 for the Southeasterly corner of the parcel herein described;

THENCE leaving Westerly boundary line of said Young American Subdivision and following the Northerly right-of-way line of said U.S. Interstate Highway No. 10, North 58 deg 34 min 05 sec West, a distance of 174.54 feet to the POINT OF BEGINNING.

Said parcel containing 0.9594 acres (41,793.5 square feet), more or less, and being subject to all easements, restrictions or covenants of record.

Doc # 20230011299
#Pages 5 #NFPages 1
 02/15/2023 02:14 PM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $42.00


eRecorded


I hearby certify that this instrument was filed on the date and time stamped
heron by me and was duly recorded by document number in the Offical
Public Records of real Property in El Paso County,.



EL PASO COUNTY, TEXAS

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### SPECIAL WARRANTY DEED

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

     **AZUL AT ENTRADA, LLC,** a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto **THE GATEWAY VENTURES, LLC,** a Texas limited liability company ("**Grantee**"), whose address is 300 E. Main Street, Suite 1000, El Paso, Texas  79901, that certain real property located in El Paso County, Texas, more particularly described in **Exhibit A** attached hereto and made a part hereof, together with all right, title and interest of Grantor, if any, in and to (i) those certain buildings, structures and fixtures presently situated on such real property; (ii) all streets, roads, alleys, easements, rights of way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to such real property as of the date hereof; (iii) any strips or gores of real property between such real property and abutting or adjacent properties not owned by Grantor as of the date hereof; (iv) all coal, minerals (including, but not limited to oil and gas), royalties, gas rights, water, water rights, timber and crops pertaining to such real property; (v) all appurtenances and all reversions and remainders in or to such real property; and (vi) all permits, easements and claims against third parties pertaining to said tract of land (collectively, the "**Property**").

     TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances belonging in any way to the Property, to Grantee, and Grantee's heirs, executors, administrators, successors and assigns forever; and Grantor does hereby bind itself and its heirs, executors, administrators, successors and assigns to WARRANT AND FOREVER DEFEND all and singular the Property unto Grantee, and Grantee's heirs, executors, administrators, successors and assigns, against every person lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

     The conveyance of this Special Warranty Deed is made subject to those encumbrances and exceptions of public record or that would be disclosed by survey of even date herewith, but

**EXHIBIT**

**B**

only to the extent the same are valid, subsisting, and affect the Property (the "**Permitted Exceptions**").

Grantee hereby expressly assumes liability for all ad valorem taxes and all other assessments which are currently outstanding and assessed or levied in subsequent years

[Signature page follows.]

EXECUTED on February 13, 2023.

**GRANTOR:**

**AZUL AT ENTRADA, LLC,**
a Texas limited liability company

By:   PDG Prestige, Inc.,
a Texas corporation,
its manager

Michael Dixson, President

STATE OF TEXAS          §
                        §
COUNTY OF TRAVIS        §

This instrument was acknowledged before me on the 13th day of February, 2023, by Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, the manager of Azul at Entrada, LLC, a Texas limited liability company, on behalf of said corporation and said limited liability company.

JASMINE MERCEDES ESNAYDER
Notary ID #133440212
My Commission Expires
November 9, 2025

Notary Public, State of Texas
Printed Name: Jasmine Mercedes Esnayder
My Commission Expires: November 9, 2025

3

## ACKNOWLEDGEMENT

Grantee hereby acknowledges and accepts from Grantor ownership to and interest in the Property, and Grantee further acknowledges that Grantee's ownership and interest in the Property is, immediately and without further action by any party, subject to all obligations, liens, and remedies described in that certain Deed of Trust, Security Agreement, and Assignment of Rents, dated October 31, 2022, executed by Grantor for the benefit of Legalist DIP Fund I, LP, a Delaware limited partnership, and Legalist DIP SPV II, LP, a Delaware limited partnership, and recorded on November 16, 2022, under Document No. 20220104381 of the Official Public Records of El Paso County, Texas.

**GRANTEE:**

**THE GATEWAY VENTURES, LLC,**
a Texas limited liability company

By:    PDG Prestige, Inc.,
a Texas corporation,
its manager

Michael Dixson, President

STATE OF TEXAS     §
                     §
COUNTY OF TRAVIS    §

This instrument was acknowledged before me on the 13th day of February, 2023, by Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, the manager of The Gateway Ventures, LLC, a Texas limited liability company, on behalf of said corporation and said limited liability company.

JASMINE MERCEDES ESNAYDER
Notary ID #133440212
My Commission Expires
November 9, 2025

Notary Public, State of Texas
Printed Name: Jasmine Mercedes Esnayder
My Commission Expires: November 9, 2025

4

## EXHIBIT A

### Property Description

*A 2.3734 acres parcel of land situate within the corporate limits of the City of El Paso, El Paso County, Texas as a portion of Tract 4H, Block 2, Ascarate Grant, El Paso County, Texas also being out of that 19.96 acre parent tract as described in Document No. 20190031428 and being more particularly described by metes and bounds as follows:*

*COMMENCING* at a 5/8-inch rebar found on the northerly right-of-way line of U.S. Interstate Highway No. 10 (300 feet wide) and the westerly boundary line of Young American Subdivision as filed in Volume 44, Page 35, El Paso County Plat Records, identical to the southeasterly corner of said Tract 4H, *WHENCE*, a chiseled "X" in concrete found for the east-southwesterly corner of said Tract 4H, identical to the southeasterly corner of Lot 1, Block 1, Howdy's Subdivision as filed in Volume 75, Page 34, El Paso County Plat Records, bears North 58°34'05" West, a distance of 740.25 feet; *THENCE*, leaving the northerly right-of-way line of said U.S. Interstate Highway No. 10 and following the westerly boundary line of said Young American Subdivision, North 32°50'26" East, a distance of 556.66 feet to an angle point; *THENCE*, continuing along the westerly boundary line of said Young American Subdivision, North 59°44'42" West, a distance of 31.47 feet to an angle point; *THENCE*, continuing along the westerly boundary line of said Young American Subdivision, North 32°45'26" East, a distance of 280.01 feet to a 1/2-inch rebar with survey cap No. "TX 6223" found for the southwesterly corner of a parcel conveyed to Viscount Add On, LLC, as described in Special Warranty Deed filed in Doc. No. 20190091885, El Paso County Deed Records; *THENCE*, leaving the westerly boundary line of said Young American Subdivision and following the southerly boundary line of said Viscount Add On, LLC parcel, North 53°41'38" West, a distance of 289.55 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the northeasterly corner and the *POINT OF BEGINNING* of the parcel herein described;

*THENCE*, leaving the southerly boundary line of said Viscount Add On, LLC parcel, South 31°25'55" West, a distance of 328.88 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the southeasterly corner of the parcel herein described;

*THENCE*, North 58°34'05" West, a distance of 302.72 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the southwesterly corner of the parcel herein described;

*THENCE*, North 31°30'31" East, a distance of 354.66 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set on the southerly boundary line of said Viscount Add On, LLC parcel for the northwesterly corner of the parcel herein described;

*THENCE,* following the southerly boundary line of said Viscount Add On, LLC parcel, South 53°41'38" East, a distance of 303.34 feet to the *POINT OF BEGINNING.*

Said parcel containing 2.3734 acres (103,385.5 square feet), more or less, and being subject to all easements, restrictions or covenants of record.

*Aaron Alvarado, TX R.P.L.S. No.6223*
*Date: January 13, 2022*
*07173-001A10-LOT-8-DESC-REV2.doc*

Doc # 20230011297
#Pages 6 #NFPages 1
 02/15/2023 02:14 PM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $46.00


eRecorded


I hearby certify that this instrument was filed on the date and time stamped
heron by me and was duly recorded by document number in the Offical
Public Records of real Property in El Paso County.



EL PASO COUNTY, TEXAS

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## SPECIAL WARRANTY DEED

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

**6767 GATEWAY, LLC**, a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto **THE GATEWAY VENTURES, LLC**, a Texas limited liability company ("**Grantee**"), whose address is 300 E. Main Street, Suite 1000, El Paso, Texas  79901, that certain real property located in El Paso County, Texas, more particularly described in **Exhibit A** attached hereto and made a part hereof, together with all right, title and interest of Grantor, if any, in and to (i) those certain buildings, structures and fixtures presently situated on such real property; (ii) all streets, roads, alleys, easements, rights of way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to such real property as of the date hereof; (iii) any strips or gores of real property between such real property and abutting or adjacent properties not owned by Grantor as of the date hereof; (iv) all coal, minerals (including, but not limited to oil and gas), royalties, gas rights, water, water rights, timber and crops pertaining to such real property; (v) all appurtenances and all reversions and remainders in or to such real property; and (vi) all permits, easements and claims against third parties pertaining to said tract of land (collectively, the "**Property**").

TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances belonging in any way to the Property, to Grantee, and Grantee's heirs, executors, administrators, successors and assigns forever; and Grantor does hereby bind itself and its heirs, executors, administrators, successors and assigns to WARRANT AND FOREVER DEFEND all and singular the Property unto Grantee, and Grantee's heirs, executors, administrators, successors and assigns, against every person lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

The conveyance of this Special Warranty Deed is made subject to those encumbrances and exceptions of public record or that would be disclosed by survey of even date herewith, but

1

**EXHIBIT**

**C**

only to the extent the same are valid, subsisting, and affect the Property (the "**Permitted Exceptions**").

Grantee hereby expressly assumes liability for all ad valorem taxes and all other assessments which are currently outstanding and assessed or levied in subsequent years

[Signature page follows.]

EXECUTED on February 13ᵗᴸ, 2023.

**GRANTOR:**

**6767 GATEWAY, LLC,**
a Texas limited liability company

By:    PDG Prestige, Inc.,
a Texas corporation,
its manager

Michael Dixson, President

STATE OF TEXAS      §
                         §
COUNTY OF TRAVIS    §

This instrument was acknowledged before me on the 13ᵗᴸ day of February, 2023, by Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, the manager of 6767 Gateway, LLC, a Texas limited liability company, on behalf of said corporation and said limited liability company.

Notary Public, State of Texas
Printed Name: Jasmine Mercedes Esnayder
My Commission Expires: November 9, 2025

JASMINE MERCEDES ESNAYDER
Notary ID #133440212
My Commission Expires
November 9, 2025

3

# EXHIBIT A

## Property Description

A 0.0619 ACRE PARCEL OF LAND SITUATED WITHIN THE CORPORATE LIMITS OF THE CITY OF EL PASO, EL PASO COUNTY, TEXAS AS A PORTION OF LOT 3, BLOCK 4, INTERNATIONAL INDUSTRIAL CENTER AS FILED IN VOLUME 18, PAGE 54, EL PASO COUNTY PLAT RECORDS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING, AT A CHISELED "X" IN CONCRETE FOUND FOR THE EAST-SOUTHWESTERLY CORNER OF SAID TRACT 4H, IDENTICAL TO THE SOUTHEASTERLY CORNER OF LOT 1, BLOCK 1, HOWDY'S SUBDIVISION AS FILED IN VOLUME 75, PAGE 34, EL PASO COUNTY PLAT RECORDS WHENCE, A 5/8-INCH REBAR FOUND ON THE NORTHERLY RIGHT-OF-WAY LINE OF U.S. INTERSTATE HIGHWAY NO. 10 (300 FEET WIDE) AND THE WESTERLY BOUNDARY LINE OF YOUNG AMERICAN SUBDIVISION AS FILED IN VOLUME 44, PAGE 35, EL PASO COUNTY PLAT RECORDS, IDENTICAL TO THE SOUTHEASTERLY CORNER OF SAID TRACT 4H, BEARS SOUTH 58°34'05" EAST, A DISTANCE OF 740.25 FEET; THENCE, LEAVING THE NORTHERLY RIGHT-OF-WAY LINE OF SAID U.S. INTERSTATE HIGHWAY NO. 10, AND FOLLOWING THE EASTERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 31°29'49" EAST, A DISTANCE OF 215.04 FEET TO A 1/2 INCH REBAR WITH SURVEY CAP NO "TX 6223" FOUND FOR THE NORTHEASTERLY CORNER OF SAID LOT 1; THENCE, ALONG THE NORTHERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 58°34'05" WEST, A DISTANCE OF 215.68 FEET TO THE SOUTHEASTERLY CORNER AND THE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED:

THENCE, CONTINUING ALONG THE NORTHERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 58°34'05" WEST, A DISTANCE OF 3.63 FEET TO A 5/8-INCH REBAR WITH SURVEY CAP NO. "TX 5337" FOUND ON THE EASTERLY RIGHT-OF-WAY LINE OF AIRWAY BOULEVARD (120 FEET WIDE) FOR THE BEGINNING OF A NON-TANGENT CURVE TO THE LEFT AND THE SOUTHWESTERLY CORNER OF THE PARCEL HEREIN DESCRIBED:

THENCE, LEAVING THE NORTHLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION AND FOLLOWING THE EASTERLY RIGHT-OF-WAY OF SAID AIRWAY BOULEVARD ALONG THE ARC OF SAID NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 800.15 FEET, A CENTRAL ANGLE OF 09°54'28", AN ARC LENGTH OF 138.37 FEET AND WHOSE LONG CHORD BEARS NORTH 20°33'15" EAST, A DISTANCE OF 138.19 FEET TO A POINT OF REVERSE CURVATURE:

THENCE, CONTINUING ALONG THE EASTERLY RIGHT-OF-WAY LINE OF SAID AIRWAY BOULEVARD, ALONG THE ARC OF A CURVE TO THE RIGHT HAVING A RADIUS OF 20.00 FEET, A CENTRAL ANGLE OF 105°54'11", AN ARC LENGTH OF 36.97 FEET AND WHOSE LONG CHORD BEARS NORTH 68°33'07" EAST, A DISTANCE OF 31.93 FEET TO THE SOUTHERLY RIGHT-OF-WAY LINE OF VACATED PORTION OF INTERNATIONAL DRIVE PER ORDINANCE NO. 7479, DATED 0-20-82 FOR A POINT OF TANGENCY:

THENCE, FOLLOWING SAID PORTION OF VACATED INTERNATIONAL DRIVE RIGHT-OF-WAY LINE, SOUTH 60°58'54" EAST, A DISTANCE OF 10.67 FEET TO THE WESTERLY BOUNDARY LINE OF TRACK 4H, BLOCK 2, ASCARATE GRANT FOR THE NORTHEASTERLY CORNER OF THE PARCEL HEREIN DESCRIBED:

THENCE, LEAVING SAID PORTION OF VACATED INTERNATIONAL DRIVE RIGHT-OF-WAY AND FOLLOWING THE WESTERLY BOUNDARY LINE OF SAID TRACT 4H, SOUTH 31°30'31" WEST, A DISTANCE OF 161.55 FEET TO THE POINT OF BEGINNING SAID PARCEL CONTAINING

4

0.0619 ACRES (2,695.0 SQUARE FEET), MORE OR LESS, AND BEING SUBJECT TO ALL EASEMENTS, RESTRICTIONS OR COVENANTS OF RECORD.

Doc # 20230011298
#Pages 5 #NFPages 1
 02/15/2023 02:14 PM
Filed & Recorded in
Official Records of
El Paso County
Delia Briones
County Clerk
Fees $42.00


eRecorded


I hearby certify that this instrument was filed on the date and time stamped
heron by me and was duly recorded by document number in the Offical
Public Records of real Property in El Paso County.



EL PASO COUNTY, TEXAS

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT CONVEYS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**After Recordation, Return To:**

**Bell Nunnally & Martin LLP**
**2323 Ross Avenue, Suite 1900**
**Dallas, Texas 75201**
**Attn: Russell Mills**

**DEED OF TRUST, SECURITY AGREEMENT,**
**AND ASSIGNMENT OF RENTS**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

This **DEED OF TRUST, SECURITY AGREEMENT, AND ASSIGNMENT OF RENTS** (hereinafter referred to as the "Deed of Trust") is entered into effective as of February ____, 2023, by and among **THE GATEWAY VENTURES, LLC**, a Texas limited liability company (hereinafter referred to as "Grantor," whether one or more), whose address for notice hereunder is 300 E. Main Street, Suite 1000, El Paso, Texas 79901, to Christopher Wren, as Trustee (hereinafter referred to in such capacity as "Trustee"), for the benefit of the hereinbelow defined Beneficiary.

**Article 1**
**DEFINITIONS**

1.1     Definitions. As used herein, the following terms shall have the following meanings:

Act: means Chapter 64 of the Texas Property Code, as amended from time to time.

Beneficiary: **LEGALIST DIP FUND I, LP**, a Delaware limited partnership, and **LEGALIST DIP SPV II, LP**, a Delaware limited partnership, jointly and severally.

Event of Default: Any happening or occurrence described in Article 6 hereinbelow.

Fixtures: All materials, supplies, equipment, apparatus and other items now owned or hereafter acquired by Grantor and now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements (as hereinafter defined) or the Land (as hereinafter defined), including but not limited to any and all partitions, dynamos, window screens and shades, drapes, rugs and other floor coverings, awnings, motors, engines, boilers, furnaces, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating, ventilating, plumbing, laundry, incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer

**EXHIBIT**

**D**

facilities and all other utilities whether or not situated in easements, together with all accessions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof.

Governmental Authority:  Any and all courts, boards, agencies, commissions, offices or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city or otherwise) whether now or hereafter in existence.

Grantor:  The above defined Grantor, whether one or more, and any and all subsequent owners of the Mortgaged Property (hereinafter defined) or any part thereof (without hereby implying Beneficiary's consent to, and subject to Beneficiary's right to consent to, any Disposition (hereinafter defined) of the Mortgaged Property).

Impositions:  (i) All real estate and personal property taxes, charges, assessments, excises and levies and any interest, costs or penalties with respect thereto, general and special, ordinary and extraordinary, foreseen and unforeseen, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied or imposed upon the Mortgaged Property or the Rents (hereinafter defined) or the ownership, use, occupancy or enjoyment thereof; (ii) any charges, fees, license payments or other sums payable for any easement, license or agreement maintained for the benefit of the Mortgaged Property; and (iii) water, gas, sewer, electricity and other utility charges and fees.

Improvements:  Any and all buildings, covered garages, utility sheds, workrooms, air conditioning towers, open parking areas, structures and other improvements, and any and all additions, alterations, betterments or appurtenances thereto, now or at any time hereafter situated, placed or constructed upon the Land or any part thereof.

Indebtedness:  The principal of, interest on and all other amounts, payments and premiums due under or secured by this Deed of Trust, the Loan Agreement, and any and all other documents now or hereafter executed by Grantor or any other person or party in connection with the loan evidenced by the Loan Agreement.

Land:  The real estate or interest therein described on Exhibit "A" attached hereto and incorporated herein by reference, and all rights, titles and interests appurtenant thereto.

Leases:  Any and all leases, subleases, licenses, concessions or other agreements (written or oral, now or hereafter in effect) which grant a possessory interest in and to, or the right to use, all or any part of the Mortgaged Property, together with all security and other deposits made in connection therewith, save and except any and all leases, subleases or other agreements pursuant to which Grantor is granted a possessory interest in the Land.

Legal Requirements:  (i) Any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates or ordinances of any Governmental Authority in any way applicable to Grantor or the Mortgaged Property, including, without limiting the generality of the foregoing, the ownership, use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction thereof, (ii) any and all covenants, conditions, and restrictions contained in any deed or other form of conveyance or in any other instrument of any nature that relate in any way or are applicable to the Mortgaged Property or the ownership, use or occupancy thereof, (iii) Grantor's presently or subsequently effective bylaws and articles of incorporation or partnership, limited partnership, joint venture, trust or other form of business association agreement, (iv) any and all Leases, and (v) any and all leases, other than those described in (iv) above, and other contracts (written or oral) of any nature that relate in any way to the Mortgaged Property and to which Grantor may be bound, including, without limiting the generality of the foregoing, any lease or other contract pursuant to which Grantor is granted a possessory interest in the Land.

**DEED OF TRUST, SECURITY AGREEMENT, AND ASSIGNMENT OF RENTS – Page 2**

Loan Agreement: That certain Debtor-In-Possession Term Loan Credit Agreement, dated June 24, 2021, as may be amended, among Grantor, Beneficiary, and other obligors, setting forth terms and conditions that effect the Indebtedness, the Obligations, and this Deed of Trust.

Minerals: All substances in, on, under, or above the Land which are now, or may become in the future, intrinsically valuable (that is, valuable in themselves) and which now or may be in the future enjoyed through extraction or removal from the property, including without limitation, oil, gas, and all other hydrocarbons, coal, lignite, carbon dioxide and all other nonhydrocarbon gases, uranium and all other radioactive substances, and gold, silver, copper, iron and all other metallic substances or ores.

Mortgaged Property: The Land, Improvements, Fixtures, Leases, Minerals, Personalty (as hereinafter defined), and Rents, together with:

(i)     all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages and appurtenances in anywise appertaining thereto, and all right, title and interest of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the Land or any part thereof; and

(ii)     all betterments, improvements, additions, alterations, appurtenances, substitutions, replacements and revisions thereof and thereto and all reversions and remainders therein; and

(iii)     all of Grantor's right, title and interest in and to any awards, remunerations, reimbursements, settlements or compensation heretofore made or hereafter to be made by any Governmental Authority pertaining to the Land, Improvements, Fixtures or Personalty, including but not limited to those for any vacation of, or change of grade in, any streets affecting the Land or the Improvements and those for municipal utility districts or other utility costs incurred or deposits made in connection with the Land; and

(iv)     any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations.

As used in this Deed of Trust, the term "Mortgaged Property" shall be expressly defined as meaning all or, where the context permits or requires, any portion of the above and all or, where the context permits or requires, any interest therein.

Notice of Enforcement. A notice in substantially the form set forth in Section 64.056 of the Act sent by or on behalf of Beneficiary or Trustee to any lessee demanding payment by such lessee to Beneficiary of all unpaid accrued Rents and all unaccrued Rents as they accrue.

Obligations: Any and all of the covenants, conditions, warranties, representations and other obligations (other than to repay the Indebtedness) made or undertaken by Grantor or any other person or party to Beneficiary, Trustee or others as set forth in this Deed of Trust, the Loan Agreement, the Leases and all other documents now or hereafter executed by Grantor or any other person or party in connection with the loan evidenced by the Loan Agreement and in any deed, lease, or other form of conveyance or any other agreement pursuant to which Grantor is granted a possessory interest in the Land.

Personalty: All of the right, title and interest of Grantor in and to all the following property to the extent such property is or may be used in or related to the planning, development, financing or operation of the Mortgaged Property:

(i)     equipment and machinery,

**DEED OF TRUST, SECURITY AGREEMENT, AND ASSIGNMENT OF RENTS** – Page 3

(ii)    general intangibles, money, insurance proceeds, condemnation awards, accounts, trademarks and trade names,

(iii)    all refundable, returnable, or reimbursable fees, deposits or other funds or evidences of credit or indebtedness deposited by or on behalf of Grantor with any governmental agencies, boards, corporations, providers of utility services, public or private, including specifically, but without limitation, all refundable, returnable or reimbursable tap fees, utility deposits, commitment fees and development costs,

(iv)    any plans and specifications, permits, licenses, franchises, certificates and other rights and privileges obtained in connection with the Mortgaged Property, together with all rights, titles and interests of Grantor in, under or pursuant to any contracts or other agreements, such as engineers contracts, utility contracts, maintenance agreements and service contracts, which in any way relate to the use, occupancy, operation, maintenance, enjoyment or ownership of the Mortgaged Property, and

(v)    all other personal property (other than the Fixtures) as defined in and subject to the provisions of the Texas Business and Commerce Code (Article 9 - Secured Transactions) (the "Code"),

together with all accessions, replacements and substitutions thereto or therefor and the proceeds thereof.

Rent Demand:  The written notice from Beneficiary or Trustee to Grantor instructing Grantor to deliver to Beneficiary all accruing Rents and all Rents that have accrued but are unpaid.

Rents:  All of the "Rents" as such term is defined in Section 64.001 of the Act and all revenues, income, proceeds, profits, security and other types of deposits, and other benefits paid or payable by parties to the Leases other than Grantor for using, leasing, licensing, possessing, operating from, residing in, selling or otherwise enjoying the Mortgaged Property.

Security Documents:  This Deed of Trust, the Loan Agreement, and any and all other documents now or hereafter executed by Grantor or any other person or party to evidence or secure the payment of the Indebtedness or the performance and discharge of the Obligations.

## Article 2
## GRANT

2.1    Grant.  To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Grantor has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY, unto Trustee the Mortgaged Property, WITH POWER OF SALE, TO HAVE AND TO HOLD the Mortgaged Property unto Trustee and Trustee's successors and assigns, forever, and Grantor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property unto Trustee and Trustee's successors and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof; provided, however, that if Grantor shall pay (or cause to be paid) the Indebtedness as and when the same shall become due and payable and shall perform and discharge (or cause to be performed and discharged) the Obligations on or before the date same are to be performed and discharged, then the liens, security interests, estates and rights granted by the Security Documents shall terminate, otherwise same shall remain in full force and effect.  A certificate or other written statement executed on

behalf of Beneficiary confirming that the Indebtedness has not been fully discharged shall be sufficient evidence thereof for the purpose of reliance by third parties on such fact.

## Article 3
## REPRESENTATIONS AND WARRANTIES

Grantor hereby unconditionally represents and warrants to Beneficiary as follows:

3.1     <u>Title and Authority</u>.  Grantor is the lawful owner of good and indefeasible title to the Land and Improvements, and has good right and authority to grant, bargain, sell, transfer, assign and mortgage the Land and Improvements and to grant a security interest in the Personalty and Fixtures.  Grantor does not do business with respect to the Mortgaged Property under any trade name.

3.2     <u>Location of Personalty</u>.  Other than books and records, which may be maintained at 300 E. Main Street, Suite 1000, El Paso, Texas  79901, all tangible Personalty is located on the Land.

3.3     <u>No Homestead</u>.  No portion of the Mortgaged Property is being used as Grantor's business or residential homestead.

3.4     <u>Compliance with Covenants and Laws</u>.  The Mortgaged Property and the intended use thereof by Grantor comply with all applicable restrictive covenants, zoning ordinances and building codes, flood disaster laws, applicable health and environmental laws and regulations and all other Legal Requirements, statutes, ordinances, rules, regulations, orders, determinations and court decisions.  Grantor will endeavor to obtain all requisite zoning, utility, building, health and operating permits from the governmental authority or municipality having jurisdiction over the Mortgaged Property.

3.5     <u>Condition of Property</u>.  All streets, alleys and easements necessary to serve the Mortgaged Property for the use represented by Grantor have been or will be completed and serviceable and such streets have been or will be dedicated and accepted by applicable governmental entities, all in accordance with the terms of the Loan Agreement.  The Mortgaged Property is in good condition and repair with no material deferred maintenance and is free from damage caused by fire or other casualty. None of the Mortgaged Property is within a flood plain.  None of the Improvements on the Mortgaged Property create an encroachment over, across or upon any of the Mortgaged Property boundary lines, rights of way or easements and no building or other improvements on adjoining land create such an encroachment, except as disclosed to and approved by Beneficiary, which approval shall be evidenced by the execution of the Loan Agreement by Beneficiary.

3.6     <u>Organization</u>.  Grantor is a limited liability company, duly formed and validly existing under the laws of the state of its formation and is duly qualified to do business in the State of Texas.  Grantor has all requisite power and all governmental certificates of authority, licenses, permits, qualifications and other documentation to own, lease and operate its properties and to carry on its business as now conducted and as contemplated to be conducted.  The foregoing representation in this subsection shall also apply to any corporation, partnership, joint venture or limited partnership which is a general partner or joint venturer of Grantor.

3.7     <u>Enforceability</u>.  The Loan Agreement, this Deed of Trust and all other Security Documents constitute the legal, valid and binding obligations of Grantor enforceable in accordance with their terms. The execution and delivery of and performance under the Loan Agreement, this Deed of Trust, and all other Security Documents are within Grantor's powers and have been duly authorized by all requisite action and are not in contravention of the powers of Grantor's charter, bylaws, or other corporate papers if Grantor is

<u>**DEED OF TRUST, SECURITY AGREEMENT, AND ASSIGNMENT OF RENTS**</u> – Page 5
6616831

a corporation, or of Grantor's partnership or joint venture agreement if Grantor is a partnership or joint venture, or of Grantor's limited partnership agreement if Grantor is a limited partnership.

3.8     Not a Foreign Person.  Grantor is not a "foreign person" within the meaning of the Internal Revenue Code of 1986, as amended (hereinafter called the "Code"), Sections 1445 and 7701 (i.e., Grantor is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate, as those terms are defined in the Code and regulations promulgated thereunder).

3.9     Taxes and Other Payments.  Except for taxes being contested in good faith by appropriate proceedings, Grantor has filed all Federal, state, county, municipal and city income and other tax returns required to have been filed by them and have paid all taxes which have become due pursuant to such returns or pursuant to any assessments received by them, and Grantor does not know of any basis for any additional assessment in respect of any such taxes.  Grantor has paid in full all sums owing or claimed for labor, material, supplies, personal property (whether or not forming a Fixture hereunder) and services of every kind and character used, furnished or installed in or on the Mortgaged Property and no claim for same exists or will be permitted to be created.

Article 4
AFFIRMATIVE COVENANTS

Grantor hereby unconditionally covenants and agrees with Beneficiary as follows:

4.1     Payment and Performance.  Subject to any applicable cure periods set forth in the Security Documents, Grantor will pay the Indebtedness, as and when called for in the Security Documents on or before the due dates thereof, and will perform all of the Obligations, in full and on or before the dates same are to be performed.

4.2     Existence.  Grantor will preserve and keep in full force and effect its existence, rights, franchises and trade names.

4.3     Compliance with Legal Requirements.  Grantor will promptly and faithfully comply with, conform to, obey, or contest as permitted by applicable law, all present and future Legal Requirements in all material respects, whether or not same shall necessitate structural changes in, improvements to, or interfere with the use or enjoyment of, the Mortgaged Property.

4.4     Lien Status.  Grantor will protect the lien and security interest status of this Deed of Trust and the other Security Documents.  If any lien or security interest is asserted against the Mortgaged Property (other than liens being contested by Grantor and for which appropriate bonds as permitted and that comply with applicable law to prevent the enforcement of such lien or security instrument or other security acceptable to Beneficiary, are in place), Grantor will, and at its own cost and expense, (a) within 15 days of any such lien or security interest being asserted, pay the underlying claim in full, and (b) within five days from the date Grantor obtains notice of such lien or security interest, give Beneficiary notice of such lien or security interest.  Such notice shall specify who is asserting such lien or security interest and shall detail the origin and nature of the underlying claim giving rise to such asserted lien or security interest.

4.5     Payment of Impositions.  Grantor will duly pay and discharge, or cause to be paid and discharged, the Impositions not later than the due date thereof, or the day any fine, penalty, interest or cost may be added thereto or imposed, or the day any lien may be filed, for the nonpayment thereof (if such day is used to determine the due date of the respective item); provided, however, that Grantor may, to the extent and in the manner permitted by law (a) pay the Impositions in installments whether or not interest shall accrue on the unpaid balance of such Impositions if such installment payment would not create or permit

the filing of a lien (statutory, constitutional or contractual) against the Mortgaged Property and (b) contest the payment of any Impositions in good faith and by appropriate proceedings; provided, that (i) any such contests shall be prosecuted diligently and in a manner not prejudicial to the rights, liens and security interests of Beneficiary, (ii) appropriate accruals therefor have been established in accordance with sound accounting principles or for which appropriate bonds as permitted and that comply with applicable law to prevent the enforcement of such lien or security instrument or other security acceptable to Beneficiary are in place, (iii) no contest may be conducted and no payment may be delayed beyond the date on which the Mortgaged Property could be sold for nonpayment, and (iv) Beneficiary may pay over to the taxing authority entitled thereto any or all of the funds at any time when, in the opinion of Beneficiary's counsel, the entitlement of such authority to such funds is established. Upon request by Beneficiary, Grantor shall provide Beneficiary with receipts marked "paid" showing payment of Impositions when due.

4.6 <u>Repair and Maintenance</u>. Except for reasonable wear and tear, Grantor will keep the Mortgaged Property in good order, repair, operating condition and appearance, causing all necessary repairs, renewals, replacements, additions and improvements to be promptly made and will not allow any of the Mortgaged Property to be misused, abused or wasted or to deteriorate. Grantor will promptly replace all worn-out or obsolete fixtures or personal property covered by this Deed of Trust with fixtures or personal property comparable to the replaced fixtures or personal property when new and will repaint the Mortgaged Property when needed. Grantor will make all renovations, modifications and alterations to the Mortgaged Property in compliance with all Legal Requirements. Notwithstanding any of the foregoing, Grantor will not, without the prior written consent of Beneficiary (such consent not to be unreasonably withheld): (i) remove from the Mortgaged Property any fixtures or personal property covered by this Deed of Trust except such as is replaced by Grantor by an article of equal suitability and value, owned by Grantor, free and clear of any lien or security interest (except that created by this Deed of Trust); (ii) make any structural alteration to the Mortgaged Property or any other alterations thereto which impair the value thereof; or, (iii) make any alteration to the Mortgaged Property involving an estimated expenditure exceeding $100,000.00 except pursuant to plans and specifications or change orders approved in writing by Beneficiary or permitted changes or tenant finish within guidelines set forth in the Loan Agreement. Upon request of Beneficiary, Grantor will promptly deliver to Beneficiary an inventory describing and showing the make, model, serial number and location of all Fixtures and Personalty used in the management, maintenance and operation of the Mortgaged Property with a certification by Grantor that said inventory is a true and complete schedule of all such Fixtures and Personalty used in the management, maintenance and operation of the Mortgaged Property, that such items specified in the inventory constitute all of the fixtures and personal property required in the management, maintenance and operation of the Mortgaged Property and that all such items are owned by Grantor free and clear of any lien or security interest (except that created by this Deed of Trust).

4.7 <u>Insurance and Casualty</u>. Grantor will obtain and maintain insurance upon and relating to the Mortgaged Property insuring against personal injury and death, loss by fire and such other hazards, casualties and contingencies as are normally and usually covered by extended coverage policies in effect where the Land is located and such other reasonable risks as may be specified by Beneficiary, from time to time, all in such amounts and with such insurers of recognized responsibility as are reasonably acceptable to Beneficiary. Beneficiary shall be named as lender loss payee and as an additional insured. Each insurance policy issued in connection therewith shall provide by way of endorsements, riders or otherwise that (a) proceeds will be payable to Beneficiary as lender loss payee; (b) the coverage of Beneficiary shall not be terminated, reduced or affected in any manner regardless of any breach or violation by Grantor of any warranties, declarations or conditions in such policy; (c) no such insurance policy shall be canceled, altered or reissued to effect a decrease in coverage for any reason and to any extent whatsoever unless such insurer shall have first given Beneficiary 10 days prior written notice thereof; and (d) Beneficiary may, but shall not be obliged to, make premium payments to (i) prevent any cancellation or alteration of the policy, (ii) obtain any endorsement, reissuance or reinstatement of the policy, or (iii) obtain any coverage on the

Mortgaged Property required hereunder not previously obtained by Grantor. Beneficiary shall be furnished with a certificate of insurance coincident with the execution of this Deed of Trust and a certificate evidencing each renewal policy not more than 10 days after the expiration of the initial or each preceding renewal policy together with receipts or other evidence that the premiums thereon have been paid. In the event of foreclosure of this Deed of Trust, or other transfer of title to the Mortgaged Property in extinguishment in whole or in part of the Indebtedness, all right, title and interest of Grantor in and to such policies then in force concerning the Mortgaged Property and all proceeds payable thereunder shall thereupon vest in the purchaser at such foreclosure or Beneficiary or other transferee in the event of such other transfer of title. In the event any of the Mortgaged Property covered by such insurance is destroyed or damaged by fire, explosion, windstorm, hail or by any other casualty against which insurance shall have been required hereunder, (i) Beneficiary may, but shall not be obligated to, make proof of loss if not made promptly by Grantor, and (ii) each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Beneficiary instead of to Grantor, except to the extent payment is to be made to Grantor as set forth in the Loan Agreement. All insurance proceeds, payments and other amounts paid or received by Beneficiary shall first be used to restore the Mortgaged Property to its pre-casualty condition, provided that if the aggregate insurance proceeds are insufficient to restore the Mortgaged Property back to such condition, Grantor may elect to supplement the insurance proceeds to repair the Mortgaged Property, provided, however, that if Grantor does not notify Beneficiary in writing within 30 days of such casualty of its intent to provide such supplemental funding, Beneficiary may use the insurance proceeds it has received to satisfy the then outstanding Indebtedness. If an Event of Default has occurred and is continuing (subject to any applicable cure periods), Beneficiary may apply the insurance proceeds first, to reimburse Beneficiary or Trustee for all costs and expenses, including, without limitation, reasonable attorneys' fees, incurred in connection with the collection of such proceeds and, second, the remainder of said proceeds shall be applied, at the sole discretion of Beneficiary, in payment of the Indebtedness, either in whole or in part, in the order determined by Beneficiary in its sole discretion. Notwithstanding anything herein to the contrary, Grantor may adjust and settle losses aggregating not in excess of $250,000.00 as set forth in the Loan Agreement, otherwise no insurance claims or settlement in excess of $250,000.00 shall be made without the prior written approval of Beneficiary. In any event the unpaid portion of the Indebtedness shall remain in full force and effect and Grantor shall not be excused in the payment thereof. If any act or occurrence of any kind or nature (including any casualty on which insurance was not obtained or obtainable) shall result in damage to or loss or destruction of the Mortgaged Property in excess of $100,000.00, Grantor shall give immediate written notice thereof to Beneficiary.

4.8    Condemnation. Immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Mortgaged Property or any portion thereof, or any other proceedings arising out of injury or damage to the Mortgaged Property, or any portion thereof, Grantor will notify Beneficiary of the pendency of such proceedings. Beneficiary may participate in any such proceedings, and Grantor shall from time to time deliver to Beneficiary all instruments reasonably requested by it to permit such participation. Grantor shall, at its expense, diligently prosecute any such proceedings and shall consult with Beneficiary, its attorneys and experts and cooperate with them in the carrying on or defense of any such proceedings. All proceeds of condemnation awards or proceeds of sale in lieu of condemnation with respect to the Mortgaged Property and all judgments, decrees and awards for injury or damage to the Mortgaged Property (collectively, "Awards") shall be paid to Beneficiary. Any Awards may be used by Grantor for further improvement of the Property or, following consent by Beneficiary, which may be withheld in Beneficiary's sole discretion, acquisition of adjacent Land, if Beneficiary determines, in its reasonable discretion, that the amount of any such Awards together with cash deposited by Grantor with Beneficiary shall be sufficient to improve the Mortgaged Property or acquire adjacent land, if applicable, in a manner such that (i) utilization by Beneficiary of the Mortgaged Property is not materially changed; (ii) the fair-market value of the Mortgaged Property is no less than the fair-market value of the Mortgaged Property prior to institution of the proceeding for condemnation; and (iii) the ability of Beneficiary to recover all Indebtedness through foreclosure of the Mortgaged Property is not prejudiced;

otherwise, Beneficiary may, at its option, apply any Awards, first, to reimburse Beneficiary or Trustee for all costs and expenses, including, without limitation, reasonable attorneys' fees, incurred in connection with collection of such proceeds and, second, the remainder of said proceeds shall be applied, at the sole discretion of Beneficiary, to the payment of the Indebtedness in the order determined by Beneficiary in its sole discretion. In any event the unpaid portion of the Indebtedness shall remain in full force and effect and Grantor shall not be excused in the payment thereof. In the event any of the foregoing proceeds are applied to the repair, restoration or replacement of the Mortgaged Property, Grantor shall promptly commence and complete such repair, restoration or replacement of the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage or taking in accordance with plans and specifications submitted to and approved by Beneficiary. Grantor hereby assigns and transfers all such proceeds, judgments, decrees and awards to Beneficiary and agrees to execute such further assignments of all such proceeds, judgments, decrees and awards as Beneficiary may request. Beneficiary is hereby authorized, in the name of Grantor, to execute and deliver valid acquittances for and to appeal from, any such judgment, decree or award. Beneficiary shall not be, in any event or circumstances, liable or responsible for failure to collect, or exercise diligence in the collection of, any such proceeds, judgments, decrees or awards.

4.9    <u>Protection and Defense of Lien</u>. Grantor shall not permit the Mortgaged Property or any part thereof to be taken by execution or other process of law. If the validity or priority of this Deed of Trust or of any rights, titles, liens or security interests created or evidenced hereby with respect to the Mortgaged Property or any part thereof shall be endangered or questioned or shall be attacked directly or indirectly or if any legal proceedings are instituted against Grantor with respect thereto, Grantor will give prompt written notice thereof to Beneficiary and at Grantor's own cost and expense will diligently endeavor to cure any defect that may be developed or claimed and will take all necessary and proper steps for the defense of such legal proceedings, including, without limitation, the employment of counsel, the prosecution or defense of litigation and the release or discharge of all adverse claims, and Trustee and Beneficiary, or either of them (whether or not named as parties to legal proceedings with respect thereto) are hereby authorized and empowered to take such additional steps as in their judgment and discretion may be necessary or proper for the defense of any such legal proceedings or the protection of the validity or priority of this Deed of Trust and the rights, titles, liens and security interests created or evidenced hereby, including, without limitation, the employment of counsel, the prosecution or defense of litigation, the compromise or discharge of any adverse claims made with respect to the Mortgaged Property, the purchase of any tax title and the removal of prior liens or security interests (including, without limitation, the payment of debts as they mature or the payment in full of matured or unmatured debts, which are secured by these prior liens or security interests), and all expenses so incurred of every kind and character shall be subject to and covered by the provisions of <u>Sections 11.1</u> and <u>11.6</u> hereof.

4.10    <u>Liability Insurance</u>. Grantor shall maintain Comprehensive General Liability insurance against claims for bodily injury or death and property damage occurring in or upon or resulting from the Mortgaged Property, in standard form and with such insurance company or companies as may be reasonably acceptable to Beneficiary and as may be required by the Loan Agreement, such insurance to afford immediate protection, in amounts required by Beneficiary from time to time with such deductibles as may be acceptable to Beneficiary from time to time. Such Comprehensive General Liability insurance shall include Blanket Contractual Liability coverage which insures contractual liability under the indemnification of Beneficiary and the Trustee by Grantor set forth in this Deed of Trust (but such coverage or the amount thereof shall in no way limit such indemnification). Grantor shall maintain with respect to each policy or agreement evidencing such Comprehensive General Liability insurance such endorsements as may be reasonably required by Beneficiary and shall at all times deliver and maintain with Beneficiary a certificate with respect to such insurance in form satisfactory to Beneficiary. Not more than 10 days after the expiration date of each policy of insurance required of Grantor pursuant to this subsection, Grantor shall deliver to Beneficiary a certificate of insurance evidencing such renewal. In the event of a foreclosure of

this Deed of Trust, the purchaser of the Mortgaged Property shall succeed to all the rights of Grantor, including, without limitation, any right to unearned premiums, in and to all policies of insurance assigned pursuant to the provisions of this subsection, and Grantor hereby authorizes Beneficiary to notify any or all insurance carriers of this assignment.

4.11     Inspection.  Grantor will permit Trustee and Beneficiary, and their agents, representatives and employees, upon reasonable advance notice to inspect the Mortgaged Property during normal business hours.

4.12     Harmless.  GRANTOR WILL DEFEND, AT ITS OWN COST AND EXPENSE, AND HOLD BENEFICIARY HARMLESS FROM, ANY ACTION, PROCEEDING OR CLAIM AFFECTING THE MORTGAGED PROPERTY OR THE SECURITY DOCUMENTS ACCRUING FROM OR AFTER THE DATE HEREOF AND ALL COSTS AND EXPENSES INCURRED BY BENEFICIARY IN PROTECTING ITS INTERESTS HEREUNDER IN SUCH AN EVENT (INCLUDING ALL COURT COSTS AND REASONABLE ATTORNEYS' FEES) SHALL BE BORNE BY GRANTOR. THE ABOVE NOTWITHSTANDING GRANTOR SHALL HAVE NO OBLIGATION TO INDEMNIFY BENEFICIARY FROM CLAIMS RESULTING FROM THE GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT OF BENEFICIARY.

4.13     Books and Records.  Grantor will keep accurate books and records in accordance with sound accounting principles in which full, true and correct entries shall be promptly made as to all operations on the Mortgaged Property and will permit all such books and records (including, without limitation, all contracts, statements, invoices, bills and claims for labor, materials and services supplied for the construction and operation of the improvements forming a part of the Mortgaged Property) to be inspected and copied by Beneficiary and its duly accredited representatives at all times during reasonable business hours.

4.15     Maintenance of Rights-of-Way, Easements, and Licenses.  Grantor will maintain, preserve and renew all rights-of-way, easements, grants, privileges, licenses and franchises reasonably necessary for the use of the Mortgaged Property from time to time and will not, without the prior consent of Beneficiary (which consent shall not be unreasonably withheld), initiate, join in or consent to any private restrictive covenant or other public or private restriction as to the use of the Mortgaged Property.  Grantor shall, however, comply with or contest as permitted by applicable law all restrictive covenants which may at any time affect the Mortgaged Property, zoning ordinances and other public or private restrictions as to the use of the Mortgaged Property.

4.17     Loan Agreement.  Grantor will punctually perform and discharge each and every obligation and undertaking of Grantor under the Loan Agreement, if any, as from time to time amended or restated, between Grantor and Beneficiary and will not permit a default to occur thereunder.  In the event there is any inconsistency between the provisions of this Deed of Trust and the Loan Agreement, the provisions of the Loan Agreement shall control such inconsistency.

## Article 5
## NEGATIVE COVENANTS

Grantor hereby covenants and agrees with Beneficiary that, until the entire Indebtedness shall have been paid in full and all of the Obligations shall have been fully performed and discharged:

5.1     No Other Liens.  Grantor will not, without the prior written consent of Beneficiary, create, place or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain, any deed of trust, mortgage, voluntary or involuntary lien, whether statutory, constitutional

or contractual (except for the lien for ad valorem taxes on the Mortgaged Property which are not delinquent), security interest, encumbrance or charge, or conditional sale or other title retention document, against or covering the Mortgaged Property, or any part thereof, other than liens being contested by Grantor and for which appropriate bonds as permitted and that comply with applicable law to prevent the enforcement of such lien or security instrument or other security acceptable to Beneficiary are in place, regardless of whether the same are expressly or otherwise subordinate to the lien or security interest created in this Deed of Trust, and should any of the foregoing become attached hereafter in any manner to any part of the Mortgaged Property without the prior written consent of Beneficiary, Grantor will cause the same to be promptly discharged and released or bonded around.  Without hereby implying the consent of Beneficiary to the existence or creation of the same, unless Borrower is contesting such liens and has caused appropriate bonds or other security acceptable to Beneficiary to be in place, Grantor shall not permit the holder of any such deed of trust, mortgage, lien, security interest, encumbrance or other charge on the Mortgaged Property to declare a default thereunder or institute foreclosure or other proceedings for the enforcement of its remedies thereunder.  Grantor will own all parts of the Mortgaged Property and will not acquire any fixtures, equipment or other property forming a part of the Mortgaged Property pursuant to a lease, license or similar agreement, without the prior written consent of Beneficiary.

5.2     Use Violations.  Grantor will not knowingly use, maintain, operate or occupy, or allow the use, maintenance, operation or occupancy of, the Mortgaged Property in any manner which (a) violates any Legal Requirement, (b) may be dangerous unless safeguarded as required by law, (c) constitutes a public or private nuisance, or (d) makes void, voidable or cancellable, or increases the premium of, any insurance then in force with respect thereto.

5.3     Alterations.  Grantor will not commit or permit any waste of the Mortgaged Property and will not without the prior written consent of Beneficiary make or permit to be made any alterations or additions to the Mortgaged Property of a material nature except for those permitted alterations set forth in the Loan Agreement.

5.4     Replacement of Fixtures and Personalty.  Grantor will not, without the prior written consent of Beneficiary, permit any of the Fixtures or Personalty to be removed at any time from the Land or Improvements unless the removed item is removed temporarily for maintenance and repair or, if removed permanently, is replaced by an article of equal suitability and substantially equal value, owned by Grantor, free and clear of any lien or security interest except purchase money Security interests in Personalty or other liens as may be first approved in writing by Beneficiary.

5.5     Transfer of Mortgaged Property.  Without the prior written consent of Beneficiary, Grantor shall not (i) sell, lease, exchange, assign, transfer, convey or otherwise dispose of all or any part of the Mortgaged Property or any interest therein or attempt to do any of the same (except for the disposition of worn-out or obsolete personal property or fixtures under the circumstances described in Section 4.6 hereof), including, without limitation, transfers by option contract, contract of sale or contract for deed, transactions in the nature of assumption, transactions in the nature of a taking subject to, transactions using a wrap-around technique, or (ii) permit legal or equitable title to the Mortgaged Property, or any interest therein, to vest in any other party, in any manner whatsoever, by operation of law or otherwise unless the Indebtedness is paid in full at the time of such disposition; it being understood that the consent of Beneficiary required hereunder may be refused by Beneficiary in its sole discretion or may be predicated upon any terms, conditions and covenants deemed advisable or necessary in the sole discretion of Beneficiary, including, without limitation, the right to change the interest rate, date of maturity or payments of principal and/or interest on the loan memorialized in the Loan Agreement, to require payment of any amount as additional consideration as a transfer fee or otherwise and to require assumption of the loan memorialized in the Loan Agreement and this Deed of Trust.

5.6     Change of Name, Identity, or Structure.  Grantor will not dissolve, liquidate, merge, or consolidate or permit a Change in Ownership (as defined in the Loan Agreement) to occur, voluntarily or involuntarily, including, without limitation, any sale or transfer of a partnership or other ownership interest that would cause a Change in Ownership, whether same be a profits interest, a capital interest or a combination of same, to any third party or an admission of a new general partner, or any such attempted sale, transfer, admission or alteration which would cause a Change in Ownership to occur, without the prior written consent of Beneficiary.  Grantor will not change Grantor's name, identity (including its trade name or names) or, if not an individual, Grantor's corporate, partnership or other structure without notifying Beneficiary of such change in writing at least 30 days prior to the effective date of such change.  Grantor will execute and deliver to Beneficiary, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Beneficiary to establish or maintain the validity, perfection and priority of the security interest granted herein.  At the request of Beneficiary, Grantor shall execute a certificate in form satisfactory to Beneficiary listing the trade names under which Grantor intends to operate the Mortgaged Property and representing and warranting that Grantor does business under no other trade name with respect to the Mortgaged Property.

**Article 6**
**EVENTS OF DEFAULT**

The term "Event of Default," as used herein or in the Security Documents, shall mean the occurrence and continuation, at any time and from time to time, of any one or more of the following:

6.1     Change in Control.  A Change in Ownership (as defined in the Loan Agreement) occurs.

6.2     Other Liens.  If, without the prior written consent of Beneficiary, Grantor (i) creates or places, permits to be created or placed, attempts to create or place, through any act or failure to act, acquiesces in the creation or placing of, or allows to remain, any deed of trust, mortgage, voluntary or involuntary lien, whether statutory, constitutional or contractual (except for the lien for ad valorem taxes on the Mortgaged Property which are not delinquent), security interest, encumbrance or charge, or conditional sale or other title retention document, against or covering the Mortgaged Property, or any part thereof, other than liens being contested by Grantor and for which appropriate bonds as permitted and that comply with applicable law to prevent the enforcement of such lien or security instrument or other security acceptable to Beneficiary are in place, regardless of whether the same are expressly or otherwise subordinate to the lien or security interest created in this Deed of Trust, (ii) acquires any fixtures, equipment or other property forming a part of the Mortgaged Property pursuant to a lease, license or similar agreement, or (iii) grants any easement (other than easements which do not materially or adversely affect the use of the Mortgaged Property) or dedication, seeks or obtains a zoning reclassification or variance, files any plat, condominium declaration or restriction or enters into any lease which affects all or any portion of the Mortgaged Property.

6.3     Disposition of Mortgaged Property, Leases, or Beneficial Interest in Grantor.  If Grantor sells, leases, exchanges, assigns, conveys, transfers or otherwise disposes of (herein collectively referred to as "Disposition") all or any portion of the Mortgaged Property (or any interest therein), or enters into a Disposition of all or any part of the beneficial ownership interest in Grantor (if Grantor is a corporation, partnership, joint venture, trust or other type of business association of legal entity) that causes a Change in Ownership.

6.4     Destruction of Improvements.  If the Mortgaged Property is demolished, destroyed or substantially damaged so that (in Beneficiary's reasonable judgment) it cannot be restored or rebuilt with available funds including cash deposited by Grantor with Beneficiary and funds received under insurance

policies to the condition existing immediately prior to such demolition, destruction or damage within a reasonable period of time.

6.5 <u>Foreclosure of Other Liens</u>. If the holder of any lien or security interest on the Mortgaged Property (without hereby implying Beneficiary's consent to the existence, placing, creating or permitting of any such lien or security interest) institutes foreclosure or other proceedings for the enforcement of its remedies thereunder.

6.6 <u>Loan Agreement</u>. The occurrence of any Event of Default (as defined in the Loan Agreement).

6.7 <u>Leases</u>. The occurrence of any default beyond any applicable grace or cure period in any of the Leases.

6.8 <u>Abandonment</u>. If Grantor abandons all or a portion of the Mortgaged Property or suspends or discontinues its business operations.

**Article 7**
**DEFAULT AND FORECLOSURE**

7.1 <u>Remedies</u>. Subject to applicable grace or cure periods, if an Event of Default shall occur and be continuing, Beneficiary may, at Beneficiary's election and by or through Trustee or otherwise, exercise any or all of the following rights, remedies and recourses:

(a) <u>Acceleration</u>. Declare the Principal Balance (defined hereby as meaning the then unpaid principal balance under the Loan Agreement), the accrued but unpaid interest and any other accrued but unpaid portion of the Indebtedness to be immediately due and payable, without further notice, presentment, protest, demand or action of any nature whatsoever (each of which hereby is expressly waived by Grantor), whereupon the same shall become immediately due and payable.

(b) <u>Entry on Mortgaged Property</u>. Enter upon the Mortgaged Property and take exclusive possession thereof and of all books, records and accounts relating thereto. If Grantor remains in possession of all or any part of the Mortgaged Property after an Event of Default and without Beneficiary's prior written consent thereto, Beneficiary may invoke any and all legal remedies to dispossess Grantor, including specifically one or more actions for forcible entry and detainer, trespass to try title and writ of restitution. Nothing contained in the foregoing sentence shall, however, be construed to impose any greater obligation or any prerequisites to acquiring possession of the Mortgaged Property after an Event of Default than would have existed in the absence of such sentence.

(c) <u>Operation of Mortgaged Property</u>. Hold, lease, manage, operate or otherwise use or permit the use of the Mortgaged Property, either by itself or by other persons, firms or entities, in such manner, for such time and upon such other terms as Beneficiary may deem to be prudent and reasonable under the circumstances (making such repairs, alterations, additions and improvements thereto and taking any and all other action with reference thereto, from time to time, as Beneficiary shall deem necessary or desirable), and apply all Rents and other amounts collected by Trustee in connection therewith in accordance with the provisions of Section 7.8 hereinbelow.

(d) <u>Foreclosure and Sale</u>. Exercise the POWER OF SALE over the Mortgaged Property by selling or offering for sale the Mortgaged Property (i) in such portions, order and parcels as Beneficiary may determine, with or without having first taken possession of same, to the highest bidder for cash at public auction. Such sale shall be made at the County Courthouse of any County wherein the Land

(or any portion thereof to be sold) is situated, in the area in or at such courthouse designated for real property foreclosure sales in accordance with applicable law (or in the absence of any such designation, in the area set forth in the notice of sale hereinafter described), on the first Tuesday of any month between the hours of 10:00 A.M. and 4:00 P.M. (commencing no earlier than such time as may be designated in the hereinafter described notice of sale), after giving legally adequate notice of the time, place and terms of sale and that portion of the Mortgaged Property to be sold, by (1) posting or causing to be posted written or printed notice thereof at least 21 consecutive days prior to the date of said sale at the County Courthouse door in each County in which the Land is situated, (2) at least 21 days preceding the date of such sale, filing such notice in the office of the County Clerk of the County in which the Land (or any portion thereof to be sold) is located and (3) at least 21 days preceding the date of such sale serving written notice of the proposed sale by certified mail on each person or entity obligated to pay the Indebtedness according to the records of the Beneficiary; or (ii) by accomplishing all or any of the aforesaid in such manner as permitted or required by Chapter 51, Section 51.002 of the Texas Property Code, as then amended, relating to the sale of real estate and/or by Chapter 9 of the Texas Business and Commerce Code relating to the sale of collateral after default by a debtor (as said article and chapter now exist or may be hereafter amended or succeeded), or by any other present or subsequent articles or enactments relating to same. Service of the notice called for in this Deed of Trust shall be completed upon deposit of the notice enclosed in a post-paid wrapper properly addressed to such person or entity obligated to pay the Indebtedness at the most recent address as shown by the records of the Beneficiary in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was so completed shall be prima facie evidence of the fact of service. At any such sale:

(i) whether made under the power herein contained, the aforesaid Texas Property Code, the Texas Business and Commerce Code, any other Legal Requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, it shall not be necessary for Trustee to have physically present, or to have constructive possession of, the Mortgaged Property (Grantor hereby covenanting and agreeing to deliver to Trustee any portion of the Mortgaged Property not actually or constructively possessed by Trustee immediately upon demand by Trustee), and the title to and right of possession of any such property shall pass to the purchaser thereof as completely as if the same had been actually present and delivered to purchaser at such sale;

(ii) each instrument of conveyance executed by Trustee shall contain a general warranty of title, binding upon Grantor;

(iii) each and every recital contained in any instrument of conveyance made by Trustee shall conclusively establish the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Indebtedness, advertisement and conduct of such sale in the manner provided herein and otherwise by law and appointment of any successor or substitute Trustee hereunder;

(iv) any and all prerequisites to the validity thereof shall be conclusively presumed to have been performed;

(v) the receipt of Trustee or of such other party or officer making the sale shall be a sufficient discharge to the purchaser or purchasers for his or their purchase money and no such purchaser or purchasers, or his or their assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication thereof;

(vi) to the fullest extent permitted by law, Grantor shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold and such sale shall be a perpetual bar both at law and in equity against Grantor,

and against any and all other persons claiming or to claim the property sold or any part thereof, by, through or under Grantor; and

(vii)    to the extent and under such circumstances as are permitted by law, Beneficiary may be a purchaser at any such sale.

(e)    <u>Trustee or Receiver</u>.  Prior to, upon or at any time after, commencement of foreclosure of the lien and security interest provided for herein or any legal proceedings hereunder, make application to a court of competent jurisdiction as a matter of strict right and without notice to Grantor or regard to the adequacy of the Mortgaged Property for the repayment of the Indebtedness, for appointment of a receiver of the Mortgaged Property and Grantor does hereby irrevocably consent to such appointment. Any such receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property upon such terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of Section 7.8 hereinbelow.

(f)    <u>Rights Relating to Rents</u>.  Grantor has, pursuant to <u>Article 9</u> of this Deed of Trust, assigned as collateral to Beneficiary all Rents under each of the Leases, if any, covering all or any portion of the Mortgaged Property. Beneficiary, or Trustee on Beneficiary's behalf, may at any time following the occurrence and during the continuance of an Event of Default, and without notice, either in person, by agent, or by receiver to be appointed by a court, enter and take possession of the Mortgaged Property or any part thereof, and in its own name, sue for or otherwise collect the Rents. Grantor hereby agrees that Beneficiary shall upon the occurrence and continuance of an Event of Default, deliver a Rent Demand to Grantor or deliver a Notice of Enforcement to the lessees.  As described in Section 64.060 of the Act, Grantor shall, within ten (10) days after its receipt of a Rent Demand, deliver to Beneficiary such Rents as are described in the Rent Demand.  All Rents collected by Beneficiary, or Trustee acting on Beneficiary's behalf, shall be applied as provided for in <u>Article 7</u> of this Deed of Trust; provided, however, that if the costs, expenses, and reasonable attorneys' fees incurred in connection therewith shall exceed the amount of Rents so collected, the excess shall be added to the Indebtedness, shall bear interest at the interest rate in effect under the Loan Agreement while an Event of Default (as defined in the Loan Agreement) has occurred and is continuing (the "Default Rate"), and shall be immediately due and payable. The entering upon and taking possession of the Mortgaged Property, the collection of Rents, and the application thereof as aforesaid shall not cure or waive any Event of Default or notice of Event of Default, if any, hereunder nor invalidate any act done pursuant to such notice, except to the extent any such Event of Default is fully cured.  Failure or discontinuance by Beneficiary, or Trustee on Beneficiary's behalf, at any time or from time to time, to collect said Rents shall not in any manner impair the subsequent enforcement by Beneficiary, or Trustee on Beneficiary's behalf, of the right, power and authority herein conferred upon it. Nothing contained herein, nor the exercise of any right, power, or authority herein granted to Beneficiary, or Trustee on Beneficiary's behalf, shall be, or shall be construed to be, an affirmation by it of any tenancy, lease, or option, nor an assumption of liability under, nor the subordination of, the lien or charge of this Deed of Trust, to any such tenancy, lease, or option, nor an election of judicial relief, if any such relief is requested or obtained as to Leases or Rents, with respect to the Mortgaged Property or any collateral given by Grantor to Beneficiary.  In addition, Beneficiary may from time to time elect, and notice hereby is given to each lessee under each Lease, to subordinate the lien of this Deed of Trust to any Lease by unilaterally executing and recording an instrument of subordination, and upon such election the lien of this Deed of Trust shall be subordinate to the Lease identified in such instrument of subordination; provided, however, in each instance such subordination will not affect or be applicable to, and expressly excludes any lien, charge, encumbrance, security interest, claim, easement, restriction, option, covenant and other rights, titles, interests or estates of any nature whatsoever with respect to all or any portion of the Mortgaged Property to the extent that the same may have arisen or intervened during the period between the recordation of this Deed of Trust and the execution of the Lease identified in such instrument of subordination.

<u>**DEED OF TRUST, SECURITY AGREEMENT, AND ASSIGNMENT OF RENTS**</u> – Page 15
6616831

(g)     Other.  Exercise any and all other rights, remedies and recourses granted under the Security Documents (including, without limitation, those set forth in Sections 10.5 and 11.2 hereinbelow) or now or hereafter existing in equity, at law, by virtue of statute or otherwise.

7.2     Separate Sales.  The Mortgaged Property may be sold in one or more parcels and in such manner and order as Trustee, in his sole discretion, may elect, it being expressly understood and agreed that the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales.

7.3     Remedies Cumulative, Concurrent and Nonexclusive.  Beneficiary shall have all rights, remedies and recourses granted in the Security Documents and available at law or equity (including specifically those granted by the Uniform Commercial Code in effect and applicable to the Mortgaged Property, the Leases or any portion thereof) and same (a) shall be cumulative and concurrent, (b) may be pursued separately, successively or concurrently against Grantor or others obligated under the Note, or against the Mortgaged Property, or against any one or more of them, at the sole discretion of Beneficiary, (c) may be exercised as often as occasion therefor shall arise, it being agreed by Grantor that the exercise or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse and (d) are intended to be, and shall be, nonexclusive.

7.4     No Conditions Precedent to Exercise of Remedies.  Neither Grantor nor any other person hereafter obligated for payment of all or any part of the Indebtedness or fulfillment of all or any of the Obligations shall be relieved of such obligation by reason of (a) the failure of Trustee to comply with any request of Grantor or of any other person so obligated to foreclose the lien of this Deed of Trust or to enforce any provisions of the other Security Documents, (b) the release, regardless of consideration, of the Mortgaged Property or the addition of any other property to the Mortgaged Property, or (c) any agreement or stipulation between any subsequent owner of the Mortgaged Property and Beneficiary extending, renewing, rearranging or in any other way modifying the terms of the Security Documents without first having obtained the consent of, given notice to or paid any consideration to Grantor or such other person, and in such event Grantor and all such other persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement unless expressly released and discharged in writing by Beneficiary, or (d) by any other act or occurrence save and except the complete payment of the Indebtedness and the complete fulfillment of all of the Obligations.

7.5     Release of and Resort to Collateral.  Beneficiary may release, regardless of consideration, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Security Documents or their stature as a first and prior lien and security interest in and to the Mortgaged Property.  For payment of the Indebtedness, Beneficiary may resort to any other security therefor held by Trustee in such order and manner as Beneficiary may elect.  Beneficiary may, without the necessity of the joinder of Grantor or any third party, and without in any way impairing, affecting or subordinating the lien or security interests created in or evidenced by the Security Documents covering the remainder of the Mortgaged Property, subordinate the lien of this Deed of Trust and the other Security Documents to any Lease or other interest of any third party in and to the Mortgaged Property (at any time prior to full payment of the Indebtedness and the discharge of the performance of the Obligations).

7.6     Waiver of Redemption, Notice, and Marshalling of Assets.  To the fullest extent permitted by law, Grantor hereby irrevocably and unconditionally waives and releases (a) all benefit that might accrue to Grantor by virtue of any present or future law or judicial decision exempting the Mortgaged Property from attachment, levy or sale on execution or providing for stay of execution, exemption from civil process, redemption or extension of time for payment, (b) except as expressly provided in the Security Documents all notices of any Event of Default, notices of acceleration of maturity or intent to accelerate maturity, or

of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Security Documents, and (c) any right to a marshalling of assets or a sale in inverse order of alienation.

7.7     Discontinuance of Proceedings.  In case Beneficiary shall have proceeded to invoke any right, remedy or recourse permitted under the Security Documents and shall thereafter elect to discontinue or abandon same for any reason, Beneficiary shall have the unqualified right so to do and, in such an event, Grantor and Beneficiary shall be restored to their former positions with respect to the Indebtedness, the Obligations, the Security Documents, the Mortgaged Property and otherwise, and the rights, remedies, recourses and powers of Beneficiary shall continue as if same had never been invoked.

7.8     Application of Proceeds.  The proceeds of any sale of, and the Rents and other amounts generated by the holding, leasing, operation or other use of, the Mortgaged Property or the Leases shall be applied by Beneficiary or Trustee (or the receiver, if one is appointed) to the extent that funds are so available therefrom to the following in the order of priority that Beneficiary, in its sole discretion, may determine:

(a)     to the payment of the reasonable costs and expenses of taking  possession of the Mortgaged Property and of holding, using, leasing, repairing, improving and selling the same, including, without limitation, (i) reasonable trustees' and receivers' fees, (ii) court costs, (iii) reasonable attorneys' and accountants' fees, (iv) costs of advertisement, and (v) the payment of any and all Impositions, liens, security interests or other rights, titles or interests equal or superior to the lien and security interest of this Deed of Trust (except those to which the Mortgaged Property has been sold subject to and without in any way implying Beneficiary's prior consent to the creation thereof);

(b)     to the payment of all amounts, other than the Principal Balance and accrued but unpaid interest, which may be due to Beneficiary under the Security Documents, together with interest thereon as provided therein;

(c)     to the payment of all accrued but unpaid interest due under the Loan Agreement;

(d)     to the payment of the Principal Balance;

(e)     to the extent funds are available therefor out of the sale proceeds or the Rents and, to the extent known by Beneficiary and permitted by law, to the payment of any indebtedness or obligation secured by a subordinate deed of trust on or security interest in the Mortgaged Property; and

(f)     to Grantor.

7.9     Occupancy After Foreclosure.  The purchaser at any foreclosure sale pursuant to Section 7.1(d) shall become the legal owner of the Mortgaged Property.  All occupants (except those which have previously executed a prior written agreement with purchaser or a subordination and non-disturbance agreement with the Beneficiary) of the Mortgaged Property or any part thereof shall become tenants at sufferance of the purchaser at the foreclosure sale and shall deliver possession thereof immediately to the purchaser upon demand.  It shall not be necessary for the purchaser at said sale to bring any action for possession of the Mortgaged Property other than the statutory action of forcible entry and detainer in any Justice Court having jurisdiction over the Mortgaged Property.

**Article 8**
**SECURITY AGREEMENT**

8.1     Security Interest.  This Deed of Trust (a) shall be construed as a deed of trust on real property, and (b) shall also constitute and serve as a "Security Agreement" on personal property within the meaning of, and shall constitute until the grant of this Deed of Trust shall terminate as provided in Article 2 hereinabove, a first and prior security interest under Chapter 9 of the Code with respect to the Personalty and Fixtures.  To this end, Grantor has GRANTED, BARGAINED, CONVEYED, ASSIGNED, TRANSFERRED and SET OVER, and by these presents does GRANT, BARGAIN, CONVEY, ASSIGN, TRANSFER and SET OVER unto Trustee and Beneficiary a first and prior security interest and all of Grantor's right, title and interest in, to, under and with respect to the Personalty and Fixtures to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

8.2     Financing Statements.  Grantor hereby agrees with Beneficiary to execute and deliver to Beneficiary, in form and substance satisfactory to Beneficiary, such "Financing Statements" and such further assurances as Beneficiary may, from time to time, reasonably consider necessary to create, perfect, and preserve Beneficiary's security interest herein granted and Beneficiary may cause such statements and assurances to be recorded and filed, at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

8.3     Uniform Commercial Code Remedies.  Beneficiary and/or Trustee shall have all the rights, remedies and recourses with respect to the Personalty and Fixtures afforded to it by the Code in addition to, and not in limitation of, the other rights, remedies and recourses afforded by the Security Documents.

8.4     No Obligation of Trustee or Beneficiary.  The assignment and security interest herein granted shall not be deemed or construed to constitute Trustee or Beneficiary as a trustee in possession of the Mortgaged Property, to obligate Trustee or Beneficiary to lease the Mortgaged Property or attempt to do same, or to take any action, incur any expense or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

8.5     Fixture Filing.  This Deed of Trust constitutes a "fixture filing" for the purposes of Chapter 9 of the Code.  All or part of the Mortgaged Property are or are to become fixtures; information concerning the security interest herein granted may be obtained at the addresses set forth on the first page hereof.  For purposes of the security interest herein granted, the address of Debtor (Grantor) is set forth in the first paragraph of this Deed of Trust and the address of the Secured Party (Beneficiary) is set forth in Section 11.5 herein.

8.6     Reproduction as Financing Statement.  A carbon, photographic, or other reproduction of this Deed of Trust or of any financing statement relating to this Deed of Trust shall be sufficient as a financing statement.

8.7     Foreclosure of Security Interest.  If an Event of Default shall occur and be continuing, Beneficiary may elect, in addition to exercising any and all other rights, remedies and recourses set forth in Article 7 or Article 9 hereof, or referred to in Section 8.3 hereinabove, to collect and receive all Rents and to proceed in the manner set forth in Section 9.604 of Chapter 9 of the Code relating to the procedure to be followed when a Security Agreement covers both real and personal property.  Except as otherwise set forth in this Section 8.7, at any foreclosure and sale as described in Section 7.1(d) hereinabove, it shall be deemed that the Trustee proceeded under such Section 9.604(a)(2), as to types of property covered thereby, and that such sale passed title to all of the Mortgaged Property and other property described herein to the purchaser thereat, including without limitation the Personalty and Fixtures.  Beneficiary, acting by and through the

Trustee or any other representative, may elect either prior to or at such sale not to proceed under such Section 9.604(a)(2) by notifying Grantor of the manner in which Beneficiary intends to proceed with regard to the Personalty and Fixtures.

8.8    <u>Hold Harmless</u>.  Beneficiary shall not be obligated to perform or discharge, nor does it hereby undertake to perform or discharge, any obligation, duty or liability under the Leases or under or by reason of this Deed of Trust, and Grantor shall and does hereby agree to indemnify Beneficiary for and to hold Beneficiary harmless from any and all liability, loss or damage which it may or might incur under any of the Leases or under or by reason of this Deed of Trust and from any and all claims and demands whatsoever which may be asserted against it (except for acts of gross negligence or intentional misconduct on the part of Beneficiary) by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any of the Leases.  Should Beneficiary incur any such liability, loss or damage under any of the Leases or under or by reason of this Deed of Trust or in the defense of any such claims or demands, the amount thereof, including all costs, expenses and reasonable attorneys' fees, shall be secured hereby, and Grantor shall reimburse Beneficiary therefor immediately upon demand.

**Article 9**
**ASSIGNMENT OF RENTS**

9.1    <u>Assignment</u>.  For $10.00 and other good and valuable consideration, including the indebtedness evidenced by the Loan Agreement, the receipt and sufficiency of which are hereby acknowledged and confessed, Grantor hereby presently and unconditionally GRANTS, BARGAINS, SELLS and CONVEYS, TRANSFERS, and SETS OVER unto Trustee and Beneficiary a security interest in all of Grantor's right, title and interests in the Rents, if any, whether now owned or hereafter acquired and whether now existing or hereafter coming into existence, as security for the payment and performance of the Indebtedness and to provide a source of future payment of the Indebtedness and the Obligations, it being the intention of Grantor and Beneficiary that this conveyance be presently and immediately effective and is unconditional, TO HAVE AND TO HOLD the Leases and the Rents unto Beneficiary, forever, and Grantor does hereby bind itself, its successors and assigns to warrant and forever defend the title to the Rents unto Beneficiary against every person whomsoever lawfully claiming or to claim the same or any part thereof; provided, however, if Grantor shall pay or cause to be paid the Indebtedness as and when same shall become due and payable and shall perform and discharge or cause to be performed and discharged, the Obligations on or before the date same are to be performed and discharged, then this assignment shall terminate and be of no further force and effect, and all rights, titles and interests conveyed pursuant to this assignment shall become revested in Grantor without the necessity of any further act or requirement by Grantor, Trustee, or Beneficiary.

9.2    <u>Receipt of Rents</u>.  Subject to the terms and provisions of <u>Section 7.1(f)</u> hereof, Grantor may exercise and enjoy all incidences of the status of a lessor with respect to the Rents, including without limitation, the right to collect, demand, sue for, attach, levy, recover, and receive the Rents, and to give proper receipts, releases, and acquittances therefor ("**License**").  Grantor hereby agrees to receive all Rents and hold the same as Beneficiary's Agent, and to apply the Rents so collected, first to the payment of the Indebtedness, next to the performance and discharge of the Obligations, and next to the payment of Operating Expenses (as defined in the Loan Agreement).  Thereafter, Grantor may use the balance of the Rents collected in any manner not inconsistent with the Security Documents.  Neither this Assignment nor the receipt of Rents by Beneficiary shall effect a *pro tanto* payment of the Indebtedness, and such Rents shall be applied as provided in this <u>Section 9.2</u>.  Furthermore, and notwithstanding the provisions of this <u>Section 9.2</u>, no credit shall be given by Beneficiary for any Rents until the money constituting the Rents collected is actually received by Beneficiary at its principal office at 3201 Dallas Parkway, Suite 630, Frisco, Texas 75034, or at such other place as Beneficiary shall designate in writing.  Beneficiary shall not apply Rents to the Indebtedness collected after

foreclosure or other transfer of the Mortgaged Property (or part thereof from which Rents are derived pursuant to this Deed of Trust) to Beneficiary or any other third party.

9.3     Reliance Upon Notice of Enforcement.  All Notices of Enforcement shall be delivered to lessees in accordance with the Act.  Upon receipt from Beneficiary of a Notice of Enforcement, each lessee is authorized and directed to pay directly to Beneficiary all Rents thereafter accruing, and the receipt of Rents by Beneficiary shall be a release of such lessee to the extent of all amounts so paid.  The receipt by a lessee under the Leases of a Notice of Enforcement shall be sufficient authorization for such lessee to make all future payments of Rents directly to Beneficiary and each such lessee shall be entitled to rely on such Notice of Enforcement and shall have no liability to Grantor for any Rents paid to Beneficiary after receipt of such Notice of Enforcement.  Notwithstanding the provisions of Section 64.058 of the Act, Rents so received by Beneficiary for any period prior to foreclosure under this Deed of Trust or acceptance of a deed in lieu of such foreclosure shall be applied by Beneficiary to the payment of the following (in such order and priority as Beneficiary shall determine): (a) all Operating Expenses; (b) all expenses incident to taking and retaining possession of the Mortgaged Property and/or collecting Rent as it becomes due and payable; and (c) the Indebtedness.  In no event will this Article 9 reduce the Indebtedness except to the extent, if any, that Rents are actually received by Beneficiary and applied upon or after said receipt to such Indebtedness in accordance with the preceding sentence. Without impairing its rights hereunder, Beneficiary may, at its option, at any time and from time to time, release to Grantor, Rents so received by Beneficiary or any part thereof.  As between Grantor and Beneficiary, and any person claiming through or under Grantor, other than any lessee under the Leases who has not received a Notice of Enforcement, this Assignment of Rents is intended to be unconditional and presently effective.  A Notice of Enforcement hereof is intended solely for the benefit of each such lessee and shall never inure to the benefit of Grantor or any person claiming through or under Grantor, other than a lessee who has not received such Notice of Enforcement.  It shall never be necessary for Beneficiary to institute legal proceedings of any kind whatsoever to enforce the provisions of this Deed of Trust with respect to Rents.  GRANTOR SHALL HAVE NO RIGHT OR CLAIM AGAINST ANY LESSEE FOR THE PAYMENT OF ANY RENTS TO BENEFICIARY HEREUNDER, AND GRANTOR HEREBY INDEMNIFIES AND AGREES TO HOLD FREE AND HARMLESS EACH LESSEE FROM AND AGAINST ALL LIABILITY, LOSS, COST, DAMAGE OR EXPENSE SUFFERED OR INCURRED BY SUCH LESSEE BY REASON OF SUCH LESSEE'S COMPLIANCE WITH ANY DEMAND FOR PAYMENT OF RENTS MADE BY BENEFICIARY CONTEMPLATED BY THIS DEED OF TRUST.

9.4     Collection of Rent.  At any time during which Grantor is receiving Rents directly from the lessee under the Leases, Grantor shall, upon receipt of written direction from Beneficiary, make demand and/or sue for all Rents due and payable under the Leases, as directed by Beneficiary, as it becomes due and payable, including Rents which are past due and unpaid. If Grantor fails to timely take such action, or at any time during which Grantor is not receiving Rents directly from lessee under the Leases, Beneficiary shall have the right (but shall be under no duty or obligation) to demand, collect and sue for, in its own name or in the name of Grantor, all Rents due and payable under the Leases, as same becomes due and payable, including Rents which are past due and unpaid.

9.5     Enforcement of Leases.  So long as the License is in effect, Grantor shall (a) duly and punctually perform and comply with any and all material representations, warranties, covenants and agreements expressed as binding upon the landlord under any Lease, (b) maintain each of the Leases in full force and effect during the term thereof, provided that tenant under such Lease is not in default thereunder, (c) appear in and defend any action or proceeding in any manner connected with any of the Leases, (d) upon request by Beneficiary, deliver to Beneficiary executed counterparts of all Leases, and (e) deliver to Beneficiary such further information, and execute and deliver to Beneficiary such further assurances and assignments, with respect to the Leases as Beneficiary may from time to time reasonably request.  In the event Grantor shall fail to fulfill the financial covenants set forth in the Loan Agreement, Grantor shall not, without

**DEED OF TRUST, SECURITY AGREEMENT, AND ASSIGNMENT OF RENTS** – **Page 20**
6616831

the prior written consent of Beneficiary (i) do or knowingly permit to be done anything to impair the value of any of the Leases, (ii) except for deposits, collect any of the Rent more than one (1) month in advance of the time when the same becomes due under the terms of any Lease, (iii) discount any future accruing Rent, (iv) except in the ordinary course of business enter into, amend, modify or terminate any Lease, (v) assign or grant a security interest in or to the License or any of the Leases, or (vi) execute any Lease granting a leasehold interest in the Mortgaged Property, other than in accordance herewith.

9.6     Suits; Attornment.  Upon and following the occurrence and continuance of any Event of Default, Beneficiary hereby reserves and may exercise the right and Grantor hereby acknowledges that Beneficiary has the right (but not the obligation), subject to compliance with the requirements of the Act, to collect, demand, sue for, attach, levy, recover and receive any Rent, to give proper receipts, releases and acquittances therefor and, after deducting the expenses of collection, to apply the net proceeds thereof as a credit upon any portion of the Indebtedness selected by Beneficiary, notwithstanding that such portion selected may not then be due and payable or that such portion is otherwise adequately secured.  Beneficiary may, without necessity of the joinder of Grantor or any third party, and without in any way impairing, affecting or subordinating the lien or security interests created in or evidenced by the Security Documents covering the remainder of the Mortgaged Property, subordinate the lien of this Deed of Trust and the other Security Documents to any Lease or other interest of any third party in and to the Mortgaged Property (at any time prior to full payment of the Indebtedness and the discharge of the performance of the Obligations).  Provided Beneficiary complies with the requirements of the Texas Assignment of Rents Act, no lessee shall be required to inquire into the authority of Beneficiary to collect any Rent, and any lessee's obligation to Grantor shall be absolutely discharged to the extent of its payment to Beneficiary.

9.7     No Obligation of Trustee or Beneficiary.  Neither the acceptance by Beneficiary of the assignment granted in this Article 9, nor the granting of any other right, power, privilege or authority in this Article 9 or elsewhere in this Deed of Trust, nor the exercise of any of the aforesaid, shall (a) prior to the actual taking of physical possession and operational control of the Mortgaged Property by Beneficiary or Trustee, be deemed to constitute Beneficiary or Trustee as a "mortgagee in possession" or (b) at any time thereafter, obligate Beneficiary or Trustee (i) to appear in or defend any action or proceeding relating the Rents or the remainder of the Mortgaged Property, (ii) to take any action hereunder, (iii) to extend any money or incur any expenses or perform or discharge any obligation, duty or liability with respect to any Rents, (iv) to assume any obligation or responsibility for any deposits which are not physically delivered to Beneficiary or (v) for any injury or damage to person or property sustained in or about the Mortgaged Property.

**Article 10**
**CONCERNING THE TRUSTEE**

10.1     No Required Action.  Trustee shall not be required to take any action toward the execution and enforcement of the trust hereby created or to institute, appear in or defend any action, suit or other proceeding in connection therewith where in his sole opinion such action will be likely to involve him in expense or liability, unless requested so to do by a written instrument signed by Beneficiary and, if Trustee so requests, unless Trustee is tendered security and indemnity satisfactory to him against any and all cost, expense and liability arising therefrom.  Trustee shall not be responsible for the execution, acknowledgment or validity of the Security Documents, or for the proper authorization thereof, or for the sufficiency of the lien and security interest purported to be created hereby, and makes no representation in respect thereof or in respect of the rights, remedies and recourses of Beneficiary.

10.2     Certain Rights.  With the approval of Beneficiary, Trustee shall have the right to take any and all of the following actions: (a) to select, employ and advise with counsel (who may be, but need not be, counsel for Beneficiary) upon any matters arising hereunder, including the preparation, execution and interpretation of the Security Documents, and shall be fully protected in relying as to legal matters on the

advice of counsel, (b) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his agents or attorneys, (c) to select and employ, in and about the execution of his duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee, and Trustee shall not be answerable for any act, default or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise responsible or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith, and (d) any and all other lawful action as Beneficiary may instruct Trustee to take to protect or enforce Beneficiary's rights hereunder.  Trustee shall not be personally liable in case of entry by him, or anyone entering by virtue of the powers herein granted him, upon the Mortgaged Property for debts contracted or liability or damages incurred in the management or operation of the Mortgaged Property.  Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by him in the performance of his duties hereunder and to reasonable compensation for such of his services hereunder as shall be rendered.

10.3    Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law) and Trustee shall be under no liability for interest on any moneys received by him hereunder.

10.4    Successor Trustees.  Trustee may resign by the giving of notice of such resignation in writing to Beneficiary.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust, or shall fail or refuse to execute the same when requested by Beneficiary so to do, or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee to act instead of the aforenamed Trustee, Beneficiary shall have full power to appoint a substitute trustee (and, if preferred, several substitute trustees) in succession who shall succeed to all the estates, rights, powers and duties of the aforenamed Trustee.  Such appointment may be executed by any authorized agent of Beneficiary, and if such Beneficiary be a corporation and such appointment be executed in its behalf by any officer of such corporation, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any superior officer of the corporation.  Grantor hereby ratifies and confirms any and all acts which the aforenamed Trustee, or his successor or successors in this trust, shall do lawfully by virtue hereof.

10.5    Perfection of Appointment.  Should any deed, conveyance or instrument of any nature be required from Grantor by any successor Trustee to more fully and certainly vest in and confirm to such new Trustee such estates, rights, powers and duties, then, upon request by such Trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged and delivered and shall be caused to be recorded and/or filed by Grantor.

10.6    Succession Instruments.  Any new Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of its or his predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Beneficiary or of the successor Trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such successor Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and shall duly assign, transfer and deliver any of the property and moneys held by such Trustee to the successor Trustee so appointed in its or his place.

10.7    No Representation by Trustee or Beneficiary.  By accepting or approving anything required to be observed, performed or fulfilled or to be given to Trustee or Beneficiary pursuant to the Security

Documents, including (but not limited to) any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, neither Trustee nor Beneficiary shall be deemed to have warranted, consented to or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or affirmation with respect thereto by Trustee or Beneficiary.

**Article 11**
**MISCELLANEOUS**

11.1     <u>Performance at Grantor's Expense</u>.  Grantor shall (i) reimburse Beneficiary, promptly upon demand, for all amounts expended, advanced or incurred by Beneficiary to satisfy any obligation of Grantor under the Security Documents, which amounts shall include all court costs, reasonable attorneys' fees (including, without limitation, for trial, appeal or other proceedings); and (ii) pay any and all other costs and expenses of performing or complying with any and all of the Obligations.  Except to the extent that certain costs and expenses are included within the definition of "Indebtedness," the payment of such costs and expenses shall not be credited, in any way and to any extent, against any installment on or portion of the Indebtedness.

11.2     <u>Survival of Obligations</u>.  Each and all of the Obligations shall survive the execution and delivery of the Security Documents and the consummation of the loan called for therein and shall continue in full force and effect until the Indebtedness shall have been paid in full; provided, however, that nothing contained in this <u>Section 11.2</u> shall limit the obligations of Grantor as set forth in <u>Sections 4.12</u>, <u>8.8</u>, <u>9.6</u>, and <u>Article 12</u> hereof.

11.3     <u>Further Assurances</u>.  Grantor, upon the reasonable request of Beneficiary, will execute, acknowledge, deliver and record and/or file such further instruments and do such further acts as may be necessary, desirable or proper to carry out more effectively the purpose of the Security Documents and to subject to the liens and security interests thereof any property intended by the terms thereof to be covered thereby, including specifically but without limitation, any renewals, additions, substitutions, replacements, betterments or appurtenances to the then Mortgaged Property.

11.4     <u>Recording and Filing</u>.  Grantor will cause this Deed of Trust and all amendments and supplements thereto and substitutions therefor to be recorded, filed, rerecorded and refiled in such manner and in such places as Trustee or Beneficiary shall reasonably request, and will pay all such recording, filing, rerecording and refiling taxes, fees and other charges.

11.5     <u>Notices</u>.  Any communications required or permitted to be given by any of the Security Documents must be (a) in writing and personally delivered or mailed by prepaid certified or registered mail, or (b) made by E-mail delivered or transmitted, to the party to whom such notice of communication is directed, to the E-mail address of such party shown.  Any such communication shall be deemed to have been given (whether actually received or not) on the day it is personally delivered or three days after deposit if sent by certified or registered mail or, if transmitted by E-mail, on the day that such communication is transmitted as aforesaid, provided that if such notice is delivered or deemed to have delivered on a day that is not a Business Day or after 5:00 p.m. Central Time, such notice shall be deemed to have been delivered on the following Business Day. Any party may change its address for purposes of this Agreement by giving notice of such change to the other parties pursuant to this <u>Section 11.5</u>.

| If to Grantor: | The Gateway Ventures, LLC |
| --- | --- |
| | 2921 E 17th Street |
| | Unit B |
| | Austin, TX  78702 |
| | Attn: Michael Dixson |
| | mike@pdgnm.com |
| | |
| With a copy to: | Weycer, Kaplan, Pulaski & Zuber, P.C. |
| | Attn: Jeff Carruth |
| | 3030 Matlock Rd. Suite 201 |
| | Arlington, Texas 76105 |
| | jcarruth@wkpz.com |
| | |
| If to Beneficiary: | Legalist DIP GP, LLC |
| | 195 Hwy. 50, No 7172-210 |
| | Stateline, Nevada 89449 |
| | Attn: Chris Wren |
| | E-mail: chris@legalist.com |
| | |
| With copy to: | Bell Nunnally & Martin, LLP |
| | 2323 Ross Avenue, Suite 1900 |
| | Dallas, Texas 75201 |
| | Attn: Russell Mills |
| | E-mail:  rmills@bellnunnally.com |

11.6    Beneficiary's Right to Perform the Obligations.  If Grantor shall fail, refuse or neglect to make any payment or perform any act as required by the Security Documents then at any time thereafter, and without notice to or demand upon Grantor and without waiving or releasing any other right, remedy or recourse Beneficiary may have because of same, Beneficiary may (but shall not be obligated to) make such payment or perform such act for the account of and at the expense of Grantor, and shall have the right to enter upon the Land and into the Improvements for such purpose and to take all such action thereon and with respect to the Mortgaged Property, as it may deem necessary or appropriate.  If Beneficiary shall elect to pay any Imposition or other sums due with reference to the Mortgaged Property, Beneficiary may do so in reliance on any bill, statement or assessment procured from the appropriate Governmental Authority or other issuer thereof without inquiring into the accuracy or validity thereof.  Similarly, in making any payments to protect the security intended to be created by the Security Documents, Beneficiary shall not be bound to inquire into the validity of any apparent or threatened adverse title, lien, encumbrance, claim or charge before making an advance for the purpose of preventing or removing the same.  GRANTOR SHALL INDEMNIFY BENEFICIARY FOR ALL LOSSES, EXPENSES, DAMAGE, CLAIMS AND CAUSES OF ACTION, INCLUDING REASONABLE ATTORNEYS' FEES, INCURRED OR ACCRUING BY REASON OF ANY ACTS PERFORMED BY BENEFICIARY PURSUANT TO THE PROVISIONS OF THIS SECTION 11.6 OR BY REASON OF ANY OTHER PROVISION IN THE SECURITY DOCUMENTS UNLESS CAUSED BY BENEFICIARY'S GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT.  All sums paid by Beneficiary pursuant to this Section 11.6, and all other sums expended by Beneficiary to which it shall be entitled to be indemnified, together with interest thereon at the Default Rate from the date of such payment or expenditure, shall constitute additions to the Indebtedness, shall be secured by the Security Documents and shall be paid by Grantor to Beneficiary upon demand.

11.7    Covenants Running with the Land.  All Obligations contained in the Security Documents are intended by the parties to be, and shall be construed as, covenants running with the Mortgaged Property.

11.8    Successors and Assigns.  Subject to the provisions of Section 6.8 hereof, all of the terms of the Security Documents shall apply to, be binding upon and inure to the benefit of the parties thereto, their successors, assigns, heirs and legal representatives, and all other persons claiming by, through or under them.

11.9    No Waiver; Severability.  Any failure by Trustee or Beneficiary to insist, or any election by Trustee or Beneficiary not to insist, upon strict performance by Grantor of any of the terms, provisions or conditions of the Security Documents shall not be deemed to be a waiver of same or of any other terms, provisions or conditions thereof; and Trustee or Beneficiary shall have the right at any time or times thereafter to insist upon strict performance by Grantor of any and all of such terms, provisions and conditions.  The Security Documents are intended to be performed in accordance with, and only to the extent permitted by, all applicable Legal Requirements.  If any provision of any of the Security Documents or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, then neither the remainder of the instrument in which such provision is contained nor the application of such provision to other persons or circumstances nor the other instruments referred to hereinabove shall be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

11.10    Entire Agreement and Modification.  The Security Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof, and all prior agreements relative thereto which are not contained herein or therein are terminated.  The Security Documents may not be amended, revised, waived, discharged, released or terminated orally, but only by a written instrument or instruments executed by the party against which enforcement of the amendment, revision, waiver, discharge, release or termination is asserted.  Any alleged amendment, revision, waiver, discharge, release or termination which is not so documented shall not be effective as to any party.

11.11    Execution by Counterparts.  To facilitate execution, this instrument may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature or acknowledgment of, or on behalf of, each party, or that the signature of all persons required to bind any party, or the acknowledgment of such party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this instrument to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgments of, each of the parties hereto.  Any signature or acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgment pages.

11.12    Applicable Law.  THE SECURITY DOCUMENTS ARE FULLY PERFORMABLE IN EL PASO COUNTY, TEXAS, AND SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF TEXAS FROM TIME TO TIME IN EFFECT EXCEPT TO THE EXTENT PREEMPTED BY UNITED STATES FEDERAL LAW.  It is expressly stipulated and agreed to be the intent of Grantor and Beneficiary at all times to comply with applicable Texas law governing the maximum rate or amount of interest payable on the Indebtedness (or applicable United States federal law to the extent that it permits Beneficiary to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law).  If the applicable law is ever judicially interpreted so as to render usurious any amount called for under the Loan Agreement or under any of the other Security Documents, or contracted for, charged, taken, reserved or received with respect to the Indebtedness, or if Beneficiary's exercise of the option to accelerate the maturity of the loan or if any prepayment by Grantor results in Grantor having paid any interest in excess of that permitted by applicable law, then it is Grantor's and Beneficiary's express intent that all excess amounts theretofore collected by Beneficiary be credited on the principal balance under the Loan Agreement (or, if the loan and all other Indebtedness have been or would thereby be paid in full, refunded to Grantor), and the provisions of the Loan Agreement and the other

Security Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Beneficiary for the use, forbearance or detention of the Indebtedness shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the usury ceiling from time to time in effect and applicable to the loan evidenced by the Loan Agreement for so long as debt is outstanding under the loan. To the extent the laws of the State of Texas are applicable to determine the maximum rate ("**Maximum Rate**") payable on the Indebtedness, Beneficiary will utilize the "indicated rate ceiling" from time to time in effect as provided in Section 303 of the Texas Finance Code. To the extent United States federal law permits Beneficiary to contract for, charge or receive a greater amount of interest, Beneficiary will rely on United States federal law instead of such Section 303, for the purpose of determining the Maximum Rate. Additionally, to the extent permitted by applicable law not in effect, Beneficiary may, at its option and from time to time, implement any other method of computing the Maximum Rate under the Texas Finance Code, as amended, or under other applicable law by giving notice, if required, to Grantor as provided by applicable law now or hereafter in effect. In no event shall the provisions of Chapter 346 of Texas Finance Code (which regulates certain revolving credit loan accounts and revolving tri-party accounts) apply to the loan evidenced hereby. Notwithstanding anything to the contrary contained herein or in any of the other Security Documents, it is not the intention of Beneficiary to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

11.13   Subrogation.   If any or all of the proceeds of the Loan Agreement have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent of such funds so used, Beneficiary shall be subrogated to all of the rights, claims, liens, titles and interests existing against the Mortgaged Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles and interests, if any, are not waived but rather are continued in full force and effect in favor of Beneficiary and are merged with the lien and security interest created herein as cumulative security for the repayment of the Indebtedness and the satisfaction of the Obligations.

11.14   Headings.   The Article, Section and Subsection entitlements hereof are inserted for convenience of reference only and shall in no way alter, modify or define, or be used in construing, the text of such Articles, Sections or Subsections.

11.15   Tax and Insurance Escrow.   Upon a continuing Event of Default, at the election of Beneficiary, following written notice to Grantor, Grantor shall pay to Beneficiary monthly, in order to implement the provisions of Sections 4.5 and 4.7 hereinabove, an amount ("Escrowed Sums") equal to the sum of (a) the one-twelfth annual Impositions (estimated by Beneficiary, wherever necessary) to become due for the tax year during which such payment is so directed and (b) the insurance premiums for the same year for those insurance policies as are required hereunder unless the Lease (as defined in the Loan Agreement) obligates the tenant to make such payments and the Lease (as defined in the Loan Agreement) is not in default. If Beneficiary determines that any amounts theretofore paid by Grantor are insufficient for the payment in full of such Impositions and insurance premiums, Beneficiary shall notify Grantor of the increased amounts required to provide a sufficient fund, whereupon Grantor shall pay to Beneficiary within 30 days thereafter the additional amount as stated in Beneficiary's notice. The Escrowed Sums may be held by Beneficiary in interest-bearing accounts and may be commingled with Beneficiary's other funds. Upon assignment of this Deed of Trust, Beneficiary shall have the right to pay over the balance of the Escrowed Sums then in its possession to its assignee whereupon the Beneficiary and its Trustee shall then become completely released from all liability with respect thereto so long as the assignee agrees to use such Escrowed Sums in a manner consistent with this Section. Upon full payment of the Indebtedness or at such

earlier time as Beneficiary may elect, the balance of the Escrowed Sums in its possession shall be paid over to Grantor and no other party shall have any right of claim thereto.  If no Event of Default shall have occurred and be continuing hereunder, the Escrowed Sums shall, at the option of Beneficiary, be repaid to Grantor in sufficient time to allow Grantor to satisfy Grantor's obligations under the Security Documents to pay the Impositions and the required insurance premiums or be paid directly to the Governmental Authority and the insurance company entitled thereto.  If an Event of Default shall have occurred and be continuing hereunder, however, Beneficiary shall have the additional option of crediting the full amount of the Escrowed Sums against the Indebtedness.  If an Event of Default shall have occurred and be continuing hereunder, however, Beneficiary shall have the additional option of crediting the full amount of the Escrowed Sums against the Indebtedness or of using the Escrowed Sums to pay taxes and insurance premiums.  Notwithstanding anything to the contrary contained in this Section 11.15, until written notice to the contrary is given by Beneficiary to Grantor, Beneficiary waives the payment by Grantor to Beneficiary of the Escrowed Sums, without prejudice to the right of Beneficiary to insist, at any subsequent time or times, that such payments be made in accordance herewith.  Provided that the Escrowed Sums are sufficient therefor, Beneficiary agrees to pay insurance premiums on a timely basis and to pay real property taxes prior to year end.

11.16    <u>WAIVER OF TRIAL BY JURY</u>.    EACH OF GRANTOR AND BENEFICIARY (A) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY WITH RESPECT TO ANY ISSUE THAT IS TRIABLE OF RIGHT BY A JURY AND (B) WAIVES ANY RIGHT TO TRIAL BY JURY TO THE EXTENT THAT ANY SUCH RIGHT EXISTS NOW OR IN THE FUTURE. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS SEPARATELY GIVEN BY EACH PARTY, KNOWINGLY AND VOLUNTARILY WITH THE BENEFIT OF COMPETENT LEGAL COUNSEL, AND THIS WAIVER IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A JURY TRIAL WOULD OTHERWISE EXIST. GRANTOR AND BENEFICIARY ARE AUTHORIZED TO SUBMIT THIS DEED OF TRUST TO ANY COURT HAVING JURISDICTION OVER THE SUBJECT MATTER AND THE PARTIES TO ANY LOAN DOCUMENT, SO AS TO SERVE AS CONCLUSIVE EVIDENCE OF GRANTOR'S AND BENEFICIARY'S WAIVER OF THE RIGHT TO JURY TRIAL. FURTHER, EACH OF GRANTOR AND BENEFICIARY CERTIFIES THAT NEITHER GRANTOR'S NOR BENEFICIARY'S REPRESENTATIVES OR AGENTS HAVE REPRESENTED, EXPRESSLY OR OTHERWISE, THAT ENFORCEMENT OF THIS WAIVER WILL NOT BE SOUGHT.

11.17    <u>Release</u>.  If the Indebtedness is paid in full in accordance with the terms of this Deed of Trust, the Loan Agreement, and the other Loan Documents, and if Grantor shall well and truly perform each and every of the Obligations to be performed and discharged in accordance with the terms of this Deed of Trust, the Loan Agreement, and the other Loan Documents, then this conveyance shall become null and void and be released at Grantor's request and expense, and Beneficiary shall have no further obligation to make advances under and pursuant to the provisions hereof or in the other Loan Documents.

## Article 12
## HAZARDOUS SUBSTANCES PROVISIONS

12.1    <u>Compliance with Environmental Laws</u>.  As used below, and in any of the other Security Documents, "<u>Hazardous Substances</u>" shall mean and include, but shall not be limited to, any element, agent, constituent, substance, compound or mixture, including disease-causing agents, which after release into the environment and upon exposure, ingestion, inhalation, or assimilation into any organism, either directly or indirectly, will or may reasonably be anticipated to cause death, disease, behavior abnormalities, cancer, genetic mutation, physiological malfunctions, including malfunctions in reproduction, or physical deformations in such organisms or their offsprings, and all hazardous, infectious and toxic substances, agents, constituents, wastes or materials, any pollutants or contaminates (including, without limitation, asbestos, polychlorinated biphenyls and raw materials which include hazardous constituents), or any other

similar substances, or materials which are included under or regulated by any local, state or federal law, rule or regulation pertaining to environmental health and safety compliance, regulation, contamination, clean-up or disclosure, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as now or hereafter amended ("**CERCLA**"), The Resource Conservation and Recovery Act, as now or hereafter amended ("**RCRA**"), The Superfund Amendments and Reauthorization Act of 1986, as now and hereafter amended ("**SARA**"), The Toxic Substances Control Act, as now or hereafter amended ("**TSCA**"), The Occupational Safety and Health Act, as now or hereafter amended ("**OSHA**"), The Clean Water Act, as now or hereafter amended ("**CWA**"), and The Clean Air Act, as now or hereafter amended ("**CAA**"), or state superlien or environmental health and safety clean-up or disclosure statutes (all such laws, rules and regulations being referred to collectively as "Environmental Laws"). Grantor warrants, represents and covenants as follows:

(a)  To Grantor's knowledge based on the Environmental Report (as defined in the Loan Agreement), neither the Grantor nor any other person or entity for whose conduct it is or may be responsible is (i) subject to any private or governmental lien or judicial or administrative notice, order or action relating to Hazardous Substances or environmental health and safety problems, impairments or liabilities with respect to any real property, or (ii) in, or with any applicable notice and/or lapse of time, and/or failure to take certain curative or remedial actions, will be in, either direct or indirect violation of any Environmental Laws. Grantor, and any other person or entity for whose conduct it is or may be responsible has not: (A) entered into or been subject to any consent decree, compliance order, or administrative action, or (B) received any request for information from any environmental health and safety agency.

(b)  Except for Hazardous Substances used by Grantor or its contractors in the ordinary course of business and in compliance will all Environmental Laws, Grantor shall not allow any Hazardous Substances to exist or be generated, stored, located, discharged, transported, possessed, managed, processed or otherwise handled on or from the Mortgaged Property, except for those Hazardous Substances existing on the Mortgaged Property as of the date of this Deed of Trust and disclosed in writing to Beneficiary and except for such Hazardous Substances as are commonly used in connection with land development and construction of improvements similar to the Project provided that such use is in full compliance with all Environmental Laws.

(c)  Grantor shall immediately notify Beneficiary should Grantor become aware of (i) any Hazardous Substance or other environmental health and safety problem or liability with respect to the Mortgaged Property, (ii) any lien, action or notice of the nature described in subsection (a)(i) above, or (iii) any litigation or threat of litigation relating to any alleged unauthorized release of any Hazardous Substance or the existence of any Hazardous Substance or other environmental health and safety contamination, liability or problem with respect to or arising out of or in connection with the Mortgaged Property. Grantor shall, at its own cost and expense, take all actions (to the extent and at the time or from time to time) as shall be necessary or advisable for the clean-up of the Mortgaged Property, including all removal, containment and remedial actions in accordance with all applicable Environmental Laws (and in all events in a manner satisfactory to Beneficiary), and shall further pay or cause to be paid at no expense to Beneficiary all clean-up, administrative, and enforcement costs of applicable government agencies or the parties protected by such Environmental Laws which may be asserted against the Mortgaged Property, the owner thereof or a lienholder secured thereby. All costs (including, without limitation, those costs set forth above), damages, liabilities, losses, claims, expenses (including reasonable attorneys' fees and disbursements) which are incurred by Beneficiary, without the requirement that Beneficiary wait for the ultimate outcome of any litigation, claim or other proceeding, shall be Indebtedness secured hereby and shall be paid by Grantor to Beneficiary within 15 days after notice to Grantor from Beneficiary itemizing the amounts incurred to the effective date of such notice.

(d)     Grantor hereby covenants and agrees not to do or take any action or omit or fail to take any such action which will result in the unauthorized release of any Hazardous Substance in violation of Environmental Laws or the existence of any Hazardous Substance in violation of Environmental Laws or other environmental health and safety contamination, liability or problem with respect to the Mortgaged Property.  Upon any such unauthorized release or discovery of the existence of any such Hazardous Substance or other environmental health and safety contamination, liability or problem, Grantor agrees to promptly give written notice to Beneficiary of the exact nature, scope and extent thereof.

12.2     <u>Indemnity</u>.  Grantor hereby agrees to indemnify and hold harmless Beneficiary, and its officers, directors, partners, employees and agents, against any liability, loss, claim, damage or expense (including reasonable attorneys' fees and disbursements) to which any of the foregoing parties may become subject insofar as they may arise out of or are based upon any of the following:

(a)     any violation or claim of violation by Grantor, or its successors or assigns, of Environmental Laws with respect to the Mortgaged Property, or any governmental or judicial claim, order or judgment with respect to the Mortgaged Property; or

(b)     any breach of any of the warranties, representations and covenants by Grantor contained in the Security Documents with respect to Hazardous Substances or Environmental Laws.

This indemnity shall not be subject to any exculpation, non-recourse or other limitation of liability provisions in the Security Documents, and Grantor acknowledges that its obligations pursuant to this indemnity are unconditional, and are not limited by any such exculpation, non-recourse or similar limitation of liability provisions in the Security Documents.

12.3     <u>Survival</u>.  All warranties and representations above shall be deemed to be continuing and shall remain true and correct in all material respects until the Indebtedness has been paid in full, the Obligations completely satisfied, and any limitations period with respect to any claims under each of the Environmental Laws has expired.  Grantor's covenants above shall survive any exercise of any remedy by Beneficiary under the Security Documents, including foreclosure of the lien of the Deed of Trust (or deed in lieu thereof or similar actions to the same effect), even if, as a part of such foreclosure, deed in lieu of foreclosure or similar action, the Indebtedness is satisfied in full.  It shall, at the option of Beneficiary, be an Event of Default hereunder and under each of the Security Documents if any of the representations or warranties now are or at any time hereafter become materially untrue or misleading or if the Mortgaged Property, or any other property owned by Grantor, becomes subject to any claim, notice, or action of a nature described in <u>Section 12.1</u> hereof.  In addition to all other remedies that Beneficiary may have as a result of an Event of Default, Beneficiary may accelerate payment of the loan under the Loan Agreement as provided herein and in the Security Documents, following the applicable notice period, if any.  This <u>Article 12</u> shall not be construed to impose liability on Beneficiary for Hazardous Substances placed, released or disposed of on the Mortgaged Property through no fault of Grantor, or its respective agents, employees or contractors after the date of foreclosure or sale, the acceptance by Beneficiary of a deed in lieu of foreclosure, or such earlier date on which the Beneficiary becomes a mortgagee-in-possession.

***Signature Page Follows***

EXECUTED as of the date of the acknowledgment to be effective as of the date and year first above written.

**GRANTOR:**

**THE GATEWAY VENTURES, LLC**,
a Texas limited liability company

By:    PDG Prestige, Inc.,
       a Texas corporation,
       its manager

By:_____
Printed Name: Michael Dixson
Its:  President

STATE OF TEXAS        §
                             §
COUNTY OF _____    §

BEFORE ME, the undersigned authority, on this day personally appeared Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, the manager of The Gateway Ventures, LLC, a Texas limited liability company, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed, and as the act and deed of said corporation and limited liability company, and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ___ day of February, 2023.

[ S E A L ]

_____
NOTARY PUBLIC, STATE OF TEXAS

## EXHIBIT "A"

### Legal Description

A 0.0619 ACRE PARCEL OF LAND SITUATED WITHIN THE CORPORATE LIMITS OF THE CITY OF EL PASO, EL PASO COUNTY, TEXAS AS A PORTION OF LOT 3, BLOCK 4, INTERNATIONAL INDUSTRIAL CENTER AS FILED IN VOLUME 18, PAGE 54, EL PASO COUNTY PLAT RECORDS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING, AT A CHISELED "X" IN CONCRETE FOUND FOR THE EAST-SOUTHWESTERLY CORNER OF SAID TRACT 4H, IDENTICAL TO THE SOUTHEASTERLY CORNER OF LOT 1, BLOCK 1, HOWDY'S SUBDIVISION AS FILED IN VOLUME 75, PAGE 34, EL PASO COUNTY PLAT RECORDS WHENCE, A 5/8-INCH REBAR FOUND ON THE NORTHERLY RIGHT-OF-WAY LINE OF U.S. INTERSTATE HIGHWAY NO. 10 (300 FEET WIDE) AND THE WESTERLY BOUNDARY LINE OF YOUNG AMERICAN SUBDIVISION AS FILED IN VOLUME 44, PAGE 35, EL PASO COUNTY PLAT RECORDS, IDENTICAL TO THE SOUTHEASTERLY CORNER OF SAID TRACT 4H, BEARS SOUTH 58°34'05" EAST, A DISTANCE OF 740.25 FEET; THENCE, LEAVING THE NORTHERLY RIGHT-OF-WAY LINE OF SAID U.S. INTERSTATE HIGHWAY NO. 10, AND FOLLOWING THE EASTERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 31°29'49" EAST, A DISTANCE OF 215.04 FEET TO A 1/2 INCH REBAR WITH SURVEY CAP NO "TX 6223" FOUND FOR THE NORTHEASTERLY CORNER OF SAID LOT 1; THENCE, ALONG THE NORTHERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 58°34'05" WEST, A DISTANCE OF 215.68 FEET TO THE SOUTHEASTERLY CORNER AND THE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED;

THENCE, CONTINUING ALONG THE NORTHERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 58°34'05" WEST, A DISTANCE OF 3.63 FEET TO A 5/8-INCH REBAR WITH SURVEY CAP NO. "TX 5337" FOUND ON THE EASTERLY RIGHT-OF-WAY LINE OF AIRWAY BOULEVARD (120 FEET WIDE) FOR THE BEGINNING OF A NON-TANGENT CURVE TO THE LEFT AND THE SOUTHWESTERLY CORNER OF THE PARCEL HEREIN DESCRIBED;

THENCE, LEAVING THE NORTHLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION AND FOLLOWING THE EASTERLY RIGHT-OF WAY OF SAID AIRWAY BOULEVARD ALONG THE ARC OF SAID NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 800.15 FEET, A CENTRAL ANGLE OF 09°54'28", AN ARC LENGTH OF 138.37 FEET AND WHOSE LONG CHORD BEARS NORTH 20°33'15" EAST, A DISTANCE OF 138.19 FEET TO A POINT OF REVERSE CURVATURE;

THENCE, CONTINUING ALONG THE EASTERLY RIGHT-OF-WAY LINE OF SAID AIRWAY BOULEVARD, ALONG THE ARC OF A CURVE TO THE RIGHT HAVING A RADIUS OF 20.00 FEET, A CENTRAL ANGLE OF 105°54'11", AN ARC LENGTH OF 36.97 FEET AND WHOSE LONG CHORD BEARS NORTH 68°33'07" EAST, A DISTANCE OF 31.93 FEET TO THE SOUTHERLY RIGHT-OF-WAY LINE OF VACATED PORTION OF INTERNATIONAL DRIVE PER ORDINANCE NO. 7479, DATED 0-20-82 FOR A POINT OF TANGENCY;

THENCE, FOLLOWING SAID PORTION OF VACATED INTERNATIONAL DRIVE RIGHT-OF-WAY LINE, SOUTH 60°38'54" EAST, A DISTANCE OF 10.67 FEET TO THE WESTERLY BOUNDARY LINE OF TRACK 4H, BLOCK 2, ASCARATE GRANT FOR THE NORTHEASTERLY CORNER OF THE PARCEL HEREIN DESCRIBED;

THENCE, LEAVING SAID PORTION OF VACATED INTERNATIONAL DRIVE RIGHT-OF-WAY AND FOLLOWING THE WESTERLY BOUNDARY LINE OF SAID TRACT 4H, SOUTH 31°30'31" WEST, A DISTANCE OF 161.55 FEET TO THE POINT OF BEGINNING SAID PARCEL CONTAINING

0.0619 ACRES (2,695.0 SQUARE FEET), MORE OR LESS, AND BEING SUBJECT TO ALL EASEMENTS, RESTRICTIONS OR COVENANTS OF RECORD.

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

### DEED IN LIEU OF FORECLOSURE

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

 **THE GATEWAY VENTURES, LLC**, a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, has GRANTED, SOLD and CONVEYED, and by these presents does GRANT, SELL and CONVEY unto _____, a _____ ("**Grantee**"), whose address is _____, that certain real property located in El Paso County, Texas, more particularly described in **Exhibit A** attached hereto and made a part hereof, together with all right, title and interest of Grantor, if any, in and to (i) those certain buildings, structures and fixtures presently situated on such real property; (ii) all streets, roads, alleys, easements, rights of way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining to such real property as of the date hereof; (iii) any strips or gores of real property between such real property and abutting or adjacent properties not owned by Grantor as of the date hereof; (iv) all coal, minerals (including, but not limited to oil and gas), royalties, gas rights, water, water rights, timber and crops pertaining to such real property; (v) all appurtenances and all reversions and remainders in or to such real property; and (vi) all permits, easements and claims against third parties pertaining to said tract of land (collectively, the "**Property**"), subject to, however, the liens described in this deed and the exceptions to conveyance and warranty in the Deed of Trust (defined below), and all other easements, rights of way, restrictive covenants, and other exceptions to title of record and affecting the Property (the "**Permitted Encumbrances**").

 TO HAVE AND TO HOLD the Property, together with all and singular the rights and appurtenances belonging in any way to the Property, to Grantee, and Grantee's heirs, executors, administrators, successors and assigns forever; and Grantor does hereby bind itself and its heirs, executors, administrators, successors and assigns to WARRANT AND FOREVER DEFEND all and singular the Property unto Grantee, and Grantee's heirs, executors, administrators, successors and assigns, against every person lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

**EXHIBIT**

**E**

BUT IT IS HEREBY EXPRESSLY ACKNOWLEDGED AND AGREED that:

(1)     All of the liens and security interests (hereinafter collectively called the "**Liens**") evidenced by the following deeds of trust (collectively, the "**Deeds of Trust**"): (i) that certain Deed of Trust dated October 31, 2022, recorded on November 16, 2022 as Document Number 20220104382 in the Official Records, El Paso County, Texas, as modified by that certain Modification of Deed of Trust, Security Agreement, and Assignment of Rents, recorded on February 3, 2023, under Document No. 20230008387 in the Official Public Records of El Paso County, Texas; (ii) that certain Deed of Trust dated October 31, 2022, recorded on November 16, 2022 as Document Number 20220104381 in the Official Records, El Paso County, Texas; and (iii) [0.06-ACRE TRACT] that certain Deed of Trust dated February _____, 2023, recorded on February _____, 2023 as Document Number _____ in the Official Records, El Paso County, Texas, are **NOT RELEASED** or **RELINQUISHED** in any manner or respect whatsoever, but rather shall remain in full force and effect, unless and until released by written instrument (the "**Release**") executed by Grantee, or its successors and assigns, and filed for record in the office of the County Clerk of El Paso County, Texas;

(2)     There shall not be a merger of the Liens with the title of Grantee to the Property acquired by virtue of this conveyance and the Liens on one hand and title to the Property on the other shall remain separate and distinct;

(3)     Grantee's interest in the Property acquired under this Deed in Lieu of Foreclosure will not merge with the Liens and for purposes of priority as between (i) intervening or inferior liens, claims, or encumbrances on or against the Property, and (ii) the Liens, all rights of Grantee to exercise its remedies of foreclosure by private power of sale or by judicial foreclosure of any of the Liens are expressly preserved hereby and for purposes of limitations and any other applicable time bar defenses, the Liens are expressly extended as evidenced by this instrument; and

(4)     The priority of the Liens is intended to be and shall remain in full force and effect and nothing herein or in any instruments executed in connection herewith shall be construed to subordinate the priority of the Liens to any other liens or encumbrances whatsoever.

[Signature page follows.]

2

EXECUTED on February _____, 2023.

**GRANTOR:**

**THE GATEWAY VENTURES, LLC,**
a Texas limited liability company

By:     PDG Prestige, Inc.,
        a Texas corporation,
        its manager


_____
Michael Dixson, President


STATE OF TEXAS           §
                         §
COUNTY OF TRAVIS         §

This instrument was acknowledged before me on the ____ day of February, 2023, by Michael Dixson, President of PDG Prestige, Inc., a Texas corporation, the manager of The Gateway Ventures, LLC, a Texas limited liability company, on behalf of said corporation and said limited liability company.


_____
Notary Public, State of Texas
Printed Name:_____
My Commission Expires:_____

# EXHIBIT A

## Property Description

**TRACT 1:**

**Property Description:**
A portion of Lot 1, Block 1, Gateway West Subdivision, City of El Paso, El Paso County, Texas and being more particularly described as follows:

Commencing at an existing city monument lying on the centerline intersection of Catalpa Lane (a 60 foot public right-of-way) and Viscount Boulevard (a 140 foot public right-of-way), thence South 09°16'36" West, a distance of 876.52 feet to a point, said point also being the "TRUE POINT OF BEGINNING" of this metes and bounds description.

THENCE, South 32°50'26" West, a distance of 531.66 feet to a point lying on the Northerly right-of-way line of Gateway Boulevard West;

THENCE, North 58°34'05" West, along said right-of-way line, a distance of 740.25 feet to a point for a boundary corner;

THENCE, North 31°29'49" East, along the westerly boundary line of Lot 1, Block 1, Howdys Subdivision, a distance of 215.05 feet to a point for a boundary corner;

THENCE, North 58°34'05" West, along the northerly boundary line of Lot 1, Block 1, Howdys Subdivision, a distance of 215.68 feet to a point for a boundary corner;

THENCE, North 31°30'31" East, a distance of 161.55 feet to a point for a boundary corner;

THENCE, North 60°38'54" West, a distance of 10.67 feet to a point for a curve;

THENCE, 36.98 feet along the arc of a curve to left, having a radius 20.00 feet, a central of 105°55'36" and a chord which bears South 68°33'07" West, a distance of 31.93 feet to a point for a curve lying on the westerly right-of-way line of Airway Boulevard;

THENCE, 144.43 feet along the arc of a curve to left, having a radius 800.15 feet, a central of 10°20'31" and a chord which bears North 10°25'46" East, a distance of 144.23 feet to a point for a property corner;

THENCE, South 58°34'05" East, along the southerly boundary line of Lot 1, Block 4, International Industrial Center and Tract 4H, Ascarate Grant, a distance of 166.77 feet to a point for a boundary corner;

THENCE, North 31°30'31" East, along the westerly boundary line of Tract 4H, Ascarate Grant, a distance of 46.10 feet to a point for a boundary corner;

THENCE, South 58°34'05" East, along the northerly boundary line of this parcel, a distance of 883.33 feet to the "TRUE POINT OF BEGINNING" of this property description.

Said parcel of land containing 467,587.54 Sq. Ft. (10.73 Acres) of land, more or less.

4

## TRACT 2:

*A 2.3734 acres parcel of land situate within the corporate limits of the City of El Paso, El Paso County, Texas as a portion of Tract 4H, Block 2, Ascarate Grant, El Paso County, Texas also being out of that 19.96 acre parent tract as described in Document No. 20190031428 and being more particularly described by metes and bounds as follows:*

*COMMENCING* at a 5/8-inch rebar found on the northerly right-of-way line of U.S. Interstate Highway No. 10 (300 feet wide) and the westerly boundary line of Young American Subdivision as filed in Volume 44, Page 35, El Paso County Plat Records, identical to the southeasterly corner of said Tract 4H, *WHENCE*, a chiseled "X" in concrete found for the east-southwesterly corner of said Tract 4H, identical to the southeasterly corner of Lot 1, Block 1, Howdy's Subdivision as filed in Volume 75, Page 34, El Paso County Plat Records, bears North 58°34'05" West, a distance of 740.25 feet; *THENCE*, leaving the northerly right-of-way line of said U.S. Interstate Highway No. 10 and following the westerly boundary line of said Young American Subdivision, North 32°50'26" East, a distance of 556.66 feet to an angle point; *THENCE*, continuing along the westerly boundary line of said Young American Subdivision, North 59°44'42" West, a distance of 31.47 feet to an angle point; *THENCE*, continuing along the westerly boundary line of said Young American Subdivision, North 32°45'26" East, a distance of 280.01 feet to a 1/2-inch rebar with survey cap No. "TX 6223" found for the southwesterly corner of a parcel conveyed to Viscount Add On, LLC, as described in Special Warranty Deed filed in Doc. No. 20190091885, El Paso County Deed Records; *THENCE*, leaving the westerly boundary line of said Young American Subdivision and following the southerly boundary line of said Viscount Add On, LLC parcel, North 53°41'38" West, a distance of 289.55 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the northeasterly corner and the *POINT OF BEGINNING* of the parcel herein described;

*THENCE*, leaving the southerly boundary line of said Viscount Add On, LLC parcel, South 31°25'55" West, a distance of 328.88 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the southeasterly corner of the parcel herein described;

*THENCE*, North 58°34'05" West, a distance of 302.72 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set for the southwesterly corner of the parcel herein described;

*THENCE*, North 31°30'31" East, a distance of 354.66 feet to a 1/2-inch rebar with survey cap No. "TX 6223" set on the southerly boundary line of said Viscount Add On, LLC parcel for the northwesterly corner of the parcel herein described;

5

**THENCE,** following the southerly boundary line of said Viscount Add On, LLC parcel, South 53°41'38" East, a distance of 303.34 feet to the **POINT OF BEGINNING.**

Said parcel containing 2.3734 acres (103,385.5 square feet), more or less, and being subject to all easements, restrictions or covenants of record.

*Aaron Alvarado, TX R.P.L.S. No.6223*
*Date: January 13, 2022*
*07173-001A10-LOT-8-DESC-REV2.doc*

6

## TRACT 3:

A 0.0619 ACRE PARCEL OF LAND SITUATED WITHIN THE CORPORATE LIMITS OF THE CITY OF EL PASO, EL PASO COUNTY, TEXAS AS A PORTION OF LOT 3, BLOCK 4, INTERNATIONAL INDUSTRIAL CENTER AS FILED IN VOLUME 18, PAGE 54, EL PASO COUNTY PLAT RECORDS AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING, AT A CHISELED "X" IN CONCRETE FOUND FOR THE EAST-SOUTHWESTERLY CORNER OF SAID TRACT 4H, IDENTICAL TO THE SOUTHEASTERLY CORNER OF LOT 1, BLOCK 1, HOWDY'S SUBDIVISION AS FILED IN VOLUME 75, PAGE 34, EL PASO COUNTY PLAT RECORDS WHENCE, A 5/8-INCH REBAR FOUND ON THE NORTHERLY RIGHT-OF-WAY LINE OF U.S. INTERSTATE HIGHWAY NO. 10 (300 FEET WIDE) AND THE WESTERLY BOUNDARY LINE OF YOUNG AMERICAN SUBDIVISION AS FILED IN VOLUME 44, PAGE 35, EL PASO COUNTY PLAT RECORDS, IDENTICAL TO THE SOUTHEASTERLY CORNER OF SAID TRACT 4H, BEARS SOUTH 58°34'05" EAST, A DISTANCE OF 740.25 FEET; THENCE, LEAVING THE NORTHERLY RIGHT-OF-WAY LINE OF SAID U.S. INTERSTATE HIGHWAY NO. 10, AND FOLLOWING THE EASTERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 31°29'49" EAST, A DISTANCE OF 215.04 FEET TO A 1/2 INCH REBAR WITH SURVEY CAP NO "TX 6223" FOUND FOR THE NORTHEASTERLY CORNER OF SAID LOT 1; THENCE, ALONG THE NORTHERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 58°34'05" WEST, A DISTANCE OF 215.68 FEET TO THE SOUTHEASTERLY CORNER AND THE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED:

THENCE, CONTINUING ALONG THE NORTHERLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION, NORTH 58°34'05" WEST, A DISTANCE OF 3.63 FEET TO A 5/8-INCH REBAR WITH SURVEY CAP NO. "TX 5337" FOUND ON THE EASTERLY RIGHT-OF-WAY LINE OF AIRWAY BOULEVARD (120 FEET WIDE) FOR THE BEGINNING OF A NON-TANGENT CURVE TO THE LEFT AND THE SOUTHWESTERLY CORNER OF THE PARCEL HEREIN DESCRIBED:

THENCE, LEAVING THE NORTHLY BOUNDARY LINE OF SAID HOWDY'S SUBDIVISION AND FOLLOWING THE EASTERLY RIGHT-OF WAY OF SAID AIRWAY BOULEVARD ALONG THE ARC OF SAID NON-TANGENT CURVE TO THE LEFT HAVING A RADIUS OF 800.15 FEET, A CENTRAL ANGLE OF 09°54'28", AN ARC LENGTH OF 138.37 FEET AND WHOSE LONG CHORD BEARS NORTH 20°33'15" EAST, A DISTANCE OF 138.19 FEET TO A POINT OF REVERSE CURVATURE:

THENCE, CONTINUING ALONG THE EASTERLY RIGHT-OF-WAY LINE OF SAID AIRWAY BOULEVARD, ALONG THE ARC OF A CURVE TO THE RIGHT HAVING A RADIUS OF 20.00 FEET, A CENTRAL ANGLE OF 105°54'11", AN ARC LENGTH OF 36.97 FEET AND WHOSE LONG CHORD BEARS NORTH 68°33'07" EAST, A DISTANCE OF 31.93 FEET TO THE SOUTHERLY RIGHT-OF-WAY LINE OF VACATED PORTION OF INTERNATIONAL DRIVE PER ORDINANCE NO. 7479, DATED 0-20-82 FOR A POINT OF TANGENCY:

THENCE, FOLLOWING SAID PORTION OF VACATED INTERNATIONAL DRIVE RIGHT-OF-WAY LINE, SOUTH 60°38'54" EAST, A DISTANCE OF 10.67 FEET TO THE WESTERLY BOUNDARY LINE OF TRACK 4H, BLOCK 2, ASCARATE GRANT FOR THE NORTHEASTERLY CORNER OF THE PARCEL HEREIN DESCRIBED:

THENCE, LEAVING SAID PORTION OF VACATED INTERNATIONAL DRIVE RIGHT-OF-WAY AND FOLLOWING THE WESTERLY BOUNDARY LINE OF SAID TRACT 4H, SOUTH 31°30'31" WEST, A DISTANCE OF 161.55 FEET TO THE POINT OF BEGINNING SAID PARCEL CONTAINING

7

0.0619 ACRES (2,695.0 SQUARE FEET), MORE OR LESS, AND BEING SUBJECT TO ALL EASEMENTS, RESTRICTIONS OR COVENANTS OF RECORD.